| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
|---|---|
| STAR AUTO SALES OF BAYSIDE, INC., et al.<br><br>Plaintiffs,<br><br>– against – | |
| | **MEMORANDUM & ORDER** |
| VOYNOW, BAYARD, WHYTE AND<br>COMPANY, LLP, et al.<br><br>Defendants. | 18-CV-5775 (ERK) (CLP) |

Korman, *J*.:

    Plaintiffs—seven commonly owned and operated automobile dealerships—bring this professional malpractice suit against their former accountants for failing to notice that plaintiffs' employees were embezzling millions of dollars. Defendants move to dismiss, or for a more definite statement, on the basis that the complaint lumps the multiple plaintiff entities together rather than explaining which accounting abnormalities and losses pertain to which entity. Defendants also move to dismiss plaintiffs' breach of contract claim as duplicative and to dismiss the prayer for attorney's fees.

## BACKGROUND

    The Star Auto Group is comprised of seven commonly owned and operated automobile dealerships, organized as separate corporate entities. Compl. ¶ 2, ECF No. 1. As "commonly . . . operated" and "interrelated" businesses, the Star Auto dealerships share an accounting staff, office manager, and inventory financing bank. *Id*. ¶¶ 2, 4, 32-43, 62. Voynow, Bayard, Whyte, and Company served for 21 years as Star Auto's accounting firm. *Id.* ¶ 32. During that time, Voynow provided a variety of services, including review of year-end account balances, tax preparation, financial advice, and assistance in hiring and training Star Auto's accounting personnel. *Id.* Voynow did not perform these services under a written contract but rather pursuant to "oral

1

discussions and course of practice," and the scope of its engagement "varied according to the particular needs of [Star Auto] in any given year. *Id.* ¶¶ 33-34. Because Voynow "worked closely and on a regular basis with [Star Auto's] ownership[,] senior office managers, and accounting personnel," it was "intimately familiar" with Star Auto's "accounting and management systems." *Id.* ¶¶ 41-42. In addition, Voynow prepared the taxes of Star Auto's office manager, Vivian Karaouzakis. *Id.* ¶ 43.

In December 2016, Star Auto discovered that Karaouzakis and other employees embezzled "in excess of $10 million" across its various dealerships. *Id.* ¶¶ 44-47. Star Auto fired Karaouzakis, who has since been indicted for multiple felonies, and commenced an internal investigation. *Id.* ¶¶ 48-49. To date, the investigation has unveiled "multiple theft and fraud schemes" by Star Auto employees. *Id.* ¶ 50. For example, employees used fraudulent journal entries to cash company checks, misappropriated company checks for personal use, improperly issued cash advances, and purchased discounted automobiles for family and friends without authorization. *Id.* ¶¶ 55-58. According to Star Auto, Voynow missed these "red flags" and "failed to notice or report to management that the extraordinary number of irregular entries as well as the undue volatility in [its] accounts were highly irregular and suspicious." *Id.* ¶¶ 54-59. And even after Karaouzakis was fired, Voynow failed to notice other ongoing fraud, including unauthorized wire transfers. *Id.* ¶¶ 61-65. Star Auto insists that "[t]he foregoing schemes are only examples" and once it completes its internal investigation, it will "present at trial a comprehensive accounting of Voynow's failures." *Id.* ¶ 66.

Star Auto asserts three causes of action against Voynow and its principals: (1) professional malpractice, (2) liability under the doctrine of *respondeat superior*, and (3) breach of contract. In sum, the complaint alleges that Voynow's departure from industry standards and incompetence

resulted in losses of millions of dollars. *Id.* ¶¶ 77-98. Star Auto seeks damages of $10 million, "plus interest and attorneys' fees." *Id.* at 22.

Voynow moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Star Auto's professional malpractice claim for failing to allege each element with particularity as to each of the plaintiff entities. Alternatively, it moves for a more definite statement under Rule 12(e). Voynow also argues that the breach of contract claim must be dismissed as duplicative and Star Auto's prayer for attorney's fees is unauthorized by law.

**STANDARD OF REVIEW**

In deciding a motion to dismiss, courts "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Motions for a more definite statement are reserved for pleadings that are "so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). Such motions "should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *FTC v. Consumer Health Benefits Ass'n*, 2012 WL

1890242, at *4 (E.D.N.Y. May 23, 2012) (quoting *Maxwell v. N.Y. Univ.*, 2008 WL 5435327, at *2 (S.D.N.Y. Dec. 31, 2008).

## DISCUSSION

I.  **Plaintiffs Have Sufficiently Pleaded a Professional Malpractice Claim**

"Under New York law, professional malpractice[] is a species of negligence. As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000) (quotation marks omitted). "Specifically, . . . a plaintiff must show that: (1) the plaintiff contracted for the service, or the service ordinarily would be performed in the course of the professional performing its obligations under a contract; (2) the defendant's professional services departed from the accepted standards of practice in the relevant field; and (3) the departure proximately caused the plaintiff's injuries." *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 199 F. Supp. 3d 818, 829-30 (S.D.N.Y. 2016) (quotation marks omitted).

To begin, Star Auto alleges a contractual relationship with Voynow for the provision of accounting services that extended throughout the period of alleged fraud. Although the agreement was not memorialized in writing, "Voynow provided a broad array of accounting, management and related services to [p]laintiffs . . . based on oral discussions and course of practice." Compl. ¶¶ 32-34. By using the plural "plaintiffs," defined as including the "group of seven commonly owned and operated automobile dealerships," *id.* ¶ 2, the complaint makes clear that this contractual relationship extended between Voynow and each of the plaintiff entities, whose "commonly . . . operated" and "interrelated" businesses shared an accounting staff, office manager, and inventory financing bank. *Id.* ¶¶ 2, 4, 32-43, 62. Even in the absence of a formal contractual obligation to flag accounting abnormalities, the complaint sufficiently alleges that doing so "is the customary practice" of accountants and would be required of accountants "exercis[ing] the skill

4

and knowledge normally possessed by members of [the] trade or profession." *See AJ Contracting Co., Inc. v. Trident Managers, Inc.*, 651 N.Y.S.2d 498, 499 (App. Div. 1996).

Likewise, the complaint sufficiently alleges that Voynow departed from industry standards, causing damage to all plaintiffs. *Cf. Bd. of Trustees of IBEW Local 43 Elec. Contractors Health & Welfare, Annuity & Pension Funds v. D'Arcangelo & Co.*, 1 N.Y.S.3d 659, 661 (App. Div. 2015). The schemes uncovered by Star Auto's internal investigation found extensive misconduct by Star Auto's shared office manager and others, collectively costing plaintiffs millions of dollars in losses. *See* Compl. ¶¶ 55-66. The complaint details various accounting discrepancies—including "intercompany discrepancies"—and other misconduct. *See id.* It further alleges that Voynow would have caught these issues had it abided by prevailing industry standards. *See id.* ¶¶ 79-81. It is plausible that Star Auto would not have suffered damages but for this negligence, and, "[a]s a general rule, the question of proximate cause is to be decided by the finder of fact," *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 312-15 (1980). To be sure, the complaint highlights only two ways in which a scheme impacted a specific dealership. *Id.* ¶¶ 57, 65. But that level of specificity is not required as to each accounting abnormality at this early stage. *See Twombly*, 550 U.S. at 555 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."). If anything, the more detailed allegations that are present help "nudge[]" the malpractice claim "across the line from conceivable to plausible." *Id.* at 570.

On the whole, the allegations here are not nearly as bare as those in *Kearse v. City of New York*, 2018 WL 2059658, at *2 (S.D.N.Y. May 1, 2018), upon which Voynow relies. There, the complaint "allege[d] plausible claims as to some plaintiffs," while other, unrelated plaintiffs "merely . . . allege[d] 'me too' in a conclusory fashion." *Id.* In contrast, Star Auto alleges that Voynow performed deficient accounting work for *all* commonly owned and operated plaintiffs

5

and that *all* plaintiffs suffered damages from Voynow's deficient performance. This is enough to survive a motion to dismiss. *See Perry v. City of New York*, 2013 WL 6641893, at *4 (S.D.N.Y. Dec. 17, 2013); *cf.* Fed. R. Civ. P. 10(b) (providing that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" but only "if doing so would promote clarity"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1324 (4th ed. 2018) (explaining where "a single transaction [gives] rise to claims by multiple plaintiffs[,] . . . a district court should have discretion to order separation [of claims] where there is a possibility of confusion and to follow the text of [Rule 10(b)] and not order separation where existing pleading is comprehensible"). Although "group pleading" of this nature "diminishes the specificity of [p]laintiffs' allegations, it would be improper to dismiss the entire case . . . when, as here, there are sufficient facts . . . to put [d]efendants on notice of the wrongs they allegedly committed." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Ore., Inc.*, 156 F. Supp. 3d 348, 359 (E.D.N.Y. 2016).

For similar reasons, it is unnecessary for Star Auto to provide a more definite statement. "Rule 12(e) is meant to rectify incomprehensible or confused pleadings, not to add detail or substitute for the discovery process." *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 246 F.R.D. 99, 101 (D. Conn. 2007). Voynow's objection that the complaint does not specify precisely which irregularities appeared in the books of which entity and how much in losses each entity suffered amounts to a premature request for discovery. *See* 5C Wright & Miller, Federal Practice and Procedure § 1376 (3d ed. 2018) ("The purpose of Rule 12(e) is to permit litigants to procure information needed to frame a responsive pleading, not as a substitute for discovery . . . .").

## II. The Breach of Contract Claim Is Duplicative of the Professional Negligence Claim

Voynow next moves to dismiss Star Auto's breach of contract claim as duplicative of its malpractice claim. "The key to determining whether a claim is duplicative of one for malpractice is discerning the essence of each claim." *Johnson v. Proskauer Rose LLP*, 9 N.Y.S.3d 201, 208 (App. Div. 2015). A claim that a professional has "failed to perform services in a professional, nonnegligent manner" sounds in malpractice, not breach of contract. *In re R.M. Kliment & Frances Halsband, Architects (McKinsey & Co., Inc.)*, 3 N.Y.3d 538, 542-43 (2004).

Here, Star Auto's claim for breach of contract merely recasts its professional malpractice claim, which arises out of the same facts and alleges the same damages. *See DiTondo v. Meagher*, 924 N.Y.S.2d 666, 667-68 (App. Div. 2011) (dismissing breach of contract claim as duplicative of legal malpractice claim where it "ar[ose] out of the same facts" and did not "allege distinct damages"). Indeed, the breach of contract claim incorporates the allegations underlying the malpractice claim, explaining that the underlying facts are "set forth above more fully." Compl. ¶ 91. The alleged breach is that Voynow "fail[ed] to notice, investigate and/or report" a number of "red flags." *Id.* ¶ 96. This purportedly violated the "specific implied term" of the parties' unwritten contract that Voynow "would use their specialized expertise and their intimacy with [Star Auto's] operations to be vigilant for, and to alert management regarding," any such discrepancies. *Id.* ¶ 93. This is "a malpractice claim . . . couched in breach of contract terms." *R.M. Kliment*, 3 N.Y.3d at 543. As such, it must be dismissed as duplicative. *Accord Bd. of Trustees of NEW Local 43 Elec. Contractors Health & Welfare & Pension Funds v. D'Arcangelo & Co.*, 2012 WL 6681765, at *2 (N.D.N.Y. Dec. 21, 2012) (breach of contract claim was duplicative of accounting malpractice claim where the "action [was] entirely directed at recovery for a claimed failure of [defendant] to conduct its audit in accordance with" industry standards).

### III. Plaintiffs Are Not Entitled to Attorney's Fees

Finally, Voynow moves to dismiss Star Auto's prayer for attorney's fees. Star Auto does not address the merits of this argument but rather contends that the demand for attorney's fees may not be dismissed at this stage because the request is not a "standalone claim." Opp. 12 n.3, ECF No. 20-3. "In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001). Indeed, "New York public policy disfavors any award of attorneys' fees to the prevailing party in a litigation." *Saul v. Cahan*, 61 N.Y.S.3d 116, 118 (App. Div. 2017) (quotation marks omitted); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). Star Auto provides no basis—statutory, contractual, or otherwise—that would entitle it to collect attorney's fees. Accordingly, I strike that aspect of its prayer for relief without prejudice. *See Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 542 (S.D.N.Y. 2005) (dismissing demand for attorney's fees at pleading stage); *Fashionwear (PVT) Ltd. v. Regatta (U.S.A.) LLC*, 2004 WL 2210258, at *4 (S.D.N.Y. Sept. 30, 2004) (same).

### CONCLUSION

Defendants' motion to dismiss is denied with respect to Counts 1 and 2 and granted with respect to Count 3. The alternative motion for a more definite statement is denied. Plaintiffs' prayer for attorney's fees is stricken.

                    **SO ORDERED.**

                    *Edward R. Korman*

Brooklyn, New York              Edward R. Korman
March 25, 2019                United States District Judge