# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

May 28, 2021

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Cheryl L. Pollak, U.S.M.J.
225 Cadman Plaza East, Room 1230
Brooklyn, NY 11201-1804

*Re:*  **Star Auto Sales of Bayside, Inc.,** *et al.* **v. Voynow, Bayard, Whyte and Co., LLP,** *et al.*
       **Case No.: 1:18-cv-5775 (ERK) (CLP)**
       **Defendants' File No.: 03127-1373**
       **MLLG File No.: 76-2018**

Dear Judge Pollak:

      This office represents the Plaintiffs in the above-referenced case against the Defendants (collectively & interchangeably referred to as "Voynow"). This correspondence is submitted in response to Defendants' May 21, 2021 letter motion (Docket Entry 51) and serves to provide the Court with Plaintiffs' position concerning why a subpoena Defendants intend on issuing to Plaintiffs' former consultant, Rosenfield & Company, PLLC (hereinafter "Rosenfield") should be quashed.

      Preliminarily, Plaintiffs have standing to quash the subpoena issued to Rosenfield because they claim a personal right and privilege with regard to the documents sought; specifically, that the documents are privileged by the attorney-work product doctrine and is entitled to protection under the law-enforcement privilege. <u>See</u> <u>Haywood v. Hudson</u>, No. 90-CIV.-3287 (CPS), 1993 WL 150317 at *4 (E.D.N.Y. April 23, 1993) <u>citing</u> <u>Brown v. Braddick</u> 595 F.2d 961, 967 (5th Cir.1979)); <u>Carey v. Berisford Metals Corp.</u>, 90 Civ. 1045(JMC), 1991 WL 44843 at *8 (S.D.N.Y. March 28, 1991); <u>see</u> <u>also</u> 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2459 n. 7 at 436 (3d ed. 2008).

      As set forth below, Defendants' subpoena must be quashed in order to preserve these privileges.

**Relevant Factual Background & Procedural History**

      This case was commenced on October 16, 2018 by Plaintiffs, a group of automobile dealerships, against their former accounting firm and its principals, who held themselves out to be experts in the automotive industry and upon whom Plaintiffs relied for over two (2) decades to, *inter alia*, ensure no fraudulent conduct occurred or was occurring at Plaintiffs' dealerships. Defendants woefully failed in their contractual and ethical duties to report myriad red flags and issues that they were specifically designated to find and which any accountant, especially an

Hon. Cheryl L. Pollak, U.S.M.J.
United States District Court Eastern District of New York
May 28, 2021
P a g e | **2**

accountant who holds himself or herself out to be a specialist in the automotive industry, would immediately find.  See Docket Entry 1.

Prior to filing the complaint in this case, in April 2017, Plaintiffs' prior counsel directly engaged the services of Rosenfield as a consultant to assess Defendants' liability for accounting malpractice and to determine the extent of their liability.

On March 1, 2018, the parties entered into a tolling agreement so that they could devote their time to settlement discussions.  See copy of the tolling agreement annexed hereto as **Exhibit "A."**  The tolling agreement stated that any documents exchanged during the period in which the agreement was in effect were being exchanged only for purposes of settlement.  On July 18, 2018, in furtherance of settlement discussions, and pursuant to the tolling agreement, Plaintiffs provided Defendants with Rosenfield's preliminary report **for settlement purposes only**.  See copy of redacted correspondence indicating that same is protected by Rule 408 of the Federal Rules of Evidence ("FRE") annexed hereto as **Exhibit "B."**  Once the parties determined that they could not settle their dispute, litigation commenced.

Defendants unsuccessfully moved to dismiss Plaintiffs' professional malpractice and *respondeat superior* claims.  See Docket Entry 27.  Upon joinder of issue, the parties engaged and continue to engage in extensive and protracted discovery, with Plaintiffs producing well over 100,000 pages of documents and Defendants producing approximately 40,000 pages of documents, and the parties engaging in third party discovery.  See Docket Entries 14, 30, 33-34, 41, and 43-44.

Thereafter, the parties entered into a Discovery Stipulation and Agreement with claw-back provisions pursuant to Rule 502(d) of the FRE (hereinafter the "ESI & Discovery Stipulation").  See ESI & Discovery Stipulation annexed as **Exhibit "C".**

In late December 2020, your undersigned substituted in as counsel for the Plaintiffs.  See Docket Entries 45-50.  It has come to Plaintiffs' attention that their former counsel produced documents related to Rosenfield which are privileged.  Plaintiffs intend on immediately seeking to claw-back these privileged documents pursuant to the ESI & Discovery Stipulation.

On May 4, 2021, Defendants served Plaintiffs with copies of eight (8) subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule").  The only subpoena at issue here is the one concerning Rosenfield.  For the reasons set forth below, the Rosenfield subpoena must be quashed.

**The Subpoena Seeks Privileged Information**

Plaintiffs have notified Defendants they are not relying on Rosenfield as a witness in this case nor on any documents Rosenfield prepared.  Rosenfield was retained by Plaintiffs' former counsel as a consultant to assess Defendants' liability for accounting malpractice and to determine the extent of their liability; therefore, all documents Rosenfield provided to Plaintiffs and their

counsel and communications with Rosenfield are protected by the attorney work product privilege warranting an order quashing the Rosenfield subpoena.

The documents sought in the Rosenfield subpoena undoubtedly are protected by the work product privilege enjoyed by Plaintiffs, their counsel, and Rosenfield. The paramount concern underlying the work product doctrine is the preservation of an attorney's litigation strategies. See Flaherty v. Seroussi, 209 F.R.D. 300, 306 (N.D.N.Y. 2002). Thus, for example, in Herbert v. Lando, the court rejected a request for the production of documents gathered and retained by an attorney during the course of an investigation, observing that "[t]he very decision of counsel to retain particular documents involves the exercise of an attorney's judgment." See No. 74-CIV.-434, 1982 U.S. Dist. LEXIS 10934, at *5 (S.D.N.Y. Jan. 1, 1982).

The same applies here, where Plaintiffs' prior counsel engaged Rosenfield as a consultant to analyze whether there was a basis to commence this action and to determine the extent of liability. Rosenfield was engaged prior to filing suit, rendering the engagement irrefutably for the purpose relegated to the attorney work product doctrine. See Bloomingburg Jewish Education Center v. Village of Bloomingburg, New York, 171 F. Supp. 3d 136 (S.D. N.Y. 2016) (holding that the attorney work product doctrine establishes a zone of privacy for strategic litigation planning and prevents a party from piggybacking on an adversary's preparation).

In contrast to the attorney-client privilege, which is intended to encourage full disclosure by the client, the work-product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." See United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir.1998).

The work-product doctrine protects the ruminations by an attorney or party concerning the strategy to be followed in a litigation. See In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 161 (2d Cir. 2002); see also In re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir.1993).[1]

Like the attorney-client privilege, the party asserting the protection of the work-product doctrine bears the burden of proof. See In re Grand Jury Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510 (2d Cir.1979). "[T]hree conditions must be met in order to earn work product protection. The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." See In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982); accord Weinhold v. Witte Heavy Lift, Inc., No. 90-CIV.-2096 (PKL), 1994 WL 132392 at *2 (S.D.N.Y. April 11, 1994); see also 2 Michael C. Silberberg, Edward M. Spiro, Civil Practice in

---

[1] Although most of the cases discuss the work-product doctrine as affording counsel privacy regarding strategy development, it also applies to documents created by a party. See In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982).

the Southern District of New York, § 15.04 at 15–13—15–14 (2d ed.2003).  The Second Circuit has explained that the second element of this test does not limit the doctrine to documents prepared primarily or exclusively to assist in litigation:

> The text of Rule 26(b)(3) does not limit its protection to materials prepared to assist at trial. To the contrary, the text of the Rule clearly sweeps more broadly. It expressly states that work-product privilege applies not only to documents "prepared ... for trial" but also those prepared "in anticipation of litigation." If the drafters of the Rule intended to limit its protection to documents made to assist in preparation for litigation, this would have been adequately conveyed by the phrase "prepared ... for trial." The fact that documents prepared "in anticipation of litigation" were also included confirms that the drafters considered this to be a different, and broader category. Nothing in the Rule states or suggests that documents prepared "in anticipation of litigation" with the purpose of assisting in the making of a business decision do not fall within its scope.

See United States v. Adlman, *supra*, 134 F.3d at 1198-99.  Thus, the appropriate inquiry regarding the second element of the test is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation ."  See Id. at 1202 (quoting 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2024 at 343 (3d ed. 2008)).

Here, Plaintiffs easily meet each condition to earn work product protection.  The subpoena unquestionably seeks documents, satisfying the first condition.  The documents were irrefutably prepared in anticipation of litigation, as Rosenfield was retained in April 2017 – prior to filing the October 2018 complaint – for the express purpose of determining and assessing liability of Defendants for malpractice.  The documents were prepared by Rosenfield for Plaintiffs' counsel to determine if a lawsuit would be brought and the extent of potential liability.

There is, therefore, no basis to deny work product protection to all documents prepared by Rosenfield and all communications between Rosenfield, Plaintiffs, and/or Plaintiffs' counsel.

To the extent any communications exist between Rosenfield, on Plaintiffs' behalf during its analysis of Defendants' liability, and any law enforcement agency, and any documents provided during the course of said communications, and they are not protected by the work product privileged (which Plaintiffs maintain they are), the law-enforcement privilege should apply to prevent disclosure.  The law enforcement investigatory privilege is "a judge-fashioned evidentiary privilege," (Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1124 (7th Cir. 1997), the purpose of which is to protect law enforcement efforts from possible harm arising from public disclosure of investigatory files.  See Doe v. Hudgins, 175 F.R.D. 511 (N.D. Ill. 1997); In re United States Dept. of Homeland Security, 459 F.3d 565, 569 n.2 (5th Cir. 2006).  It protects from dissemination the information contained in files related to both civil and criminal law enforcement investigations.

See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1341 (D.C. Cir. 1984); Black v. Sheraton Corp. of America, 564 F.2d 531, 542 (D.C. Cir. 1977).  This privilege prohibits the release of governmental information – whether through documentary evidence or oral testimony – that would harm an agency's investigative or enforcement efforts.  See In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988) (public interest in safeguarding integrity of investigations supports application of law enforcement investigatory privilege to both documents and testimony).

Here, to the extent that Rosenfield, on behalf of the Plaintiffs, submitted any documents or reports to any law enforcement agency, the law-enforcement privilege requires the subpoena be quashed.

Accordingly, the Rosenfield subpoena must be quashed.

### Plaintiffs Have Not Waived Privilege

The work product privilege was not waived with respect to documents produced by Plaintiffs during settlement discussions as the tolling agreement and correspondence from Plaintiffs' counsel make abundantly clear that they were produced only for purposes of settlement. (See Exhibits A & B).

Although some additional privileged documents were produced in the amalgam of over 100,000 documents produced by Plaintiffs during discovery, every document related to Rosenfield is subject to the protections of the claw-back provision contained in the ESI & Discovery Stipulation (Exhibit C) to which the Plaintiffs shall avail themselves.   As such, there is no basis whatsoever to argue any waiver of privilege.

### The Subpoena is an Unnecessary End-Around of Party Discovery

Even assuming *arguendo* that the documents sought in the subpoena are not privileged (as discussed *supra*, they are privileged), all of the documents sought from Rosenfield through the subpoena are in the possession, custody, and control of Plaintiffs, so the subpoena need not be complied with nor the materials produced.  See Keogh v. Pearson, 35 F.R.D. 20, Case 1 (D. D.C. 1964).   More importantly, courts have held that a subpoena *duces tecum* served on a nonparty will be denied insofar as the documents requested are available from the opposing party in the litigation to prevent unnecessary annoyance and expense to nonparty witnesses.  See In re Penn Central Commercial Paper Litigation, 61 F.R.D. 453 (S.D.N.Y. 1973).

### The Subpoena Seeks Irrelevant Information

Assuming *arguendo* that the Court determines that the attorney work product doctrine does not apply (it does), the subpoena should be quashed because it seeks irrelevant information.

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  See Fed.

R. Civ. P. 26(b)(1). "The party seeking discovery bears the initial burden of proving the discovery is relevant." See In re Subpoena to Loeb & Loeb LLP, No. 19-MC-00241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019) (citation omitted) (hereinafter referred to as "Loeb").

Rule 45(a) permits a party to request and serve on a non-party a subpoena seeking production of documents, and Rule 45(d) permits a non-party served with a subpoena to move to have the subpoena quashed. See Fed. R. Civ. P. 45(a), (d)(3). "Motions to quash under Rule 45 are entrusted to the sound discretion of the district court." See Universitas Educ., LLC v. Nova Grp., Inc., No. 11-CIV.-1590 (LTS) (HBP), 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013) (citations and internal quotation marks omitted).

"The relevance standards set out in [Rule] 26(b)(1) apply to discovery sought from non-parties." See Loeb, 2019 WL 2428704, at *4; see also 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 at n.12 (3d ed. 2020) (collecting cases). "On a motion to quash, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." See Loeb, 2019 WL 2428704, at *4 (internal quotation marks, brackets and citation omitted). "A subpoena that pursues material with little apparent or likely relevance ... is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." See Sheindlin v. Brady, No. 21-CIV.- 1124 (LJL) (SDA), 2021 WL 2075483, at *2 (S.D.N.Y. May 24, 2021) (citing Loeb).

In addition, discovery is not boundless, and a court may place limits on discovery demands that are "unreasonably cumulative or duplicative," or in cases "where the burden or expense of the proposed discovery outweighs its likely benefit ...." See Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome. See Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of persuasion in a motion to quash a subpoena ... is borne by the movant.") (quoting Jones v. Hirschfeld, 219 F.R.D. 71, 74–75 (S.D.N.Y.2003)).

Here, Defendants cannot demonstrate the relevance of the documents sought. In this action, as stated *supra*, Plaintiffs will not be relying on Rosenfield as a witness nor on any documents prepared by Rosenfield. As such, the documents Defendants seek from Rosenfield are irrelevant.

Accordingly, for the foregoing reasons, the Rosenfield subpoena must be quashed.

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073

Hon. Cheryl L. Pollak, U.S.M.J.
United States District Court Eastern District of New York
May 28, 2021
P a g e | **7**

                                      (516) 328-8899 (telephone)
                                      (516) 328-0082 (facsimile)
                                      jamiefelsen@mllaborlaw.com
                                      emanuel@mllaborlaw.com

**VIA ECF**
Marshall Dennehy Warner Coleman & Goggin
<u>Attn</u>: John L. Slimm & Maureen P. Fitzgerald, Esqs.
15000 Midatlantic Drive, Suite 200
P.O. Box 5429
Mount Laurel, NJ 08054-1570
jlslimm@mdwcg.com
mpfitzgerald@mdwcg.com