# EXHIBIT "C"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR TOYOTA OF BAYSIDE), STAR AUTO SALES OF QUEENS, LLC (d/b/a STAR SUBARU), STAR HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR NISSAN, INC. (d/b/a STAR NISSAN), METRO CHRYSLER PLYMOUTH INC. (d/b/a STAR CHRYSLER JEEP DODGE), STAR AUTO SALES OF QUEENS COUNTY LLC (d/b/a STAR FIAT) and STAR AUTO SALES OF QUEENS VILLAGE LLC (d/b/a STAR MITSUBISHI), | Civil Action No.: 1:18-cv-05775-ERK-CLP |
| Plaintiffs, | |
| -against- | |
| VOYNOW, BAYARD, WHYTE AND COMPANY, LLP, HUGH WHYTE, RANDALL FRANZEN AND ROBERT SEIBEL, | |
| Defendants. | |

## DISCOVERY STIPULATION AND AGREEMENT

Plaintiffs and Defendants (collectively the "Parties") conferred pursuant to Federal Rule of Civil Procedure 26(f) and agree on the standards for discovery, mutually seeking to reduce the time, expense and other burdens of identifying, locating, preserving, securing, collecting, preparing, reviewing and producing facts, information and materials for the purpose of producing/obtaining evidence, especially as it relates to electronically stored information ("ESI"). Therefore, the Parties enter into this Discovery Stipulation And Agreement (the "Agreement") to govern discovery obligations in this action.

The Parties agree to the following:

1

## I.   GENERAL PRINCIPLES

The Parties are committed to act in good faith throughout this matter and meet and confer on matters to resolve disputes in the spirit of cooperation. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) must be applied to all aspects of the discovery process.

## II.   DEFINITIONS

The following definitions will apply for purposes of this Stipulated Agreement:

A.   **Application** means a collection of one or more related software programs that enables a user to enter, store, view, modify or extract information from files or databases. This term is commonly interchangeable with "program" and/or "software".

B.   **Bates Number** means a unique alphanumeric identifier assigned to each page of each document in every production set.

C.   **Custodian** means the person having administrative control of a document or electronic file.

D.   **Deduplication** means the automated process of identifying identical copies of the same document family based on the MD5 or SHA-1 hash value of the documents and removing identically matching records (a.k.a., a "true duplicate") from the data set.

E.   **Document** means anything electronic, typed, hand-written or printed that conveys information and is subject to production or inspection, including without limitation: texts, writings, drawings, graphs, charts, photographs, sound recordings, videos, images, email, email attachment(s), databases, word or text documents, spreadsheets, graphics, presentations, or any other collection of pages representing an electronic file or paper record.

F.   **Document family** means a group of related documents that are considered

2

collectively as a group such as an email with attachments – the email being the "parent" and an attachment a "child" (multiple attachments being referred to as "children"). Paper documents that are physically connected by binding, folders, or other cohesive physical or logical groupings may manually be deemed a document family if scanned and categorized as such. For example, a binder cover is marked as a "parent" and materials within are marked as "children" during the scanning process and maintained for production purposes thereafter. (See Parent/Child Relationship below).

G.      **Draft document** means a preliminary version of a record before it has been completed, finalized, accepted, validated or filed. Such records include working files and notes.

H.      **Load File refers to** a file containing fielded information (i.e., image type or metadata) being produced from ESI and scanned records. A data file should accompany any and all productions. The production shall include an Opticon (OPT) load file and Concordance (DAT) file that indicates document breaks to accompany the images. For more information about data files, see "metadata" below.

I.       **Electronic Mail Message** (a.k.a., email/e-mail) means a document created or received via an electronic mail system with pictorial and/or text-based content exchanged between or among a sender and recipient(s). An email may include (without limitation) brief notes, formal or substantive narrative documents and/or attachments, such as word processing, graphics or other accompanying electronic materials.

J.       **Email Message Store** (a.k.a., Mailstore) means the location in which an email system stores its data. For instance, an Outlook PST (personal storage folder) is a type of top most file that is created when a user's Outlook mail account is set up. Additional Outlook PST files for that user can be created for backing up and archiving Outlook folders, messages, forms

3

and files. Similar to a filing cabinet, which is not considered part of materials exchanged during discovery, the PST file itself is likewise not counted as part of an email family (see Parent/Child Relationship below).

      **K.**     **Extracted text** means collecting text from files that include text in their original native file format or after generating text files from Optical Character Recognition (OCR) software for the purpose of indexing the text into an application for search and retrieval purposes.

      **L.**     **Filename extension** means an identifier specified as a suffix to the name of a computer file. The extension indicates a characteristic of the file contents or its intended use. A file extension is typically delimited from the filename with a full stop (period) and includes, without limitation:

| Software | File Extension |
|---|---|
| Microsoft Outlook Package | PST |
| Microsoft Outlook Message | MSG |
| Lotus Notes Email | NSF |
| Apple OS X Mail EMLX | EMLX |
| Hypertext Markup Language | HTML |
| ANSI, ASCII, UTF-8 Text Programs (e.g., TextPad, NotePad) | TXT |
| Microsoft Word | DOC, DOCX |
| WordPerfect | WP4, WPD |
| Microsoft Excel | XLS, XLSX |
| Microsoft PowerPoint | PPT, PPTX |
| Adobe Acrobat | PDF |
| Other general file types: | |
| Imaging Programs | JPEG, PNG, TIFF, TIF, BMP, GIF |
| Multi-Media | MPG, MP3, MP4, WAV, QTFF, WMV |

      **M.**     **Hard Copy Document** means a Document kept in physical form (*i.e.*, paper), as opposed to electronic form, in the ordinary course of a party's business.

N.      **Metadata** means data about other data and generally describes the origin, structure, and/or characteristics of computer files, webpages, databases, or other digital resources. For example, an email message may contain, among other things, information such as to/from/cc/bcc/date sent; whereas, an image file may include, among other things, size, color, resolution and creation date. Digitized paper or other scanned documents will not contain metadata unless manually captured by visual inspection (i.e., bibliographic coding).

O.      **Native File Format** means the default file format that an application uses to create or save electronically generated files. Most software create proprietary file formats, which can be extended to use in other platforms. For example, the native file format associated with a Microsoft Word document is .doc/.docx, but users are still given the option to save in other formats like .txt, .pdf and .rtf, which also can be viewed using Microsoft's Word Application.

P.      **Not Reasonably Accessible** means ESI that a Party identifies as not reasonably accessible because of undue burden or cost.

Q.      **Optical Character Recognition ("OCR")** means utilizing software to attempt detection and extraction of text from image-only files and generate separate text files to accompany those original image-only files for searchability purposes.

R.      **Portable Document Format ("PDF")** means a document representation format for capturing and exchanging text, images, graphics, and/or other multimedia content in an image-only or searchable package. A PDF that is flattened into a picture without an underlying layer of text is known as an "Image-only PDF"; whereas, a PDF with searchability has OCR applied and adds a text layer to the image underneath so it is fully searchable, which is called a "Searchable PDF".

S.      **Production** means the delivery of data and/or information in response to an

5

interrogatory, subpoena or discovery order or similar legal process.

    **T.**    **Production Media** means the physical media or portal used to store production materials, such as a hard drive, thumb drive, CD, DVD or via a secure File Transfer Protocol (FTP) website or messaging system.

    **U.**    **Tagged Image File Format ("TIFF")** An industry-standard file format for storing scanned and other digital black-and-white, grey-scale, and full-color images. TIFFs should be in 300 D.P.I. Group IV compression black and white single-page format.

    **V.**    **Webmail** means email service that is provided through a website.

    **W.**    **Website** means a collection of Uniform Resource Indicators (URIs, including Uniform Resource Locators (URLs)) in the control of one administrative entity. Websites may come from different URIs (e.g., FTP sites, telnet sites and World Wide Websites).

## III.   PRESERVATION

In accordance with the Federal Rules of Civil Procedure ("FRCP"), the Federal Rules of Evidence ("FRE"), and all relevant controlling principles of law, the Parties having discussed their preservation obligations and needs pursuant to FRCP(26)(f), hereby agree to preserve discoverable information in consideration of:

    i.    whether such discovery is relevant to a claim or defense and is proportional to the importance of the issues at stake in this action;

    ii.    the costs of discovery in light of the amount in controversy;

    iii.    the Parties' relative access to relevant information;

    iv.    the Parties' resources;

    v.    the importance of the discovery in resolving the issues; and

       vi.    whether the burden or expense of the proposed discovery outweighs its likely benefit.

The Parties agree that preservation does not by itself define the scope of discovery, especially as it relates to privilege, sensitive, and/or non-responsive materials unrelated to this action. No preservation effort by the Parties shall be deemed a waiver of any claim of privilege.

Notwithstanding the aforementioned, the Parties agree to forego producing the following unless there is a question of spoliation, whereby the Parties shall meet and confer to modify the scope of the below referenced limitations:

    i.    email delivery and read receipts;

    ii.    temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    iii.    server, system or network logs;

    iv.    corrupt or unreadable files (unless password protected and the password is readily accessible);

    v.    system or executive files (e.g., .exe, .dll);

    vi.    data from a smartphone device or other cell phone where, based on the producing party's standard practices, believes the smartphone device or other cell phone information is expected to be duplicative of some other sources being produced (e.g., email from webmail or a network server);

    vii.    log data from photocopiers or fax machines;

    viii.    materials retained primarily for backup or disaster recovery purposes unless relevant ESI exists only on a Party's Backup data/system, whereby preservation is required and the Parties will meet and confer about how to produce such

7

information;

ix.     Voicemails and voice mail logs where, based on the producing party's standard practices, believes the voicemail information is expected to be duplicative of some other sources being produced (e.g., email stores a copy of visual voicemail on webmail or a network server); and

x.      any other file types subsequently agreed upon by the Parties.

## IV.   PRODUCTION FORMATS

As part of Parties ongoing cooperation, the following general considerations will apply to each production (whether delivered on a rolling basis or otherwise):

### A.   Image & Native File Production Specifications.

Today's technology makes it easy to simultaneously produce files in multiple formats, along with load files. As such, the parties hereby agree to provide productions that include the following content in separate folders: IMAGES; NATIVES; TEXT and LOAD FILES.

> 1) IMAGES. The Parties also understand that having bates stamped documents to reference at depositions, hearings, court appearances, mediations, arbitrations and/or trials are likewise efficient and helpful to all parties involved. Accordingly, the Parties agree to produce TIFFs with each production. TIFFs files will be renamed to match the corresponding beginning bates number and shall be endorsed with the appropriate bates number per page. Each bates number shall appear on the lower right corner of each page without obscuring the record's substantive content.

Notwithstanding the aforementioned, TIFFs shall not be provided for Spreadsheets, Databases, Multimedia or any other proprietary file formats that cannot be reasonably rendered

8

into viewable images, so long as a copy of each file is separately produced as part of the native production discussed above.

2)    NATIVES. The Parties understand that in certain instances native files are the most cost-effective and efficient method of production where such files are not easily or effectively converted to images files, such as Excel files, Access files, audio, video and certain drawing files. In such cases, the Parties agree to provide native files for each production, renaming each native file to its corresponding beginning bates number.

3)    TEXT FILES. Document level text - whether extracted or OCR'd should be produced separately for each document in a separate folder with each record being named to match the record's corresponding beginning bates number. The data file will include a textlink path. No body text will be included in the data file.

4)    LOAD FILES. Load files are used to import images and metadata into a database for review. If images are produced, the image cross-reference file should be produced as an Opticon (.OPT) file. Metadata load files must be provided in Concordance/Relativity format (.DAT) using the following standard Concordance/Relativity standard delimiters.

9

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 020 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value | ; | 059 |
| Nested Value | \ | 092 |

All load files should be encoded as UTF-8. Data mapping field headings are more fully described in Attachment "A".

**B.** **Document Family Group Integrity.** Parent-child relationships of ESI shall be preserved to the extent available for production purposes. As such, each parent and each child, while being produced as separate records, shall maintain this family group integrity by using sequential bates numbering of the parent and any child/children subsequently following its/their associated parent file or such other effective method performed by the eDiscovery system utilized by the Parties.

**C.** **Multi-media files.** Audio and/or video files shall be produced natively, even if unviewable by a Parties review platform of choice.

**D.** **Database files.** Databases such as Microsoft Access files or other records with a .DB file extension shall be produced natively for review in their respective native application where readily available.

**E.** **Decryption/Password Handling.** The Parties agree to remove encryption or password protection wherever feasible and provide passwords or assistance needed to open encrypted files identified in any production volume.

**F.** **Uncommon Proprietary Files.** Parties agree to meet and confer regarding the production of files that would require the use of proprietary software not commonly found in the

workplace (e.g., Reynolds) and explore other format options or ways to review these files.

**G.     Hard Copy Documents**.    Parties agree to meet and confer regarding the production of hard copy documents, if necessary.

**H.     Custodian Information.**  Custodian information shall be populated by the person or department from which the document was collected.  The custodian field for email may be populated with the Company name only when the company has a consolidated email server that does not preserve "custodian" information.

**I.     De-duplication.**  The parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that exact duplicates of a document will be removed to the best of the producing party's ability from the entire population of documents to be produced.  As part of the metadata to be produced, the parties shall provide a field that identifies all custodians who maintained a copy of any de-duplicated record, the names of which are to be separated by a semi-colon (e.g., Jane Doe; John Doe).

**J.     Email Thread Analysis.**  Email thread analysis may be used to reduce the volume of emails reviewed and produced.  The produced emails must include all of the responsive information from a thread, including responsive attachments.  For example, if an email in a string deviates from the thread such that it contains responsive attachments that are not included in the most complete thread, then that individual email and its responsive attachments shall also be produced.  Notwithstanding the aforementioned, email threading is not required.

**K.     No Backup Restoration Required.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations.

11

**L.**      **Metadata Fields**. Preferred metadata fields are identified in Attachment "A". Metadata shall be produced to the extent it is reasonably available  except with respect to paper documents or documents with metadata redacted in whole or in part on grounds of privilege.

**M.**      **Non-English ESI**. Textual information associated with ESI will be produced at least in the language in which it is kept in the usual course of business.  This protocol does not affect translation of documents that may be produced in discovery.

**N.**      **No Obligation to Convert Third Party Productions**. The parties agree that any document production received from a third party shall be produced in the format in which it was received.

**O.**      **Bates Numbering**. The Parties agree that productions must be endorsed with sequential Bates Numbers in the lower right corner of each image.  Bates Numbers shall not obliterate, conceal, or interfere with any substantive information on each endorsed document. The Parties will follow the following naming conventions:

PDF Files = [Beg_Bates Number].pdf

Native Files = [Beg_Bates Number].ext.

Text File = [Beg_Bates Number].txt.

The Parties will use the following Bates Number format for all productions: "XX########" or "XXX########" where "XX" or "XXX" represents the short character abbreviation for the producing Party and ######## represents the eight (8) digit tracking number assigned to each page of each document in a production set (or in the case of native files, the first bates number of each document and a cross-reference file or other load file associating it to each page of each document in a production set).

**P.**      **Method of Production**. The Parties agree that documents produced will be made

12

available via secure file transfer or on encrypted physical media, based on the appropriate size of the production.  The Parties agree to label each piece of production media with: (1) case number, (2) producing Party's name; (3) production date; (4) production volume(s); and (5) bates ranges per volume.

## V.   SCOPE OF PRIVILEGE AND LOGGING

Pursuant to FRE 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  The Parties agree that for each document withheld on the basis of an asserted claim of privilege or protection, the asserting Party must produce a log pursuant to Local Civil Rule 26.2(c).

Notwithstanding the preceding and in an effort to reduce the time required to prepare a privilege log, the Parties may agree not to expressly log certain categories of communications and/or documents.  The parties further agree to meet and confer regarding the specific requirements of privilege logs prior to exchanging with the other.

13

## VI.   CLAWBACK PROTECTIONS FOR INADVERTENT PRODUCTION(S) OF PRIVILEGE OR PROTECTED MATERIALS

The Parties agree that the production of privileged or work-product protected documents, ESI or otherwise, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Stipulated Agreement shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

Furthermore, nothing contained herein is intended to or shall serve to limit the Parties' right to conduct a review of documents, ESI or other data (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

Should the receiving Party receive a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party. If copies of inadvertently produced materials are captured on the receiving Party's Systems (including but not limited to document management systems) the receiving Party will over- write those copies according to its established procedures.

If the receiving Party must destroy or delete production media (*e.g.,* CD) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court.

14

## VII.   COSTS OF DOCUMENT PRODUCTION

Other than with respect to Sections IV(F) and IV(G), each Party shall bear the costs of producing its own relevant, non-privileged materials and privilege logs.

## VIII.   REQUIREMENT TO CONFER

The Parties will confer in a good faith to attempt to resolve disputes before filing any motion about the terms of this Agreement regarding compliance with this Agreement.

## IX.   SCOPE OF AGREEMENT

This Agreement may be modified by a Stipulated Order of the Parties, by agreement, or by the Court for good cause shown. Nothing in this Agreement is intended to, or does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. The parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Agreement is intended to, or does, restrict the ability of any party to request additional information or seek additional relief from the Court. The parties each retain the right to seek exceptions, amendments, or modifications to this Agreement from the Court. Furthermore neither party waives its right to any claim of spoliation should such a claim arise.

15

**TRACHTENBERG RODES**
**& FRIEDBERG LLP**

By: _____
    Barry J. Friedberg

545 Fifth Avenue
New York, New York 10017

*Attorneys for the Star Auto Group*

**MARSHALL DENNEHY WARNER**
**COLEMAN & GOGGIN**

By: _____
    Gregory W. Fox

2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Attorneys for the Voynow Parties*

Date:
LEGAL/121367843.v1

16

## Attachment "A"
## Metadata Fields

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PROD_VOL | Production volume information (e.g., PROD001) |
| BEGBATES | Starting number of a document |
| ENDBATES | Ending number of a document |
| BEGATTACH | Starting number of an attachment document within a family group |
| ENDATTACH | Ending number for attachment document within a family group |
| ATTACHMENTCOUNT | Number of attachments an email has |
| PARENTID | Document ID of the parent document; this field will only be available on child items |
| CHILDID | Attachment document IDs of attachments in family group delimited by semicolon (;); this field will only be present on parent items |
| ALL_CUSTODIANS | All custodian(s) containing duplicate versions of original record before deduplication was applied; Last, First separated by semi-colon (;) |
| ORIGINAL_FILEPATH | File path of original location of each record as originally stored on client system(s) |
| DUPLICATESOURCES | Path information of original source paths of all documents before deduplication was applied; Last, First separated by semi-colon (;) |
| CONFIDENTIALITY | Confidentiality designation of a document, if applicable |
| FILEEXTENSION | Actual file extension of the eDoc or email |
| NATIVELINK | Path to native files if natives are delivered |
| TEXTLINK | Path to text files if applicable |
| FROM | Sender of the email; aka SentFrom, SenderNames |
| TO | Recipient(s) of the email; aka SentTo, RecipientNames |
| CC | Recipient(s) of the email in the "CC" field; aka CCRecipientNames |
| BCC | Recipient(s) of the email in the "BCC" field; aka BCCRecipientNames |
| SUBJECT_TITLE | When referencing emails, "Subject" indicates the subject line. When referencing natives, "Subject" indicates the Title of the document (if available) |
| Sort Date / Time | Date taken from Email Sent Date, Email Received Date, or Last Modified Date (in order of precedence) repeated for parent document and all children items to allow for date sorting. |
| SENTDATE (DATE & TIME) | Date and time the email was sent. Separate date and time fields are allowed if required by software. Date must be formatted as MM/DD/YYYY and time HH:MM:SS |
| DATERECEIVED (DATE & TIME) | Date and time the email message was received. Separate date and time fields are allowed if required by software. Date must be formatted as MM/DD/YYYY and time HH:MM:SS |
| MESSAGE_TYPE | Outlook bound property indicating type of entry in store; aka MsgClass. Possible values include Appointment, Contact, Distribution List, Delivery Report, Message, or Task |
| MESSAGEID | Message number created by an email application and extracted from the email's metadata; aka int_msgID |
| FILENAME | When referencing natives, the name of the original native file, including file extension |
| AUTHOR | Author eDoc; Last, First |
| DATECREATED (DATE & TIME) | Date the eDoc was created; aka CreatedDate. Separate date and time fields are allowed if required by software. Date must be formatted as MM/DD/YYYY and time HH:MM:SS |
| DATELASTMODIFIED (DATE & TIME) | Date & Time the eDoc was last modified; aka ModifiedDate. Separate date and time fields are allowed if required by software. Date must be formatted as MM/DD/YYYY and time HH:MM:SS |
| MD5HASH | The MD5 hash value calculated when the file was collected or processed |