

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8270
Email:  mpfitzgerald@mdwcg.com

June 2, 2021

**VIA ECF**
Judge Cheryl L. Pollak
United States Magistrate Judge
U.S. District Court Eastern District of New York
225 Cadman Plaza East
Courtroom 13B - South
Brooklyn, NY  11201

      RE:    Star Auto Sales of Bayside, Inc., et al. v. Voynow, Bayard, Whyte and Company, LLP, et al.
           Docket No.:       1:18-cv-05775
           Our File No.:     03127.01373

Dear Judge Pollak:

      This firm represents Defendants in the above-referenced matter.

      By letter dated May 21, 2021, we brought a discovery dispute to the Court's attention that has arisen between the parties regarding a subpoena Defendants would like to serve on the accounting firm of Rosenfield & Company ("Rosenfield).  A copy of the proposed Rosenfield subpoena was attached to our May 21, 2021 letter.  We requested that the Court either schedule a telephone conference or clarify as to whether it would like the parties to brief the issue.  On May 28, 2021, Plaintiffs' submitted a letter brief in the form of a motion to quash the subpoena.  Defendants hereby submit this letter brief in response and request that Plaintiffs' motion to quash be denied.

    **A.  Factual Background Pertinent To The Underlying Rosenfield Subpoena**

      This case is a accounting professional liability action filed by Plaintiffs, a group of family-owned and operated automobile dealerships.  Plaintiffs allege that several of their employees engaged in various fraudulent schemes over the course of several years, which purportedly resulted in financial losses to Plaintiffs of approximately $10 million.  Defendants are accountants who were retained by Plaintiffs pursuant to annual written engagement letters, whereby they were engaged to prepared Plaintiffs' federal and state corporate tax returns.  Plaintiffs allege that Defendants should have detected this alleged fraud.  However, Defendants' engagement letters explicitly stated that their services were not designed nor intended to detect fraud, and the Plaintiffs' management was responsible for the accuracy of their financial records and for the integrity of their internal controls.

---

Plaintiffs contend that in December of 2016, one of their owners, Michael Koufakis, became aware of potential fraud being committed by Plaintiffs' Controller. Specifically, Koufakis was contacted by a bank representative who realized that several checks signed by Plaintiffs' owners were being used to pay the Controller's personal creditors. This Controller was then terminated. In April of 2017, Koufakis allegedly became aware of another possible fraud involving a second Controller. Within days, Plaintiffs then hired Rosenfield to conduct a forensic accounting – on or about April 18, 2017. (See Plaintiffs' Timeline, STAR 19251-19253, Exhibit "A")[1].

Rosenfield conducted a forensic accounting to investigate possible employee fraud. Based upon this forensic accounting and Koufakis' own investigation, Plaintiffs sought to have several employees criminally charged. Only one such employee – the initial Controller – was ever charged. Substantial documentation has been ***produced by Plaintiffs to Defendants as part of the discovery in this case*** reflecting that Plaintiffs had retained Rosenfield to conduct a forensic investigation about suspected employee fraud, setting forth Rosenfield's findings, disclosing Rosenfield's communications directly with the Queens' District Attorney's office and the police, reflecting Rosenfield's meetings with the Queens' District Attorney's office and a police detective, and disclosing Rosenfield's communications with Plaintiffs' insurance company. In total, there is approximately 1,000 pages of documents produced by Plaintiffs, all of which relate to Rosenfield's forensic accounting as to alleged employee fraud. Indeed, on June 2, 2017, Rosenfield submitted a 325 page report to the District Attorney's office detailing findings from its forensic analysis. **Significantly, on July 19, 2018, Plaintiffs' counsel produced this Rosenfield report to Defendants**. (See Plaintiffs' correspondence and cover pages to June 2, 2017 Report, attached hereto as Exhibit "B"). This Rosenfield report produced voluntarily by Plaintiffs was not designated as "for settlement purposes only" nor as "attorney work product." To the contrary, the Rosenfield report was given a bates number – STAR 00001-00325 -- and produced as part of Plaintiffs' initial discovery responses.

Following its initial June 2, 2017 Report, Rosenfield continued to issue subsequent reports and findings as its forensic accounting continued. These subsequent reports and findings **were also produced by Plaintiffs in discovery to Defendants**. Specifically, Plaintiffs produced a November 21, 2018 report consisting of 114 pages that Rosenfield had provided to a police detective (STAR 0001726-00001839); a February 12, 2018 report Rosenfield sent to the District Attorney's office; and a significant amount of emails divulging communications in 2017 and 2018 regarding these reports between (1) Rosenfield and Koufakis; and (2) between Rosenfield and the District Attorney's office. (See Ex. C-E). **In short, Plaintiffs have voluntarily produced at least 1,000 documents to Defendants in discovery which relate to the Rosenfield forensic accounting.** These documents have been produced both prior to, and after the inception of this lawsuit, and as part of Plaintiffs' ongoing piecemeal document production.

Moreover, while Rosenfield was initially engaged by Plaintiffs to conduct a forensic accounting, the scope of its engagement expanded in November of 2017. Plaintiffs' terminated Defendants as their tax accountants and requested that Defendants transition this tax engagement to Rosenfield. Plaintiffs sent letters to Defendants on both November 3, 2017 and January 3, 2018, explicitly stating that Plaintiffs had now retained Rosenfield as their "new CPA firm." (See Exhibit "F"). Rosenfield confirmed it had been retained by Plaintiffs through a letter sent to Defendants, requesting information "to effectuate tax planning for the 2017

---

[1] Plaintiffs have designated documents pertinent to Defendants' response as Confidential. Pursuant to the Confidentiality Agreement in place, Defendants are submitting Exhibits A-G directly to the Court under seal. Exhibits H-I are submitted through the ECF filing.

___

year end." (See Exhibit "G"). Rosenfield thereafter prepared all of Plaintiffs' 2016 and 2017 state and federal corporate tax returns, which Plaintiffs have also produced in discovery to Defendants.

In January of 2019, both parties exchanged Rule 26 initial disclosures. Notably, both parties listed Rosenfield as a fact witness and a "person likely to have discoverable information pursuant to FRCP 26(a)(1)(A)(i)." (See Exhibit "H"). Defendants also served written discovery requests in April of 2019, which explicitly addressed Rosenfield's forensic accounting, and sought:

> All documents and/or communications related to the Rosenfeld Report, including but not limited to documents and/or communications referenced in such report, relied upon in the drafting of such report, and any subsequent amendment or supplement relating thereto.

(See Exhibit "I" at No. 2). The "Rosenfield Report" was defined as the initial "report prepared by Rosenfield & Co, dated June 2, 2017" which was produced by Plaintiffs' counsel previously. Plaintiffs did not object to this request, nor assert any privilege, whether based upon attorney work product or a purported law enforcement privilege. Instead, Plaintiffs continued to produce documents relating to Rosenfield's forensic accounting after this lawsuit had commenced. These documents included Rosenfield's communications with the District Attorney's office, the police department, and Plaintiffs' insurance company, as well as communications with Koufakis regarding alleged employee fraud.

However, Plaintiffs have not produced everything. They have not produced all communications regarding the suspected employee fraud, Rosenfield's forensic analysis, or the engagement agreement and billing documents which would show the specific tools used by Rosenfield to detect the fraud at issue. Indeed, there is evidence indicating that Rosenfield's forensic accounting did not find the amount of fraud as alleged in the Complaint. There is also evidence that Rosenfield believed that an actual forensic audit was needed – but never done. For that reason, Defendants have sought to serve the subpoena at issue. Plaintiffs' attempt to quash it is predicated upon a purported attorney work product privilege, a law enforcement investigation privilege, and lack of relevance. As outlined below, Plaintiffs' argument lacks merit and their motion should be denied.

1. **The Attorney Work Product Privilege Does Not Apply Because Rosenfield Was Retained *By Plaintiffs* For Purposes of A Forensic Accounting and a Tax Preparation Engagement. Regardless, Any Purported Privilege Has Been Clearly Waived.**

A party asserting a privilege bears the burden to establish it. Here, Plaintiffs make the wholly unsupported assertion that "Plaintiffs' prior counsel directly engaged the services of Rosenfield as a consultant." No documentation is provided to show that former counsel ever engaged Rosenfield, even though former counsel's files were transferred to current counsel. No affidavit is provided by either former counsel or Rosenfield on this point. The very fact that former counsel *repeatedly* produced Rosenfield's reports and communications to Defendants in discovery and listed him as a fact witness in initial disclosures flatly refutes any notion that former counsel deemed Rosenfield's forensic accounting as part of counsel's privileged work product, or that Rosenfield was retained as "consultant" to counsel. To the contrary, there is substantial documentation showing that Plaintiffs had directly engaged Rosenfield for purposes of a forensic accounting to investigate suspected employee theft and as a CPA firm engaged to prepare Plaintiffs' tax returns.

Specifically, documents produced in discovery by Plaintiffs reflect the following:

_____

- By email dated May 12, 2017, Koufakis represented to the District Attorney that "*my* forensic accountant is Ken Rosenfield." (See Ex. E)

- On May 18, 2017, Rosenfield communicated to the District Attorney's office that "our accounting firm is investigating **with Mr. Michael Koufakis and his Star Dealerships** regarding the thefts from various business personnel." (See Ex. E)

- Rosenfield's June 2, 2017 Report explicitly stated that "***we were retained by Star Automotive Group to conduct an investigation***. This report documents a summary of procedures we performed and the resultant findings." (See Ex. B)

- On November 3, 2017 and January 3, 2018, each of Plaintiffs dealership entities informed Defendants that "***we have retained Rosenfield as our new CPA firm***" (See Ex. F)

- On December 15, 2017, Rosenfield represented to Defendants, that certain information was needed "to effectuate tax planning for the 2017 year-end and to assist in our progress with forensic accounting project we are currently working on." (See Ex. G)

- Rosenfield's November 21, 2018 report to a detective stated that "***we have been requested by our client***" to provide this supplemental report regarding fraud schemes, with the client, Michael Koufakis, being copied on the report. (See Ex. C)

- Plaintiffs' 2016 and 2017 corporate tax returns designate Rosenfield as the tax return preparer.

This sampling of documents refutes Plaintiffs' assertion that Rosenfield was directly retained by former counsel as a consultant or part of counsel's attorney work product.

  Moreover, the attorney work product doctrine does not apply to the documents requested in the Rosenfield subpoena. The attorney work product doctrine protects tangible items which may contain the attorney's strategies, impressions, and opinions. The Rosenfield subpoena seeks none of this documentation. Rather, it seeks the billing documents, the forensic accounting analysis, the engagement letter with Plaintiffs, and Rosenfield's communications with the District Attorney or police regarding investigation of employee fraud. It does not seek communications between Rosenfield and former counsel. Likewise, Plaintiffs' argument that only documents predating this lawsuit or "in anticipation of litigation" were produced, is factually incorrect. Plaintiffs continued to produced Rosenfield's reports to Defendants in discovery that were prepared *after* this lawsuit was filed. (See Rosenfield's November 21, 2018 Report, Ex. C).

  Lastly, even if the attorney work product privilege somehow applied – which it does not – it has clearly been waived. The attorney work product privilege is not absolute and may be waived in various ways including sharing such documents with a third party. *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 22–28 (W.D.N.Y.1997); United States v. Nobles, 422 U.S. 225, 239–40, 95 S.Ct. 2160 (1975). A voluntary disclosure of work product to a third party, especially if the party is an adversary, waives the privilege. *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 234–37 (2d Cir.1993); *In re Grand Jury Proceedings,* 219 F.3d 175, 191 (2d Cir. 2000); *Strougo v. BEA Associates,* 199 F.R.D. 515, 521–22 (S.D. N.Y. 2001) ("Once a party allows an adversary to share in an otherwise privileged document," "the need for the privilege disappears," and may disappear forever, even as to different and subsequent litigators"). Moreover, a party cannot partially disclose a

privileged document nor selectively waive the privilege and then expect it to remain a shield. <u>NXIVM Corp. v. O'Hara</u>, 241 F.R.D. 109, 138 (N.D.N.Y. 2007); <u>Fullerton v. Prudential Ins. Co</u>., 194 F.R.D. 100, 103 (S.D.N.Y. 2000) ("Generally, the work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.").

As noted above, Plaintiffs have voluntarily produced over 1,000 pages of documents relating to the Rosenfield forensic accounting. These documents were already provided to third parties – the District Attorney's office and the police -- and most critically, thereafter produced to Defendants in response to discovery requests in this case. Plaintiffs have also produced Rosenfield's communications about its analysis along with an approximate additional 800 pages relating to tax returns prepared by Rosenfield. These productions were not inadvertent nor erroneous, as now alleged. They were made through different piecemeal productions by competent counsel, voluntarily and without objection. They were made without any assertion of privilege, nor with any accompanying privilege log. Indeed, Plaintiffs specifically listed Rosenfield as a fact witness for purposes of its Rule 26 disclosures. Given this clear and explicit waiver, Plaintiffs cannot now seek to prevent Defendants from obtaining ALL of the pertinent documents relating to the Rosenfield accounting services. See <u>Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp</u>., 125 F.R.D. 578, 587 (S.D.N.Y.1989) ("the work-product doctrine is waived when documents are voluntarily shared with an adversary or when a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion").

### 2. The Law Enforcement Investigation Privilege is Not Applicable to The Rosenfield Subpoena

Plaintiffs argue that the Rosenfield subpoena should be quashed because documents requested relating to Rosenfield's communications with law enforcement agencies (i.e., the District Attorney's office or the New York police department), are purportedly protected from discovery by the law enforcement investigation privilege. Plaintiffs' reliance upon this privilege is misplaced. First, the Rosenfield subpoena was not issued to any law enforcement or governmental agency – it was issued to a private accounting firm. Second, the law enforcement privilege does not apply to Rosenfield's communications with the District Attorney's office or the police. Third, Plaintiffs have failed to meet their threshold burden to even invoke this privilege. Lastly, similar to the attorney work product privilege, any purported law enforcement investigation privilege has nonetheless been waived by virtue of Plaintiffs' voluntary and selective production of over 1,000 pages of documents to Defendants involving Rosenfield's communications with these law enforcement agencies.

The purpose of the law enforcement investigation privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." <u>In re the City of N.Y</u>., 607 F.3d 923, 940–42 (2d Cir. 2010). Most often, it is used to prevent discovery maintained by a law enforcement or governmental agency involved in an ongoing and active criminal investigation. The party asserting the law enforcement privilege bears the burden of showing that it applies to the documents in question. <u>Id.</u>, 607 F.3d at 944 (*citing* <u>In re Sealed Case</u>, 856 F.2d 268, 271–72 (D.C. Cir. 1988)). To carry this burden, the asserting party must meet three procedural requirements: "(1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that

official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d at 271–72. With the respect to third prong, "the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect." *In re the City of N.Y.*, 607 F.3d at 944. "Such protected information includes information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise ... interfere[ ] with an investigation." *Id*. The asserting party may not discharge its burden with "mere conclusory assertions," but rather must "present 'those facts that are the essential elements of the privileged relationship.'" *Id*.

Plaintiffs simply have not met their burden as to the law enforcement investigation privilege. The Rosenfield subpoena is not directed to a law enforcement or governmental agency. In all of the cases cited in their motion, the subpoenas at issue were issued directly to governmental or law enforcement entities seeking their files, or otherwise involve unrelated state laws.[2] Rosenfield is a private accounting firm. It has no claim to any law enforcement investigation privilege. Plaintiffs have failed to establish how Rosenfield's communications in 2017 and 2018 with either the police or the District Attorney's office implicate internal procedures or techniques of those agencies. Notably, Plaintiffs fail to provide any evidence of a claim of privilege by either the District Attorney's office or the New York police department. They have failed to supply any information or documentation showing that either entity was even provided with the subpoena, had considered the application of the law enforcement privilege, and had made a claim for assertion of this privilege. This failure to do so alone warrants denial of the motion. See *United States v. Wey*, 252 F. Supp. 3d 237 (S.D. N.Y. 2017) (denying non-party Nasdaq's motion to quash subpoena served on it where Nasdaq failed to submit any affidavit or documentation which justified reliance upon privilege) Notably, there is no criminal case even pending against any of Plaintiffs' former employees. While criminal charges were initially brought against Plaintiffs' former controller Vivian Karazoukis, that case was dismissed in 2019. No other criminal case exists. Thus, the very purpose of the law enforcement investigation privilege – to protect active criminal investigations – does not exist with regard to the Rosenfield subpoena. It is believed that all communications with Rosenfield ended by 2019.

### 3. The Rosenfield Subpoena Seeks Relevant Information and is Not an "End-Around"

Plaintiffs argue that the Rosenfield subpoena should be quashed because the information sought is purportedly irrelevant. This argument is incredulous given that Plaintiffs have voluntarily produced over 1,000 pages of forensic analysis, reports and findings from Rosenfield, which purport to support their claims of employee fraud in the amount of $10 million. Plaintiffs have also produced over 800 pages of tax returns

---

[2] Plaintiffs cite *Doe v. Hudgins*, 175 F.R.D., 511 (N.D. Ill. 1997), which involved a subpoena to the Chicago Housing Authority and whether the City's internal investigation files of one of its officers could be discovered under Illinois' Freedom of Information Act. Likewise, Plaintiffs cite cases where the subpoena was served specifically on the government agency seeking its internal files. See e.g., *In re United States Dept. of Homeland Security*, 459 F.3d 565 (5th Cir. 2006) (request for the DHS to produce its investigation files regarding illegal aliens and bonds posted); *Friedman v. Bache Halsey Stuart Shields, Inc*., 738 F.2d 1336 (D.C. Cir. 1984) (subpoena served on Securities Exchange Commission who opposed subpoena's request for its files relating to an ongoing investigation); *Black v. Sheraton Corp. of America*, 564 F.2d 531 (D.C. Cir. 1977) (subpoena seeking FBI's files opposed by Attorney General's office due to ongoing investigation).

___

prepared by Rosenfield. Both parties have listed Rosenfield as a key factual witness in their respective Rule 26 disclosures. Rosenfield's reports indicate that it conducted forensic accounting procedures regarding suspected employee fraud related to schemes involving use of intercompany checks, fictitious vendors, payment of personal creditors, and falsified journal entries. Rosenfield's billing records will disclose the staffing, scope and elements of the forensic analysis undertaken to discover these alleged frauds. Its engagement letters will identify the applicable professional standards utilized and set forth the scope of its engagement. This information is highly relevant given that Defendants maintain that they were retained pursuant to a limited scope engagement that explicitly disclaimed any undertaking to detect fraud.

Furthermore, Rosenfield prepared Plaintiffs' 2016 and 2017 tax returns. In their Complaint, Plaintiffs allege that the purported employee fraud at issue adversely impacted their retained earnings such that they sustained losses of approximately $10 million and that expenses were overstated by millions of dollars. Such allegations have tax consequences, and if true, would be captured or somehow evident in these tax returns. Hence, Rosenfield's documentation relating to both its investigation of the alleged fraud, and the contents of tax returns it prepared, is highly relevant.

Lastly, the Rosenfield subpoena is not an "end around" as Plaintiffs suggest. Simply put, Plaintiffs have not produced all relevant documents. They have not produced the engagement letters or billing records nor have they produced all communications with the District Attorney's office, nor have they produced all of Rosenfield's findings. While Plaintiffs now conveniently assert that the do not intend to call Rosenfield as a witness, that assertion cannot deprive Defendants of critical discovery. Plaintiff's assertion is self-serving, as Defendants have solid reasons to believe that while Plaintiffs allege they sustained $10 million in losses which they attribute to employee fraud, Rosenfield's analysis did not come even remotely close to this amount. Further, Defendants also have evidence that suggests that Rosenfield's forensic accounting does not support the extent of fraud schemes Plaintiffs now allege, and that Plaintiffs rejected Rosenfield's recommendation for a forensic audit. Defendants believe that the full scope of Rosenfield's communications and forensic findings will likely refute Plaintiffs' claims that numerous employees had engaged in theft, and will undercut Plaintiffs' damage claims. For these reasons, the Rosenfield subpoena seeking such critical information is not an "end around." To the contrary, Plaintiffs are improperly attempting to assert non-existent privileges – which nonetheless have clearly been waived -- to shield Defendants from highly relevant information. Accordingly, Defendants respectfully request that this Court deny Plaintiffs' Motion to Quash the Rosenfield subpoena and allow the subpoena to be served.

Thank you for your consideration of this matter.

Very truly yours,

Maureen P. Fitzgerald

MPF:ls
cc: Jamie Felsen, Esquire
    Emanuel Kataev, Esquire


Judge Cheryl L. Pollak
June 2, 2021
Page 8

---

    Jeremy Koufakis, Esquire
    Joseph M. Labuda, Esquire
    Richard Milman, Esquire
    Jack Slimm, Esquire

LEGAL/138662856.v1