

Wall Street Plaza. 88 Pine Street, 21st Floor · New York, NY 10005
(212) 376-6400 · Fax (212) 376-6490

Direct Dial: 212-376-6454
Email: npchrysanthem@mdwcg.com

June 9, 2021

**VIA ECF**
Judge Taryn A. Merkl
United States Magistrate Judge
U.S. District Court Eastern District of New York
225 Cadman Plaza East
Courtroom 13B - South
Brooklyn, NY  11201

      RE:    Star Auto Sales of Bayside, Inc., et al. v. Voynow, Bayard, Whyte and Company, LLP, et al.
            Docket No.:    1:18-cv-05775
            Our File No.:    03127.01373

Dear Judge Merkl:

      This firm represents Defendants Voynow, Bayard, Whyte and Company, LLP, Hugh Whyte, Randall Frazen and Robert Seibel (hereinafter as "Voynow") in the above-referenced matter.  Voynow submits this response to Plaintiffs' June 4, 2021 submission to Chief Magistrate Judge Pollak, which seeks a protective order and disqualification of defense counsel.

    **1.**   **Factual Background Pertinent to Plaintiffs' Motion**

      This is an accounting malpractice action.  Plaintiffs are a group of seven distinct family owned and operated New York based automobile dealerships.  Plaintiffs allege that over the course of at least seven years, numerous employees – including their Controllers - engaged in various theft and fraud schemes, which allegedly resulted in financial losses to Plaintiffs in excess of $10 million.  Defendant Voynow is an accounting firm based in Pennsylvania that provided tax related accounting services to Plaintiffs from 1996 through 2017.  Plaintiffs allege that Defendant Voynow committed accounting malpractice because it failed to detect the alleged ongoing employee fraud schemes and employee theft at issue.  In their Complaint, Plaintiffs aver that the Voynow defendants and "other agent[s]" of Voynow whose actions were performed "during the scope of their employment with and for the benefit of Voynow" committed certain "wrongful acts."  (Complaint Dkt. 1 at ¶87).  Plaintiffs contend that these wrongful acts committed by Voynow's agents "were and are imputable to Voynow and conducted with actual or apparent authority of Voynow." Id. at ¶88. Plaintiffs assert a respondeat superior liability claim in Count II of the Complaint, contending that Voynow is allegedly liable for the "wrongful conduct of its partners and agents." Id. at ¶89.

___

In response to Plaintiffs' discovery requests, Voynow has produced substantial documents which include its workproduct, workpapers, billing records, invoices and internal communications dating back to 2010. These documents contain references to all of the professional accountants employed by Voynow who were assigned to the Plaintiffs' engagements at issue. Several of these accountants are no longer employed by Voynow. Over the course of the last several months, Plaintiffs' counsel, through its investigator, has interviewed at least seven former Voynow employees. Plaintiffs' investigator has largely shown up, unannounced, at the residences or workplaces of Voynow's former employees, and questioned them about specific workpapers, Voynow's policies, and the engagements with Plaintiffs. Several of these former employees immediately contacted Voynow back in April after having been questioned by Plaintiffs counsel's investigator. One such former employee -- Shawn McCormick -- also contacted Voynow's defense attorney in April following questioning by Plaintiffs counsel's investigator. (See Fitzgerald Declaration, attached as Exhibit "A").

Neither Voynow nor its counsel ever interfered with Plaintiffs' informal discovery endeavors or its informal interviews of these former employees. Notably, Plaintiffs' Motion is devoid of any claim that they have been precluded from interviewing Voynow's former employees. On June 1, 2021, Plaintiffs' counsel notified defense counsel that he intended to issue subpoenas to depose four former employees: Shawn McCormack, John Breslin, Mike Corrigan, and David Lombardo. All four are licensed accountants who worked, at various points, on the engagements at issue in this malpractice case. All four fall within the parameters of Plaintiffs' averments as "other agent[s]" of Voynow whose actions were performed "during the scope of their employment with and for the benefit of Voynow." All four fall within the potentially "imputable" acts alleged to underlie the respondeat superior liability claims against Voynow. (Fitzgerald Declaration, Ex. A).

Voynow thereafter notified the four former employees that they were being subpoenaed for a deposition by Plaintiffs' attorney. Voynow's professional liability insurance coverage applies to former employees whose actions were within the scope of their employment and at issue in the Complaint. Voynow informed the four accountants that they could be represented by its attorney at their upcoming depositions, if they so desired, but were not required to be. Two employees -- Shawn McCormack and John Breslin -- have indicated they want representation and have requested that Voynow's attorney represent them at their depositions. A third – Dave Lombardo – has informed Voynow that he does not require representation. Voynow has no knowledge about the preference of the fourth witness – Mike Corrigan. (Fitzgerald Declaration, Ex. A).

Thus, both Shawn McCormack and John Breslin have requested that defense counsel represent them at their upcoming depositions. They are entitled to such legal representation at a deposition if they so desire. While Plaintiffs are attempting to deprive them of this representation by arguing that "no claim lies against these witnesses and that Plaintiffs are not pursuing any such claims to the extent they exist," the Complaint clearly asserts respondeat superior liability claims against Voynow based upon the imputed actions of its agents. Plaintiffs seek to formally question Mr. McCormack and Mr. Breslin at a deposition to support these allegations of respondeat superior liability.

Shawn McCormack was a senior level accountant at Voynow and a manager assigned to Plaintiffs' engagement. He was employed from approximately 1997 through 2015 and onsite at Plaintiffs' offices at several points throughout the engagement. Mr. McCormack informed Voynow back in April of 2021 that he was questioned by Plaintiffs' counsel's investigator. He also directly contacted Voynow's defense counsel back in April about the investigator's questioning of him. When informed by Voynow in June that he could be represented at his deposition by Voynow's counsel if he wanted, Mr. McCormack expressed his desire for this

representation.  Likewise, John Breslin was employed by Voynow from approximately 2009 through 2012 and worked on the engagements at issue in the Complaint.  He was also onsite at Plaintiffs' premises during the time period of alleged employee theft and fraud, and during the alleged malpractice by Voynow.  Breslin also informed Voynow in April of 2021 that he had been questioned by Plaintiffs' counsel's investigator, and has told Voynow that he would like representation by its counsel at his upcoming deposition.   (Fitzgerald Declaration, Ex. A)

Through the instant motion for a protective order, Plaintiffs seek not only to deprive Messrs. McCormack and Breslin of their requested representation by disqualifying defense counsel from representing them in their depositions, but Plaintiffs also seek to disqualify counsel from representing Voynow.  As a basis for the requested disqualification, Plaintiffs largely rely upon Rivera v. Lutheran Med. Ctr., 22 Misc. 3d 178 (Sup. Ct. Kings County 2008), yet conveniently avoid discussing any of actual facts in the case.  For the reasons set forth below, their Motion should be denied in its entirety.

2. **Standard Applicable to Disqualification of Counsel**

Motions to disqualify attorneys are generally disfavored. Board of Education of New York City v. Nyquist, 590 F.2d 1241 (2d Cir.1979); Guthrie Aircraft Co. v. Genesee County, New York, 597 F.Supp. 1097 (W.D.N.Y.1984).  The Second Circuit disfavors disqualification and requires the party seeking disqualification to satisfy a "high standard of proof" in order to succeed. Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir.1978); Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C., 440 F.Supp.2d 303, 308–09 (S.D.N.Y.2006). "Mere speculation will not suffice." Paretti v. Cavalier Label Co., 722 F.Supp. 985, 987 (S.D.N.Y.1989). This is especially important because motions to disqualify can have an immediate adverse effect on the client by separating [it] from counsel of [its] choice...." and are "often interposed for tactical reasons." All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund, 2010 WL 2243351, at *4 (E.D.N.Y. June 1, 2010).

While a motion to disqualify is left to the sound discretion of the district court, it is a "drastic measure," requiring a careful balancing of competing interests. Reilly v. Computer Assoc. Long–Term Disability Plan, 423 F.Supp.2d 5, 8 (E.D.N.Y.2006).  When ruling on disqualification issues, a court may consider decisions of the New York State courts as well as the state disciplinary rules and the American Bar Association's Code of Professional Responsibility and Model Rules of Professional Conduct for guidance. E.D.N.Y. Local Rule 1.5(b)(5); Leslie Dick Worldwide, Ltd. v. Soros, 2009 WL 2190207, at *5 (S.D.N.Y. July 22, 2009). However, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir.2005); Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc., 325 F.Supp.2d 270, 276 (S.D.N.Y.2004) (the "district court must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel").

3. **Defense Counsel Did Not Violate Rule 7.3 of the Rules of Professional Conduct and Plaintiffs Have Erroneously Relied Upon the *Rivera* Case Which Deals With Informal Discovery**

Plaintiffs argue that defense counsel should be disqualified from all representation due to alleged improper solicitation of the former employees regarding their upcoming depositions.  Plaintiffs claim that defense counsel purportedly violated Rule 7.3 of the New York Rules of Professional Conduct.  While they cite a portion of this Rule in their motion, they conspicuously omit the actual definition of "solicitation" under RPC 7.3.  In pertinent part, Rule 7.3 provides that:

_____

(a) A lawyer shall not engage in solicitation:

(1) by in-person or telephone contact, or by real-time or interactive computer-accessed communication unless the recipient is a close friend, relative, former client or existing client; or

(2) by any form of communication if:

(i) the communication or contact violates Rule 4.5, Rule 7.1(a), or paragraph (e) of this Rule

(ii) the recipient has made known to the lawyer a desire not to be solicited by the lawyer;

(iii) the solicitation involves coercion, duress or harassment…;

"Solicitation" is defined under Rule 7.3(b) as follows:

[A]ny **advertisement** initiated by or on behalf of a lawyer or law firm that is directed to, or targeted at, a specific recipient or group of recipients, or their family members or legal representatives, the primary purpose of which is the retention of the lawyer or law firm, and **a significant motive for which is pecuniary gain**. It does not include a proposal or other writing prepared and delivered in response to a specific request.

See RPC 7.3(b) (emphasis added).

A simple reading of this Rule makes clear that there is no violation. Defense counsel never contacted any of the four witnesses at issue regarding their depositions, and Plaintiffs do not allege that they did. (Fitzgerald Declaration, Ex. A). Messrs. McCormack and Breslin have been in communications with Voynow since they were interviewed by Plaintiffs' investigator and have now informed Voynow that they wish to be represented by defense counsel as part of the professional liability coverage applicable to this case. Because defense counsel never contacted them regarding their upcoming depositions, Rule 7.3's directive that "a lawyer shall not…" is inapplicable. Rule 7.3 is not violated or even implicated by Voynow's offer of representation at a deposition pursuant to its insurance coverage applicable to this case. Moreover, "solicitation" is defined under 7.3(b) as an advertisement initiated by or on behalf of a lawyer, which is significantly motivated by a desire for pecuniary gain. Here, no such advertisement exists nor is there any element whatsoever of pecuniary gain at issue. In short, Rule 7.3 does not apply to the facts at issue.

Plaintiffs rely predominantly upon <u>Rivera v. Lutheran Medical Center, et al.</u>, 22 Misc. 3d 178, 866 N.Y.S. 2d 520 (S.Ct. 2008). Conspicuously, they completely fail to mention the facts of that case. There, a plaintiff asserted a discrimination claim against a defendant hospital. Plaintiff's counsel attempted to conduct **informal** discovery in the form of witness interviews of former employees. Counsel for the hospital – Morgan Lewis – thereafter informed plaintiffs' counsel that it was now representing these seven former employees such that plaintiffs' attempted informal witness interviews could no longer proceed. Plaintiff's counsel moved to disqualify Morgan Lewis' representation of four of the seven former employees, arguing that Morgan Lewis had attempted to directly thwart attempts to obtain **informal** discovery by witness **interviews**, as was her right under <u>Niesig v. Team I,</u> 76 NYS2d 363 (1990). Morgan Lewis had in fact, **directly** contacted the four witnesses at issue, offered

to represent them, thereafter executed retainer letters with them, and did so to effectively obstruct plaintiff's counsel's ability to contact them for **informal** discovery interviews.

In deciding to disqualify Morgan Lewis from representing four of the seven former employees, the *Rivera* court emphasized three factors that do not exist in this case. First, Morgan Lewis was seeking to prevent "**informal**" discovery. The court noted "the importance of **informal** discovery practices in litigation – in particular, private interviews of fact witnesses that have the potential to streamline discovery and foster the prompt resolution of claims." *Rivera*, 22 Misc. 3d at 184. Morgan Lewis' actions effectively barred plaintiff from any ability to conduct such informal witness interviews, such that "avenues of informal discovery that might serve both the litigation and the entire justice system" were being closed off. *Id*. Its conduct was deemed as an "end run around the laudable policy consideration … in promoting the importance of **informal** discovery practices in litigation, in particular, private interviews of fact witnesses." *Id*. at 185. Second, the court noted that Morgan Lewis had **directly** solicited these former employees in writing, and did so for the explicit purpose of impeding plaintiff's informal discovery efforts. Third, it noted that Morgan Lewis had already displayed a "history in this litigation of improperly thwarting Plaintiffs' attempts to obtain discovery" which consisted of a refusal to disclose classified documents, improperly marking these documents as classified, providing evasive responses to discovery demands, and refusing to provide factual responses supporting affirmative defenses. *Id* at 186. Because of Morgan Lewis' ongoing conduct in impeding discovery throughout the case, including its actions to preclude **informal** discovery interviews, the Court disqualified it from representing four of the seven former employees at issue. Morgan Lewis was not disqualified from representing the remaining three former employees whose conduct could potentially be imputed to the defendant hospital, nor was it disqualified from representing the defendant hospital.

*Rivera* does not apply to this scenario. Access to informal discovery through witness interviews is distinctly different from formal discovery by depositions. Plaintiffs do not contend that defense counsel did anything to impede or prevent its informal discovery efforts or interviews of Voynow's former employees. Indeed, Plaintiffs have interviewed at least seven former employees through such informal discovery over the last few months. Thus, the primary concern of *Rivera* with "promoting the importance of informal discovery practices in litigation" is not implicated here. Likewise, Plaintiffs do not contend that Voynow has a history of trying to thwart their discovery efforts, unlike what existed in *Rivera*. Voynow has fully cooperated in all discovery, with both Plaintiffs' prior counsel over the last two years, and more recently with their newly retained counsel. Further, unlike Morgan Lewis who directly contacted all former employees, Voynow's counsel did not contact Messrs. McCormack or Mr. Breslin regarding their depositions. Rather, Shawn McCormack actually initiated contact when he called defense counsel back in April of 2021 after being questioned by Plaintiffs' investigator. Mr. McCormack thereafter informed Voynow in June that he wanted defense counsel to represent him in a deposition. Likewise, Mr. Breslin informed Voynow that he was questioned by Plaintiffs' investigator, and has since advised Voynow that he wants representation pursuant to its professional liability coverage at a deposition. None of these pivotal facts exist in *Rivera*.

### 4. Plaintiffs' Motion Blatantly Ignores Cases Directly On Point Where Courts Denied Requests to Disqualify Counsel in the Context of Representation of Former Employees At Depositions

While Plaintiffs rely extensively upon *Rivera*, they notably ignore *Dixon-Gales v. Brooklyn Hospital Center*, 35 Misc. 3d 676, 941 N.Y.S. 2d 468 (2012), a case directly on point and which explicitly distinguished *Rivera*. In *Dixon-Gales*, the court denied a motion seeking to disqualify defense counsel from representing two

former nurses at their depositions. The plaintiff had sought disqualification based upon alleged improper solicitation by defense counsel in violation of RPC 7.3. *Dixon-Gales* is directly on point because (1) the discovery at issue was formal discovery by a deposition -- not informal discovery through witness interviews; (2) the former employees were licensed professionals requested to testify in a professional liability case; (3) the defense attorney did not solicit the witnesses; rather, the nurses were informed by the defendant hospital that they could be represented by the hospital's attorney pursuant to its insurance protocol if they so desired; (4) the former employee nurses thereafter expressly requested such representation for their depositions; (5) and due to their involvement in patient care and hospital policies at issue, the nurses' actions or admissions could be imputed to the hospital for purpose of a respondeat superior claim alleged in the malpractice case.

*Dixon-Gales* held that the hospital's attorney's representation of two former nurses at their depositions in a medical malpractice action did not violate Rule 7.3. Based upon the hospital's insurance protocol, legal representation was available to present and former employees testifying as to allegations of malpractice within the scope of their employment. Neither the defense attorney nor the hospital had "solicited" the witnesses as prohibited by Rule 7.3. Rather, the hospital had reached out to them after their depositions were requested and informed them that they could be represented by the hospital's counsel at their depositions, if they so desired. Both were told that such representation was not required. Both decided that they wanted legal representation by the hospital's attorney for their deposition. The court held that this was not solicitation under Rule 7.3. It rejected application of the *Rivera* holding to these facts. In distinguishing *Rivera*, *Dixon-Gales* noted that a formal deposition was not the equivalent of informal witness interviews, and that "the policy considerations underlying" [*Rivera*] regarding informal discovery and the need to streamline discovery "are not at play in the case of formal depositions." *Id*. at 473. The Court considered the potential testimony of the nurses and noted that their acts or admissions may be binding on the hospital, that they were involved in the events at issue, had knowledge of hospital procedures, and that their actions or failure to act may be imputed to the hospital pursuant to principles of agency, vicarious liability and respondeat superior. *Id*. at 472-473, citing *Poplowski v. Gross,* 81 A.D. 3d 801, 917, N.Y.S. 2d 247 (2011). Unlike informal interviews, a formal deposition was the vehicle through which issues of alleged imputation and respondeat superior liability would be explored while ensuring that the interests of the parties are protected. As such, there was no violation of Rule 7.3 and the hospital's attorneys were permitted to represent the former employees who had requested their representation at the depositions.

Plaintiffs also ignore *United States v. Occidental Chem. Corp*., 606 F. Supp. 1470, 1474 (W.D.N.Y. 1985), where the court denied a motion to disqualify counsel on the basis of an alleged improper solicitation. There, two alleged forms of solicitation were at issue. The court drew a distinction between an attorney's offer to a former employee to represent him in a deposition which arose in the course of an interview, from the attorney's solicitation through a mass mailing sent to many former employees offering representation. As to the former, the defense counsel had offered to represent a retired employee during a conversation that occurred over the course of a multi-day deposition. This was not am improper solicitation nor grounds for disqualification. The court recognized that while some tactical advantage might be gained by representing the former employee, the offer of representation was "not unethical." *Id*. at 1475. As to mass mailings sent out by the attorney, the court declined to disqualify the attorney for what it deemed as counsel's solicitation, instead enjoining such conduct from occurring in the future:

> [Counsel] may contact the former employees about the depositions and advise them that they are entitled to be deposed with or without counsel, but no offer to represent any prospective deponent shall be made unless the deponent specifically [requests representation].

*Id*. at 1477. In so holding, the court pointed out that "the premises [of the] rules [of professional conduct] discouraging solicitation of prospective clients by lawyers are intended primarily to protect the prospective client." *Id*., citing, *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 98 S.Ct. 1912 (1978). However, because there was no evidence that the lawyer had "exert[ed] undue influence upon a layman," nor any evidence of a pecuniary motive, there was no improper solicitation or basis to disqualify the attorney. *Id*. See also *New York v. United Parcel Serv., Inc*., 2016 WL 10672076, at *1 (S.D.N.Y. Sept. 2, 2016) (denying request to disqualify counsel, noting that it is common practice for counsel to represent both an employer and its current and/or former employees at depositions).

More recently, in *James Sullivan v. Saint-Gobain Performance Plastics Corporation*, 2018 WL 11321186 (D. Vt. 2018), a plaintiff sought sanctions against the defendant based upon actions of its attorney. The plaintiff sought to depose four former employees and defense counsel had offered to represent them at their depositions after meeting with them for interviews. One declined and three accepted. The court considered whether Vermont's Rule 7.3 -- which mirrors New York's rule – was violated. In finding that there was no such violation and denying plaintiff's motion, the court stressed that defense counsel had not acted out of pecuniary interest. Rather, counsel offered to represent the individuals because it already represented the corporate defendant and not because it sought new business. Such representation was not the type of pecuniary gain with which Rule 7.3 is concerned. Importantly, as part of its analysis, the court reviewed two ethics opinions issued by separate New York Bar Associations regarding New York's RPC 7.3 and a lawyer's representation of a client's former employees. According to a 2014 ethics opinion from the New York Lawyers Association, an attorney's offer of representation to former employees in person or by telephone did not violate Rule 7.3(a) when the attorney "communicated with employees first to secure their information and later to extend the corporate employer's offer of assistance." *Id*, at * 2, citing N.Y. Cty. Lawyers Ass'n Prof 1 Ethics Comm., Formal Op. 747, at 4 (2014). There, the financial motive of the attorney was "not to secure legal fees from a new client but to render competent representation to a current corporate client by enabling it to fulfill its objective ... of making legal assistance available to an employee who may need counsel." *Id*. Notably, this ethics opinion recognized an exception under *Rivera*, *i.e.*, for cases in which the attorney's "primary, if not exclusive, purpose ... [was] to insulate the witnesses from opposing counsel's **informal** contact." *Id*. The *James-Sullivan* court also cited a 2016 ethics Opinion issued by the New York City Bar Association, addressing concurrent representation of employees of a corporate client. The opinion cited the definition of "solicitation" under Rule 7.3 as meaning "advertising" directed at specific recipients for the purpose of retention of the lawyer, and noted that the RPC are principally concerned with policing the solicitation *of new* clients. This 2016 New York City Bar Association Opinion followed the New York Lawyer's Association 2014 Opinion in concluding that a direct offer of representation to a former employee by a lawyer representing a corporate defendant is ethical when the lawyer's primary purpose is not to acquire a new client. *Id.* at *3.

Along with these two Bar Association Opinions, *James Sullivan* also considered *Rivera* and rejected its application. Based on the record before it, the defense attorney had not conducted a broad solicitation of former employees intended to prevent **informal** discovery as in *Rivera*. Although the attorney's contact and offer of representation may have conferred some tactical advantage on the defendant, the court found that the representation also served the interests of the individual former employees who may experience anxiety about testifying without legal representation. Any disadvantage to the plaintiffs was held to be offset by the interests of the individuals in obtaining legal advice. What was important to the court was the fact that plaintiffs had access to the witnesses, either ex parte or through depositions, and that the simultaneous representation by defense counsel did not prevent discovery from proceeding. *Id* at *4. See also *Wells Fargo Bank, N.A. v. LaSalle Bank*

_____

*N.A.*, 2010 WL 1558554 *1 (W.D. Okla. Apr. 19, 2010) (motion to disqualify for alleged solicitation in violation of ABA Model Rule 7.3 denied; defense counsel's offer to represent former employees at deposition was not improper solicitation as counsel was already employed by corporate defendant and not seeking pecuniary gain, but rather "attempting to represent its client, the corporation, and also protect the interests of former employees whose conduct forms the basis for Plaintiff's claims").

Plaintiffs have ignored this entire line of case authority which rejected application of *Rivera* to formal depositions where allegations of imputed conduct and vicarious liability arise against the defendant corporate employer. Plaintiffs likewise ignore the actual language of Rule 7.3 as to what constitutes "solicitation" and the required "significant" motivation for pecuniary gain. Plaintiffs also ignore the two post-*Rivera* New York bar associations' ethics opinions advising that an attorney's offer of representation to a former employee at a deposition in connection with ongoing representation of a corporate employer does not violate Rule 7.3. In short, when considering disqualification under Rule 7.3, courts distinguish informal discovery from formal depositions. Where claims of respondeat superior or vicarious liability exist against a corporate defendant, representation of former employees at their depositions does not violate Rule 7.3, nor is there any basis to disqualify the corporate defense attorney from representing these former employees – who express a desire for representation at their depositions. Both Messrs. McCormack and Mr. Breslin are within the scope of alleged "agents of Voynow" whose purported negligent actions can be imputed to Voynow under respondeat superior. It is therefore understandable as to why they would want representation at a deposition. Plaintiffs' request to deprive Messrs. McCormack and Breslin of their desired representation and disqualify defense counsel from representing them at their depositions should be denied.

> 5. **Plaintiffs Fail To Articulate Any Factual or Legal Basis To Warrant Disqualification of Defense Counsel From its Representation of Voynow or For Sanctions against Voynow**.

In what appears to be a catchall request for relief, Plaintiffs seek to disqualify defense counsel from the entire case and from its representation of Voynow. The sole legal authority articulated is Rule 7.3 and *Rivera*. The sole facts alleged are Voynow's notification to its former employees that they could be represented by its counsel at upcoming depositions, if they so desired. *Rivera* does not even support disqualification of Voynow's counsel as the *Rivera* court never held – let alone even considered -- whether the defendant hospital's counsel should be disqualified as its attorney. Indeed, disqualification of the hospitals' counsel was never even raised by the plaintiff. *Rivera* therefore does not support their argument and Plaintiffs fail to cite any case which supports disqualification of a law firm from the entire case. Plaintiffs also do not claim that any inherent conflict of interest exists by virtue of the concurrent representation of both Voynow and Messrs. McCormack and Breslin. *New York v. United Parcel Serv., Inc.*, 2016 WL 10672076, at *1 (S.D.N.Y. Sept. 2, 2016) (denying request to disqualify counsel, noting that it is common practice for counsel to represent both an employer and its current and/or former employees at depositions). To the extent Plaintiffs predicate their request for disqualification of Voynow's counsel upon Rule 7.3, they again fail to meet their burden. There are no facts alleged indicating that defense counsel improperly solicited Voynow in violation of Rule 7.3. Indeed, Plaintiffs' currently counsel only recently entered their appearance in this case and defense counsel has represented Voynow for over two years. Thus, neither Rule 7.3 nor *Rivera* supports Plaintiffs' blanket attempt to disqualify defense counsel from representing Voynow.

Plaintiffs do argue that Defendants should be disqualified because they did not list the former employees at issue in their Rule 26 Initial Disclosures, however they fail to cite any legal precedent for such a drastic measure.

___

When considering these Initial Disclosures, this Court should be aware of both the Complaint's averments and the procedural context. The Complaint was filed in October of 2018. It alleged that "Plaintiffs are still in the process of investigating the extent to which [its Controller] and other employees were stealing funds….." (Complaint, Dkt. 1, ¶47). It cited some alleged employee fraud schemes, but averred that "the foregoing schemes are only examples" and "by no means an exhaustive list… Plaintiffs' investigation continues…" Id. at ¶66. Thus, the Complaint never fully articulated either the nature or timing of the alleged fraud schemes at issue. Nonetheless, the parties exchanged Initial Disclosures just two months later in January of 2019. Defendants' Initial Disclosures state that their "investigation is continuing and they reserve the right to rely upon additional persons as potential witnesses." The parties have since been in the midst of written discovery and document production, the latter of which was substantially delayed by the pandemic. No depositions have occurred. No discovery deadline exists. Voynow's document production discloses the identifies of the former employees at issue. This information was not hidden from Plaintiffs. Defendants intend to supplement its Disclosures shortly as permitted under Rule 26, and as it had explicitly stated. It is likely that Plaintiffs will also supplement their Initial Disclosures. But the fact that Initial Disclosures issued did not list all former employees who worked on all of Plaintiffs' engagements does not warrant disqualification, particularly where the Complaint reiterated that its Plaintiffs' investigation as to fraud schemes was ongoing.

In short, Plaintiffs' Motion fails to set forth any basis, whether legal or factual, to meet the "high standard of proof" required in the Second Circuit for disqualification of Voynow's counsel. Accordingly, Plaintiffs' Motion seeking disqualification of Voynow's counsel should be denied.

### 6. **Plaintiffs' Request For An Order Enjoining Voynow and Defense Counsel From Contact With Its Former Employees Should Be Rejected.**

Despite enjoying access to Voynow's former employees through informal witness interviews, Plaintiffs seek a protective order precluding all future contact by Voynow with its former employees, and precluding all future contact by defense counsel with Voynow's former employees. Not only is such a claim replete with hypocrisy and double standards, it is predicated upon erroneous facts. Plaintiffs erroneously claim that Voynow only contacted the former employees after Plaintiffs indicated an intent to take their depositions. That is false. Several former employees immediately contacted Voynow after they were approached and questioned by Plaintiffs' counsel's investigator back in April. One such former employee also called defense counsel back in April. Thus, Voynow's former employees were already in contact with Voynow and/or its counsel before Plaintiffs ever requested depositions in June. (Fitzgerald Declaration, Ex. A).

Aside from its mistaken factual predicate, Plaintiffs set forth no legal basis to warrant enjoining Voynow from having contact with its former employees. Rivera does not support such relief. Indeed, some of these former employees are now current Voynow clients. Moreover, Voynow did nothing wrong. As in Dixon-Gales v. Brooklyn Hospital, supra, a corporate employer was entitled to inform its former employees that they were entitled to legal representation, if they wanted it, at their upcoming depositions, pursuant to applicable insurance protocol. Voynow conveyed this same offer to any former employees, and it was left up to the employees to decide on their own whether or not to accept representation. There is no basis for injunctive relief based upon this conduct. Indeed, by trying to enjoin such contact, Plaintiffs clearly seek to prevent any former Voynow employee from even being told that they have the option for legal representation at a deposition, so that Plaintiffs can gain a tactical advantage by questioning an unrepresented accountant in a deposition in an accounting malpractice case. Likewise, there is no basis to enjoin defense counsel from future contact with Voynow's former

employees. Defense counsel did not contact these former employees regarding their depositions, but two employees desire representation at their deposition, and this desire should be protected. Plaintiffs request to enjoin Voynow and its counsel from having contact with Voynow's former employees – while Plaintiffs' counsel and investigator continues to engage in such unfettered contact – is hypocritical and should be denied.

### 7. **Plaintiffs' Vague and Unsupported Request For Sanctions Should Be Denied**

Lastly, Plaintiffs request "severe" sanctions and that both Defendants and their counsel be deposed on this issues raised in their motion. Once again, no legal authority is cited for such novel relief. *Rivera* does not support this relief. This Court should be guided by the *Dixon-Gales* decision which is on point and makes clear that Plaintiffs' attempt to portray Voynow's conduct, or that of its counsel, as inappropriate is simply unfounded. Plaintiffs' request for sanctions and depositions of defense counsel should be denied.

Respectfully,

Nicholas P. Chrysanthem, Esq.

MPF:ls

cc: Jamie Felsen, Esquire
Emanuel Kataev, Esquire
Jeremy Koufakis, Esquire
Joseph M. Labuda, Esquire
Richard Milman, Esquire
Jack Slimm, Esquire
Maureen P. Fitzgerald, Esquire

LEGAL/138921309.v1