# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
————

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

July 16, 2021

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Taryn A. Merkl, U.S.M.J.
225 Cadman Plaza East, Room 322N
Brooklyn, NY 11201-1804

***Re:*** **Star Auto Sales of Bayside, Inc.,** *et al*. **v. Voynow, Bayard, Whyte and Co., LLP,** *et al*.
     **Case No.: 1:18-cv-5775 (ERK) (TAM)**
     **Defendants' File No.: 03127-1373**
     <u>**MLLG File No.: 76-2018**</u>

Dear Judge Merkl:

     This office represents the Plaintiffs in the above-referenced case against the Defendants Voynow, Bayard, Whyte and Company, LLP ("Voynow"), Hugh Whyte ("Whyte"), Randall a/k/a Randy Franzen ("Franzen"), and Robert Seibel ("Seibel") (collectively & interchangeably referred to as the "Defendants").

     During the parties' June 22, 2021 telephonic status conference, this Court issued an Order requiring Plaintiffs to submit a supplemental letter advising the Court as to continued areas of disagreement and in further support of their positions, after meeting and conferring, regarding the disputes raised in Plaintiffs' letter motion to quash the Rosenfield subpoena and for a protective Order. The parties met and conferred telephonically on July 2, 2021.[1]

     For the reasons set forth below, the Rosenfield subpoena must be quashed and a protective Order must issue.

## I. <u>Motion to Quash Subpoena Issued to Rosenfield & Company, PLLC ("Rosenfield")</u>

     The Court suggested that Plaintiffs provide a timeline of events that form the basis for Plaintiffs' motion to quash the Rosenfield subpoena based on the work product doctrine, pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule").

---

[1] During the parties' telephonic meet-and-confer following oral argument on the motion concerning the Rosenfield subpoena, the parties agreed to exchange privilege logs in or around September 2021. This is relevant because the Court will not be able to specifically reference documents in the privilege log while evaluating this motion at this time.

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **2**

## A. Relevant Background

On November 30, 2016, immediately after Plaintiffs discovered that their former Controller, Vivian Karouzakis "("Karouzakis") was embezzling money from them, Michael Koufakis ("Koufakis"), one of Plaintiffs' principals, texted Richard Milman ("Milman"), of Milman Labuda Law Group PLLC ("MLLG"), Plaintiffs' long-time labor and employment counsel for more than two (2) decades, about the embezzlement.[2]  See Declaration of Richard I. Milman, Esq. (hereinafter "Milman Decl.") ¶¶ 4-6.   At that time, MLLG's relationship as counsel to Plaintiffs continued, wherein Plaintiffs kept MLLG apprised as to the status of Karouzakis' embezzlement and ongoing investigation through April 4, 2017, at which time Karouzakis was arrested, for the purpose of obtaining legal advice. Id. at ¶¶ 7-8.

After Karouzakis was arrested, Plaintiffs uncovered another scheme created by Karouzakis and separately informed the District Attorney's office and Milman about this scheme on April 7, 2017. Id. at ¶ 9.  Milman arranged a meeting with Koufakis for April 10, 2017. Id. at ¶ 10. During this meeting, based on the information provided by Koufakis, Milman advised Plaintiffs to hire a forensic accountant to document this scheme in-depth to assist Milman in determining if MLLG, on Plaintiffs' behalf, would commence a civil action against Karouzakis. Id. at ¶ 11. Additionally, in or around April 12, 2017, Koufakis notified Milman about embezzlement schemes committed by another Controller, Despina Theocharis ("Theocharis"), and Milman reiterated his advice that Plaintiffs needed to hire a forensic accountant to identify each scheme and uncover the extent of the theft for each scheme to assist MLLG in determining if civil lawsuits would be commenced by MLLG on Plaintiffs' behalf against Karouzakis, Theocharis, and any other perpetrators involved in any schemes. Id. at ¶¶ 12-13. Shortly thereafter, on or about April 18, 2017, Plaintiffs hired Rosenfield. Id. at ¶ 14. As discussed in further detail below, all forensic accounting work that Rosenfield performed for Plaintiffs is protected by the attorney work product privilege.

## B. Legal Standard

Rule 26(b)(3) provides protection to certain documents and communications prepared in anticipation of litigation. The rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared *in anticipation of litigation* or for trial by or for another party or its representative (including the other party's *attorney, consultant*, surety, indemnitor, insurer, or *agent*)." See Fed. R. Civ. P. 26(b)(3) (emphasis added); see also 99 Wall Dev. Inc. v. Allied World Specialty Ins. Co., No. 18-CV-126, 2020 U.S. Dist. LEXIS 91888, at *12-15 (S.D.N.Y. May 26, 2020,); see also Hickman v. Taylor, 329 U.S. 495 (1947) (establishing and articulating application of the work product doctrine); Welland v. Trainer, No. 00-CIV.-738 (JSM), 2001 U.S. Dist. LEXIS 15556, at *2 (S.D.N.Y. Oct. 1, 2001) (holding that if a document "is created because of the prospect of litigation, analyzing the likely outcome of that litigation" it is eligible for work product protection) (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)).

---

[2] Upon the Court's request, Plaintiffs will produce text messages for an in-camera review in order to maintain attorney-client privilege.

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **3**

Work product comes in two forms. The first, fact work product, consists of factual material, including the results of a factual investigation. This type of work product is subject to disclosure "upon a showing of substantial need and inability to obtain the equivalent without undue hardship." 99 Wall Dev. Inc., 2020 U.S. Dist. LEXIS 91888.  Pursuant to Rule 26(b)(3), even fact work product that is protected by the work-product doctrine may be discoverable where the "discovering party demonstrates a sufficiently pressing need for the data."  Brown, 2013 U.S. Dist. LEXIS 102214 citing In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 462 (S.D.N.Y. 1996).  To satisfy this standard, the discovering party must establish that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FRCP 26(b)(3)(A); see also Adlman, 134 F.3d at 1197; In re Kidder Peabody, 168 F.R.D. at 462.

Even where this burden has been satisfied, however, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," see Rule 26(b)(3)(B), commonly referred to as "opinion work product," the second form of work product.  See Brown, 2013 U.S. Dist. LEXIS 102214 (citing Adlman, 134 F.3d at 1197). "Special treatment for opinion work product is justified because, 'at its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" See Brown, 2013 U.S. Dist. LEXIS 102214 (E.D.N.Y. 2013) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)).

### C. The Rosenfield Subpoena Seeks Privileged Information Protected by the Work Product Doctrine and Must be Quashed

Here, all the material sought in Voynow's subpoena to Rosenfield consists of documents, all of which were prepared for Plaintiffs in anticipation of litigation.  See In re Gen. Motors LLC Ignition Switch Litig., 80 F. Supp. 3d 521, 532 (S.D.N.Y. 2015) (document need not have been prepared "primarily or exclusively to aid in litigation" in order for work product protection to apply); In re Veeco Instruments, Inc. Sec. Litig., No. 05-MD-01695 (CM) (GAY), 2007 WL 724555, at *7-8 (S.D.N.Y. Mar. 9, 2007) (designating as protected work product documents created by outside counsel's forensic accountants both in order to assist outside counsel in providing legal advice regarding an internal investigation and to assist in ensuring the accuracy of the company's public disclosures); In re Woolworth Corp. Sec. Class Action Litig., No. 94-CIV.-2217 (RO), 1996 WL 306576, at *3 (S.D.N.Y. June 7, 1996) (finding internal notes and memoranda prepared during internal investigation by outside counsel and by accounting firm hired by outside counsel constituted attorney work product because litigation and regulatory action "were virtually certainties"); see also United States v. Petit, 438 F. Supp. 3d 212 (S.D.N.Y. 2020); United States v. Nobles, 422 U.S. 225, 236 (1975) (holding that the work product doctrine "applies to criminal litigation as well as civil and stating that the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, because the interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case").

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **4**

Here, MLLG requested that Plaintiffs obtain Rosenfield's opinion work product and relied on that opinion work to draft and file lawsuits against Karouzakis and Theocharis (and later, other former employees of Plaintiffs), as well as the Defendants in this case with Trachtenberg Rodes & Friedberg LLP ("TRF") as further set forth below. Rosenfield performed all of this forensic work in anticipation of the litigation.

After Plaintiffs retained Rosenfield to assist in preparing data in furtherance of civil proceedings that were commenced against Plaintiffs' former employees, Rosenfield discussed the role Defendants played in uncovering the fraudulent schemes committed by Karouzakis, Theocharis, and other employees, through the services they were providing to Plaintiffs. See Milman Decl. ¶¶ 18-19. On October 20, 2017, Plaintiffs requested that Rosenfield opine on certain accounting questions to determine if and how Plaintiffs would proceed against Defendants.[3] Id. ¶¶ 18-21. This October 20, 2017 email, with the subject "Prior Accountant Malpractice Lawsuit," establishes that, at that time, Plaintiffs utilized Rosenfield as a consultant in anticipation of the instant litigation. Indeed, Jeremy Koufakis, an attorney with MLLG, was included on this e-mail communication. Shortly after the October 20, 2017 e-mail, MLLG directly assisted Plaintiffs in hiring Plaintiffs' previous counsel, TRF. Rosenfield was present during most of the initial meetings with MLLG and TRF. Id.

Accordingly, Defendants are not entitled to any documents requested in the Rosenfield subpoena.

### D. Each Specific Demand Within the Rosenfield Subpoena Should Be Quashed

    **i.**     Demand No. 1: All documents or communications relating to the scope of Your engagement or the nature of any services provided by You to or on behalf of the Star Auto Entities.

All documents related to forensic accounting work and consulting work Rosenfield performed for Plaintiffs, Plaintiffs' counsel, or former counsel is protected under the work product doctrine. Rosenfield's communications with Plaintiffs and/or Plaintiffs' counsel are opinion work product which consists of mental impressions, conclusions, and opinions utilized for the commencement of litigation.

All reports created by Rosenfield contains opinion and fact work product and are protected by the work product privilege. As discussed *supra*, opinion work product receives greater protection than fact work product, which is when the discovering party must establish that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FRCP 26(b)(3)(A); see also Adlman, 134 F.3d at 1197; In re Kidder Peabody, 168 F.R.D. at 462.

---

[3] Plaintiffs can produce this privileged email to the Court for in-camera review in order to maintain attorney-client privilege.

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **5**

Here, the documents sought by the Defendants from Rosenfield constitute opinion work product, and the exhibits Rosenfield uses in said reports are fact work product if Rosenfield simply gathered the accounting data from Plaintiffs and referenced it. Indeed, any exhibits that were created by Rosenfield which are not purely factual documents are opinion work product. Defendants have not met their burden of proof to establish a substantial need for the documents and an inability to obtain the equivalent without undue hardship to permit them to obtain any fact work product, let alone opinion work product.

To the extent this demand seeks documents and communications concerning Rosenfield's role as Plaintiffs' regular accountant, Plaintiffs have already produced all of their tax returns and financial statements through 2017.  There is thus no need to obtain same from Rosenfield.  In addition, since all of the complained-of conduct occurred prior to 2018, Defendants are not entitled to tax returns beyond 2017.

  ii. Demand No. 2: All documents or communications relating to Your invoices, time sheets or billing records regarding services rendered by You to the Star Auto Entities, and any payments made by the Star Auto Entities to You.

All invoices, timesheets, or billing records related to forensic and consulting work Rosenfield provided to Plaintiffs is protected under the work product doctrine (i.e., opinion work product) because it details the work performed by Rosenfield in anticipation of litigation.  To the extent this demand seeks invoices, timesheets, and billing records related to Rosenfield's work as Plaintiff's regular accountant, they have no relevance to this matter because Plaintiffs have already produced Plaintiffs' tax returns and financial statements through 2017.  To the extent that Defendants seek any invoices and timesheets related to preparing Plaintiffs' tax returns, any such documents are not relevant and would only serve as cumulative evidence that Rosenfield prepared Plaintiffs' tax returns.  As discussed *supra*, there is no allegation in the Complaint regarding events that occurred after 2017, so Defendants are not entitled to these records beyond 2017.

  iii. Demand No. 3: All documents or communications relating to any forensic analysis or accounting services rendered by You to the Star Auto Entities, regarding actual or suspected fraud, theft or accounting irregularities committed by any current or former Star Auto Entities' employee.

This demand is cumulative of Demand No. 1 and similarly seeks documents protected by the work product doctrine.

The demand for documents regarding "suspected fraud" is opinion work product. Indeed, any report prepared by Rosenfield which does not specifically state the results of a factual investigation is opinion work product because it deals with mental impressions, conclusions, opinions, and legal theories related to Voynow's professional malpractice in failing to detect red flags in the accounting systems at Plaintiffs' dealerships.  Any opinion by Rosenfield concerning suspected fraud would be contained in a report prepared by it, and would include its mental impressions, conclusions, and opinions on the subject.

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **6**

For example, Rosenfield's June 2, 2017 report includes "alleged fraud" in the title and states that Rosenfield's report "presents [Rosenfield's] preliminary findings," a recommendation that additional investigation be done, and wherein Rosenfield identified that several general journal entries "look suspicious" and that "additional work needs to be completed." See Docket Entry 53, Exhibit B. Additionally, the report states that it is "subject to change upon additional investigation and the collection of additional supporting documents."

Lastly, this report also discusses "Suspect Vehicle Deals" briefly and states Rosenfield has "begun to gather documentation" for the deals they are looking into. The November 21, 2018 report, which is already in Defendants' possession, is also preliminary in nature. See Docket Entry 53, Exhibit C. This report is titled "Summary of various Schemes utilized by employees of the Organization." Id. MLLG specifically utilized the information in this report to assist in drafting Plaintiffs' civil lawsuits against these very employees. Rosenfield also stated in this report that it "believe[s] that these actions [by the employees] are irregular for a normal working dealership." The use of the word "believe" in Rosenfield's report clearly indicates that this document constitutes opinion work product, and is therefore privileged under the work product doctrine. Further, the last paragraph of this report mirrors the last paragraph of the June 2, 2017, stating *inter alia*, that this report is "preliminary in nature." See Docket Entry 53, Exhibits B, C. Accordingly, this demand exclusively seeks documents covered by the work product doctrine, and the motion to quash must therefore be granted.

iv. Demand No. 4: All documents or communications between You and any law enforcement agency or district attorney's office relating to suspected criminal activity or fraud occurring at the Star Auto Entities.

Because, as discussed *supra*, the documents being sought in the subpoena are privileged, the claw-back provisions contained in the Discovery Stipulation and Agreement (hereinafter the "ESI & Discovery Stipulation") require the documents produced by Plaintiffs' prior counsel to be clawed back. See Winfield v. City of NY, No. 15-cv-05236, 2018 U.S. Dist. LEXIS 79281 (S.D.N.Y. May 10, 2018). As such, Defendants are not entitled to the information sought here for this reason and those stated in Plaintiffs' prior papers.

### F. Plaintiffs Did Not Waive the Work Product Privilege

Defendants' argument that Plaintiffs waived the privilege when Rosenfield produced documents to the District Attorney's office and/or New York City police department must be rejected. Disclosure of work product to a party sharing common interests is not inconsistent with the policy of privacy protection underlying the doctrine. See Winfield, *supra*; see also Egiazaryan v. Zalmayev, 290 F.R.D. 421 (S.D.N.Y. 2013) ("the common interest doctrine also extends to a situation where there is a joint defense or strategy, but separate representation").

Disclosure of privileged work product to a third party only waives the work-product privilege if it permits an adversary to gain access to the information. See Billups v. Penn State Milton S. Hershey Med. Ctr., No. 1:11-CV-1784, 2013 U.S. Dist. LEXIS 111396, at *12 (M.D. Pa Aug. 7, 2013) (holding that there was no dispute that the civil action was related to the prior

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **7**

criminal proceedings, and as such, the correspondence exchanged between the Franklin County District Attorney and the Defendants were subject to the work product protection); Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information."); see also Salomon Bros. Treasury Litig. v Steinhardt Partners, L.P. (In re Steinhardt Partners, L.P.), 9 F.3d 230 9 (2d Cir 1993) (cited by Defendants in their letter dated June 2, 2021 and stating that waiver can only be made after voluntary disclosure of work product to an adversary previously, which did not occur in this case). As a result, disclosure to law enforcement agencies does not operate as a waiver of privilege.

The privilege also applies to any documents exchanged between Rosenfield and the New York City police department because the disclosure does not substantially increase the opportunity for potential adversaries to obtain the information. See Viacom, Inc. v. Sumitomo Corp. (In re Copper Mkt. Antitrust Litig.), 200 F.R.D. 213, 215 (S.D.N.Y. 2001) (holding that disclosure of work product to a party sharing common interests is not inconsistent with the policy of privacy protection underlying the doctrine).

Here, Rosenfield provided the District Attorney's office and the New York City police department information about Karouzakis and Theocharis concerning the same related conduct for which Plaintiffs commenced civil lawsuits against Karouzakis and Theocharis. Thus, a common interest exists with the District Attorney's office and the New York City police department and there has been no waiver of privilege.

## II.   **Plaintiffs' Motion for a Protective Order**

Plaintiffs hereby withdraw their motion for a protective Order concerning Defendants' counsel's solicitation of former employees of Voynow without prejudice. However, Plaintiffs respectfully submit that nothing prohibits them and their counsel from communicating with former employees of Voynow who are not currently represented by counsel. To the extent that Defendants' counsel has been retained by any former employees of Voynow, they should be directed to inform Plaintiffs' counsel immediately about any such retentions.

Plaintiffs thank this honorable Court for its time and attention to this case.

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (telephone)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

Hon. Taryn A. Merkl, U.S.M.J.
July 16, 2021
P a g e | **8**

**<u>VIA ECF</u>**
Marshall Dennehy Warner Coleman & Goggin
<u>Attn</u>: Maureen P. Fitzgerald, Esq.
15000 Midatlantic Drive, Suite 200
P.O. Box 5429
Mount Laurel, NJ 08054-1570
mpfitzgerald@mdwcg.com