

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8270
Email:  mpfitzgerald@mdwcg.com

July 23, 2021

**VIA ECF**
Judge Taryn A. Merkl
United States Magistrate Judge
U.S. District Court Eastern District of New York
225 Cadman Plaza East, Courtroom 322 N
Brooklyn, NY  11201

      RE:  Star Auto Sales of Bayside, Inc., et al. v. Voynow, Bayard, Whyte and Company, LLP, et al.
           Docket No.:    USDC of Eastern NY No.: 1:18-cv-05775
           Our File No.:    03127.01373

Dear Judge Merkl:

      This firm represents the Defendants in the above-referenced matter and we are submitting this supplemental brief in response to Plaintiffs' July 16, 2021 submission and in further support of Defendants' opposition to Plaintiffs' Motion to Quash the proposed Subpoena to the accounting firm of Rosenfield & Company ("Rosenfield").

    **I.**    **Prefatory Statement**

      In prior submissions to this Court, Plaintiffs, through their current counsel, Millman Labuda Law Group PLLC ("Millman"), repeatedly argued that the Rosenfield subpoena should be quashed because Rosenfield had been "directly engaged" in April of 2017 by prior counsel Trachtenberg Rodes & Friedberg ("Friedberg"). They argued that this "direct engagement" by Friedberg was in anticipation of this malpractice litigation, and therefore the work product protection flowing from Friedberg's engagement of Rosenfield justified quashing the subpoena. Millman made this argument even through Friedberg never did.  Friedberg never objected to any discovery regarding Rosenberg.  Indeed, Friedberg already produced over 1,000 documents generated by Rosenberg and listed Rosenberg as a fact witness in Plaintiffs' Initial Disclosures.  As Defendants pointed out in their prior submissions,[1] these documents show quite clearly that Rosenfield was retained directly by Plaintiffs to provide forensic and tax accounting services and as Plaintiffs' "CPA firm."  Defendants argued that these

---

[1] See Dkt. 51, May 21, 2021 letter with Rosenfield subpoena; Dkt. 53, June 2, 2021 submission and exhibits sent separately to this Court pursuant to the Confidentiality Stipulation.

___

documents, coupled with the lack of evidence showing Friedberg had ever directly engaged Rosenfield in April of 2017, rendered Plaintiffs' work product argument unfounded.

During the June 22, 2021 argument, this Court questioned Plaintiffs about their assertion that Friedberg had directly retained Rosenfield as an expert and asked what proof existed. Plaintiffs, through Millman, responded that there were "plenty of emails between Rosenfield and Friedberg" and requested additional time to "look at the communications between Friedberg and Roesnfield …. and provide if possible any evidence." (See Dkt. 59, June 22, 2021 Transcript of Proceedings, at 15:9-10; 19:4-6). This Court granted Plaintiffs additional time to provide this proof supporting their position that Friedberg had directly engaged Rosenfield in April of 2017. However, in Plaintiffs' July 16th submission, no such proof has been provided. Instead, Plaintiffs have completely changed course and now argue that it was the Millman firm all along who "recommended" Plaintiffs retain Rosenfield in April of 2017 and did so purportedly in anticipation of this litigation, such that the purported work product protection flows from Millman – not Friedberg.

Putting aside the question of candor to this tribunal given the contradictory representations by Plaintiffs, they have nonetheless failed to meet their burden to justify quashing the Rosenfield subpoena. This is a heavy burden and requires that Plaintiffs establish not only the applicability of the work product protection to the documents at issue but also that it has not been waived, and that there is no substantial need for the documents. <u>Bank of America, N.A. v. Terra Nova Ins. Co.</u>, 212 F.R.D. 166, 169 (S.D.N.Y. 2002). Plaintiffs have not met this burden for the following reasons: (1) Millman's mere recommendation that Plaintiffs hire a forensic accountant after theft was suspected does not transform Rosenfield into a litigation consultant whose documents are protected attorney work product; (2) any work product protection that arguably existed has been repeatedly waived; and (3) the subpoena does not seek attorney work product and there is a substantial need for Defendants to access the Rosenfield documents to pursue their defense.

II. **Plaintiffs' Argument, Advanced for the First Time, That the Work Product Protection Flows From the Millman Firm is Disingenuous and Should Be Rejected By This Court.**

Throughout two prior briefings submitted to this Court, and during the June 22, 2021 hearing, Plaintiffs repeatedly argued that Friedberg had retained Rosenfield and that the work product protection flowed from this engagement. Indeed, in their May 28, 2021 submission, Plaintiffs, through Millman, represented to this Court that Friedberg had directly retained Rosenfield in April of 2017 in anticipation of this litigation:

> Prior to filing the complaint in this case, in April 2017, Plaintiffs' prior counsel directly engaged the services of Rosenfield as a consultant to assess Defendants' liability for accounting malpractice and to determine the extent of their liability……
> \*\*\*\*\*\*\*\*
> Rosenfield was retained by Plaintiffs' former counsel as a consultant to assess Defendants' liability for accounting malpractice and to determine the extent of their liability…
> \*\*\*\*\*\*\*\*
> The same applies here, where Plaintiffs' prior counsel engaged Rosenfield as a consultant to analyze whether there was a basis to commence this action and to determine the extent of liability.
> \*\*\*\*\*\*\*\*

> The documents were irrefutably prepared in anticipation of litigation, as Rosenfield was retained in April of 2017 – prior to filing the October 2018 complaint – for the express purpose of determining and assessing liability of Defendants' malpractice.

See Plaintiff's May 28, 2021 submission, Dkt. 52. at pp. 2-4.

Likewise, during the June 22, 2021 hearing, Millman reiterated this point. When this Court asked "[W]hat is your evidence that [Rosenfield] was actually performing responsibilities within the work product doctrine as opposed to just being hired as an accountant," Millman stated that "basically, there are plenty of emails directly between Barry [Friedberg] and Rosenfield with preparing stuff specifically for this litigation." Dkt. 59, June 22, 2021 T.P at 15:9-10. Millman further stated that "we would have to look at the communications between Friedberg and Rosenfield in order to determine that and provide if possible any evidence." _Id_., T.P. 19:4-6. Not once did Millman ever mention that it was not Friedberg – but rather Millman – who facilitated Rosenfield's engagement in anticipation of litigation against Defendants. Not once did Millman assert that the purported work product protection flowed from the Millman firm – and not Friedberg. Rather, it requested additional time to provide the actual proof requested by this Court, supporting their argument that Friedberg had directly engaged Rosenfield in April of 2017. Having failed to find any such proof – because it never existed – Plaintiffs have abruptly changed their story. Their actions are disingenuous and should be rejected as such.

  Critically, the same absence of actual proof of attorney engagement exists. Plaintiffs have failed to provide any written proof that Rosenfield was retained by Millman as a litigation consultant in anticipation of this litigation – as opposed to a forensic accountant hired by Plaintiffs. There is no engagement letter, email or affidavit from Rosenfield. There is no affidavit from Plaintiffs. While Plaintiffs have submitted a declaration from Richard Millman, Esquire, this declaration concedes that Millman never retained Rosenfield in anticipation of this litigation. The timeline of events reflects that Plaintiffs first discovered possible employee theft in December of 2017. Plaintiffs then hired an accountant named Nick Chester in approximately January of 2017 to review certain accounts relating to this suspected theft. That engagement of Mr. Chester ended in approximately February of 2017. After a second purported theft by a different employee was discovered in April of 2017, Millman's Declaration states that he suggested Plaintiffs hire a forensic accountant and "recommended" Rosenfield, a large accounting firm with expertise in forensic accounting. (Dkt. at para. 11). Plaintiffs did so and directly hired Rosenfield. Rosenfield's forensic accounting services then expanded and encompassed the tax engagement Defendants had handled, such that Rosenfield also prepared Plaintiffs' 2016 and 2017 tax returns. Merely because Millman recommended Rosenfield, or that Rosenfield may have spoken to Millman – as well as to other third parties -- about its forensic findings -- does not transform Rosenfield into Millman's litigation consulting expert retained for purposes of this litigation. See _United States Fid. & Guar. Co. v. Baspetro Oil Servs. Co_., 2000 WL744369 *9, 12 (S.D.N.Y. June 4, 2009) (rejecting claim of work product protection; "[s]imply because an attorney participated in and supervised [an investigation] does not transform investigative documents into work product"); _OneBeacon Ins. Co. v. Forman Int'l, Ltd_., 2006 WL 3771010, at *5 (S.D.N.Y. Dec.15, 2006) (investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel.").

  Notably, the only documents generated contemporaneously at the time Rosenfield was hired in 2017 has been provided to this Court by Defendants. These documents make clear that Plaintiffs hired Rosenfield as a

forensic accountant and as its CPA firm.[2]  Neither Millman nor Friedberg ever retained Rosenfield.  Indeed, according to Millman's Declaration, Rosenfield allegedly informed him in October of 2017 that Defendants should have discovered the purported theft.  Yet, even then, Millman still never retained Rosenfield as a litigation consultant or issued an engagement letter at that point. See Dkt. 62, Millman Dec., at ¶ 18.  If Millman truly intended Rosenfield's work to be part of its protected work product, it was incumbent upon Millman to do so at that time.  This lack of any such engagement letter after Millman was purportedly told of a potential claim against Defendants – when considered in tandem with the documents showing Plaintiffs had directly hired Rosenfield to be its "CPA firm" – refutes work product protection.

### III. Any Conceivable Work Production Protection Associated With Rosenfield's Documents Has Been Waived by Plaintiffs on Multiple Occasions and on Multiple Levels.

To the extent any work product protection even arguably existed, it has been waived.  *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 2018 WL 5811427, at *2 (N.D.N.Y. Nov. 5, 2018) ("privilege derived from the work product doctrine is not absolute and may be waived").  Plaintiffs bear a "heavy burden" to establish the work product protection has not been waived and any ambiguities are construed against the party asserting the privilege. *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013).  Plaintiffs have waived any work product protection by repeatedly and voluntarily producing Rosenfield's documents to third parties and to Defendants in this case.

### A. Plaintiffs' Voluntary Disclosure of Rosenfield's Documents and Findings to Government Agencies is a Clear Waiver of Any Work Product Protection.

During 2017 and 2018, Plaintiffs voluntarily arranged for the production of thousands of Rosenfield documents and forensic accounting analysis to the Queens' County District Attorney's office and the police department, and also provided certain Rosenfield information to Plaintiffs' insurance company.  Rosenfield also repeatedly met and/or spoke with these government officials to discuss its forensic reports and findings.  All of this was done voluntarily.  All of this was also done without any written non-waiver agreement in place as to work product.  None of the documents produced were ever designated as protected attorney work product.

---

[2] See Exhibits B, E, F and G previously submitted directly to this Court as part of Defendants' June 2, 2021 submission, Dkt. 53.  Specifically, a May 12, 2017 email from Plaintiffs' owner Michael Koufakis, representing to the District Attorney that "*my* forensic accountant is Ken Rosenfield." (Ex. E).  On May 18, 2017, Rosenfield advised the District Attorney that "our accounting firm is investigating with Mr. Michael Koufakis and his Star Dealerships regarding the thefts from various business personnel." (Ex. E).  On June 2, 2017, Rosenfield authored a Report explicitly stating that "we were retained by Star Automotive Group to conduct an investigation. (Ex. B). On November 3, 2017 and January 3, 2018, Plaintiffs sent letters to Defendants advising that "we have retained Rosenfield as our new CPA firm" (Ex. F).  On December 15, 2017, Rosenfield advised Defendants, that certain information was needed "to effectuate tax planning for the 2017 year-end and to assist in our progress with forensic accounting project we are currently working on." (Ex. G).  On November 21, 2018, Rosenfield advised a police detective that "we have been requested by our client" to provide this supplemental report regarding fraud schemes, with the client, Michael Koufakis, copied on the report. (Ex. C).  Lastly, Plaintiffs' 2016 and 2017 corporate tax returns designate Rosenfield as the tax return preparer.

___

Defendants are aware that Plaintiffs had voluntarily shared at least the following Rosenfield documents and information with third parties as follows:

- In May 2017, Rosenfield communicated via emails with Plaintiffs' insurance agent Republic Claims Adjuster regarding documents to be used as part of the forensic analysis;

- On May 12, 2017, Plaintiffs' owner Michael Koufakis provided the Queen's County District Attorney with a forensic accounting spreadsheet and journal entries prepared by Rosenfield regarding alleged theft, along with Rosenfield's cell phone number to call with questions;

- On May 18, 2017, Rosenfield sent an email to the District Attorney's office requesting the opportunity to "discuss some of our findings with you before we send you our backup documentation;"

- A June 2, 2017, Rosenfield provided a 317 page Report to the District Attorney's office detailing its forensic accounting findings and analysis;

- On June 19, 2017, Plaintiffs owner Michael Koufakis and Rosenfield sent several emails to the District Attorney's office with various supplemental forensic analyses prepared by Rosenfield regarding purported theft schemes;

- In June or July of 2017, Rosenfield representatives appear to have met in person with the District Attorney regarding its findings;

- On February 6, 2018, Rosenfield provided a summary to the District Attorney's office of their prior meeting along with additional forensic analysis and requested to have another call with the District Attorney to discuss the forensic findings. **Notably Millman is copied on this communication**;

- A February 12, 2018, another "very large" Report from Rosenfield was sent to the District Attorney's office through Rosenfield's access portal with additional forensic accounting findings;

- On February 26, 2018, Rosenfield sent a letter and summary to the District Attorney with additional forensic findings regarding alleged fraud. Rosenfield offered to discuss its findings with the District Attorney at anytime. **Notably Millman is copied on this communication;**

- On November 21, 2018, Rosenfield sent a different 113 page Report to New York Police Detective Razzo regarding additional forensic accounting findings. **(This was sent during the pendency of the instant lawsuit).**

    All of these third party disclosures were made voluntarily and without any written non-waiver agreement in place as to work product protection, nor were any of the documents or communications designated as attorney work product. If Millman believed as of October of 2017 that Rosenfield's forensic accounting was part of its work product, then it was incumbent upon Millman as of October of 2017 to take steps to protect it. Attorneys protect their work product through either a retainer agreement with the consultant and with non-waiver agreements as to work product when sharing with third parties. Yet, neither exists. Plaintiffs –with Millman's knowledge – continued to share Rosenfield's documentation and information voluntarily and without

a written non-waiver agreement all throughout 2017 and 2018.  Likewise, Rosenfield continued to share his forensic accounting findings and discuss them with third parties without ever being retained directly by Millman as a litigation consultant.  In short, Plaintiffs knew of the potential case against Defendants when they voluntarily disclosed Rosenfield's findings to third parties and took none of the requisite steps to protect what they now claim to be attorney work product.

There is a well established line of cases which holds that such voluntary disclosures to third party governmental or investigatory agencies waives all work product protection as to the subject matter of the documents and communications.  See e.g., *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993) (finding that defendant had waived its work product privilege when it voluntarily submitted a privileged memorandum to the SEC in a previous investigation); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 173 (S.D.N.Y. 2002) (finding that defendant waived its work product protection through voluntary disclosures made to the NY State Insurance Department, the U.S. Attorney's Office and the U.S. Postal Inspector as part of the defendant's effort to have its former employee criminally charged); *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998) (protection waived where materials were submitted voluntarily to stimulate official action beneficial to discloser); *Three Crown Ltd. P'ship v. Salomon Bros., Inc.*, 1993 U.S. Dist. LEXIS 9995 at *2 (S.D.N.Y. July 21, 1993) (protection waived where work product materials used to "persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation"); *Matrix Essentials, Inc. v. Quality King Distributors, Inc.*, 2006 WL 8435312, at *2 (E.D.N.Y. Jan. 12, 2006) (finding that work product protection adhering to report provided as part of an effort to determine if criminal process could be applied to aid in pending civil lawsuit was waived by virtue of its voluntary disclosure to government agencies); *Spanierman Gallery, Profit Sharing Plan v. Merritt*, 2003 WL 22909160, at *5 (S.D.N.Y. Dec. 9, 2003) (finding that defendant's disclosure of privileged materials to the FBI "substantially increased the likelihood that privileged information would be secured by defendant's adversaries ... [where] [t]he production was not made under circumstances which would ensure the confidentiality of the material [and] [t]he documents provided to the FBI were not identified as 'privileged,' and no agreement was reached with the FBI to treat the information as privileged"); *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 2018 WL 5811427, *6-7 (N.D.N.Y. Nov. 5, 2018) (finding that work product protection waived when plaintiffs disclosed investigation reports to police department, District Attorney's office, and insurance agent where reports were provided with the hope of spurring criminal prosecution and agencies were neither adversaries nor allies when documents submitted).

The rationale of these cases is that when material is disclosed to law enforcement without any agreement regarding work product waiver and confidentiality, there is a strong potential that the material will ultimately become public and available to an adversary. This may occur if the material is used at trial—either as part of the government's case-in-chief or for purposes of cross-examining a witness, or if the government is required to disclose the material to a criminal defendant, or because it is exculpatory.  *Sidari v. Orleans County*, 2000 WL 33407343, at *8 (W.D.N.Y. Oct. 3, 2000) (work product protection waived when materials freely given to prosecutor for use at trial as prosecutor was neither adversary nor ally to plaintiff).  Even if charges are never filed, law enforcement might choose to use the materials as part of its investigation to induce a witness to cooperate or freedom of information laws may require disclosure.  Further, disclosing information to law enforcement in the hope that they will attack an adversary or file charges, cannot be said to be done "in the pursuit of ... trial preparation."  *Id*. Courts therefore find that a waiver "vindicates the principle of full disclosure, prevents the unfairness of selective revelations, and reflects the common-sense perception that in most such cases the privacy attending creation of the work-product had either served its purpose or was of little

importance in the first place." *Three Crown Ltd. P'ship. v. Salomon Bros. Inc.,* 1993 WL 277182, at *2 (S.D.N.Y. July 21, 1993) (no protection for work product materials when used to "persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation).

Pursuant to this precedent, Plaintiffs' repeated and voluntary disclosures of Rosenfield's documents throughout 2017 and 2018 to the District Attorney and to the police, waives any arguable work product protection associated with Rosenfield's forensic accounting.[3]

### B. Plaintiffs Have Also Waived Any Purported Work Product Protection Applicable to Rosenfield's Forensic Accounting Given Its Discovery Responses In This Case.

In addition to a waiver stemming from voluntary disclosure to third parties, work product protection is clearly waived when documents are shared with adversaries. *In re Steinhardt Partners, L.P.,* 9 F.3d 230 (2d Cir.1993); *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir.1982); *In re Grand Jury Proceedings,* 219 F.3d 175, 191 (2d Cir. 2000); *Strougo v. BEA Associates,* 199 F.R.D. 515, 521–22 (S.D. N.Y. 2001) ("Once a party allows an adversary to share in an otherwise privileged document," "the need for the privilege disappears," and may disappear forever, even as to different and subsequent litigators"). Moreover, a party cannot partially disclose a privileged document nor selectively waive the privilege and then expect it to remain a shield on the same subject matter. *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 138 (N.D.N.Y. 2007); *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 103 (S.D.N.Y. 2000) ("Generally, the work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain protected information").

As outlined in Defendants' prior submissions, Plaintiffs have produced over 1,000 pages of Rosenfield emails, forensic reports and communications in response to discovery requests. These productions were not inadvertent as they were made through a series of piecemeal productions beginning in December of 2018 and continuing through 2019. Further, in January of 2019, Rule 26 initial disclosures were exchanged and both parties listed Rosenfield as a fact witness and as a "person likely to have discoverable information pursuant to FRCP 26(a)(1)(A)(i)." In April of 2019, Defendants served written discovery requests to Plaintiffs seeking Rosenfield-related documents as follows:

> All documents and/or communications related to the Rosenfeld Report, including but not limited to documents and/or communications referenced in such report, relied upon in the drafting of such report, and any subsequent amendment or supplement relating thereto.

---

[3] Plaintiffs argue that a purported "common interest" somehow precludes a finding of waiver. They offer no proof that the District Attorney or police ever shared any "common interest" agreement with them, as government agencies are viewed to be neither adversaries nor allies in this scenario. Moreover the cases they cite for the "common interest" principle are not applicable. For example, in *Egiazarayan v. Zalmayev*, 290 F.R.D. 421 (S.D.N.Y. 2013), the attorney had actually entered into a retention agreement with the third party public relations firm who agreed in writing to maintain the work product protection as to clients emails shared with them as part of this retention agreement. No such retention agreement exists here. In *Winfield v. City of New York*, 2018 U.S. Dist. LEXIS 79281 (S.D.N.Y. May 10, 2018), the concept of "common interest" was never even discussed as the court addressed whether one party could review over 3,000 documents listed on a privilege log before challenging the asserted work product privilege.

(See Dkt. 53, Exhibit "I" at No. 2).  The "Rosenfield Report" was defined to be the initial 317 page "report prepared by Rosenfield & Co, dated June 2, 2017" which Plaintiffs had already produced to Defendants.  In responding to this discovery request, Plaintiffs never objected, nor asserted any privilege in their response.  This failure to object is a clear waiver.  Moreover, Plaintiffs responded by continuing to produce documents relating to Rosenfield's forensic accounting, its communications with third parties, *as well as Rosenfield's communications with Plaintiffs and Millman* – which further dispels any purported privilege attached to these documents.  Almost three years have elapsed since Plaintiffs first produced Rosenfield documents to Defendants and no privilege log has ever been provided asserting any purported work product privilege.  This failure to provide any privilege log is further evidence of waiver. See *Hurst v. F.W. Woolworth Co.*, 1997 WL 61051, *6 (S.D.N.Y. Feb. 11, 1997) (finding of waiver may be appropriate where log is never or untimely provided); *Wilson v. New York City Housing Authority*, 1996 WL 524337, *2 (S.D.N.Y. Sept. 16, 1996) ("To the extent defendants attempt to assert privilege, their failure to serve an index of privilege documents in conformity with [former] Local Rule 46(e)(2) has resulted in waiver of any privilege they may have otherwise had").

Plaintiffs clearly do not want Defendants to have access to the information Rosenfield possesses.  While they argue that they no longer intend to call Rosenfield as a witness, this argument misses the point.  A question of waiver is not contingent on whether a document is ultimately admitted into evidence or a particular witness called at trial.  The waiver analysis turns on whether the purportedly covered materials are used in a manner that is inconsistent with an intent to treat them as protected materials. See *Granite Partners, LP v. Bears, Stearns & Co.*, 184 F.R.D. 49, 55 (S.D.N.Y 1999) ("the issue of waiver rests not on whether a privileged document is introduced into evidence, but rather whether the party's use of the document is unfair and inconsistent with a claim of privilege").  Here, every action or inaction by Plaintiffs indicates that there was never any intent to treat the Rosenfield documents as protected work product: (1) no retainer agreement with Rosenfield from either Millman or Friedberg; (2) Rosenfield's documents voluntarily shared without any written non-waiver agreement as to work product in place with either the police or the District Attorney; (3) no designation of Rosenfield's documents shared with law enforcement as "protected attorney work product;" (4) listing Rosenfield as a fact witness in Plaintiffs' initial disclosures; (5) Plaintiffs' failure to object or assert any privilege in response to Defendants' discovery requests regarding Rosenfield's documents; and (6)  Plaintiffs' production of over 1,000 pages of Rosenfield documents to Defendants in several rolling document productions.  Plainly, these are not actions taken by parties or attorneys who view materials to be protected attorney work product.

Likewise, Plaintiffs raise the prospect of attempting to clawback over 1,000 pages of Rosenfield documents already produced to Defendants.  The clawback provision under Federal Rule of Evidence 502(d) does not apply to deliberate productions, nor supersede existing Second Circuit case law as to waiver, and does not apply where the privilege never existed or is already lost – as in this case – by virtue of third party voluntary disclosures.  The clawback provision also cannot be manipulated to be the proverbial sword seeking to shield Defendants from mitigating and relevant information likely in Rosenfield's possession.

___

### IV. The Rosenfield Subpoena Does Not Seek Attorney Work Product and Defendants Have A Substantial Need For The Requested Documents In Order to Pursue Their Defense.

Contrary to Plaintiffs' argument, the Rosenfield subpoena does not seek protected attorney work product. It seeks four categories of documents: (1) documents relating to the scope of Rosenfield's engagement with Plaintiffs; (2) documents related to Rosenfield's actual forensic and tax accounting work; (3) billing records; and (4) documents related to Rosenfield's communications with law enforcement regarding its forensic findings. None of these requests implicate the opinions or mental impressions of Millman, nor seek any opinion as to alleged malpractice by Defendants.

Rosenfield's records as to its tax and forensic accounting services are not privileged under New York law. See *Karta Industries, Inc. v. Insurance Co. of State of Pennsylvania,* 258 A.D. 375 (1st Dept. 1999); *U.S. v. Pizzo,* 260 F.Supp. 216, 220 (S.D.N.Y. 1966) (stating that there is no privilege for an accountant-client relationship or work product of an accountant in New York). Likewise, Rosenfield's billing records which were presumably sent to Plaintiffs and not Millman since Millman never retained Rosenfield, are also not attorney work product. See *U.S. v. Aldman*, 68 F.3d 1495 (2d Cir.1995) (communications between accountants and their clients enjoy no privilege). Rosenfield's communications with law enforcement are also not protected given the lack of any written non-waiver agreement as to attorney work product and the failure to designate them as such.

Plaintiffs do not deny that Rosenfield has relevant information or that Defendants have a substantial need for its documentation. Like Plaintiffs, Defendants also listed Rosenfield in their disclosures as a person with relevant information and intend to depose Rosenfield. Defendants need the requested documents in order to fully question Rosnefield. Documents as to the scope of Rosenfield's engagement are critical because the applicable accounting standards differed depending on the parameters of an accountant's engagement. This difference effects the level of scrutiny and inquiry an accountant must exercise and the extent to which the accountant can rely upon the client's representations. Defendants are also entitled to discovery as to precisely what Rosenfield was hired to do and what it was told when it uncovered the alleged theft. Further, Rosenfield's work papers will show what specific accounts or transactions it analyzed in order to uncover the alleged fraud, and what amount of fraud was actually found. Given that Plaintiffs allege that Defendants missed "red flags" as part of their tax engagement, Defendants need to know what Rosenfield did to detect these "red flags." Additionally, both Rosenfield's forensic and tax engagement is critical to Plaintiffs' damage claims. The Complaint alleges an approximate $10 million adverse impact to retained earnings, which would necessarily have both financial statement and tax return implications and be reflected in journal entries presumably prepared by Rosenfield. Defendants need Rosenfield's documents to assess where and how this $10 million loss was accounted for in the financial statements and tax returns, and whether there even was $10 million in losses as alleged. Rosenfield's billing statements are relevant because they will show how the engagement was staffed, the amount of hours devoted to uncovering fraud, the amount of time spent on site, and whether the particular accountants were forensic accountants, as opposed to tax accountants. Lastly, the subpoena seeks documents relating to Rosenfield's communications with the District Attorney's office and police. Based on the partial list of documents produced, it is apparent that Rosenfield had several meetings and/or discussions with law enforcement regarding alleged employee fraud. Yet, only one employee was ever charged and only for a fraction of the alleged $10 million loss alleged in the Complaint. Some documents produced suggest that the District Attorney did not believe the extent of theft allegations Plaintiffs were making, and that Rosenfield believed a full blown forensic audit was required but Plaintiffs refused to pay for it. This information is highly relevant to the defenses asserted by Defendants as to issues of both damages and liability.

---

     For the reasons set forth above, as well as Defendants' prior submission, Defendants respectfully request that Plaintiffs' Motion to Quash be denied such that Defendants are permitted to serve the Rosenfield subpoena.

                                           Very truly yours,

                                           Maureen P. Fitzgerald

MPF:ls
cc:    Jamie Felsen, Esquire
        Emanuel Kataev, Esquire
        Jeremy Koufakis, Esquire
        Jack Slimm, Esquire

LEGAL/138943211.v1