

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8270
Email:  mpfitzgerald@mdwcg.com

September 8, 2021

**VIA ECF**
Judge Taryn A. Merkl
United States Magistrate Judge
U.S. District Court Eastern District of New York
225 Cadman Plaza East, Courtroom 322 N
Brooklyn, NY  11201

> RE:  Star Auto Sales of Bayside, Inc., et al. v. Voynow, Bayard, Whyte and Company, LLP, et al.
> Docket No.:    USDC of Eastern NY No.: 1:18-cv-05775
> Our File No.:  03127.01373

Dear Judge Merkl:

This firm represents the Defendants in the above-referenced matter and we are writing regarding a discovery dispute that has arisen regarding Defendants' attempt to serve three third party subpoena and Plaintiffs' objections.

### I.    Prefatory Statement

This is an accounting malpractice action.  Plaintiffs are five family owned automobile dealerships who allege that, for a period of approximately ten years, various employees, including two former Controllers, engaged in acts of theft or fraud, either individually or in collusion with others.  Plaintiffs claim losses of approximately $10 million and allege that Defendants, who were retained as tax accountants, failed to detect this fraud or otherwise missed certain "red flags" indicative of fraud.  Plaintiffs claim they first became aware of employee fraud in December of 2016 and have continued to investigate suspected employee fraud up through 2020.  Plaintiffs have filed several state court actions against former employees and according to pleadings and testimony in those cases, Plaintiffs' investigation has remained ongoing and uncovered an alleged fraud scheme as recently as October of 2020 that dated back to 2010.

Defense counsel served Plaintiffs with notice that they intended to serve certain third party subpoenas seeking documents from (1) Nissan Motor Acceptance Corporation; (2) Oxford Mifflin Insurance; and (3) JP Morgan Chase Auto Finance.  These subpoenas seek documents not produced by Plaintiffs or otherwise not in Plaintiffs' possession, but which relate to the various fraud schemes or purported "red flags" missed by Defendants or defenses asserted.  Plaintiffs have raised certain objections but not moved to quash the

Judge Taryn A. Merkl
September 8, 2021
Page 2

subpoenas.  Counsel held a "meet and confer" session but have not resolved their differences.  Thus, Defendants seek a ruling overruling Plaintiffs' objections as to the third party subpoenas.

## II.      Legal Standard

Fed.R.Civ.P. 26(b)(1) permits discovery of any non-privileged information relevant to any claim or defense if such information is admissible or reasonably calculated to lead to the discovery of admissible evidence. _Daval Steel Products v. M/V Fakredine_, 951 F.2d 1357, 1367 (2d Cir.1991).  Courts have broad discretion in deciding discovery issues and should assess whether the discovery is relevant to any party's claim or defense, whether it is proportional to the needs of the case, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.   Notably, information within this scope of discovery need not be admissible in evidence to be discoverable.  Fed. R. Civ. P. 26(b)(1); _Grand Cent. P'ship. Inc. v. Cuomo_, 166 F.3d 473, 488 (2d Cir.1999); _Wager v. G4S Secure Integration, LLC,_ 2020 WL 7028564, at *7 (S.D.N.Y. Nov. 27, 2020), _vacated on other grounds and remanded_, 2021 WL 293076 (S.D.N.Y. Jan. 28, 2021).  If a party objects to discovery requests, that party bears the burden of showing why the discovery should be denied. _Freydl v. Meringolo_, 2011 WL 2566087, at *3 (S.D.N.Y. June 16, 2011). The resisting party must show how, "despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." _Sokol v. Wyeth, Inc._, 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008).

Significantly, a party does not have standing to object to a subpoena issued to a third-party witness unless the movant has alleged some personal privacy right or privilege to the documents sought. See _McNerney v. Archer Daniels Midland Co_., 164 F.R.D. 584, 587 (W.D.N.Y. 1995), _citing_, _Langford v. Chrysler Motors Corp._, 513 F.2d 1121, 1126 (2d Cir.1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); _Universitas Educ., LLC v. Nova Group, Inc.,_ 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."); _Wager v. G4S Secure Integration, LLC_, 2020 WL 7028564, at *12 (S.D.N.Y. Nov. 27, 2020), _vacated and remanded_, 2021 WL 293076 (S.D.N.Y. Jan. 28, 2021) (overruling objections as defendant had no standing to object to plaintiff's subpoenas directed to third parties because it failed to assert any claim of privilege or personal right in connection with those subpoenas, and had no standing to challenge them on grounds of relevancy); _Brown v. Braddick_, 595 F.2d 961 (5th Cir.1979); _Vogue Instrument Corp. v. Lem Instruments Corp_., 41 F.R.D. 346, 348 (S.D.N.Y.1967).

## III.      Plaintiffs' Objections To Third Party Subpoenas Should Be Overruled

Defendants seek to serve subpoenas on (1) Nissan Motor Acceptance Company; (2) JP Morgan Chase Auto Finance; and (3) Oxford Mifflin Insurance Company. (See Ex. A-C).   Plaintiffs object on various grounds but do not assert any privilege or personal privacy rights.  (See Objections, Ex. "D").  Given the broad standard for discovery and the relevance of the requested documents to the claims and defenses at issue, Defendants request that Plaintiffs' objections be overruled.

### A. Subpoena to Nissan Motor Acceptance Corporation ("NMAC")

Judge Taryn A. Merkl
September 8, 2021
Page 3

_____

Plaintiffs have sued Carmen Jones, a former Accounts Payable clerk, alleging that she was involved in numerous fraud schemes, including one involving NMAC.  Plaintiffs' owner Michael Koufakis has testified that the damages  resulting from Ms. Jones' alleged fraud are also being claimed in this case. (See M. Koufakis Dep. 69:22-25, Ex. "E").  According to Plaintiffs' complaint against Ms. Jones, in October of 2010, NMAC commenced a program with all Nissan dealerships, wherein it provided quarterly bonus payments to dealerships for each vehicle leased.  However, Plaintiffs allege that ownership was wholly unaware of the existence of this bonus program or the fact that NMAC was issuing credits or payments.  They contend that Ms. Jones stole approximately $390,000 of these NMAC bonus funds from October of 2010 through April of 2016 by fraudulent journal entries and that her purported theft was not discovered by management until May 2020. (See Carmen Jones Complaint excerpts, Ex. "F").

Defendants seek to serve a subpoena on NMAC seeking documents relating to what information Plaintiffs had about this NMAC program and what amounts were actually paid to Plaintiffs as part of this bonus program.  The subpoena seeks the following categories of documents:

1.  All documents relating to any communications with Star Nissan, Inc. relating to or referencing any NMAC dealer bonus or incentive program.

2.  All communications between You and mkoufakis@gmail.com relating to or referencing any NMAC dealer bonus or incentive program.

3.  All communications between You and jkoufakis@aol.com relating to or referencing any NMAC dealer bonus or incentive program.

4.  All documents or communications between Paul Proctor with Star Nissan, Inc. or its representatives regarding any NMAC bonus program or incentive program.

5.  All documents relating to or referencing payments made by You to Star Nissan, Inc. as part of any dealer bonus or incentive program.

6.  All documents relating to any site visit by You to Star Nissan, Inc.

(See proposed NMAC Subpoena, Ex. A).

**Notably, Plaintiffs do not have company email.  All employees or owners used their personal email accounts to communicate with various third parties such as NMAC.**  As a result, Plaintiffs would not have communications between their employees or owners and NMAC on any server.  Defendants seek documents and communications relating to what information Plaintiffs or their owners had about the NMAC bonus program, including information conveyed by NMAC or by Paul Proctor, the assigned NMAC representative, or about his site visits.  Lastly, given that Plaintiffs allege that approximately $390,000 in NMAC bonus money was stolen from 2010 through 2016, Defendants seek documents as to amounts actually paid by NMAC and when and how these payments were made.

Plaintiffs object to the NMAC subpoena as follows:

Judge Taryn A. Merkl
September 8, 2021
Page 4

_____

> The documents you are seeking in this subpoena are responsive to Defendants' Document
> Demand No. 70 to which Plaintiffs are in the process of responding.  Because Defendants
> can obtain the documents directly from Plaintiffs, there is no basis for this subpoena to be
> served.  Plaintiffs have already produced some documents responsive to this demand.

See Ex. D.  However, Plaintiffs' objection that the proposed subpoena seeks documents already produced or otherwise encompassed by Doc. Request No. 70 is simply incorrect.   What has been produced is a document entitled "NMAC Dealer Bonus Earnings Report."  But this document does not show when or how much was actually paid out to Plaintiffs – as opposed to earned -- and thereafter allegedly stolen by Ms. Jones.  Further, the version of the "Dealer Bonus Earnings Report" produced by Plaintiffs is inconsistent with a version produced by Ms. Jones' attorney.  Lastly, none of the documents produced address the pivotal issue as to what Plaintiffs' ownership knew or should have known about the NMAC program.  No documents have been regarding communications from NMAC and/or Paul Proctor which clearly exist, as admitted by Michael Koufakis. (Ex. E, 374:13-23).  Also, no documents addressing the site visits by Mr. Proctor or NMAC to Plaintiffs' dealerships, which routinely took place, have been provided.  Thus, Plaintiffs' objections to Defendants' proposed subpoena are unfounded and should be overruled.

**B.   Subpoena To JP Morgan Chase Auto Finance**

Plaintiffs utilized JP Morgan Chase Auto Financing division ("Chase") for its automobile inventory financing.  Each year, Chase reviewed Plaintiffs' financial statements and posed certain questions.  In their Complaint against Defendants, Plaintiffs allege that Chase raised certain specific questions regarding the retained earnings account and that Plaintiffs repeatedly asked Defendants to investigate and answer the bank's queries."  (See Dkt.1, Complaint, ¶ 59).  Plaintiffs contend that Voynow failed to "notice, investigate or report" certain "red flags" associated with "numerous irregularities" in the financial statements provided to Plaintiffs' banks for financing of automobile inventories."  (See Dkt. 1, Complaint ¶96(a)).

While <u>Defendants' communications with Chase</u> have been produced in discovery, communications between Plaintiffs' owners, Controllers and subsequent accountant with Chase regarding the financial statements and inventory financing have not been produced.  To the extent these communications also involve the same alleged "red flags," those documents are relevant. **As noted above, Plaintiffs do not have company email and cannot provide the emails given that personal email accounts were used.**  Moreover, Plaintiffs allege that employee fraud continued after Voynow's engagement was terminated in December of 2017 but not discovered until 2020.  See Ex. E-F.  Thus, communications with Chase after 2017 which may relate to alleged "red flags" and Plaintiffs' financial statements are relevant to issues of Plaintiffs' own negligence, causation and failure to mitigate damages.  Defendants therefore seek discovery as to Chase's communications with Plaintiffs' owners, Controllers and subsequent accountant regarding the auto financing issues for the period of January 1, 2012 through December 31, 2019 as follows:

1.   All documents or communications regarding underwriting, inventory or floor plan financing or annual credit renewals provided by You to any of the Star Auto Entities.

2.   All documents or communications between You and the following individuals regarding any of the Star Auto Entities:

Judge Taryn A. Merkl
September 8, 2021
Page 5

_____

        a.   mkoufakis@gmail.com or Michael Koufakis;

        b.   gomena05@aol.com or Vivian Karouzakis;

        c.   Sales109@aol.com or Debbie Theocharis;

        d.   Ltsjaxx718@aol.com or Jackie Gibson;

        e.   Rosenfield & Company.

(See proposed Subpoena to JP Morgan Chase Auto Finance, Ex. B).

Plaintiffs sole objection is to the time frame of this request. They argue that "any documents or communications with Chase Auto Finance beyond December 31, 2017 have no bearing on the claims in this case." See Ex. D. This objection is unfounded. While Defendants' engagement ended in December of 2017, the alleged fraud continued until May of 2020, according to Plaintiffs' own testimony. For that reason alone, Voynow is entitled to communications at least through the end of 2019 to ascertain whether Plaintiffs' owners, Controllers or subsequent accountant also missed "red flags" in 2018 and 2019. Further, if Chase communicated with Plaintiffs about alleged errors made by Defendants after Defendants were terminated, that is also relevant evidence. As such, Plaintiffs' objection should be overruled.

C.  **<u>Subpoena to Oxford Mifflin Insurance Company</u>**

Oxford Mifflin Insurance Company is believed to have provided fidelity and/or employee theft insurance coverage to Plaintiffs. Defendants served a discovery request to Plaintiffs seeking "documents or communications relating to or referencing any claims or reports made by you from January 1, 2010 through the present, to any insurance company regarding employee theft or fraud or losses sustained by You as a result of suspected employee theft or fraud by Your employees." In response, Plaintiffs produced a couple of emails, but failed to produce any documents regarding its actual insurance coverage, claims, or communications with its insurer. Because Plaintiffs lack a corporate email server, Plaintiffs do not have possession of all such employee communications and cannot produce communications from their Controllers, Human Resources employees, or owners. Defendants seek to serve a subpoena for documents for the period of January 1, 2010 to December 31, 2020:

1.  All documents relating to any insurance coverage or insurance policy insuring any of the Star Auto Entities for losses arising from or relating to alleged employee fraud, dishonesty or theft.

2.  All documents and communications relating to any claim made by the Star Auto Entities arising from alleged employee theft, dishonesty or fraud.

3.  All documents and communications between You and the following persons relating to any alleged employee theft, dishonesty or fraud at any of the Star Auto Entities:

        a.   mkoufakis@gmail.com or Michael Koufakis;

        b.   gomena05@aol.com or Vivian Karouzakis;

Judge Taryn A. Merkl
September 8, 2021
Page 6

---

       c.   Sales109@aol.com or Debbie Theocharis;

       d.   Ltsjaxx718@aol.com or Jackie Gibson.

(See proposed Subpoena to Oxford Mifflin Insurance, Ex. C).

Plaintiffs object on the following grounds:

> With regard to Demand No. 1, any policy beyond December 31, 2017 has no bearing on the claims in this matter.  If you limit the time period of Document Demand No. 1 to January 1, 2010 through December 31, 2017, Plaintiffs will not move to quash with regard to Document Demand No. 1.

> Demand No. 2 seeks the same documents that are responsive to Defendants' Document Demand No. 66 to which Plaintiffs are in the process of responding.  Because Defendants can obtain the documents directly from Plaintiffs, there is no basis for this demand to be included in the subpoena.

> Demand No. 3 is overbroad and not relevant to the claims as it seeks documents and communications after December 31, 2017.  If you limit the time period to documents and communications regarding claims that occurred through December 31, 2017, Plaintiffs will not move to quash this demand.

See Ex. D.

Again, Plaintiffs seek to impose a cut off of December 31, 2017 on the basis of relevance.  But documents and communications after December 31, 2017 are relevant as Plaintiffs' own pleadings and testimony make clear that employee fraud purportedly occurred after 2017 and that employee fraud occurring in 2016 was only recently discovered in 2020.   According to Michael Koufakis' March 2021 deposition,  "as time went on," … "we uncover more and more schemes that involve more and more people."  (Ex. E at 246:20-22).  Indeed, he testified the the discovery of fraud is ongoing:

> I mean …. We are still uncovering more thefts with various employees.  We're not on a witch hunt, believe it or not, some of these things just come up in the normal course of business.  So we are still finding theft by various employees in various departments even.  As we speak, we have some extremely strong suspicions on some individuals that have yet to be fully proven.

Ex. E at 382:9-14.

Plaintiffs' attempt to cut off discovery at December 31, 2017 is improper.  If Plaintiffs reported employee theft under any fidelity policy, documents regarding the applicable coverage, the reported theft, the investigation by an insurance carrier, or any amounts recovered are relevant to liability and damages in this case.  As to Plaintiffs claim that the subpoena to Oxford Mifflin should not be permitted because "Defendants can obtain the documents directly from Plaintiffs,"  **Plaintiffs do not have a corporate email system nor would they have**

Judge Taryn A. Merkl
September 8, 2021
Page 7

---

**documents relating to any theft investigation conducted by an insurance company.**  Employees – including the Controllers, Human resources, and the owners – used their personal emails to communicate with Oxford Mifflin.  Plaintiffs are not in position to produce these communications.  Moreover, Plaintiffs have asserted the same arbitrary objection to documents after December 31, 2017 in their response to Defendants' discovery and have also failed to produce the insurance policies, investigation or claims documents requested.

   For the reasons set forth above, Defendants respectfully request that Plaintiffs' objections to the three third party subpoenas be overruled.  Thank you for your consideration of this matter and counsel is available should the Court wish to hold a conference call regarding this matter.

         Very truly yours,

         Maureen P. Fitzgerald

MPF:ls
cc:  Jamie Felsen, Esquire
   Emanuel Kataev, Esquire
   Jeremy Koufakis, Esquire
   Jack L. Slimm, Esquire
   Jonathan D. Weiss, Esquire
LEGAL/138943211.v1