

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8270
Email:  mpfitzgerald@mdwcg.com

September 17, 2021

**VIA ECF**
Judge Taryn A. Merkl
United States Magistrate Judge
U.S. District Court Eastern District of New York
225 Cadman Plaza East, Courtroom 322 N
Brooklyn, NY  11201

      RE:    Star Auto Sales of Bayside, Inc., et al. v. Voynow, Bayard, Whyte and Company, LLP, et al.
            Docket No.:    USDC of Eastern NY No.: 1:18-cv-05775
            Our File No.:    03127.01373

Dear Judge Merkl:

    This firm represents the Defendants in the above-referenced matter and we are writing to reply to Plaintiffs' September 14, 2021 submission regarding Defendants' proposed third party subpoena and Plaintiffs' objections.

    **I.**    **The Second Subpoena to NMAC is Needed Because Plaintiffs' Fraud Claim Changed**

    Plaintiffs argue that because Defendants previously issued a subpoena to NMAC, it should not be permitted to issue a second one.  What Plaintiffs neglect to state is that they revised their articulated theory of fraud, and that it was this change that prompted the need for a second subpoena.  Specifically, in their Amended Complaint filed against former employee Carmen Jones, Plaintiffs describe the purported NMAC fraud scheme.  They claimed that NMAC implemented a bonus program in 2010 for dealerships whereby it paid bonus or incentives payments to dealerships by crediting the dealership's "factory open parts" account that the dealership maintained with Nissan North America – a wholly separate entity.  Plaintiffs contended that NMAC's bonus payments were reflected on the factory open parts account maintained with Nissan North America.  Based upon these averments, Defendants issued a subpoena to NMAC seeking documents related to this Nissan North America factory open parts account and payments made through NMAC's bonus program to this account.  NMAC responded to this subpoena stating that no such documents exist.  Thereafter, Defense counsel obtained a copy of the deposition transcript from the Carmen Jones case wherein Michael Koufakis testified about this purported NMAC fraud scheme.  No longer did it have anything to do with Nissan North America or the factory open parts account.  Rather, Koufakis claims that the NMAC fraud scheme was carried out over six years whereby monthly incentive funds paid to Plaintiffs by NMAC were swapped out with either American Express checks or cash from customers.  Koufakis testified that these bonus funds amounted to $1.5 million.  Plaintiffs

also claim that management was wholly unaware of this NMAC bonus program or the $1.5 million bonus payments allegedly made – and stolen - from 2010 up until this alleged fraud was discovered in 2020. Based upon this testimony regarding the NMAC fraud scheme, Defendants revised the subpoena to NMAC.

Contrary to Plaintiffs' argument, the second proposed subpoena is not duplicative of the first. All references to the factory parts open account or Nissan North America are eliminated and it seeks documents relating to the actual bonus payments – not credits -- issued to Plaintiffs. While the Amended Complaint cites approximately $390,000 as the amount of such payments, Koufakis testified it was $1.5 million. Further, because Plaintiffs claim that management had no way of knowing about the NMAC bonus program for a ten year period, Defendants seek documents on this issue, including the emails and periodic reports sent to ownership and management about the NMAC program and the visits of the NMAC representative assigned to visit Plaintiffs' dealership, which presumably would have NMAC's incentive programs being offered.

Plaintiffs also argue that their objections should be sustained because Defendants obtained certain documents in the underlying Carmen Jones lawsuit pursuant to a subpoena to Ms. Jones' lawyer. However, Defendants reviewed these documents and then prepared the proposed NMAC subpoena due to the open questions raised by the documents and the testimony of Michael Koufakis. Specifically, Koufakis testified at his deposition that the amount of NMAC funds allegedly stolen was $1.5 million – which is not supported by the documents produced by Carmen Jones' attorney. The documents produced do not address critical issues of (1) how much was actually paid out by NMAC to Plaintiffs under the bonus program; (2) when and how was it paid; (3) what information was Plaintiffs' management provided with by NMAC given the assertion that employees hid information about this bonus program from ownership. Because Plaintiffs ultimately seek to hold Defendants responsible for this alleged NMAC fraud scheme, Defendants should be permitted to serve the proposed NMAC subpoena to obtain this relevant information.

  **II.**  **Plaintiffs' Temporal Objections to the JP Morgan Chase and Oxford Mifflin Subpoenas Should be Overruled.**

Plaintiffs' desire to impose a hardline 2017 deadline on Defendants' discovery efforts is improper. Simply because Plaintiffs terminated Defendants' tax engagement in December of 2017 does not mean that the window of relevant evidence automatically closes on December 31, 2017.

As to JP Morgan Chase Auto Finance ("Chase"), **both** Defendants and Plaintiffs' management communicated with Chase regarding Plaintiffs' inventory financing and their financial statements. Plaintiffs contend that there were "red flags" that should have been apparent from these communications and from the financial statements **which were prepared by Plaintiffs**. They contend that these communications should have raised questions about certain accounts, particularly the retained earnings account. But Plaintiffs only produced Defendants' communications with Chase. To the extent there were discussions regarding these purported "red flags" between Chase and management or Plaintiffs' subsequent accountant after 2017, that is discoverable information. To the extent Plaintiffs discussed Voynow's communications prior to 12/31/17 with Chase after 2017, that is also relevant information. It does not matter if these communications occurred before or after 12/31/2017 as they are relevant to the issue as to whether there were actually "red flags" in the financial statements or whether other communications clarified questions or issues raised by Chase.

Judge Taryn A. Merkl
September 17, 2021
Page 3

---

Plaintiffs' temporal objection also ignores when financial statements are finalized. Typically, financial statements are not finalized until months after the end of the calendar year. Tax returns are not finalized until the Fall after the end of the calendar year. Plaintiffs contend that fraud occurred in 2017 and should have been apparent in the 2017 financial statements. Thus, post-2017 communications with Chase about these 2017 financial statements would have necessarily taken place in 2018. Plaintiffs' attempt to impose a hard 12/31/17 deadline is improper and clearly seeks to deprive Defendants of access to pivotal information for their defense.

Likewise, Plaintiffs' attempt for a cut off from discovery to Oxford Mifflin as of 12/31/17 is also improper. As apparent from the testimony, Plaintiffs contend that employee fraud occurred after 2017. In addition, Plaintiffs contend that fraud occurring before 2017 was not discovered until 2020. To the extent there were investigations of such claims, those documents and communications would clearly extend past 2017. In fact, there are documents produced which indicate that communications between management and Oxford Mifflin continued past 2017 regarding many of the schemes at issue in this case. Those documents have not been provided and as initially pointed out, Plaintiffs' ownership and management used personal emails – which are not contained on any server controlled by Plaintiffs – but can be obtained through the subpoena.

A key defenses being asserted is predicated upon managements' prior knowledge regarding certain employees, its lack of proper oversight, and its culpability in preventing employee theft. If there were post-2017 communications with Oxford Mifflin which relate to these issues – as Defendants believe exist – then that is discoverable information. Plaintiffs' attempt to preclude Defendants from access to this evidence by arguing for a hard 12/31/17 cutoff is plainly improper and contrary to Rule 26's allowance for discovery of information relevant to any defense.

Thank you for your consideration of this matter and counsel is available should the Court wish to hold a conference call regarding this matter.

Very truly yours,

*Maureen Fitzgerald*

Maureen P. Fitzgerald

MPF:ls
cc:  Jamie Felsen, Esquire
     Emanuel Kataev, Esquire
     Jeremy Koufakis, Esquire
     Jack L. Slimm, Esquire
     Jonathan D. Weiss, Esquire

LEGAL/138943211.v1