# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NEW YORK 11042**
**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

*Author: Jamie S. Felsen - Member*
*Direct E-Mail Address: jamiefelsen@mllaborlaw.com*
*Direct Dial: (516) 303-1391*

**Via ECF**

February 17, 2023

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re:*   **Star Auto Sales of Bayside, Inc.,** *et al.* **v. Voynow, Bayard, Whyte and Co., LLP ("Voynow"),** *et al.*
**Case No.: 1:18-cv-5775 (ERK) (TAM)**

Dear Judge Merkl:

The parties submit this joint status letter pursuant to the Court's December 5, 2022 order.

## PLAINTIFFS' POSITION

The parties have been actively engaged in completing discovery including taking numerous depositions. All depositions are expected to be completed by the March 17, 2023 deadline for fact discovery.

**NMAC Deposition**

Plaintiffs are in the process of rescheduling the 30(b)(6) deposition of a non-party, NMAC, that NMAC requested to be rescheduled, but do not yet have a confirmed date. Plaintiffs are attempting to schedule NMAC's deposition on a date prior to March 17, but in the event that we are unable to, we will inform the Court and seek a brief extension of the discovery deadline to take the deposition. Plaintiffs previously deposed an employee of NMAC, Paul Proctor, in his individual capacity, and Mr. Proctor lacked knowledge on certain topics and did not have accurate information on other topics. A 30(b)(6) deposition is warranted so that Plaintiffs can obtain the correct information from a designated witness who is able to testify about the topics contained in the 30(b)(6) notice. Defendants do not have standing to object to the deposition of NMAC, a non-party, and notably, NMAC has not objected to the deposition.

**Reynolds E-Mails**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 2 of 16

Plaintiffs are in the process of gathering Reynolds e-mails that were recently recovered from backup tapes. There are over 11,000 pages of e-mails from 2010-2017 (and many of the pages contain multiple e-mails). Plaintiffs informed Defendants that the e-mails are too voluminous and burdensome to search without search terms and requested that Defendants propose search terms. Defendants refused and demanded that Plaintiffs produce all of the e-mails despite many of the e-mails not being relevant. Plaintiffs are in the process of conducting their own search of these e-mails using search terms and will provide the responsive documents along with the search terms used to Defendants upon completion.

**30(b)(6) Deposition of Voynow**

On February 7, 2023, Plaintiffs noticed a 30(b)(6) deposition of defendant, Voynow for March 7-9. During the depositions of Voynow's principles in their individual capacities, they lacked knowledge about many of the topics. Plaintiffs are entitled to take a 30(b)(6) deposition to ensure that they receive Voynow's responses to these topics. Notably, Defendants deposed Plaintiffs' three (3) principles in their individual capacities and thereafter noticed five (5) days of 30(b)(6) depositions. The parties agreed for Defendants to have three (3) full days of deposition time for a 30(b)(6) deposition. Indeed, after Defendants spent three (3) full days deposing Plaintiffs' three (3) principles in their individual capacities, on February 1, 2023, Defendants deposed Plaintiffs' 30(b)(6) designee, Jacqueline Cutillo, from 10:30 am until 8:00 pm; on February 2, 2023, Defendants deposed Ms. Cutillo from 9:00 am until 4:00 pm; and on February 2, 2023, Defendants deposed Ms. Cutillo from 9:00 am until 4:30 pm. Defendants also noticed Ms. Cutillo's deposition in her individual capacity and that deposition is scheduled for February 28, 2023.

Moreover, Plaintiffs served the 30(b)(6) deposition notice on Voynow on February 7, 2023 prior to depositions of Voynow's principles Randall Franzen, Robert Kirkhope, and Robert Seibel, and Defendants did not assert any objection to Plaintiffs' 30(b)(6) deposition notice until February 17, 2023. Plaintiffs focused their depositions on their personal knowledge, rather than the corporation's knowledge anticipating that a 30(b)(6) deposition of Voynow will be taken.

**McCloskey Deposition**

The deposition of Steven McCloskey is scheduled for March 7, 2023. Mr. McCloskey is a former Voynow employee who performed services for Plaintiffs while he was employed by Voynow. Moreover, Mr. McCloskey is currently employed by an auto dealership to whom Voynow provides accounting services. Central to this case is the scope of work that Plaintiffs retained Voynow to perform. Plaintiffs allege that, in addition to performing tax work, Voynow was retained to review its books and records to detect any irregularities and discrepancies. No written engagement agreements describing the scope of work Plaintiffs retained Voynow to perform exist. Because of the absence of a written engagement letter and given the dispute concerning the scope of work Voynow provided to Plaintiffs, the services that Voynow performs for other dealerships and the amount other dealers pay Voynow for said services is relevant.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 3 of 16

Indeed, if other dealers pay amounts comparable to what Plaintiffs paid Voynow it would be indicative that Voynow was providing similar services for Plaintiffs.

Moreover, as with NMAC, Defendants lack standing to object to the deposition of Mr. McCloskey, a non-party, and Mr. McCloskey has raised no objection to being deposed.

**Possible Additional Discovery**

It is possible that additional depositions or document demands may be necessary after the conclusion of the scheduled depositions. Moreover, after the discovery disputes discussed below are addressed by the Court, additional discovery may be necessary.

**Mediation**

Plaintiffs request to be referred to the EDNY Mediation Panel for a mediation so long as Defendants' insurer will attend the mediation. Due to the complexity of the issues in this case and the Court's limited resources, Plaintiffs do not believe that a settlement conference will be fruitful.

**Dispute Concerning Defendants' Response to Certain Document Demands**

The parties met and conferred as recently as February 10, 2023 to attempt to resolve the below disputes without success.

**Plaintiffs' First Request for Documents**

**Demand No. 21**: **All documents concerning any billing and/or payment for services rendered by any Defendant to Vivian Karouzakis.**
**Demand No. 22: a complete set of all workpapers for any and all services provided to Vivian Karouzakis**.

Plaintiffs allege that their former controller, Vivian Karouzakis, stole millions of dollars from Plaintiffs and that Defendants (Plaintiffs' accountants) should have discovered and prevented her thefts prior to Plaintiffs discovering them on their own. Voynow prepared personal tax returns for Vivian Karouzakis and her husband (who was also employed by Plaintiffs). Voynow, therefore, had intimate knowledge about the Karouzakis' finances, including their income and the fact that they paid off a large mortgage without any inheritance or other lawful means to do so. This information, coupled with the red flags contained in the records that Voynow reviewed during the scope of their engagement with Plaintiffs support Plaintiffs' claims. Plaintiffs are entitled to Voynow's work papers related to its engagement with the Karouzakis'. Moreover, Plaintiffs are entitled to know whether the Karouzakis' paid Voynow for its services, and if so, the amount of such payments and the method of payment. In the event that Voynow did not charge the Karouzakis' for the preparation of their tax returns it may tend to establish that Voynow was aware of and possibly complicit in Karouzakis' theft from Plaintiffs.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 4 of 16

Defendants also argue that they are prohibited from producing the Karouzakis' tax returns under "Pennsylvania's CPA Law".  Defendants have not cited legal authority for this proposition.  To the extent Defendants are attempting to rely on 63 P.S. § 9.11a, it is not applicable.  It states:

> Except by permission of the client engaging him or the heirs, successors or personal representatives of a client, a licensee or a person employed by a licensee shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed unless the sharing of confidential information is within the peer review process. This provision on confidentiality shall prevent the board from receiving reports relative to and in connection with any professional services as a certified public accountant, public accountant or firm. The information derived from or as the result of such professional services shall be deemed confidential and privileged. **Nothing in this section shall be taken or construed as prohibiting the disclosure of information … in making disclosures in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant, public accountant or firm are at issue in an action, investigation or proceeding in which the certified public accountant, public accountant or firm is a party.**

63 P.S. § 9.11a (emphasis added).

This statute expressly permits the disclosure of tax returns by a CPA where, as here, the CPA is a party to the litigation.  Moreover, the privilege, if applicable at all in a case in New York and not Pennsylvania, is not meant to be used to prevent disclosure of relevant information.

**Demand No. 11: all documents concerning any peer review reporting respecting any Defendant**

Defendants have articulated that, because Defendants believe Voynow's engagement with Plaintiffs solely covered tax preparation work, and peer review reporting is not done for tax preparation work, responsive documents are not relevant.  However, the scope of work is at the heart of this case, with Plaintiffs arguing, and evidence supporting, that the engagement covered much more than tax preparation work.  Peer review deals with adherence to policies and procedures and quality of all accounting services. The process also includes a review of continuing professional education and human resources of a firm.  If there is a deficiency in any area of the accounting firm, it will be addressed in the peer review process.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 5 of 16

**Plaintiffs' Second Request for Documents**

**Plaintiffs' Demand No. 9: A sample of documents (i.e. different time periods and different services) concerning Defendants' retainers or engagement letter with other automobile dealers involving services other than tax work since January 2010.**

Central to this case is the scope of work that Plaintiffs retained Voynow to perform. Plaintiffs allege that, in addition to performing tax work, Voynow was retained to review its books and records to detect any irregularities and discrepancies. No written engagement agreements describing the scope of work Plaintiffs retained Voynow to perform exist. Plaintiffs paid Voynow a significant flat rate for its services that included tax work and non-tax work. Because of the absence of any written engagement agreements between Plaintiffs and Voynow, written retainer agreements with other dealerships who retained Voynow to perform more than just tax work is entirely relevant. Indeed, to the extent that the retainer agreements identify payments similar to those that Plaintiffs made to Voynow and services similar to those Voynow performed for Plaintiffs, it would be a strong indication that Voynow performed the same non-tax work for Plaintiffs as other dealerships. Plaintiffs have offered to permit Defendants to delete the identity of the clients to address Defendants' confidentiality concern.

**Plaintiffs' Fourth Request for Documents**

**Demand No. 1: All Documents and Communications populated from the use of the search terms outlined in Addendum "A" annexed hereto. (A copy of Addendum A is annexed hereto as Exhibit "A")**

This demand was issued after a conversation between the parties wherein Defendants requested that Plaintiffs provide them with search terms. Despite previously requesting that Plaintiffs provide search terms, Defendants now refuse to perform searches utilizing any of the search terms provided by Plaintiffs. During a meet and confer, Plaintiffs agreed to limit the searches by using the search terms in Addendum A and performing searches only within (i) the electronic Star files that Voynow maintains through their ediscovery provider, KLD; and (ii) emails sent or received from the domain "@voynowbayard.com" with the term "Star" or "Koufakis".

**Demand No. 2: All Documents and Communications from the following document demands requested previously for the time period of January 1, 1996 through December 31, 2009:**
> **Plaintiffs' First Demand for the Production of Documents dated March 1, 2019: Demand Nos. 1, 2, 3, 7, 8, 20, 21, 30, 32, 33, 34.**
> **Plaintiffs' Second Demand for the Production of Documents dated April 23, 2021: Demand No. 1**
> **Plaintiffs' Third Demand for the Production of Documents dated November 23, 2021: Demand Nos. 1, 25, 26, 27, 50, 51, 52**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 6 of 16

This demand mirrors demands previously served, but broadens the time period for which the documents are sought to the period January 1, 1996 through December 31, 2009 (the prior demands sought documents beginning in 2010). Voynow provided services for Plaintiffs from 1996 through 2017. Because the scope of Voynow's work for Plaintiffs never changed, documents that reflect the scope of work and Voynow's work papers, for example, for the period prior to 2010 are relevant. During a meet and confer, Defendants asserted a statute of limitations defense to the relevance of these documents. However, under the continuous representation doctrine, the statute of limitations is tolled on malpractice claims until the conclusion of the representation. See Meskunas v. Auerbach, 2019 U.S. Dist. LEXIS 26531 (S.D.N.Y. Feb. 19, 2019); Lobel Chem. Corp. v. Petitto, 2016 NY Slip Op 30273(U) (Sup. Ct. N.Y. Cty. Feb. 16, 2016).

**Demand No. 6: All Documents Concerning checklists Voynow used regarding review engagements for automobile dealership clients as referenced in David Kumor's deposition (See Generally p.140-141).**

The scope of Voynow's work for Plaintiffs is a hotly contested issue in this litigation. A written engagement agreement does not exist. Plaintiffs claim that the scope of work included reviews of its books and records but Defendants claim that the scope of work was limited to preparation of tax returns. Based on Mr. Kumor's testimony, when Voynow performed review engagements, they utilized checklists. Details concerning the contents of these checklists are entirely relevant because they would contain information about the specific tasks associated with Voynow's review engagements. During depositions, Defendants have attempted to associate work that does not appear to be related to tax return preparation with tax return work. However, if the checklists for review engagements identifies work that Defendants ae attempting to classify as tax return work it would belie Defendants' testimony.

**Demand No. 7 (Documents identifying the meaning of the billing codes used by Voynow (i.e. a key or legend) for any billing entries it entered into the various billing software used by Voynow over the years when billing time for Services it provided to Plaintiffs.**
**Demand No. 9: The attachment named "Copy of Star Overview (2).xlsx" that is in the email VOYNOW_026329-VOYNOW_026330 (but was not produced with the email).**

Defendants agreed to produce responsive documents to these 2 demands by February 13, 2023 but have not done so.

**Demand No. 12: All Documents and Communications between any Defendant and any Plaintiff regarding substantive accounting Services from January 1, 1996 through December 31, 2009.**

Defendants state they already produced all responsive documents. However, Plaintiffs' prior request for these documents related to the period commencing January 1, 2010, so it is unlikely that Defendants would have voluntarily produced all responsive documents for this new earlier period.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 7 of 16

**Demand No. 13: All Documents and Communications between any Defendant and Vivian Karouzakis.**
**Demand No. 14: All Documents and Communications between any Defendant and Despina Theocharis.**
**Demand No. 15 (All Documents and Communications between any Defendant and Jacqueline Cutillo (a/k/a Jacqueline Gibson or Jackie Gibson).**

Plaintiffs allege that Defendants negligently failed to detect various theft schemes engaged in by Vivian Karouzakis and Despina Theocharis, Plaintiff's former controllers with whom Defendants routinely communicated. The documentary evidence and deposition testimony establish that, on several occasions, Defendants noticed red flags and spoke with Ms. Karouzakis who apparently provided an explanation which was satisfactory to Defendants. Given this relationship, documents exchanged by and communications between Defendants and Vivian Karouzakis and Despina Theocharis are entirely relevant.

Jacqueline Cutillo replaced Vivian Karouzakis and Despina Theocharis as Plaintiffs' controller, and was employed by Plaintiff for many years prior to becoming controller during which time she interacted with Defendants. She testified that she informed Defendants about red flags which Defendants told her to not worry about and ignored. Given Jacqueline Cutillo's interactions with Defendants, documents exchanged by and communications between Defendants and Jacqueline Cutillo are entirely relevant.

**Miscellaneous**

Defendants produced a September 1, 2015 e-mail (VOYNOW_026406) that references an attachment was provided with the e-mail, but the attachment was not produced by Defendants. Defendants agreed to produce the attachment by February 13, 2023 but have failed to do so. Similarly, document VOYNOW_003670 is light and illegible and appears to contain an attachment. Defendants agreed to produce a legible copy and the attachment by February 13, 2023 but have failed to do so.

Moreover, after Plaintiffs' counsel informed Defendants' counsel on February 13, 2023 that Plaintiffs' counsel represents Karen Macias, a non-party whose deposition has been scheduled, Defendants' counsel attempted to contact Ms. Macias on February 15 and 16. Plaintiffs respectfully request an order directing Defendants' counsel to cease attempting to communicate with Ms. Macias since she is represented by Plaintiffs' counsel.

## DEFENDANTS' POSITION

**NMAC Deposition**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 8 of 16

Defendants – not Plaintiffs – subpoenaed an employee of NMAC, Paul Proctor, for a deposition taken on January 6, 2023. Defendants deny that Mr. Proctor lacked knowledge on certain topics and otherwise did not have accurate information on other topics. Defendants do not object to a 30(b)(6) deposition of a NMAC representative, provided it is taken on or before the discovery deadline of March 17, 2023.

**Reynolds E-Mails**

Plaintiffs never had any company email system. Employees used personal emails for conducting business on behalf of Plaintiffs. However, there was a limited email system available for internal employee communications through the Reynolds & Reynolds Dealer Management System maintained by Plaintiffs. Defendants have requested these internal emails be produced. To date, they have not been as Plaintiffs cited the burden associated with producing these emails. Specifically, Plaintiffs claim that the emails were pulled from back-up tapes and are in a pdf format that CANNOT be searched. Plaintiffs claimed it was too burdensome for Plaintiffs to have to review the extensive pdf files. Defendants countered that Plaintiffs should then produce the full pdf file of emails and both parties can bear the burden of reviewing the emails equally. The parties held a meet and confer session on February 10th. The issue of search terms were never discussed because according to Plaintiffs, the emails were in a format that could not be searched. To the extent, the emails are not produced by February 24th, Defendants have advised Plaintiffs that they intend to file a motion on this issue.

**30(b)(6) Deposition of Voynow**

Plaintiffs have recently noticed the 30(b)(6) deposition of the corporate defendant Voynow. This deposition notice lists 86 topics in total and proposes to take the deposition over three days. Notably, Plaintiffs have already taken the depositions of fourteen (14) current and former accountants employed by Voynow that worked on the engagement at issue in this case, including four current partners and the managing partner. All of these witnesses testified ot many of the 86 topics set forth in the 30(b)(6) notice. Defendants have objected to the 30(b)(6) notice on numerous grounds and the parties plan to hold a meet and confer to address these objections in the next week. To the extent the parties are unable to resolve these objections, it is anticipated Defendants will file a motion for protective order.

While Plaintiffs seem to argue that they are entitled to a 30(b)(6) deposition because Defendants took depositions of the five Plaintiff corporations, they neglect to fully inform the court as to the background on this issue. Specifically, Plaintiffs produced a chart in its interrogatory answers that purports to set forth the alleged thefts occurring at each of the five corporations and the amounts of damages being claimed as a result. A portion of this chart is set forth below.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 9 of 16

| CUSTOMER CLAIM SCHEME | EMPLOYEE(S) WHO STOLE | DATES | STAR TOYOTA | STAR NISSAN | STAR SUBARU | STAR CHRYSLER | STAR HYUNDAI | TOTAL |
|---|---|---|---|---|---|---|---|---|
| CUSTOMER CLAIM SCHEME | DOUGLAS FILARDO | 11/25/2008-11/1/2016 | $ - | $ - | $ 378,157.08 | $ - | $ - | $ 378,157.08 |
| MOTORSPORTS ADVERTISING SCHEME | DOUGLAS FILARDO | 6/15/2014-7/10/2017 | $ - | $ - | $ 1,419,874.83 | $ - | $ - | $ 1,419,874.83 |
| STAPLES SCHEME | CARMEN JONES | 8/2001-5/2017 | $ - | $ 68,852.67 | $ - | $ - | $ - | $ 68,852.67 |
| AMEX SCHEME | CARMEN JONES | 10/16/2010-9/25/2014 | $ - | $ 365,034.04 | $ - | $ - | $ - | $ 365,034.04 |
| REVERSE DEPOSITS SCHEME | CARMEN JONES | 2/20/2013-4/19/2016 | $ - | $ 319,150.98 | $ - | $ - | $ - | $ 319,150.98 |
| CARMEN JONES HIGHLANDER SCHEME | VIVIAN KAROUZAKIS, CARMEN JONES | 9/2016 | $ - | $ 3,000.00 | $ - | $ - | $ - | $ 3,000.00 |
| LOAN PAYMENTS NOT REPAID SCHEME | DESPINA THEOCHARIS | 2010-2016 | $ - | $ - | $ - | $ 98,897.98 | $ - | $ 98,897.98 |
| VEHICLES SCHEME | DESPINA THEOCHARIS | 12/27/2011-3/24/2015 | $ - | $ - | $ - | $ 9,500.00 | $ - | $ 9,500.00 |
| TUNDRA AND AVALON SCHEME | VIVIAN KAROUZAKIS, MICHAEL KAROUZAKIS | 5/2013-3/2016 | $ 40,000.00 | $ - | $ - | $ - | $ - | $ 40,000.00 |
| ANGIE RAPTIS HIGHLANDER SCHEME | VIVIAN KAROUZAKIS, ANGE RAPTIS | 9/2016 | $ 3,000.00 | $ - | $ - | $ - | $ - | $ 3,000.00 |
| PAYING PERSONAL CREDITORS SCHEME | VIVIAN KAROUZAKIS | 5/14/2013-11/18/2016 | $ 9,147.70 | $ 510,076.86 | $ - | $ - | $ 34,500.00 | $ 553,724.56 |
| DRAWING FALSIFIED CHECKS (PTSN) SCHEME | VIVIAN KAROUZAKIS | 9/9/2003-11/18/2016 | $ 463,000.00 | $ 786,400.00 | $ - | $ - | $ - | $ 1,249,400.00 |
| VITALIANO/VIVIAN STOLEN AVALON SCHEME | VIVIAN KAROUZAKIS | 2/2016 | $ 20,000.00 | $ - | $ - | $ - | $ - | $ 20,000.00 |
| TOTAL STOLEN FROM SCHEMES | | | $ 535,147.70 | $ 2,052,514.55 | $ 1,798,031.91 | $ 108,397.98 | $ 34,500.00 | $ 4,528,592.14 |

When Defendants took the individual depositions of the three owners of the five Plaintiff corporations, two testified that they knew nothing about any of the schemes listed or the amounts of purported theft or the damages claims of their respective corporations. A third owner knew a small amount but repeatedly deferred to the current controller when asked specific questions about the content of the chart. Thus, Defendants noticed 30(b)(6) depositions of the five Plaintiffs requesting that they produce someone who could testify as to the alleged schemes and damages set forth in the chart. Given that there were five Plaintiffs, those depositions were spread out over three days.

In contrast, Plaintiffs now seek to take a deposition of a single corporate Defendant regarding 86 discrete deposition topics, despite having already deposed 14 of Defendant's current and former employees and questioned them about the vast majority of these topics. Should the parties not be able to resolve their dispute, Defendants will seek a protective order on this issue following the upcoming meet and confer session.

**McCloskey Deposition**

Plaintiff also recently served a subpoena for a deposition of the controller of one of Voynow's current clients who is based in Pennsylvania. This client has nothing to do with Plaintiffs or this case. While McCloskey was at one time an employee of Voynow, he has not worked for Defendants since the mid-1990s. Plaintiffs' real intent in seeking this deposition is to inquire about Voynow's current services being provided to McCloskey's current employer. McCloskey provided Voynow with a copy of the subpoena he received as Plaintiffs' counsel notably has never served a copy on defense counsel. Defendants do have standing to object on behalf of their client and McCloskey has specifically requested that Defendants do so. Should Plaintiffs not withdraw the subpoena, Defendants will be filing a Motion to Quash.

Furthermore, Plaintiffs are simply incorrect with regard to the lack of any engagement letter issued by Defendants with regard to their tax engagement. Written annual engagements letters for the tax engagement at issue were issued each year following the completion of the prior year's tax returns for Plainitffs. These written engagement letters have been produced in discovery. While they were not signed by the Plaintiffs, they were not required to be signed under applicable AICPA guidelines in order to complete a tax engagement.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 10 of 16

Services Defendants provided to other clients, such as McCloskey's current employer, have absolutely no relevance to this case. Defendants' employees have consistently testified that every client is different, their respective records are different, and that one engagement cannot be compared to another. Plaintiffs' request for deposition testimony relating to engagements for other clients of Voynow has no bearing whatsoever on this case. Indeed, it is essentially akin to a patient suing his doctor for a purportedly botched surgery, and then claiming that he is entitled to medical records and testimony from other patients wholly unrelated to him who were operated on by the same physician. Notably, Plaintiffs cite no law supporting their request.

**Possible Additional Discovery**

While Plaintiffs envision the possibility of the need for additional discovery and depositions beyond the Court's March 17th deadline, Defendants do not and are adamantly opposed to any such request or any extension of that deadline. This case has been in existence for over five years and Plaintiffs have had more than ample time to complete discovery.

**Mediation**

Defendants are agreeable to a referral for mediation provided that all three individual owners of each of the Plaintiffs be required to attend any such mediation in person.

**Dispute Concerning Defendants' Response to Certain Document Demands**

**Defendants' Response to Each of the Nine Discovery Issues Raised by Plaintiffs:**

**Issue No. 1: Demand No. 21**: **All documents concerning any billing and/or payment for services rendered by any Defendant to Vivian Karouzakis.**
**Demand No. 22: a complete set of all workpapers for any and all services provided to Vivian Karouzakis**.

Defendants' Position: Defendants were retained as tax accountants for the Plaintiffs in approximately 1996 when Plaintiffs were involved in a contentious IRS audit. Several years later, one of Plaintiffs owners requested that Voynow assist Plaintiffs' controller Vivian Karazoukis when she also had a tax issue with the IRS involving rental property she owned. Voynow assisted her and then prepared her and her husband's annual personal tax returns for several years thereafter. In late 2016, Plaintiffs were notified by Capital One bank that some of the checks which had been legitimately signed by Plaintiffs' authorized check owners were actually payments used to pay Karazoukis' personal credit card account at Capital One. Plaintiffs fired her thereafter and she was later indicted for theft totaling approximately $486,000. She is the only employee who has ever been indicted. Plaintiffs then filed a civil lawsuit in NY state court against Karazoukis'

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 11 of 16

(now deceased), her Estate and her husband. During the course of that lawsuit (which remains pending), Plaintiffs obtained Karazoukis' personal tax returns and her banking records. Despite having her tax returns, Plaintiffs now request Defendants' workpapers and billing records relating to the Karazoukis' personal income tax engagement. Plaintiffs have never provided the requisite taxpayer consent either from Karazoukis' Estate or her husband for release of these documents. Defendants objected to this request on the basis of relevance, privilege and that the requests are overly broad. Defendants have produced its workpapers for purposes of its tax engagement with Plaintiffs; however, there is no basis to require production of such documents relating to a non-party's tax engagement. Indeed, Section 7316 of the Internal Revenue Code explicitly precludes a tax accountant from releasing documents provided by a taxpayer for purposes of preparing his or her tax return absent written taxpayer consent or a court order. See 26 U.S.C. §7216. Likewise, Pennsylvania's CPA Law provides that workpapers cannot be transferred or released absent client consent:

> …. No such statement, record, schedule, working paper or memorandum shall be sold, transferred or bequeathed, without the consent of the client or his personal representative, successor or assignee, to anyone other than one or more surviving or new partners, members, shareholders or other owners of an equity interest of the licensee or any combined or merged firm or successor in interest to the licensee

63 Pa. Stat. § 9.11

Here, while Defendants have produced the tax returns and workpapers relating to its tax engagement with Plaintiffs, there is simply no entitlement to the workpapers associated with the tax engagement of a non-party to this case who has not consented to the release of such documents. Plaintiffs' contention that Defendants were purportedly "aware of and possibly complicit in Krazoukis theft" is utter nonsense. As noted above, Plaintiffs owners actually signed the checks at issue that facilitated her theft.

**Issue No 2.: Demand No. 11: all documents concerning any peer review reporting respecting any Defendant**

Defendants' Position: Defendants objected to Plaintiffs' request for all documents relating to any peer reporting on the basis of relevance, undue burden, confidentiality, privilege and to the extent it is harassing. In Pennsylvania, the peer review process is governed by the PAICPA which adheres to the AICPA guidelines. Explicit in this guidance is that the scope of a peer review only covers accounting and auditing engagements performed under the SASs, the SSARSs, SSAEs, Government Auditing Standards, and PCAOB standards and does not include tax or consulting services.

This case involves a tax engagement. During the period at issue, Defendants issued annual engagement letters outlining the tax engagement and the applicable standards – none of which

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 12 of 16

fall within the scope of any peer review process required by the AICPA.  Plaintiffs never signed these engagement letters and now contend Defendants were actually hired to do something "more than a review but less than an audit" and to "specifically detect fraud."  Putting aside the fact that no such service even exists in the accounting world, there were NEVER any reviewed or audited financial statements ever issued – only tax returns.  Nor did Plaintiffs ever provide any signed management representation letter – which would be required in a review or audit engagement.   The topic of peer review has already been addressed in depositions.  Defendant's managing partner testified that the peer reviewer assigned to Voynow selected certain files relating to review engagements that Defendant had done for other clients.  Because Plaintiffs' engagement was solely a tax engagement – and not a review engagement – it was never part of any peer review process.  Hence, there is no relevant information applicable to Plaintiffs contained within any peer review report.

Moreover, Pennsylvania CPA Law explicitly provides that peer review reports and related information shall remain confidential.  Pennsylvania court's have consistently held that peer review documentation is not discoverable.  See e.g. 49 Pa. Code. §11.82; *Leadbetter v. Keystone Anesthesia Consultants, Ltd*., 256 A.3d 1164 (Pa. 2021); *Finney v. Palakovich*. 2010 WL 3703791 (M.D. Pa. September 15, 2010) (citing recognition of peer review privilege and precluding discovery of a peer review report for a prison).  Plaintiffs have not cited any authority to support their discovery requests for Defendants' peer review documentation in general – let alone any authority where the peer review reporting had nothing whatsoever to do with Plaintiffs' engagement.

**Issue No. 3: Plaintiffs' Demand No. 9: A sample of documents (i.e. different time periods and different services) concerning Defendants' retainers or engagement letter with other automobile dealers involving services other than tax work since January 2010.**

Defendants' Position:  This is a professional liability case arising from Defendants' engagement with Plaintiffs.  Plaintiffs contend that various employees allegedly stole from them (only Karazoukis was ever indicted) and that Defendants allegedly should have detected this purported theft during their annual tax engagements.  Defendants have produced their entire files regarding services rendered to Plaintiffs during the period at issue.  This includes their workpapers, tax returns prepared, email communications with Plaintiffs' employees,  and documents relating to numerous tax audits handled over the years.  Defendants have also produced the annual engagement letters sent to Plaintiffs outlining the scope of its tax engagements – which Plaintiffs never signed.  Defendants have produced their billing records reflecting that services were billed per hour – and not based upon any flat fee.   This documentation collectively reflects the services that were provided.

Services Defendants provided to other clients have absolutely no relevance to this case.  Defendants objected to this request on the basis of relevance, undue burden, harassment, overbroad, privilege and confidentiality.  Defendants' employees have consistently testified that every client is different, their respective records are different, and that one cannot be compared

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 13 of 16

to another.  Plaintiffs' request for documents relating to other clients of Voynow has no bearing whatsoever on this case.  Indeed, it is essentially akin to a patient suing his doctor for a purportedly botched surgery, and then claiming that he is entitled to medical records relating to surgeries performed on other patients wholly unrelated to him.  Notably, Plaintiffs cite no law supporting their request.

**Issue No. 4: Demand No. 1: All Documents and Communications populated from the use of the search terms outlined in Addendum "A" annexed hereto.  (A copy of Addendum A is annexed hereto as Exhibit "A")**

Defendants' Position:  Prior to the actual filing of this lawsuit, Defendants' counsel retained a third party ediscovery vendor to forensically collect all documentation applicable to Plaintiffs' engagement.  All of that documentation (workpapers, communications, client records, billing documents, tax returns, etc) from 2010 through 2017 have been produced to Plaintiffs.  Furthermore, through various discovery requests served by each party, the "relevant" discovery period has been consistently defined by both parties as "2010 through the present."  Recently, Plaintiffs served a 4th Request for Production of Documents now seeking to expand the period at issue back to 1996 and force Defendants to go back search records approximately 20 years beyond the period within the statute of limitations.  Plaintiffs make this Request despite repeatedly taking the position that it would not produce any of its own documents prior to 2012.

The proposed search terms attached to Plaintiffs' 4th Request for Production consist of approximately 192 discrete search terms.  These search terms include phrases such as "workpaper" or "account receivable" or a random series of numbers such as "150" or "1099."  The requests were not limited to Defendants' engagement with Plaintiffs and would essentially require a search of Defendants' ENTIRE system for ALL of its clients SINCE 1996.  Defendants objected inasmuch as the requests were overbroad, unduly burdensome; disproportionate and/or comprised of common, generic or general terms; sought documents protected by the accountant client privilege and/or the attorney client privilege or confidential and/or proprietary information of Voynow clients, employees or other persons unrelated to the claims asserted by Plaintiffs; and to the extent it was not reasonably designed to lead to the discovery of admissible evidence.  Plaintiffs have never proposed any reduction of its search terms beyond the 192 items listed in Exhibit A to the 4th Request for Documents nor to the domains specified above.  Simply put, Plaintiffs have all of the pertinent documents relating to Defendants' engagement with Plaintiffs and are free to run whatever searches they want within that production.

**Issue No. 5: Demand No. 2: All Documents and Communications from the following document demands requested previously for the time period of January 1, 1996 through December 31, 2009:**
**Plaintiffs' First Demand for the Production of Documents dated March 1, 2019: Demand Nos. 1, 2, 3, 7, 8, 20, 21, 30, 32, 33, 34.**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 14 of 16

**Plaintiffs' Second Demand for the Production of Documents dated April 23, 2021: Demand No. 1**
**Plaintiffs' Third Demand for the Production of Documents dated November 23, 2021: Demand Nos. 1, 25, 26, 27, 50, 51, 52**

Defendants' Position:  Defendants incorporate their response above with regard to Plaintiffs' last minute attempt to now expand the relevant discovery period to begin from 1996.  For the last five years, the parties have both defined the "relevant period" for discovery requests as beginning in 2010. For Plaintiffs to now seek to expand that period to 15 years earlier when the discovery deadline is weeks away is nothing more than harassment.  Furthermore, Plaintiffs' recitation of the law regarding the statute of limitations is incorrect.

A cause of action charging that a professional failed to perform services with due care and in accordance with the recognized and accepted practices of the profession is governed by the three-year Statute of Limitations applicable to negligence actions. See, CPLR 214.   In the context of a malpractice action against an accountant, the claim accrues upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice and, as a consequence of such reliance, can become liable for tax deficiencies.  *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541, 644 N.E.2d 1009, 1012 (1994).  Voynow provided Plaintiffs with completed tax returns on an annual basis.  New engagement letters were issued for each subsequent tax year.

The statute of limitations in a malpractice case may be tolled "where the parties engaged in a continuous professional relationship," but only "where the continuous representation was in connection with the particular transaction which is the subject of the action" *Mitschele v. Schultz*, 36 A.D.3d 249, 253, 826 N.Y.S.2d 14 (2006). A recurring use of a professional's services does not constitute continuous representation if the later services are not related to the original services which gave rise to the action.  *Id*; *Booth v. Kriegel*, 36 A.D.3d 312, 314, 825 N.Y.S.2d 193 (2006).  Utilizing an accounting firm's services for annual tax preparation or auditing services constitutes the provision of separate and discrete services for each year, precluding application of the continuous representation doctrine. See *Williamson v. PricewaterhouseCoopers*, 9 N.Y.3d at 10–11, 840 N.Y.S.2d 730; *Booth v. Kriegel*, 36 A.D.3d at 313, 825 N.Y.S.2d 193); *Giarratano v. Silver,* 46 A.D.3d 1053, 1055, 847 N.Y.S.2d 698, 701 (2007).   Plaintiffs' reliance upon the "continuous representation" doctrine is without merit and the caselaw it cited is wholly inapplicable to the facts of this case.

**Issue No. 6: Demand No. 6: All Documents Concerning checklists Voynow used regarding review engagements for automobile dealership clients as referenced in David Kumor's deposition (See Generally p.140-141).**

Defendants' Position:  Written annual engagements letters for the tax engagement do exist and have been produced in discovery.  They were not signed by the Plaintiffs nor were they required to be signed under applicable AICPA guidelines in order to complete a tax engagement.  In

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 15 of 16

contrast, a reviewed financial statement engagement requires that a client sign an engagement letter and also provide a signed management representation letter before any reviewed financial statements could ever be issued by a CPA. Here, there was never a review engagement because (1) there is no signed engagement letter outlining the review as mandated by the AICPA; (2) there is no signed management representation letter as mandated by the AICPA; (3) there are no reviewed financial statements ever issued – only annual tax returns; and (4) Plaintiffs were never even under any requirement by any bank or financial institution to have reviewed financial statements prepared by an accountant. Rather, Plaintiffs' bank only required tax returns.

At the deposition of David Kumor, a former Voynow accountant, he was asked about certain interim visits Voynow made to Plaintiffs during the tax year and as part of its tax engagement. He explicitly stated that "the interims aren't reviews (sic). They are just an interim thing. .. The review is much more in depth that what we do for the interim." He then stated that during review engagements, Voynow would follow certain checklists however he explicitly testified that these checklists do not pertain to tax engagements and that Voynow's engagement with Plaintiffs was a tax engagement – not a review engagement. See Deposition Transcript at pp 139-141; 258-261, attached hereto as Exhibit B). For that reason, checklists used by Voynow for reviewed financial statement engagements for other clients are simply not relevant.

**Issue No. 7: Demand No. 7 (Documents identifying the meaning of the billing codes used by Voynow (i.e. a key or legend) for any billing entries it entered into the various billing software used by Voynow over the years when billing time for Services it provided to Plaintiffs. Demand No. 9: The attachment named "Copy of Star Overview (2).xlsx" that is in the email VOYNOW_026329-VOYNOW_026330 (but was not produced with the email).**

Defendants' Position: Defendants will produce these documents within a week.

**Issue No. 8: Demand No. 12: All Documents and Communications between any Defendant and any Plaintiff regarding substantive accounting Services from January 1, 1996 through December 31, 2009.**

Defendants' Position: Defendants incorporate their prior position as to extending the "relevant" discovery period at this juncture to 1996 wherein the parties have both defined the "relevant" discovery period as beginning in 2010 for the last five ears of this litigation. Indeed, in their own discovery responses, Plaintiffs take the position that they will not produce anything before 2012.

**Issue No. 9: Demand No. 13: All Documents and Communications between any Defendant and Vivian Karouzakis.**
**Demand No. 14: All Documents and Communications between any Defendant and Despina Theocharis.**
**Demand No. 15 (All Documents and Communications between any Defendant and Jacqueline Cutillo (a/k/a Jacqueline Gibson or Jackie Gibson).**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
February 17, 2023
Page 16 of 16

Defendants' Position: Defendants have already produced it email communications with each of Plaintiffs' three controllers referenced above. This production encompassed the period of 2010 through the end of the engagement in 2017. The only documents withheld relate to communications between Karazoukis relating to the preparation of her own personal tax return as these documents are privileged and otherwise fall within the scope of 26 U.S.C. §7216. Plaintiffs have never provided taxpayer consent to authorize the release of them.

To the extent Plaintiffs seek to force Defendants to go back to 1996, Defendants reiterate its position regarding the statute of limitations and the "relevant time period" as set forth above. Defendants also refute the suggestion that the documentary evidence and depositions show purported red flags as asserted by Plaintiffs.

**Miscellaneous**

Defendants' Position: Defendants will produce the attachment within a week. As to Karen Macias, defense counsel was previously advised by Plaintiffs' counsel that he was not representing Karen Macias for purposes of her deposition. Plaintiffs' counsel provided her last known address. Defendants then served Macias with a subpoena and defense counsel's office has attempted to contact her to confirm the date for her deposition. On February 14, 2023, Plaintiffs' counsel advised defense counsel that contrary to his prior representation, he was now representing Macias. No further contact has been made by defense counsel since being so apprised.

            Respectfully submitted,

            **MILMAN LABUDA LAW GROUP PLLC**

            /s/ Jamie S. Felsen

cc: All counsel of record