# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---------------------------------------- X

STAR AUTO SALES OF BAYSIDE, INC. (d/b/a
STAR TOYOTA OF BAYSIDE), STAR AUTO
SALES OF QUEENS, LLC (d/b/a STAR SUBARU),
STAR HYUNDAI LLC (d/b/a STAR HYUNDAI),
STAR NISSAN, INC. (d/b/a STAR NISSAN), METRO
CHRYSLER PLYMOUTH INC. (d/b/a STAR
CHRYSLER JEEP DODGE), STAR AUTO SALES
OF QUEENS COUNTY LLC (d/b/a STAR FIAT), and
STAR AUTO SALES OF QUEENS VILLAGE LLC
(d/b/a STAR MITSUBISHI),

                        Plaintiffs,

              v.

VOYNOW, BAYARD, WHYTE AND COMPANY,
LLP, HUGH WHYTE, and RANDALL FRANZEN,

                        Defendants.

1:18-cv-05775 (ERK) (TAM)

---------------------------------------- X

## NOTICE OF RULE 30(B)(6) DEPOSITION OF VOYNOW, BAYARD, WHYTE AND COMPANY, LLP

**PLEASE TAKE NOTICE** that pursuant to FRCP 30(b)(6), Plaintiffs, by and through their undersigned counsel, will take the deposition upon oral examination of the person(s) designated by VOYNOW, BAYARD, WHYTE AND COMPANY, LLP, 1210 NORTHBROOK DRIVE, SUITE 140, TREVOSE, PA 19053, with respect to the topics set forth below. The deposition will take place at 11:00 a.m. on March 7, 8 (if necessary), and 9 (if necessary), 2023, before a Notary Public or other person authorized by law to administer oaths. The deposition will take place at MILMAN LABUDA LAW GROUP PLLC, 3000 MARCUS AVE, SUITE 3W8, LAKE SUCCESS, NY 11042. The deposition will be recorded by stenographic means and videotaped. You are invited to attend and cross-examine.

Plaintiffs reserve the right to seek relief from the court in the event that the designated deponent is not properly prepared to testify on behalf of VOYNOW, BAYARD, WHYTE AND COMPANY, LLP with respect to each of the identified topics.

## RULE 30(b)(6) TOPICS

### DEFINITIONS

1. The term "Plaintiffs" shall mean Star Auto Sales of Bayside, Inc. (d/b/a Star Toyota of Bayside), Star Auto Sales of Queens, LLC (d/b/a Star Subaru), Star Hyundai LLC (d/b/a Star Hyundai), Star Nissan, Inc. (d/b/a Star Nissan), Metro Chrysler Plymouth Inc. (d/b/a Star Chrysler Jeep Dodge), Star Auto Sales of Queens County LLC (d/b/a Star Fiat), Star Auto Sales of Queens Village LLC (d/b/a Star Mitsubishi) and Star Auto Body of Queens Village, LLC (d/b/a Star Auto Body of Queens Village), as well as their current and former principals, agents, and employees.

2. The terms "You," "Your," "Voynow," or "Defendants" shall mean Voynow, Bayard, Whyte and Company, LLP, and any predecessor entity.

3. The term "Vivian Karouzakis" shall mean Vivian Karouzakis, as well as her husband, children, representatives, agents and/or any other persons acting or purporting to act on her behalf.

4. The term "Workpapers" shall mean all Documents generated, used, obtained, copied or reviewed by any employee of Voynow during the course of work on or Concerning any engagement or Service for any Plaintiff.

5. The term "Service" or "Services" shall mean in the broadest possible sense each and every accounting or other form of advice or work provided by Defendants to any client of Voynow, including without limitation to any advice or work regarding preparation of tax returns, review, audit, and attest work, attention to year end account balances for tax purposes or otherwise, year end closings, account reconciliations, financing arrangements of any kind, factory part reconciliations, management, planning, personnel, training of personal and operating or accounting systems.

6. The term "Concerning" means relating to, referring to, describing, reflecting, evidencing or constituting.

7. The term "Communication" or "Communications" means the transmittal or information (in the form of facts, ideas, inquiries or otherwise).

8. The term "Document" or "Documents" is intended to have the broadest possible meaning enforceable under the Federal Rules of Civil Procedure. "Document" or "Documents" includes any writings, recordings, or photographs, and includes without limitation any memoranda, correspondence, Communication, e-mails, calendars, notebooks, files, folders, notes, telephone logs, diary entries, appointment books, graphics, images, film, videos, Workpapers, checklists, photographs, plans, agreements, contracts, files, schedules, journals, text messages, facsimiles, minutes of meetings, stenographic and handwritten notes, news articles and press releases, printouts, punch cards, logs, desk

2

calendars, diaries, appointment books, computer data, tapes and discs, video tapes, voice recordings, all drafts and/or non-identical copies of every such writing, any other items of a similar nature, and any other type of writing or record or media, including any "ESI" (as that term is defined below), regardless of the manner in which produced or recorded, whether handwritten, typed, printed or recorded. Any Document bearing marks, including, but not limited to, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof is a separate Document.

        9.        The term "ESI" means all electronic information stored on any kind of electronic media or in an electronic format including, but not limited to:

      a.       e-mails (including their attachments, if any, and e-mails currently located in any folder outside an inbox (i.e. e-mails in sent items or outbox, deleted items, or personal folders, wherever located, including on any personal web-based or other e-mail accounts (e.g. Yahoo Mail or Gmail));

      b.       instant messages (i.e. G-chat, AOL IM, Facetime Messenger, iMessages, WhatsApp, GroupMe, Viber);

      c.       text messages (including SMS or MMS);

      d.       video calls, chats or transcripts (i.e. via Facetime, Skype);

      e.       social media Communications, which means any Communication sent or received through a social networking or media website; software or program and includes, but is not limited to tweets; profiles; postings (including postings that include photographs or videos); status updates; tagged photographs; comments (including wall comments); messages; videos; causes or groups joined; or weblog entries on any social networking or other social media website (i.e. Facebook, Instagram, Twitter, LinkedIn, Blogger, YouTube, MySpace);

      f.       office suite Documents, which includes, but is not limited to, word processing Documents; presentations; spreadsheets; and databases;

      g.       calendars; notes, tasks and reminders;

      h.       telephone logs and voicemails; and

      i.       all other types of information created, stored, or transferred electronically, wherever located, including but not limited to on a desktop, laptop or tablet computer; iPhone, Android or other mobile device; USB/thumb drive or other flash memory drive or removable storage device; web or cloud-based storage server (including those stored as part of a social networking account); or a CD, DVD, audio or video tape or any other storage device. This term also includes a draft of any of the above types of ESI (i.e. draft of an e-mail or word processing Document).

## TOPICS

1. Voynow's engagement with Plaintiffs including but not limited to:

    a. The details surrounding Plaintiffs retention of Voynow and the terms of the initial engagement and any subsequent modifications to the engagement;

    b. Each engagement letter Voynow requested Plaintiffs sign, including but not limited to: method of transmittal of each engagement letter, identity of individual who transmitted each engagement letter, the types of Services identified in engagement letter, the identity of the individual who drafted and modified each engagement letter, and the location of any fully executed engagement letter, if any;

    c. Details regarding each visit Voynow scheduled to Plaintiffs' dealership, including but not limited to the process for scheduling, dates of such visits, the identity of each of Voynow's employees attending each visit, details Concerning the manner in which Voynow determines which employees to send to Plaintiffs' dealerships, qualifications of Voynow's employees sent to Plaintiffs' dealerships, instructions given to employees prior to and during visits to Plaintiffs' dealerships, and the purpose and agenda for each visit;

    d. Tasks performed by Voynow for Plaintiffs, including but not limited to, Voynow's assignment of tasks performed by Voynow's employees for Plaintiffs and details regarding the specific work performed by Voynow's employees;

    e. Invoices, timesheets, and billing worksheets Concerning work performed by Voynow for Plaintiffs, including but not limited to, the process for submitting, reviewing, and approval of invoices and timesheets, the frequency by which invoices were issued to Plaintiffs and the Services performed by Voynow related to each invoice;

    f. The identity of the individual Voynow emloyees associated with each billing entry on Voynow's "Billing Worksheet" during the period of 2016-2017, including but not limited to VOYNOW_024311, VOYNOW_024817-VOYNOW_024821;

    g. Voynow's employees socializing with Plaintiffs' employees, including but not limited to alcohol consumption, meals, and gifts exchanged;

    h. Voynow's billing codes, rates and charges (i.e. breakdown) for each Service Voynow rendered for Plaintiffs;

    i. Interim letters/interim reports/interim notes that Voynow made/generated for Plaintiffs, including but not limited to, the contents therein, the identity of the drafters, the process of drafting, modifying, approving, and method of delivery (including but not limited to VOYNOW_011159-VOYNOW_011161);

    j. Voynow's preservation of Documents;

4

k. Voynow's Workpapers, including but not limited to, those used and/or referred to in the interim letters/interim reports/interim notes that Voynow made/generated for Plaintiffs (including but not limited to VOYNOW_011159-VOYNOW_011161);

l. Voynow's Workpapers, including but not limited to Correspondence, letters, reports, notes, and timesheets Concerning Plaintiffs not maintaining the "integrity of deposits" as discussed during Hugh Whyte's deposition and the dates of said meetings;

m. Details Concerning the "Cashier Audit" Voynow performed for Plaintiffs, including but not limited to, the identity of the engagement it was performed under and the identity of its drafters/authors (VOYNOW_010991-VOYNOW_010992);

n. Details Concerning Nick Chester, including but not limited to Voynow recommending Nick Chester to Plaintiffs;

o. Details Concerning Voynow's creation and distribution of Documents pertaining to internal controls at dealerships, including STAR00013748-00013757;

p. Voynow's investigation of theft at Plaintiffs' dealerships, including but not limited to Voynow's investigation of the schemes outlined in Exhibit A from Plaintiffs' response to Defendants' Second Set of Interrogatories dated December 3, 2021;

q. Red flags in Voynow's Workpapers or otherwise related to fraud at Plaintiffs' dealerships;

r. Programs and checklists used for auto dealership clients, including but not limited to 1099 review;

s. Voynow's review of Plaintiffs' parts statement;

t. Voynow's Services Concerning counting cars and inventory of repair orders or vehicles, including but not limited to VOYNOW_024403;

u. Voynow's Services Concerning Brett Bausinger's billing entries on VOYNOW_024245 and supporting documentation regarding work billed;

v. Voynow's response (and supporting documentation) to emails from JPMorgan Chase, including but not limited to VOYNOW_003393-VOYNOW_003394, VOYNOW_003606-003609;

w. Information related to the advertising adjustment in VOYNOW_001674 and VOYNOW_002402-VOYNOW_002405 and all supporting documentation;

x. The identity of the drafters/authors of the following Documents and the circumstances the Document(s) were made/generated for Plaintiffs:

    i. VOYNOW_006591;

5

      ii.    STAR00013748-STAR00013757.

2. Voynow's training and expertise on the Reynolds and Reynolds Company's Dealership Management System used by Plaintiffs from 1996 through 2017.

3. Voynow's accounting training of its employees from 1996 through 2017.

4. Voynow's internal controls and implementation of policies and procedures.

5. Voynow's engagement letters with automobile clients Concerning internal controls.

6. Voynow's marketing as accounting experts in the automobile industry.

7. Voynow's policies and procedures regarding written engagement letters with its clients and administration of engagements (written and verbal).

8. Voynow's policies and procedures regarding interim visits, including internal Documents relating to the purposes of such visits.

9. Exhibit 16 from Plaintiffs' deposition containing a newsletter from Voynow and screenshots of its website, including but not limited to, substance of the materials, the identity of the drafters/authors of the newsletter and website materials along with the identity of the individual(s) who approved this material.

10. Services performed by Voynow for Vivian Karouzakis and Michael Karouzakis.

11. Description of types of Services/engagements Voynow provided to automotive dealerships from 1996 through 2017, including but not limited to engagement letters and changes thereto, corresponding billing rates, frequency of invoices, amount for each type of Service provided by Voynow, amount of invoices, description of work related to invoices for Services, frequency of visits to clients and purpose for each visit, number and identity of Voynow employees sent for client visits and details regarding their qualifications and work experience and assignments at client visits, drafting and issuance of interim reports.

12. Voynow's investigation and Services provided Concerning the employee theft uncovered at Thompson Toyota in or around January 2016, Middletown Honda and Springfield Hyundai, and other employee thefts or accounting irregularities at Voynow's automotive dealership clients from 1996 through 2017.

13. Voynow's policies and procedures when a Voynow employee detects a possible accounting irregularity while servicing a Voynow client.

14. Voynow's review and preservation of bank statements and Documents from clients' accounting software for bank reconciliations.

15. Voynow's preservation of Documents and records (and searches thereof) in this instant matter, including but not limited to backups of Voynow employees' phones, individual computers at Voynow's office, and Voynow's server.

16. Voynow's timekeeping software used from 1996 through 2017, including but not limited to, the identification of billing codes.

17. Prior allegations of malpractice, breach of contract, and similar claims against Voynow.

18. Conversations with former Voynow employees regarding the instant Action.

19. Conversations with current or former employees of Plaintiffs related to the instant Action and following the commencement of the instant Action.

20. Information that Plaintiffs were aware of prior thefts by Vivian Karouzakis.

21. Information that Plaintiffs created the impression that misappropriation of company funds was tolerated. Information that the Koufakis brothers regularly took money from the dealerships' daily cash receipts, including but not limited to, Communications between Voynow and Vivian Karouzakis regarding same.

22. Information that the Koufakis brothers expressed a concern to Voynow that they could be blackmailed by Plaintiffs' employees.

23. Information about Voynow's participation in peer review program, including results of peer reviews, any deficiencies noted, how often performed, and firm(s) that perform(s) peer reviews.

24. Information about Voynow's knowledge of employees from Plaintiffs who were arrested, including but not limited to Voynow's knowledge of the criminal acts by said employees.

25. Information about how Voynow obtained Documents Concerning any Documents Concerning the criminal actions commenced against Plaintiffs' employees.

26. Information about attest and/or compilation Services provided by Voynow to any individual owner of Plaintiffs.

27. Defendants' Answer, affirmative defenses, and counterclaims.

28. Defendants' responses to interrogatories.

29. Defendants' responses to Document demands.

30. Defendants' initial disclosures.

31. Voynow's Communications with Plaintiffs from 1996 through 2017 regarding Voynow's preparation of Plaintiffs' tax returns, including but not limited to the timing of Voynow's requests for Plaintiffs to provide tax-related information to assist Voynow in preparing Plaintiffs' tax returns.

32. Information, including but not limited to, identity of person's handwriting, pertaining to the following Documents:

    a. VOYNOW_024798;

7

b. VOYNOW_024607;

c. VOYNOW_024669-VOYNOW_024670;

d. VOYNOW_024690;

e. VOYNOW_022986;

f. VOYNOW_008401;

g. VOYNOW_006670;

h. VOYNOW_008828;

i. VOYNOW_008830;

j. VOYNOW_007864;

k. VOYNOW_006540;

l. VOYNOW_012912;

m. VOYNOW_010014;

n. VOYNOW_012388;

o. VOYNOW_021153;

p. VOYNOW_008783;

q. VOYNOW_008338;

r. VOYNOW_021089;

s. VOYNOW_020151;

t. VOYNOW_009410;

u. VOYNOW_009888-VOYNOW_009889;

v. VOYNOW_007874-VOYNOW_007875;

w. VOYNOW_024769;

x. VOYNOW_024825;

y. VOYNOW_024827;

z. VOYNOW_024437;

aa. VOYNOW_024752;

bb. VOYNOW_024439;

cc. VOYNOW_024859; and

dd. VOYNOW_024753-VOYNOW_024754.

Dated: Lake Success, New York
February 7, 2023

MILMAN LABUDA LAW GROUP PLLC

By: _____
Joseph M. Labuda, Esq.
Jamie S. Felsen, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
jamiefelsen@mllaborlaw.com
*Attorneys for Plaintiffs*

9