# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
STAR AUTO SALES OF BAYSIDE, INC. : Case No.: 18-cv-05775 (ERK) (TAM)
(d/b/a STAR TOYOTA OF BAYSIDE), :
STAR AUTO SALES OF QUEENS, LLC :
(d/b/a STAR SUBARU), STAR HYUNDAI LLC :
(d/b/a STAR HYUNDAI), STAR NISSAN, INC. :
(d/b/a STAR NISSAN), METRO CHRYSLER : PLAINTIFFS' RESPONSES
PLYMOUTH INC. (d/b/a STAR CHRYSLER : AND OBJECTIONS TO
JEEP DODGE), STAR AUTO SALES OF : DEFENDANTS' FIRST SET OF
QUEENS COUNTY LLC (d/b/a STAR FIAT) : INTERROGATORIES
and STAR AUTO SALES OF QUEENS :
VILLAGE LLC (d/b/a STAR MITSUBISHI), :
:
                Plaintiffs, :
:
v. :
:
VOYNOW, BAYARD, WHYTE :
AND COMPANY, LLP, HUGH WHYTE, :
and RANDALL FRANZEN, :
:
                Defendants. :
---------------------------------------------------------------x

Plaintiffs, Star Auto Sales of Bayside, Inc. (d/b/a Star Toyota of Bayside), Star Auto Sales of Queens, LLC (d/b/a Star Subaru), Star Hyundai LLC (d/b/a Star Hyundai), Star Nissan, Inc. (d/b/a Star Nissan), Metro Chrysler Plymouth Inc. (d/b/a Star Chrysler Jeep Dodge), Star Auto Sales of Queens County LLC (d/b/a Star Fiat), Star Auto Sales of Queens Village LLC (d/b/a Star Mitsubishi) and Star Auto Body of Queens Village, LLC (d/b/a Star Auto Body of Queens Village) (collectively, "Plaintiffs"), by and through their attorneys, Milman Labuda Law Group PLLC, respond to Defendants' First Set of Interrogatories dated April 23, 2021 (the "Interrogatories"), as follows:

## GENERAL OBJECTIONS

Plaintiffs' responses are subject to the specific General Objections set forth below, each of which is incorporated by reference into the responses to each interrogatory. The production of

1

information encompassed within Plaintiffs' General Objections shall not be deemed a waiver of these objections.

1. The right to object as to competency, relevancy, materiality, privilege and general admissibility of the responses and the subject matter thereof as evidence for any purpose in any further proceeding in this action (including trial) and in any other action.

2. The right to object to the use of any such responses, or the subject matter thereof, on any ground in any further proceeding of this action (including trial) and in any other action.

3. The right at any time to revise, correct, add to, or clarify any of said answers set forth herein.

4. The right to object on any ground at any time to a request for a further or supplemental response (including a further or supplemental production of documents).

5. Plaintiffs object to these uniformly overbroad interrogatories to the extent that they seek information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of this case. In addition, Defendants' interrogatories are overly board to the extent that they cover time periods not relevant to the instant litigation.

6. Plaintiffs object to Defendants' interrogatories to the extent they are so overly broad that they impose an undue burden upon them.

7. Plaintiffs object to Defendants' interrogatories to the extent they are unreasonably vague and ambiguous.

8. Plaintiffs object to Defendants' interrogatories to the extent they seek information that is confidential, proprietary, and/or protected from discovery by the attorney-client privilege, attorney work product doctrine, self-critical analysis privilege, or any other privilege.

9. Plaintiffs object to Defendants' interrogatories to the extent they seek personal or confidential information.

10. Plaintiffs object to Defendants' interrogatories to the extent they are so overly broad that they impose an undue burden.

11. Plaintiffs object to Defendants' interrogatories to the extent they are unreasonably vague and ambiguous.

12. The following responses are given without prejudice to Plaintiffs' right to produce subsequently discovered information or to make appropriate changes in such responses if additional documents or information is obtained. When - and if - such documents or information is obtained, these responses will be amended or supplemented.

13. Plaintiffs object to Defendants' interrogatories to the extent they assume facts that have not been established. Plaintiffs specifically reserve the right to object to the factual assumption made in these interrogatories.

14. Plaintiffs object to Defendants' interrogatories to the extent that they (i) exceed the permissible scope of discovery established under the Federal Rules of Civil Procedure ("Rules" or "Rule") and (ii) attempt to place obligations upon Plaintiff which are inconsistent with the Rules. Plaintiffs will respond to Defendants' interrogatories in accordance with the Rules

15. Plaintiffs object to and will not respond substantively to Defendants' interrogatories to the extent that they seek information from corporations and individuals other than Plaintiffs.

All of Plaintiffs' responses are made subject to the above comments and qualifications.

## INTERROGATORIES

1. Have You or anyone acting on Your behalf obtained from any person or persons any report, statement, memorandum, recording or testimony concerning the matters

raised in the Complaint or the facts and circumstances of any professional services provided by Voynow. If the answer is in the affirmative, please:

 a. State the name, last known address and present whereabouts, if known, of each such person;

 b. Identify when, where and by whom each such report, statement, memorandum, recording or testimony was obtained or made;

 c. State the substance and nature of each such report, statement, memorandum, recording or testimony;

 d. Produce all documents relating to each such report, statement, memorandum, recording or testimony.

**RESPONSE:** Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague and ambiguous, unduly burdensome, violative of the attorney-client privilege and the attorney work-product doctrine, and not relevant to any claim or defense nor proportional to the needs of this case. Pursuant to Rule 33, this interrogatory counts as five (5) interrogatories. See Fed. R. Civ. P. 33(a)(1). Notwithstanding the foregoing general and specific objections, Plaintiffs state they currently have no responsive written statements or recordings.

 2. With respect to Your contention in paragraph 33 of the Complaint that "the specific terms of [Your] engagement of Voynow each year varied according to [Your] particular needs," do you contend that an agreement or contract was formed at any time between Star Autogroup and Voynow? If so, identify for each such agreement identify:

 a. The date, time and place of its making and the parties thereto;

 b. Whether the contract was in writing or oral, and its terms;

 c. Produce all documents concerning, relating to or evidencing the contract's terms.

**RESPONSE:** Pursuant to Rule 33, this interrogatory counts as four (4) interrogatories. See Fed. R. Civ. P. 33(a)(1). Notwithstanding the foregoing general and specific objections, Plaintiffs state they are unaware of any written agreements signed by any Defendants. Plaintiffs had an oral agreement (and a contract-implied in fact) with Voynow, Bayard, Whyte and Company, LLP ("Voynow") from in or around 1996 until in or around 2017. Voynow was highly recommended by Reynolds & Reynolds ("Reynolds") who considered Voynow "experts" at the time on the Reynolds' system. Based on this recommendation, Plaintiffs

4

interviewed Voynow in or around 1996, and determined Voynow was a good fit since it advertised and held itself out as experts in the automotive industry. The terms of the Voynow engagement included – but were not limited to – Voynow visiting Plaintiffs' dealerships quarterly to detect fraud in each department of each dealership and to maintain the integrity of the financial records. These terms were specifically discussed during Michael Koufakis' ("Koufakis") initial conversations with Voynow. Voynow's duties also included overseeing all accounting processes, accounting entries (including reviewing and verifying the propriety of accounting transactions), and internal procedures. Voynow had, and was given, free reign to review everything whenever and however it deemed fit to ensure no fraud or irregularities were found, and was expected to do so. Plaintiffs usually did not direct Voynow to look at any specific items because they understood that Voynow was an expert in the automotive field and trusted its judgment to review areas most susceptible to fraud. Koufakis, on behalf of Plaintiffs, hired Voynow and was always the first point of contact for Voynow. Plaintiffs, Koufakis, and Defendants agreed that, as part of the scope of Voynow's engagement, that after reviewing and extracting all of the data during each quarterly visit, Voynow would generate questions to ask employees if Voynow discovered any errors, red flags, anything aged outstanding at time of the visit, and/or any other issues. Plaintiffs and Voynow agreed that Voynow would notify Koufakis about each and every such issue. Plaintiffs' office employees were told by Vivian Karouzakis ("Karouzakis) and Despina Theocharis ("Theocharis") that any issues brought to Voynow's attention by the employees to Voynow or by Vownow to the employees would be relayed to Koufakis. Under Voynow's engagement, Voynow was required to answer all of Plaintiffs' questions covering the broad scope of their work. Voynow was on call for and answered practically all of Plaintiffs' questions. Voynow also performed various audits for each Plaintiff (usually approximately five (5) per year among all Plaintiffs), including – but not limited to – those conducted by the Internal Revenue Service ("IRS"), New York State Department of Taxation and Finance ("NYS DOTAF"), and workers' compensation audits. In addition to this work, Defendants also agreed that Voynow would prepare the tax returns for Plaintiffs. After Jacqueline Cutillo ("Cutillo") became an office manager in 2017, Voynow trained Cutillo about the basics of being an office manager.

3. Identify all licensed professionals, including but not limited to attorneys, accountants, consultants, and financial professionals, who have been employed, retained, engaged, or otherwise consulted by Star Autogroup concerning or relating to any of the allegations in the Complaint.

RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, violative of the attorney-client privilege, protected under the attorney work product doctrine, and not relevant to any claim or defense nor proportional to the needs of the case.

4. Identify, by name and address, all persons retained or engaged by You in the capacity as an outside accountant, CPA, or auditor that provided any of the following services during 2017 through the present: tax preparation or tax consulting; audited, reviewed or

5

compiled financial statements; internal controls consultation or audit; forensic accounting or forensic audits; or bookkeeping.

**RESPONSE:** Plaintiffs object to this interrogatory on the grounds that it is vague, overly broad, unduly burdensome, violative of the attorney-client privilege, protected under the attorney work product doctrine, and not relevant to any claim or defense nor proportional to the needs of the case.

5. Identify, by name and address, all accountants, bookkeepers, controllers, chief financial officers, credit specialists, internal auditors, and other accounting or financial services professional employed by Star Autogroup since 2000.

**RESPONSE:** Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, and not relevant to any claim or defense nor proportional to the needs of the case. Plaintiffs will limit their response to identify Defendants, Karouzakis, Theocharis, Jacqueline Cutillo, and Rosenfield & Company, PLLC ("Rosenfield").

6. Describe any all internal controls or any accounting policies or procedures implemented by You to address or prevent employee theft or fraud, since 2000, specifying when any such control or policy was implemented.

**RESPONSE:** Plaintiffs object to this interrogatory on the grounds that it is overly broad in temporal scope and therefore not relevant to the claims and defenses. Plaintiffs are therefore limiting their response to this interrogatory to the relevant time period of 2010 to 2017, based on the statute of limitations in this case. Notwithstanding the foregoing general and specific objections, from 2010 to 2017, Voynow was responsible under the engagement to implement procedures to avoid fraud, strengthen internal controls, detect fraud within a reasonable timeframe, mitigate the fraud damages. In addition, Koufakis was, and still is, the only administrator for Plaintiffs' Reynolds' system. When Karouzakis and Theocharis were working for Plaintiffs during this time, if an employee in Plaintiffs' administrative office had a question concerning accounting policies and procedures, Karouzakis or Theocharis would be contacted for the answer. If neither knew the answer, then either Karouzakis or Theocharis would then ask Voynow for the answer. In 2017, after Plaintiffs discovered some of the theft and Karouzakis and Theocharis were terminated, Cutillo became the office manager for Plaintiffs. Voynow trained Cutillo, who had no prior experience as an office manager. In addition, Plaintiffs maintained internal controls, such as requiring Michael Koufakis to sign all contracts/agreements, and in some circumstances, John A. Koufakis or Steven Koufakis were instead permitted to sign contracts/agreements. With regard to check signing, prior to Karouzakis' termination, Michael Koufakis, John A. Koufakis, Steven Koufakis, or John Koufakis, were required to sign all checks. Since Karouzakis' termination, Michael Koufakis has been required to sign the vast majority of checks to vendors, and in some circumstances, John A. Koufakis or Steven Koufakis sign such checks.

7. Identify every "red flag" You allege in the Complaint that Voynow "repeatedly and consistently" failed to notice, and:

    a. Identify the document that evidences such red flag;

    b. State the basis for your contention that Voynow reviewed such document orotherwise should have recognized the "red flag."

RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, violative of the attorney work product doctrine, not relevant to any claim or defense nor proportional to the needs of the case. Further, pursuant to Rule 33, this interrogatory counts as three (3) interrogatories. See Fed. R. Civ. P. 33(a)(1). Notwithstanding the foregoing general and specific objections, Plaintiffs provide the following non-exhaustive list of red flags that Voynow should have discovered:

1) During Plaintiffs' engagement with Voynow, Plaintiffs would ask virtually every time at the end of every quarterly review by Voynow at Plaintiffs' dealerships whether there were any issues with the accounting records for any Plaintiff and Defendants' response always led Plaintiffs to believe that there was never any theft going on.

2) Although Plaintiffs' employees would ask Voynow accounting questions and raise issues they discovered, Voynow told such employees not to worry about it; Voynow failed to inform Koufakis or bring this to his attention. Some of the individuals who raised issues they discovered include, but are not limited to, Jacqueline Cutillo.

3) Voynow failed to review areas in the dealership that, based on its experience, are prone to fraud, such as credit card receivables, service & parts receivables, cash sales, journal entries.

4) After Karouzakis was terminated, at which point Voynow was unquestionably aware that thefts occurred at Plaintiffs' dealerships, Voynow did not uncover any thefts or fraudulent schemes after Plaintiffs provided them with detailed information regarding the thefts and fraudulent schemes that Plaintiffs personally uncovered.

5) Voynow made no changes to Plaintiffs' procedures or accounting policies upon learning of the thefts.

6) When Voynow was training Cutillo, it instructed her to make changes to the accounting policies; however, these changes should have been made earlier when Karouzakis and Theocharis were still employed.

    a. For example, when Theocharis became the office manager and controller for

7

all of the Plaintiffs (in December 2016, after Karouzakis was terminated, and continuing through April 2017), Defendants did not tell Theocharis to delegate time consuming tasks (i.e. parts statements, fundings, and reserves for Star Chrysler) to other employees capable of completing these tasks so she could focus on office manager duties. However, when Cutillo was the office manager, Voynow instructed her to delegate these same tasks to another employee (whom Voynow also instructed how to perform said tasks). Voynow instructed Cutillo to delegate because it did not believe Cutillo would have time to do all of the other tasks she had to perform. Voynow should have instructed Theocharis in the same manner and notify Michael Koufakis if Theocharis refused to do so. See VOYNOW_010987.

7) Star Subaru service and parts receivables with new car customers. Customers who purchased vehicles should never appear on a service & parts receivables schedule due to all monies required to be accounted for at the time of taking possession of the vehicle purchased. Therefore, the notations of customer names with their corresponding stock number of vehicle purchased reflecting a debt owed on that schedule is a red flag for theft. See VOYNOW_009366-009383.

8) All "PTSN" journal entries. Control numbers on a commissions schedule are identified by the employees last four digits of their social security number. The use of "PTSN" requires a forced override in Reynolds because the numbers corresponding to employee names are not being used and the use of "PTSN" does not belong to a specific individual waiting to be issued commissions by payroll. This is a red flag for fraud because there is no ability for payroll to process these monies to a specific person. See VOYNOW_006670.

9) Checks were issued by Plaintiffs to Capital One, HSBC, and M&T Bank that were offset by factory receivables, but factory receivables would never be offset by checks made out to banks because all factory receivables belong to specific accrued vehicle incentives and or company profit. Checks being issued from such funds means that the Plaintiffs did not obtain the profits to which they were entitled to them due to theft. The schedule is controlled by the VIN'S of the vehicles sold. See VOYNOW_007864 for an example of a schedule with invalid control number (i.e. "VKFP").

10) Reversed Deposits. After a deposit is entered into Reynolds, a user can "post" the deposit. Once a deposit gets "posted", according to Reynolds, the deposit was submitted to the bank for physical deposit of the money. By reversing the deposit in the system, an outstanding balance appears in the cash sales account, which should never happen. Additionally, a journal entry would then need to be made to cover the balance in the cash sales account. This should never be done as journal entries are never needed in place of generating a deposit. This was done to hide the missing money that was entered into Reynolds and stolen. Normally, a deposit made into the cash sales account matches the daily service & parts report that corresponds to money physically being put into the bank account. Both the reverse deposit and

8

corresponding journal entry are red flags of theft from the cash sales account because no money went into the bank. See VOYNOW_011008.

11) *American Express Accounts Receivables.* The American Express accounts receivable schedule reflects outstanding debt for the transactions processed by the Plaintiffs for deposits/purchases made by customers. These funds are then issued by the vendor, American Express, for those transactions. Once the Plaintiffs receive such payment, a deposit is needed to relieve the outstanding debt of the corresponding transactions. Therefore, as discussed *supra*, no journal entry is required for a deposit to offset this receivable account when Plaintiffs are issued a form of payment which is submitted by American Express. See VOYNOW_006540.

12) Defendants failed to respond to Koufakis' email regarding Karouzakis' car purchases dated December 16, 2016. Cars purchased by Karouzakis referenced in this email contained red flags. See STAR00015994.

13) Defendants failed to conduct a detailed inquiry regarding red flags raised by Michael Koufakis via text to Randy Franzen after Plaintiffs terminated Karouzakis.

14) After Karouzakis was terminated, Voynow recommended that Plaintiffs hire Nick Chester to carefully review the accounting books and Nick Chester failed to completely verify the extent of schemes already discovered or identify any new schemes despite there being several other schemes.

15) Voynow failed to research and follow up on the items Nick Chester said needed further research in his memo dated February 4, 2017.

Plaintiffs anticipate that additional facts will be uncovered during discovery in response to this interrogatory.

    8.    State each and every fact supporting your contention in paragraph 7 of the Complaint that Voynow "permitted themselves to get too close to the client and its accounting personnel."

**RESPONSE:** *Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, violative of the attorney work product doctrine, not relevant to any claim or defense nor proportional to the needs of the case. Notwithstanding the foregoing general and specific objections, Plaintiffs state that the facts include – but are not limited to – the following: (i) Voynow prepared personal tax returns for Karouzakis and other employees of Plaintiffs; (ii) Theocharis gave a Tiffany platter as a wedding gift to Robert Kirkhope, an employee of Voynow; (iii) Voynow's partners and employees drank beer and socialized with Plaintiffs' employees both during and after work; (iv) Voynow's partners and employees unprofessionally socialized during lunch with Plaintiffs' employees at Plaintiffs' expense; and (v) Voynow assisted Karouzakis with the setup and purchase of a rental property she bought with the money she stole from Plaintiffs. Plaintiffs' office*

9

employees viewed Voynow's partners and employees more as friends than accountants because the environment was relaxed as a result of Voynow's conduct. Voynow engaged in the above-referenced conduct without notifying the Plaintiffs and did so without their knowledge or consent.

9. Identify whether any claim or request has been made or filed by You with any insurance company, bank, creditor, credit card company or automobile dealer, as a result of the alleged theft or fraudulent conduct or damages sustained, and if so please identify:

   a. The date of the claim, the creditor or company, and substance of the claim;
   b. Whether any recovery or reimbursement resulted from the claim;

RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, violative of the attorney work product doctrine, not relevant to any claim or defense nor proportional to the needs of the case. Plaintiffs object to this interrogatory to the extent it seeks information on claims with a date of loss after December 31, 2017. In addition, pursuant to Rule 33, this interrogatory counts as three (3) interrogatories. See Fed. R. Civ. P. 33(a)(1). Notwithstanding the foregoing general and specific objections, Plaintiffs have not filed any claims against any of the employees involved in any of the schemes related to the allegations in the Complaint. Plaintiffs have filed claims against: Elefteria Adikmenakis (2015) and Urij Kolodij (1/22/2016). Plaintiffs have produced documents in their possession, custody, or control related to these claims.

10. Identify, by case name, court, and case number, any and all lawsuits, arbitrations, alternative dispute resolution proceedings or other civil or criminal "proceedings," as that term is defined under federal law, arising out of or concerning or relating to the employment theft and alleged fraudulent conduct as alleged in the Complaint.

RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, violative of the attorney-client privilege and attorney work product doctrine, not relevant to any claim or defense nor proportional to the needs of the case. Notwithstanding the foregoing general and specific objections, Plaintiffs identify the following actions:

1) <u>Star Auto Sales of Bayside, Inc. *et al.* v. Despina Theocharis *et al.*</u>; Index No.: 613475/2017 (Supreme Court, Nassau County)
2) <u>Star Auto Sales of Bayside, Inc., *et al.* v. Michael Karouzakis as Executor of the Estate of Vivian Karouzakis.</u>; Index No.: 711698/2018 (Supreme Court, Queens County)
3) <u>Star Auto Sales of Bayside, Inc. *et al.* v. Michael Karouzakis *et al.*</u>; Index No.:

10

613475/2017 (Supreme Court, Queens County)
4) Star Nissan, Inc. *et al.* v. Carmen Jones *et al.*; Index No.: 610541/2018 (Supreme Court, Nassau County)
5) Star Auto Sales of Queens LLC v. Douglas Filardo; Index No.: 717443/2017 (Supreme Court, Queens County)
6) Star Auto Sales of Queens LLC v. Francine Filardo; Index No.: 702350/2018 (Supreme Court, Queens County)
7) Star Auto Sales of Queens LLC v. Hanie Iskander *et al.*; Case No.: 1:19-cv-06791 (RPK) (ST) (E.D.N.Y.)

11. Identify by name and last known address, each and every employee that You contend engaged in theft or fraudulent conduct. For each such person, specify:

    a. The dates of the alleged theft or fraud and the amount thereof;

    b. Whether You have recovered any amount or any property relating to the theft or fraud from them or any other person, and if so, what amounts.

**RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, premature, not proportional to the needs of the case. Moreover, pursuant to Rule 33, this interrogatory counts as three (3) interrogatories. See Fed. R. Civ. P. 33(a)(1). Notwithstanding the foregoing general and specific objections, Plaintiffs refer Defendants to the complaints filed in the actions identified in response to interrogatory 10. Plaintiffs have not recovered any amount or any property relating to the theft or fraud from them or any other person.**

12. Identify all persons you intend to call as fact witness(es) at the trial of this lawsuit, and state what knowledge or information those persons have.

**RESPONSE: Plaintiffs have not yet determined who they will call as fact witnesses at the trial of this lawsuit.**

13. Identify all persons you expect to call as expert witness(es) at the trial of this lawsuit. For each such person, state:

    a. the field in which he or she is to be offered as an expert and a summary of his or her qualifications in the field of expected testimony (or produce a current curriculum vitae);

    b. the subject matter to which he or she is expected to testify and the substance of the facts and opinions to which such

11

      person is expected to testify and a summary of the grounds for each such opinion;

    c. the full caption of each case in which he or she testified within the last four (4) years at either trial or in a deposition and the title, publisher, and date of any publication of which he or she was an author, co-author, or contributor in the last ten (10) years.

**RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, premature, and because Defendants have exceeded the number of permitted Interrogatories under Rule 33, including discrete subparts. Notwithstanding said objection, Plaintiffs have not yet concluded which expert witness(es) they will use at trial.**

Dated: Lake Success, New York
       July 2, 2021                              **MILMAN LABUDA LAW GROUP PLLC**

                                                            By_____/s_____
                                                            Jamie S. Felsen, Esq.
                                                            Emanuel Kataev, Esq.
                                                           3000 Marcus Avenue, Suite 3W8
                                                           Lake Success, NY 11042-1073
                                                           (516) 328-8899 (office)
                                                           (516) 328-0082 (facsimile)
                                                           jamie@mllaborlaw.com
                                                          emanuel@mllaborlaw.com

                                                          *Attorneys for Plaintiffs*

**VIA E-MAIL**
Maureen P. Fitzgerald, Esq.
MARSHALL DENNEHEY
WARNERCOLEMAN & GOGGIN
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
mpfitzgerald@mdwcg.com

*Attorneys for Defendants*

12

## VERIFICATION

Michael Koufakis, being duly sworn, states:

I have read the foregoing Responses and Objections to Defendants' First Set of Interrogatories ("Response") and know its contents. The Response is true either to my knowledge or from my review of information and materials maintained by the companies, except as to matters alleged on information and belief, and to those matters, I believe them to be true.

Dated: July 2, 2021

_____
Michael Koufakis

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STAR AUTO SALES OF BAYSIDE, INC. :
(d/b/a STAR TOYOTA OF BAYSIDE), : 18 cv 5775-ERK-CLP
STAR AUTO SALES OF QUEENS, LLC :
(d/b/a STAR SUBARU), STAR HYUNDAI LLC :
(d/b/a STAR HYUNDAI), STAR NISSAN, INC. : PLAINTIFFS' RESPONSES
(d/b/a STAR NISSAN), METRO CHRYSLER : AND OBJECTIONS TO
PLYMOUTH INC. (d/b/a STAR CHRYSLER : DEFENDANTS' FIRST
JEEP DODGE), STAR AUTO SALES OF : REQUEST FOR THE
QUEENS COUNTY LLC (d/b/a STAR FIAT) : PRODUCTION OF
and STAR AUTO SALES OF QUEENS : DOCUMENTS
VILLAGE LLC (d/b/a STAR MITSUBISHI), :
                                                                     :
                            Plaintiffs,              :
                                                                     :
                v.                                       :
                                                                     :
VOYNOW, BAYARD, WHYTE                      :
AND COMPANY, LLP, HUGH WHYTE,     :
RANDALL FRANZEN and ROBERT SEIBEL, :
                                                                     :
                            Defendants.              :
-----------------------------------------------------------x

Plaintiffs respond to Defendants' First Request for the Production of Documents, dated March 11, 2019 (the "Requests"), as follows:

### GENERAL OBJECTIONS

1. Plaintiffs object to each and every request to the extent that it fails to describe the documents requested with reasonable particularity, is unduly vague or ambiguous, or would unreasonably require plaintiffs to speculate as to the nature or scope of the documents sought.

2. Plaintiffs object to each and every request to the extent that it seeks documents that are beyond its possession, custody, or control. Plaintiffs will produce non-privileged, responsive documents within its possession, custody, or control.

3. Plaintiffs object to each and every request to the extent that it is unduly burdensome or oppressive.

4. Plaintiffs object to each request that it does not define a time period. In response to all such requests and without prejudice to any other objections, Plaintiffs will produce non-privileged and responsive documents from January 1, 2012 forward.

5. Plaintiffs object to each and every request to the extent that it seeks documents or information that are or is not relevant to the proceedings.

6. Plaintiffs object to each and every request to the extent that it calls for the production of "all" documents when all relevant information can be obtained from fewer than "all" documents.

7. Plaintiffs object to each and every request to the extent that it seeks documents or information that are or is protected from discovery by the attorney-client privilege, the work product doctrine, the joint-defense or common-interest privilege, or otherwise protected from discovery pursuant to applicable law. The inadvertent production of any privileged document or information shall not be deemed to be a waiver of any applicable privilege with respect to such document or information or with respect to any other document or information. Plaintiffs specifically reserve the right to demand the return of any such inadvertently-produced documents, without prejudice to any claim of privilege.

8. Plaintiffs object to each and every request to the extent that it seeks information which is confidential. All such materials will be produced subject to the execution and entry of a mutually agreed confidentiality order and stipulation.

9. In providing these objections to Defendants' Document Requests, plaintiffs do not in any way waive or intend to waive, but rather intends to preserve and is preserving:

    a. all objections as to competence, relevance, materiality, admissibility in evidence or other use of the document requests or portions thereof, or the subject matter thereof, or plaintiffs' response or objections thereto;

    b. all rights to object on any ground to the use of the document requests, responses or objections, or the subject matter thereof, in this or any other or subsequent proceeding; and

    c. all rights to object on any ground to any request for further responses to these or any other requests for documents or things, or to other discovery requests involving or related to the subject matter of the document requests. Plaintiffs submit these objections and responses to the document requests without conceding the admissibility, relevance or materiality of the subject matter of any document or document request, and without prejudice to his right to object to further discovery.

10. Plaintiffs hereby reserve the right to supplement or amend any objections herein.

11. These General Objections, including without limitation the objection based on the attorney-client and attorney work product privileges, are hereby incorporated into Plaintiffs' responses to each of the requests referenced below, whether or not the requests are specifically set forth in the section captioned "Responses and Objections to the Document Requests."

## RESPONSES TO THE SPECIFIC REQUESTS

1. In response to Request Nos. **1-2, 8-12, 15-26, 28-37** and **39**, Plaintiffs have no specific objections. Subject to and without waiving their general objections, Plaintiffs will produce non-privileged documents in their custody and control that are responsive to these requests.

2. In response to Requests Nos. **3-7, 13-14** and **38**, Plaintiffs object to the extent each request seeks documents dating back to 1996. Subject to and without waiving this or any other objection, Plaintiffs will produce non-privileged documents that are responsive to each such request that are under their custody and control which date back to January 1, 2010.

3. Plaintiffs object to Request No. 27 (tax returns) to the extent that it seeks irrelevant documents, is unduly burdensome and seeks information that is duplicative of other requests. Plaintiffs further object to this request on the grounds that Defendants already have copies of all such returns, as they prepared them. Subject to and without waiving this or any other objections, Plaintiffs will produce certain tax returns subject to redactions.

Dated: New York, New York
June 3, 2019

TRACHTENBERG RODES & FRIEDBERG LLP

/s/ Barry J. Friedberg
_____

545 Fifth Avenue
New York, New York 10017
(212) 972-2929

*Attorneys for Plaintiffs*

4