

# MARSHALL DENNEHEY

620 Freedom Business Center, Suite 405, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial: (610) 354-8270
Email: mpfitzgerald@mdwcg.com

March 15, 2023

**VIA ECF**
Judge Taryn A. Merkl
United States Magistrate Judge
U.S. District Court Eastern District of New York
225 Cadman Plaza East, Courtroom 322 N
Brooklyn, NY  11201

      RE:   Star Auto Sales of Bayside, Inc., et al. v. Voynow, Bayard, Whyte and Company, LLP, et al.
            Docket No.:   USDC of Eastern NY No.: 1:18-cv-05775
            Our File No.:   03127.01373

Dear Judge Merkl:

     Defendants Voynow, Bayard, Whyte and Company, LLP, Randall Frazen, Hugh Whyte and Robert Seibel, ("Defendants"), respectfully submit this letter in response to Non-Party Steven McCloskey's Motion to Quash the Subpoena requiring him to appear at Plaintiff's counsel's office on March 7, 2023 for a deposition. See Exhibit A.

     By way of background, this matter is an accounting malpractice action arising from services provided to Plaintiffs for the preparation of their annual corporate tax returns and quarterly tax estimate payments. Specifically, Defendants were first retained by Plaintiffs in 1996 when Plaintiffs' were involved in an IRS audit. Defendants handled the IRS audit and were then retained to prepare Plaintiffs' 1996 tax returns and each corporate tax return for the ensuing years through 2016. CPA firms have never been required to obtain signed engagement letters for tax engagements – as opposed to other types of engagements such as issuance of reviewed or audited financial statements. In approximately 2008, guidance for CPA firms began to recommend engagement letters be issued for tax engagements, although there continues to be no requirement that a signed letter be provided by the client before a tax return could be issued. Hence, Voynow began issuing annual engagement letters to Plaintiffs for its tax engagement beginning in 2008 and continuing through 2016. See e.g., 2016 engagement letter, attached as Ex. A. Plaintiffs never signed any of these letters. Nonetheless, Voynow prepared Plaintiffs' tax returns. It never prepared or issued financial statements for Plaintiffs at any time. Despite the fact that there are no such financial statements in existence, Plaintiffs now contend in this lawsuit that Voynow was hired in 1996 to provide services that were "higher than a review engagement but less than an audit engagement" and was hired to detect and prevent fraud, and prepare Plaintiffs' corporate tax returns.

In late 2016, Plaintiffs' owner Michael Koufakis was alerted by Capital One Bank that there may be possible theft in connection with checks signed by Plaintiffs' owners that were made payable to Capital One Bank. It was determined shortly thereafter that these payments to Capital One Bank were being used to pay off the personal credit card account maintained by Plaintiffs' controller at Capital One Bank. She was thereafter fired and later indicted in connection with approximately 40 checks that had been signed by Plaintiffs' owners which paid her personal creditors. She is the only former employee of Plaintiff ever charged with any crime. Plaintiffs claim that this controller as well as other employees engaged in various thefts. For example, Plaintiffs' owners signed checks that were payable to Staples. They never reviewed the credit card statements when doing so and these credit card statements purportedly showed items such as cameras, Ipads and gift card purchases made by Plaintiffs' accounts payable clerk. Likewise, Plaintiffs' owners signed checks over a four year period totaling $1.4 million that paid an advertising vendor retained by its sales manager. The advertising was for cardboard mailers sent to customers in various zip codes, however Plaintiffs' owners never checked for proof of mailing and now contend they never actually received the advertising services arranged by its sales manager. Plaintiffs allege that Defendants, as tax accountants based in Pennsylvania, should have detected these thefts as well as other purported fraud.

Although Plaintiffs have deposed 14 current and former Voynow accountants, they now seek to depose one of Voynow's current clients – Steve McCloskey – the current Controller for Thompson Lexus ("Thompson"), a dealership based in Doylestown, PA. McCloskey has been employed at Thompson for over 25 years. Prior to working at Thompson, McCloskey briefly worked at Voynow from approximately January 1994 to 1997. At one point in approximately 1996, McCloskey did work on the tax engagement Voynow provided to Plaintiffs, but he has no recollection whatsoever of the work he did on these tax returns, nor of any of Plaintiffs' employees, their books and records, their tax returns, or of Plaintiffs' owners. He knows nothing about the alleged theft by Plaintiffs' former employees – none of which is alleged to have occurred in 1996 or while he was employed by Voynow. In short, he has no information the is pertinent to Plaintiffs' claims against Voynow or regarding the alleged thefts or employee schemes at issue in this cash.

Rather, Plaintiffs intend to question McCloskey about the professional services Voynow has provided and currently provides to Thompson in connection with the preparation of its corporate tax returns, as well as Thompson's books and records. While the scope of discovery under FRCP 26 is broad, it is not unlimited. There is simply no relevance to this information as to Plaintiffs' claims. Thompson is a Lexus dealership. None of the Plaintiffs are Lexus dealerships. Thompson's financial records are different from Plaintiffs' books and records. Thompson is a Pennsylvania-based dealership and many of the tax laws and tax requirements applicable to a Pennsylvania dealership differ from Plaintiffs who are New York-based dealerships. There is no overlap between any of Plaintiffs' employees and Thompson. Moreover, Thompson's corporate tax returns and its dealings with Voynow regarding the preparation of these tax returns are confidential and privileged, and wholly unrelated to Plaintiffs. Neither McCloskey nor Thompson have any connection whatsoever to Plaintiffs, their books and records, or to this litigation. Neither McCloskey nor Thompson have any knowledge about any alleged fraud occurring at Plaintiffs or what was reflected in Plaintiffs' own books and records as to this alleged fraud. McCloskey has had *no contact with any of Plaintiffs' employees alleged to have been involved in the fraud* and never discussed Plaintiffs or any of the allegations in this lawsuit with Voynow. Thus, McCloskey has no relevant information regarding Plaintiffs' claims against Voynow. Any tax services Thompson receives from Voynow is not a proper topic of discovery as it implicates issues of the accountant-client privilege under Pennsylvania law, the longstanding recognition as to the confidentiality of tax returns and the information a

taxpayer provides to its tax accountant for a tax return, and encroaches upon the confidential financial issues relating to Thompson, such as the costs of its tax services, or its relationship with its accountants.

Pursuant to Rule 45, a party has a general right to subpoena any person to appear at a deposition or to produce documents for inspection and copying. Fed. R. Civ. P. 45. This right is not limitless, however. Generally, a party is only permitted to obtain discovery regarding a non-privileged matter "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Specifically, Rule 45 provides several express protections for individuals subject to subpoena and states that:

> On timely motion, the court for the district where compliance is required **must** quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c)
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(a)(i-iv) (emphasis added).

Motions to quash subpoenas are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003). Relevant to the instant motion is Rule 26(c)(1), which for good cause permits the Court to forbid discovery to protect a party or person from "undue burden or expense," and Rule 45(c)(3), which authorizes the Court to quash a subpoena when it "creates an undue burden." *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011). Notably, the "undue burden" standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Id.*, citing, *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007).

At the outset, the subpoena must be quashed because it violates Rule 45(c). Specifically, Rule 45 requires a court to quash a subpoena if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person." Fed.R.Civ.P. 45(c)(3)(A)(ii). Rule 45 contemplates that a deposition subpoena issue from the district in which the witness is located and that the deposition be conducted in that district within 100 miles of the witness's residence, employ, or place in which he or she regularly transacts business. *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 64 (S.D.N.Y. 1998). The McCloskey subpoena is improper as it requires him to appear at Plaintiffs' office located at 3000 Marcus Avenue in Lake Success, NY and exceeds the 100 mile geographic limitation mandated by Rule 45(c), given McCloskey's location in Doylestown, PA. See Exhibit B. For this reason alone, the subpoena violates Rule 45 and must be quashed. See *Price Waterhouse LLP v. First Am. Corp.*, (quashing subpoena in part based upon violation of 100 mile geographic limit).

Second, the McCloskey subpoena should be quashed as it seeks disclosure of privileged or other protected information. Plaintiffs intend to question McCloskey about Voynow's review of its books and records for purposes of preparing Thompson's corporate tax returns. There is a longstanding recognition in federal jurisprudence as to the confidentiality of federal tax returns and protection of the taxpayer's privacy. See,

e.g., *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556 (S.D.N.Y.1964); *Richland Wholesale Liquors v. Joseph E. Seagram & Sons, Inc.*, 40 F.R.D. 480 (D.S.C.1966); *Kingsley v. Delaware, L. & W. R.R. Co.*, 20 F.R.D. 156 (S.D.N.Y.1957). This protection of a taxpayer's privacy is well-established in cases where the taxpayer is an actual party to a lawsuit – yet here, the subpoena seeks discovery about a non-party's tax engagement and whose tax returns are plainly not at issue in this case. In the same regard, there is an accountant client privilege existing under Pennsylvania law whereby discovery of information shared between an accountant and client is privileged. See 63 Pa. Stat. § 9.11a; *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (subpoena found to be tantamount to a fishing expedition); *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (Pa. 1971) (the relationship between a Pennsylvania accountant and his client has been held to be one of confidentiality). Similarly, Rule 45(d) likewise permits a court to quash a subpoena that requires "disclosing ... confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Thompson's books and records, its relationship with its accountant, the amounts it pays for tax services, actions of its employees, and its tax return preparation is confidential information. There is no compelling reason whatsoever whereby Plaintiffs should be permitted to question McCloskey about these issues or about Thompson's services received from Voynow for preparation of its tax returns.

Lastly, this Court should quash the McCloskey subpoena because it poses an undue burden in violation of Rule 45 as it does not seek relevant information and is otherwise disproportionate to the issues in the case. Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(d)(3)(A)(iv) "depends upon such factors as relevance ... and the burden imposed." *In re Application of Operacion y Supervision de Hoteles, S.A.*, 2015 WL 82007, at *4 (S.D.N.Y. Jan. 6, 2015) quoting *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005). It has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *Robinson v. Morgan Stanley*, 2010 WL 1005736 at *2–3 (N.D.Ill. Mar. 17, 2010). Indeed, while parties must accept the burdens of litigation, non-parties have different expectations and courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs. *Id*.

There is no relevance whatsoever to Thompson's tax engagement, the content of its books or records, the actions of any of its employees, or McCloskey's dealings or communications with Voynow about Thompson. What occurred at Thompson has no relation to what occurred at Plaintiffs. In the same regard, the scope of services that Voynow provides to Thompson has no bearing upon Plaintiffs, the alleged acts of theft by Plaintiffs' former employees or any potential liability on the part of Voynow for this purported theft. While this case is a professional liability matter arising from services by a CPA firm, this Court should consider other professional liability scenarios. No court would ever allow a plaintiff suing a physician for medical malpractice to depose other patients of that physician about their medical condition or care provided by the same physician. Likewise, no court would ever allow a plaintiff suing an attorney for legal malpractice to question other clients of that attorney about their own case and the legal representation they received. This is not an employment discrimination case where "comparator" information might be deemed somehow relevant. Simply put, the merits of a professional liability case is determined solely by the relationship between the licensed professional and the client – not by dragging other non-party clients into the matter. See *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) (quashing subpoena posing undue burden on non-party); *Tresona Multimedia, LLC v. Legg*, 2015 WL 4911093, at *5 (N.D. Ill. Aug. 17, 2015) (quashing subpoena upon third party as it imposed an undue burden of litigation upon a non-party and sought irrelevant information).

For these reasons, Defendants respectfully request that this Honorable Court grant the Motion of Non-Party McCloskey and quash Plaintiffs' subpoena pursuant to Rule 45.

Respectfully,

*Maureen Fitzgerald*

Maureen P. Fitzgerald

MPF:ls
cc: All counsel of record
LEGAL/152138748.v1