

620 Freedom Business Center, Suite 300, King of Prussia, PA 19406
(610) 354-8250  Fax (610) 354-8299

Direct Dial:  (610) 354-8270
Email:  mpfitzgerald@mdwcg.com

May 23, 2023

**VIA ECF**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York, 11201

      RE:    Star Auto Sales, et al. v. Voynow, et al.
             Docket No.:   USDC of Eastern NY No. 1:18-cv-05775-ERK-CLP
             Our File No.:  03127.01373

Dear Judge Merkl:

      This firm represents the Defendants Voynow, Bayard, Whyte and Co., LLP, ("Voynow") Randy Frazen, Hugh Whyte and Bob Seibel in the above captioned matter. We are writing to request a pre-motion conference regarding two issues: (1) Defendants' request for sanctions in the form of preclusion relating to Plaintiffs' violation of this Court's Orders regarding production of their expert report which was due on April 16, 2023; (2) Plaintiffs' failure to produce the Reynolds emails pursuant to this Court's March 28, 2023 Order.

**<u>Defendants Seek to Preclude Plaintiffs From Expert Testimony
For Violation of Court's Order</u>**

      Pursuant to the Court's July 12, 2021 Order, the parties submitted a joint case management plan regarding the completion of discovery, including expert discovery. This July 27, 2021 Case Management Plan provided that Plaintiffs' expert report would be due within 30 days after the close of fact discovery. Specifically, the Joint Case Management Plan provided that fact discovery was to be completed by 7/29/22; Plaintiffs expert report was due 30 days after fact discovery or by 8/31/22; Defendants' expert report was due 30 days later by 9/30/22; and that completion of all discovery would be by 12/30/22. The Case Management Plan provided that the final date to initiate a dispositive motion was 1/31/23.  This Court adopted this Plan by Order dated August 9, 2021, stating as follows:

> As stated on the record, the parties' discovery plan is adopted, in part, as follows. The deadline for joining additional parties and amending the pleadings is 10/15/2021. Fact discovery shall be completed on or before 7/29/2022. The parties are directed to file a joint status report certifying the close of fact discovery by 8/15/2022. All discovery shall be completed by 12/30/2022.

Honorable Taryn A. Merkl
May 23, 2023
Page 2

_____

See August 9, 2021 Minute Entry and Order.

Plaintiffs thereafter made a request to extend these deadlines which Defendants opposed. By Order dated December 5, 2022, this Court ordered as follows:

> In light of the ongoing depositions and complexity of the case, the following deadlines are extended. **Fact discovery shall be completed on or before 3/17/2023**. The parties are directed to file a joint status report certifying the close of fact discovery by 3/24/2023. **All discovery shall be completed by 8/18/2023**. The last date to take the first step in dispositive motion practice is 9/18/2023, and should be done in accordance with the Assigned District Judge's Individual Rules and Practices. **As previously stated, the Court is concerned about the age of this case and the length of time for discovery. Additional extensions of time are highly unlikely**. The parties are direct to file a joint status report by 2/17/2023.

See December 5, 2022 Order.

Based upon this Order, the timing of expert reports and expert discovery remained unchanged such that Plaintiffs' expert report was due 30 days after the close of fact discovery – or by April 16, 2023. Similarly, the timing of dispositive motion practice in relation to the closure of all discovery also remained unchanged. On March 17, 2023, fact discovery closed. When Plaintiffs thereafter requested to reopen fact discovery, this Court denied their request, stating as follows in its March 28, 2023 Order:

> **The Court declines to reopen discovery** in toto but directs the parties to continue to meet and confer regarding the myriad discovery disputes highlighted in their recent letters and at the conference. …. **The remaining deadlines as to the close of all discovery ( 8/18/2023) and the last date to take the first step in dispositive motion practice in accordance with the Individual Rules of the assigned District Judge ( 9/18/2023), set on 12/5/2022, remain in effect.**

See March 28, 2023 Order.

Thus, the Court has made clear through two separate orders – December 5, 2022 and March 28, 2023 – that the fact discovery deadline was March 17, 2023 and the deadline for completion of all discovery was August 18, 2023. Based upon this March 17, 2023 fact discovery deadline, Plaintiffs' expert report was due within 30 days thereafter – or by April 16, 2023. However, to date, Plaintiffs have failed to produce any expert report in violation of this Court's orders. Consequently, Plaintiffs should now be precluded from introducing any expert report given their violation and disregard of the Court's orders. See e.g., *LaMarca v. United States*, 31 F.Supp.2d 110, 122 (E.D. N.Y.1999); (the "duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross examination and, perhaps, arrange for expert testimony from other witnesses."); *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F.Supp.2d 269, 279 (S.D.N.Y.2011) (courts will not admit expert evidence following the close of discovery as doing so 'would eviscerate the purpose of the expert disclosure rules); *Silivanch v.*

___

*Celebrity Cruises, Inc.*, 171 F.Supp.2d 241, 256 (S.D.N.Y.2001) (precluding expert testimony that was not disclosed during expert discovery); *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 38 (S.D.N.Y.), objections overruled, 301 F.R.D. 47 (S.D.N.Y. 2014) (AAI's unjustifiable failure to serve its expert disclosures on time justified imposition of a sanction pursuant to court's inherent authority to manage this case); *United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 Fed.Appx. 14, 18 (2d Cir. 2008) (affirming district court's decision to strike a previously stricken expert report, submitted with plaintiff's opposition papers); *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961–63 (2d Cir.1997) (affirming magistrate judge and district judge's order to preclude expert reports submitted past discovery cutoff date); *Mobileye, Inc. v. Picitup Corp.*, 928 F.Supp.2d 759, 766 (S.D.N.Y. 2013) (striking an untimely expert declaration); *Arnold v. Krause, Inc.,* 232 F.R.D. 58, 67 (W.D. N.Y. 2004) ("preclusion of a proposed expert's testimony and report, disclosed in violation of a scheduling order ... [has been held to be] a proper sanction for tardy expert report).
.

## Defendants Seek Sanctions and/or an Order to Compel Plaintiffs to Produce the Reynolds Emails

As stated in Defendants' prior submissions to this Court, Plaintiffs do not have company email. Routinely, Plaintiffs' employees used their personal email accounts to conduct business on behalf of Plaintiffs. Despite initiating this lawsuit, Plaintiffs never obtained, preserved, nor required their employees to provide these emails. This raises an issue of retention of records and preservation of documents for purposes of this litigation. However, Plaintiffs did have a limited internal email program through its accounting database known as the Reynolds system. The Reynolds emails reflect internal communications among Plaintiffs' employees and owners, with a significant component of these communications relating to accounting and bookkeeping matters. Despite repeated requests for the production of these emails from the Reynolds system, Plaintiffs have failed to act in good faith with regard to the production of them.

Initially, Plaintiffs claimed that it was too burdensome and expensive to produce the Reynolds emails. Counsel had numerous meet and confer sessions to resolve the issue. Defendants made significant concessions in an attempt to cooperate regarding the production of these emails. For example, even though there are over 25 individuals who either worked in the accounting office or routinely communicated regarding accounting matters, Defendants agreed to limit the production of the Reynolds emails to only 9 custodians and to further limit the production to the period of 2010 through 2017. Notably, Plaintiffs claim damages dating back to 2001 and are requiring Defendants to now search for certain records dating back to 1996. Nonetheless, based upon these 9 custodians, there are approximately 11,000 emails existing that encompass the years of 2010 to November of 2016.

Despite this relatively small number of emails over a 7 year period and the narrowed custodian list, Plaintiffs continued to argue that it would be unduly burdensome for them to have to review these 11,000 emails. Counsel have had numerous meet and confer sessions on this issue. In a further attempt to compromise, Defendants then prepared a list of specific search terms to be applied to these 11,000 emails. These search terms were set forth in a letter dated March 15, 2023. See Ex. A. Notably, the search terms were derived from the specific theft schemes alleged by Plaintiffs and their key personnel. At the in person Pre-Motion Conference on March 28, 2023, Your Honor reviewed this list of search terms and commented on the record that the terms were

reasonable, suggesting to Plaintiffs that they simply produce all 11,000 emails as this total amount was not excessive rather than continue to quarrel over search terms.

However, Plaintiffs continued to refused to do so nor agree to the proposed search terms, repeatedly stating that the terms were overbroad. Defendants then requested that Plaintiffs actually run the search terms to support their argument that the terms were purportedly overbroad. Plaintiffs then did so and reported the results. Based upon the "hit" rate results of these search terms applied to the 11,000 documents, it is clear that the terms are not overbroad. While Plaintiffs did produce a small subset of Reynolds emails on April 28, 2023 based some search terms, they have largely refused to produce the responsive emails for any of the search terms listed below despite the relatively low "hit" rate of the following search terms:

| **Search Term** | **Approximate "Hit" Rate** |
|---|---|
| Chrysler | 2.7% |
| Hyundai | 8% |
| Jackie | .3% |
| John | 3.8% |
| Karol | .29% |
| Karen | .7% |
| Mitsubishi | 1.2% |
| Nissan | 15% |
| Steve | 3.5% |
| Bonus | 4.2% |
| Claim | 1.9% |
| Payroll | 4.7% |
| Warranty | 3.5% |
| Deal | 7.5% |
| Parts | 7.5% |
| Service | 7.2% |
| Statement | 7.6% |
| Vehicle | 4.2% |
| Reynolds | 3.2% |

Clearly, the "hit" results of these search terms demonstrate that they are not overbroad. Further, the terms are clearly relevant as they relate to the alleged theft schemes identified by Plaintiffs in this case. Plaintiffs have no justification to withhold these emails – particularly given their complete failure to preserve the personal emails of the owners and employees for purposes of this litigation. Accordingly, Defendants request that this Court order Plaintiffs to comply with its March 28, 2023 Order and produce all emails in response to the above search terms on or before June 5, 2023.

Further, Plaintiffs are refusing to produce ANY Reynolds emails during the period of November 16, 2016 to December 31, 2017. They cannot justify withholding these emails based upon relevance. To the contrary, most of the purported thefts at issue were discovered and thereafter investigated during this time frame. Plainitffs seeks damages relating to theft purportedly occurring through July 2017. Clearly this time period is highly relevant. Indeed, Plaintiffs required Defendants to produce their records and emails through 2017. However,

Plaintiffs' basis for refusing to produce any of the Reynolds emails from November 2016 through 2017 is alleged undue expense. Specifically, Plaintiffs insist that Defendants must pay $14,750 to their third party ediscovery vendor for the cost of producing these emails.

A party that has been served with a request for ESI is charged with "find[ing] and disclos[ing] all responsive documents or properly set[ting] forth why the documents are being withheld." *Merck Eprova AG v. Gnosis S.P.A.*, 2010 WL 1631519, at *4 (S.D.N.Y. Apr. 20, 2010). If the information sought is relevant and proportional, the party resisting disclosure of ESI "must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). A court has broad discretion to manage the discovery process which includes determinations regarding which search terms a party should apply and whether an ediscovery cost is an undue burden. *Hernandez v. NHR Human Res.*, LLC, 2021 WL 2535534, at *20 (S.D.N.Y. June 18, 2021); *Emanuel v. Gap, Inc.*, 2020 WL 5995134, at *2-3 (S.D.N.Y. Oct. 9, 2020) (denying appeal of magistrate judge's determinations regarding which search terms to apply).

Here, as noted above, Plaintiffs cannot argue that the Defendants' search terms are not relevant or proportional given that they are derived from the alleged theft schemes and fall within the period of purported theft and investigation. Further, given the "hit" rate, Plaintiffs have no basis to argue that the search terms are overbroad. See *Maurer v. Sysco Albany*, LLC, 2021 WL 2154144, at *9 (N.D.N.Y. May 27, 2021) ("defendants have not set forth arguments or evidence to support" claim that inclusion of search term was overly broad). Likewise, Plaintiffs' argument that Defendants must pay $14,750 in order to produce the Reynolds emails from November 2016 through 2017 is unfounded. Defendants bore the cost of retaining a third party ediscovery vendor to produce its documents, as parties typically bear their own costs associated with reasonable and relevant ESI requests. Indeed, Plaintiffs have filed a complaint seeking $10 million in damages. Plaintiffs are more than financially capable of bearing the minimal cost to produce these emails, given that Plaintiffs generate approximately $300 million in annual revenue. Moreover, Plaintiffs initiated this lawsuit so they should have anticipated this cost in doing so. Thus, there is no basis to argue that the cost of this production is an undue burden. See *Nadiia Zhulinska and Ilona Skala v. Niyazov Law Group, P.C., et al.*, 2021 WL 5281115 (E.D.N.Y. 11/12/2021) (rejecting arguments of undue burden and expense and allowing use of search terms of key persons and entities given the likelihood of obtaining relevant information); *Federal Trade Commission v. American Screening, LLC, et al.*, 2021 WL 2823176 (E.D. MO. July 7, 2021) (granting motion to compel and ordering defendant to produce documents responsive to 58 search terms which resulted in 7 million hits despite defendant's unsupported arguments as to undue burden, expense and overbroad).

Accordingly, Defendants respectfully request that this Court order Plaintiffs to (1) produce all Reynolds emails from the approximate 11,000 documents applicable to the period of 2010 through November 2016 in response to the search terms outlined above; and (2) produce all Reynolds emails for the period of November 2016 through 2017 using all search terms listed in Exhibit A.

Very truly yours,

Maureen Fitzgerald

Maureen P. Fitzgerald

MPF:ls
Enclosure
cc:     All counsel of record