# EXHIBIT "4"

**From:** Joseph Labuda
**Sent:** Thursday, March 30, 2023 7:35 PM
**To:** Fitzgerald, Maureen P.
**Cc:** Michael Mule; Jamie Felsen; Jeremy Koufakis
**Subject:** FW: Star v. Voynow - Meet and Confer

Maureen:

In furtherance of our meet and confer today, below is a recap of the topics we discussed. We would like to schedule another meet and confer on Thursday, April 6, 2023 as me and/or Jeremy is unavailable every other day through April 17, 2023. In the meantime we can still meet and confer via email but please let us know your availability on April 6.

1. **Reynolds Emails:**
   a. Pursuant to the Court's 3/28/2023 Order, it states *inter alia*, that "The parties are directed to continue to meet and confer regarding the scope of the search of the internal Reynolds emails, and Plaintiffs are directed to produce the Reynolds emails by 4/28/2023." It did not state that Plaintiffs must produce all 11,000 emails from January 1, 2010 through November 16, 2016. The Judge was clearly telling us to agree to a middle ground as not all emails are relevant.
   b. As we stated, we can still do the search terms. In your March 8, 2023 email, it is our understanding that we do **not** need to do searches for any name or manufacturer name. If you do not believe this is true you need to let us know.
   c. For the search terms listed in our March 21, 2023 email, the Judge only said that she could see how she thought "cash" (as an example) was too broad and did not address every other search term specifically if it was too broad or not. She did not receive that email prior to the conference so there is no way she reviewed each specific one. The other major terms we primarily have problems with are for "Deal", "Vehicle", "Parts", "Service", and "Reynolds". Please provide us with revised search terms for the other terms in dispute as per our March 21, 2023 email.
   d. If you would like us to recover the Reynolds emails through the end of 2017, we have no problem doing that. However, Defendants must pay the costs to recover them. If Defendants agree to cover the costs, Plaintiffs will recover them. Plaintiffs have received a quote that the cost to recover these emails will cost between $10,000-$20,000 so please let us know.
2. **Demand No. 9 from Plaintiffs' Second Request for Documents**
   a. One of the primary reasons McCloskey's motion to quash was granted was because Plaintiffs were interested in finding out Voynow's engagement with Thompson Auto Group during the time period Voynow provided services to Plaintiffs, along with how much Voynow charged each of Thompson's dealerships during the same period. The Judge stated that it was easier for Defendants to provide this information to Plaintiffs instead of a third party and Plaintiffs are entitled to this information from Defendants.
   b. During our meet and confer, Plaintiffs suggested that Voynow provides this information for the years 2013 and 2015 for 3 dealership groups that Voynow had a tax engagement with and 3 dealership groups that Voynow had a review engagement with.
      i. Besides, Thompson, Plaintiffs would like to select the other dealership groups and are expecting a breakdown of how much Voynow charged each dealership in the dealership group separately for the year 2013 and 2015.
      ii. For the other two review engagement dealership groups besides Thompson, Plaintiffs would also like the engagement letters for 2013 and 2015.
   c. In response to this proposal during the meet and confer, once I stated the word "comparator" you immediately responded "no" and cut me off without letting me finish. Please take a moment to reconsider Plaintiffs' proposal on this issue.

   d. If you are still objecting to this request in its entirety, please let us know.
3. **Voynow's Documents Prior to 2010**
   a. Plaintiffs are narrowing their requests to the following:
      i. Voynow's timesheets for Plaintiffs - (January 1, 1996-December 31, 2009)
      ii. Voynow's invoices for Plaintiffs - (January 1, 1996-December 31, 2009)
      iii. Voynow's emails with Vivian (excluding emails re her personal tax returns) or Debbie - (January 1, 1996-December 31, 2009)
      iv. Voynow's internal emails between Voynow employees concerning Star (i.e. any Plaintiff) - (January 1, 1996-December 31, 2009)
      v. Voynow's interim emails, reports, letters, memos for Plaintiffs - (January 1, 1996-December 31, 2009)
      vi. Voynow's Workpapers for Plaintiffs - (January 1, 2001-December 31, 2009)
         1. Workpapers include the packet of documents Defendants have produce for each dealership for each year from 2010-2016, along with spreadsheets and word/.wpd documents Voynow generated for Plaintiffs
   b. As discussed, Defendants will search their ediscovery database to find out the following about these specific documents:
      i. The number of documents and pages in the database;
      ii. the number of emails and non-emails; and
      iii. whether the Star employee tax information that you said is privileged are in separate folders/files in the database.
4. **Demand No. 6 from Plaintiffs' Fourth Request for Documents**
   a. Plaintiffs are narrowing this request to ask for one checklist that Kumor used while performing an review engagement for a client of Voynow during the period of 2010-2016 as he testified doing during his deposition.
   b. If you are still objecting to this request in its entirety, please let us know.
5. **Metadata**
   a. The metadata overlay Defendants provided recently did not include the metadata for the .doc file VOYNOW_028343-VOYNOW_028346 so please produce.
6. **Mike Vesci**
   a. Plaintiffs would have found out Mike Vesci was an employee prior to the end of discovery if Voynow's 30(b)(6) deposition was conducted on March 7, 2023 since one of the topics was to identify each employee by their billing code. You stated that you are planning to move to quash the subpoena. Please note that the Court specifically stated that if your basis to quash the subpoena was grounded on the subpoena being untimely, that was not a persuasive argument. We anticipate it being a short deposition and are willing to do it remote.
7. **Voynow's Billing Code Descriptions**
   a. Voynow recently produced a document providing more detailed information on Voynow's billing descriptions (VOYNOW_028390). However, this document shows the billing descriptions as of February 28, 2023. Voynow's timesheets indicate that Voynow's billing descriptions do not match the current ones so they are not relevant and are requesting the billing descriptions for June 2016.
8. **Deposition Transcripts**
   a. Plaintiffs are simply requesting you to email Jacquie's 30(b)(6) deposition transcripts for her review and you are refusing to provide us with copies of the transcript unless we pay you or the court reporter.
   b. If you are still objecting to this request in its entirety, please let us know.
9. **Second Amended Initial Disclosures**
   a. You refused to preclude any witnesses from testifying at trial that you added to your initial disclosures two days prior to the end of discovery. This even includes the names of individuals from Subaru Distributors Corporation ("SDC") that were not mentioned during any deposition.

      Instead, you stated that the reason you added them was because of SDC's response to your subpoena and you did not provide us with these documents until March 15, 2023…the same day you amended your initial disclosures. You stated that you delayed production because you were on vacation. This does not seem like a valid basis for delaying your production and appears to be an attempt to delay and prejudice Plaintiffs in their discovery efforts.

    b. If you are still objecting to this request in its entirety, please let us know.

10. **Subaru Distributors Corporation Subpoena**
    a. Defendants issued a subpoena to SDC (with a copy to Plaintiffs) for documents on February 9, 2023 without Exhibit A.
    b. Unbeknownst to Plaintiffs, SDC reached out to Voynow and asked if there was an Exhibit A and Voynow produced Exhibit A to SDC but did not send a copy to Plaintiffs.
    c. SDC responded to the subpoena and only then did Plaintiffs realize that Defendants produced Exhibit A to SDC but not to Plaintiffs.
    d. Plaintiffs requested a copy of Exhibit A from Defendants on March 21, 2023 and Plaintiffs noticed for the first time that the requested documents were overly broad.
    e. Contrary to Defendants' assertion, the SDC and SOA subpoenas are not identical inasmuch as the demand no. 5 in the SDC subpoena is not limited to advance programs which was the issued involved in the underlying scheme that Plaintiffs allege that Voynow should have uncovered.
    f. In fact, during our meet and confer on March 21, 2023, Defendants asked us which of the 500 documents we objected to and we provided a list.
    g. Plaintiffs provided a list of documents later that same day.
    h. You still now refuse to preclude any of these documents and suggested we file a motion.
    i. You explained that Exhibit A from the SDC subpoena and the SOA subpoena are very similar but Exhibit A from the SOA subpoena does not contain demand number 5 from the SDC subpoena, which is overly broad.
    j. If you are still objecting to this request in its entirety, please let us know.

11. **Expert Discovery**
    a. Even though many fact discovery issues are not complete yet, you are not willing to request the Court to extend the deadline for Expert Discovery.


Joseph M. Labuda
Milman Labuda Law Group, PLLC
3000 Marcus Avenue, Ste. 3W8
Lake Success, NY 11042
(516) 303-1380 - (direct)
(516) 328-8899 - (office)
(516) 328-0082 - (fax)

Please be advised this email was likely created by Microsoft DICTATION and may contain typos and transcription errors.