# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
————

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

Author: Jamie S. Felsen - Member
Direct E-Mail Address: jamie@mllaborlaw.com
Direct Dial: (516) 303-1391

August 21, 2023

**Via ECF**
Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Re:*   **Star Auto Sales of Bayside, Inc.,** *et al.* **v. Voynow, Bayard, Whyte and Co., LLP ("Voynow"),** *et al.*
        **Case No.: 1:18-cv-5775 (ERK) (TAM)**

Dear Judge Merkl:

This firm represents the Plaintiffs ("Star") in the above referenced matter. Star respectfully requests a conference to address (i) its anticipated motion to quash a subpoena that was served on August 4, 2023, on Star's new accountants, Withum and (ii) its anticipated motion to preclude the use of documents produced by Voynow after the close of discovery.

The parties conferred about issues raised in this letter but were unable to resolve.[1]

**Plaintiffs' Position**

## I.      **Motion to Quash Subpoena**

On August 4, 2023, Voynow served a subpoena on Withum, Star's current accounting firm, since in or around 2020 (it should be noted that all of the events alleged in the Complaint occurred from 1996 to 2017).[2]  **(A copy of the subpoena is annexed hereto as Exhibit "A").**

Star intends on moving to quash Voynow's subpoena on Withum because it (a) was served after the close of fact discovery; and (b) seeks documents that are not relevant to any party's claim or defense and is not proportional to the needs of the case.

### A.  **The Subpoena Was Served After the Close of Discovery**

---

[1] Star reached out to Voynow's counsel on August 8, 2023 but she was on vacation and did not respond until August 16, 2023.

[2] It does not appear that Voynow complied with Fed. R. Civ. Proc. 45 by notifying Star about the subpoena prior to serving it.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 2 of 13

In the Court's March 28, 2023 Minute Entry & Order, the Court ruled " "[n]otwithstanding the 3/17/2023 deadline to close fact discovery, several discovery items remain outstanding. The Court declines to reopen discovery in toto but directs the parties to continue to meet and confer regarding the myriad discovery disputes highlighted in their recent letters and at the conference." The parties met and conferred, and on June 7, 2023, the parties submitted a joint letter to the Court identifying their remaining discovery disputes. Voynow's subpoena on Withum dated August 4, 2023 was not a pending discovery issue for which the Court extended discovery past the March 17, 2023 fact discovery deadline on March 28, 2023.

On August 2, 2023, the Court issued an Order that provided an August 31, 2023 deadline for fact discovery although Star did not request to extend the fact discovery deadline – only the expert discovery deadline. In Star's letter dated July 25, 2023, Star requested an extension of the August 18, 2023 deadline to complete all discovery so there was time to complete expert discovery. ECF Doc No. 104. This July 25, 2023 letter explained that the need for more time to complete expert discovery was because *inter alia*, the Court still needed to address the outstanding fact discovery issues in the joint June 7, 2023 letter but made no representations that any other fact discovery needed to be done. ECF Doc Nos. 104, 102.

It is ironic that, during the litigation, Voynow has repeatedly argued that discovery is closed as they now want it to remain open for their benefit. In a December 2, 2022 letter to the Court, Voynow argued "Defendants do not believe that the deadlines should be extended given the long history of this case, the Court's prior statement on this issue …" ECF Doc. No. 78. Following this letter, on December 5, 2022, the Court entered a docket Order ruling "[f]act discovery shall be completed on or before 3/17/2023." On July 26, 2023, in a letter to the Court in opposition to Star's request to extend the discovery deadline, Defendants reiterated that "fact discovery closed on March 17, 2023", Star's deadline to produce an expert report was on April 16, 2023, and even stated that the "limited fact discovery requested by Plaintiff[s] which this Court allowed in its March 23, 2023 Order is complete." ECF No. 105. Therefore, there was no reason to extend the fact discovery deadline.

Accordingly, it is respectfully submitted that, given the March 28, 2023 Minute Entry & Order, the August 2, 2023 Order should not have extended the fact discovery deadline. The August 2, 2023 Order should have only addressed Plaintiffs' July 25, 2023 request (ECF No. 103) to provide additional time to complete expert discovery. There was no request before the Court to address the outstanding fact discovery issues that were still pending from the June 7, 2023 letter. The purpose of the August 2, 2023 Order was not to allow new fact discovery, such as the issuance of a subpoena to Withum, to take place. Star respectfully submits that, given the Court's March 28, 2023 Order refusing to reopen discovery disputes, the Court did not intend to, the parties did not request, and there is no reason to reopen and extend fact discovery until August 31, 2023, and the Court certainly did not intend to permit Voynow to serve a subpoena. Accordingly, Voynow's subpoena on Withum should be quashed as it was served after the close of fact discovery.

**B. The Subpoena Seeks Irrelevant Information**

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 3 of 13

In addition, separate and apart from the timeliness of the subpoena, Voynow's subpoena should be quashed on the grounds that it seeks documents that are not relevant to any party's claim or defense and not proportional to the needs of the case.  "The relevance standards set out in Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties." Morelli v. Alters, 2020 U.S. Dist. LEXIS 207362 (S.D.N.Y. Nov. 5, 2020).

Withum is Star's current accounting firm and did not become Star's accounting firm until in or around 2020, several years after the last alleged act raised in the instant Complaint which alleges Voynow failed to detect and uncover employee theft based on accounting schemes and other methods of manipulating the books.  Indeed, Voynow's subpoena seeks, for the period January 1, 2020 through December 31, 2021, engagement letters between Star and Withum and invoices and bills issued by Withum to Star, but Voynow stopped being Star's accountants in November 2017.  Withum was not Star's accountant during the course of the events upon which this accounting malpractice action is based and did not become Star's accountant until several years later.  Engagement letters between Star and Withum and invoices and bills issued by Withum to Star for the period January 1, 2020 through December 31, 2021 have no bearing on the claim at issue in this case: whether Voynow committed accounting malpractice while it was Star's accountant up until November 2017.

Voynow argues below that, based on Michael Koufakis' deposition testimony, which Voynow mischaracterizes, because Mr. Koufakis purportedly does not know the scope of Star's retainer with Withum, Voynow is entitled to engagement letters and invoices from Withum, to determine the scope of Star's engagement with Withum, 25 years after Star retained Voynow.  Mr. Koufakis did not testify, as Voynow argues, that he does not know the scope of services Withum provides to Star; he testified that Star's retainer with Withum is "not quite to the same level" as Star's retainer with Voynow.  See Exhibit 1 Tr. at 85:22-86:5.

Parties have wide latitude to ask questions (regardless of relevance) at a deposition.  Voynow asking Mr. Koufakis irrelevant questions to which he was required to respond does not now provide a basis for Voynow to use his testimony to obtain further irrelevant information from a non-party on an irrelevant topic.

Notwithstanding Mr. Koufakis' testimony, Voynow speculates, in sum and substance, that because it was Star's accountant for 25 years and Star claims Voynow provided a high level of services to Star that included more than just tax work, that Withum must be providing the same level of services, especially considering Star was the victim of theft.  Star's argument must be rejected and its subpoena quashed in its entirety as "[C]ourts within the Second Circuit have denied fishing expeditions that are based purely on speculation." Walsh v. Top Notch Home Designs Corp., 2022 U.S. Dist. LEXIS 143801 (E.D.N.Y. Aug. 11, 2022) citing Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp., 550 F.2d 1320, 1327 (2d Cir. 1977).  There could be a host of reasons why Star has a different engagement with Withum than it had with Star.  For example, perhaps Star hired more than one accounting firm or accounting professional to provide accounting services.  Indeed, Mr. Koufakis testified that Star was hiring someone other than Withum to review

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 4 of 13

Star's systems and controls and that Star's current controller is a licensed fraud examiner.  See Exhibit 1 Tr. at 86:14-18.

Voynow's argument below that, because Star discovered thefts in 2020 and 2021 (for which Star seeks to hold Voynow responsible) while Withum was Star's accountant, that this somehow makes the information sought in the subpoena relevant, is likewise preposterous.  Simply because additional thefts were discovered at the time that Withum provided accounting services to Star does not mean that Withum was engaged to investigate thefts or prevent someone else from investigating thefts at Star.  This is a fishing expedition by Voynow to determine if Withum played a part in Star uncovering theft.

Voynow is a regional accounting firm with only one office and 5 accountants[3] and Withum is an extraordinarily large national accounting firm with 27 offices around the world[4], ranked the 22nd largest accounting firm in the U.S. out of 500 accounting firms by Inside Public Accounting.[5] Voynow's attempt to obtain Withum's invoices to compare what Star paid Withum, a colossal worldwide accounting firm, to what Star paid Voynow, a small regional accounting firm, and hope to somehow conclude that this establishes the scope of Star's engagement with Voynow, is preposterous.  Voynow cannot be permitted to engage in this fishing expedition where they seek to compare apples to oranges.

Voynow deposed all three (3) Koufakis brothers on three (3) separate days in addition to taking 30(b)(6) depositions of the five (5) main Plaintiffs over the span of three (3) more days. Voynow had plenty of opportunities to ask irrelevant questions about the amounts paid by Star to Withum and chose not to do so.  Voynow cannot be given another bite of the apple now to obtain this irrelevant information, especially after discovery has closed.

Notably, Voynow's subpoena is hypocritical as Voynow previously strenuously opposed Star's discovery requests for retainer agreements, invoices, and billing entries related to Voynow's engagements with other clients (since Voynow and Star never had a written engagement) as irrelevant.  ECF No. 102 at 2-4, 17. The information sought by Star compares apples to apples as it seeks information related to services provided by Voynow for its clients and amounts Voynow's clients paid Voynow for its services rather than services provided by Withum and amounts charged by Withum during an irrelevant time period.

II.     **Motion to Preclude Defendants From Using Documents Not Produced During Discovery**

Star also anticipates filing a motion to preclude Defendants from using documents that were produced on June 30, 2023 – well after the close of fact discovery.  These documents were

---

[3] https://www.voynowbayard.com/our-staff
[4] https://www.withum.com/our-people/
[5] https://insidepublicaccounting.com/top-firms/ipa-500/

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 5 of 13

not part of any open issues for which the Court allowed the parties to continue to engage in discovery in its March 28, 2023 Order.

> The documents produced by Voynow on June 30, 2023 consist of:
> 1. Power of attorney document and letter to the New York State Department of Taxation and Finance from 2013 (VOYNOW_035578 - VOYNOW_035582; VOYNOW_035583 - VOYNOW_035587) (See **Exhibit "B"**);
> 2. Petition filed in October 2020 and associated consent order/satisfaction of judgment from an action one of the Plaintiffs was involved in with the New York State Attorney General (VOYNOW_035641-VOYNOW_035685) (See **Exhibit "C"**);
> 3. One (1) new engagement letter from 2009 between Star and Voynow (VOYNOW_035712-VOYNOW_035715) (See **Exhibit "D"**); and
> 4. New versions of thirteen (13) previously produced engagement letters between Star and Voynow from 2008-2017 that now, but did not previously, contain Voynow's header and signature (VOYNOW_035588–VOYNOW_035615; VOYNOW_035693-VOYNOW_035711; VOYNOW_035716-VOYNOW_035737) (See **Exhibit "E"**).

These late-produced documents have no connection to the outstanding document-related discovery issues raised with the Court in the parties' March 27, 2023 joint letter (ECF Doc. No. 82). After the Court Conference on March 28, 2023, the parties met and conferred about the various discovery issues and the Parties agreed that in response to Star's request for documents prior to 2010, Voynow would produce the following (outlined in Voynow's email dated April 25, 2023) by June 20, 2023:

> "Defendants agreed to search its database to see if these documents even exist. To the extent they do, Defendants will produce emails and internal and interim communications for 2005-2010; work product as maintained by Voynow from 1996; and timesheets or billing records that exist back from 1996." (See **Exhibit "F"**).

The documents Voynow produced on June 30, 2023, after the close of fact discovery, do not fall into any of these categories. Voynow had ample opportunity to identify and locate these belatedly produced documents during the course of this litigation. In fact, this case was commenced on October 16, 2018. However, Voynow had a duty to preserve evidence even earlier, on December 5, 2017 at which time Star notified Voynow that it intended to file a lawsuit concerning Voynow's malpractice and the parties shortly thereafter entered into a tolling agreement while they attempted to settle.

On March 1, 2019, Star served document demands, including a demand for all engagements between Star and Voynow. (See **Exhibit "G"**). On August 9, 2022, Plaintiffs supplemented this request to seek engagement letters prior to 2010. (See **Exhibit "H"**). Regardless, Voynow repeatedly stated on July 4, 2022 that it already produced their engagement letters and all documentation and reiterated this on February 17, 2023. (See **Exhibit "I" at 3,** ECF No. 82 at 14). Voynow does not argue that one of the engagement letters it produced on June 30,

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 6 of 13

2023 (**Ex. "D"**) was never produced previously. For the new versions of thirteen (13) previously produced engagement letters that now contain Voynow's header and signature (**Ex. E**), Voynow argues that it produced them now because they are different than the "server" copies. This makes no sense since Voynow has already produced thousands of hard copy documents and all of their hard copy documents should have been on their ediscovery portal to search years ago. In addition, one of the first documents Voynow produced in this case was a non-server copy engagement letter that is identical to the others produced on June 30, 2023 (See **Exhibit "J"**). More than four (4) years after this demand was served on Voynow, on June 30, 2023, after the close of discovery, Voynow produced what Voynow will hope to argue are more legitimate versions of the previously produced unsigned letters that were not on Voynow's letterhead, that are suddenly signed and on Voynow's letterhead, and which do not relate to any of the discovery disputes.

These engagement letters create more questions than they provide answers. Star is significantly prejudiced by the late production of these documents because discovery has closed and Star is now precluded from questioning Voynow under oath about where were they stored, who signed these documents, and why these documents suddenly were produced many years later, after discovery closed, the circumstances under which Voynow discovered these documents, the authenticity of these documents, among other topics. Notably, Voynow also claims that there is no metadata for the "server" copy of any engagement letter that shows the date it was created.

Voynow's argument that Star produced discovery after the close of fact discovery unrelated to the open discovery disputes is disingenuous as Star has not produced any documents after the close of fact discovery that are unrelated to the discovery disputes. The 4,500 documents Voynow references that were produced on May 30, 2023 relate to the Reynolds emails which, contrary to Voynow's argument, relate to open discovery disputes. Star served their Second Amended Disclosures, which merely added one (1) witness, after fact discovery ended, because Star learned about that witness at Voynow's 30(b)(6) deposition which was taken after fact discovery ended because Voynow failed to appear for its previously scheduled 30(b)(6) deposition which led to motion practice related to the deposition. The only other documents Star will produce are additional Reynolds emails which relate to a prior discovery dispute.

Also, on June 30, 2023, Voynow belatedly produced a power of attorney concerning a tax audit (**Ex. B**) due to a purportedly erroneous coding error by Voynow's attorneys. This is an insufficient explanation to allow for documents that were requested on March 1, 2019 and were required to be produced prior to the close of fact discovery on March 17, 2023.

Accordingly, Voynow should be precluded from using the above-referenced documents produced on June 30, 2023 in this litigation such as in a summary judgment motion, at trial, etc. In the event that the Court were to contemplate permitting Voynow to use these documents (which it should not), and affording Star with an opportunity to conduct discovery related to them, including taking depositions related to them, this will not resolve the issue since the expert report are now due on September 15, 2023 and Star's expert will have no ability to rely on these newly discovered facts in its report. Thus, any extension of fact discovery at this late stage will have a substantially prejudicial effect on Star in its subsequent expert discovery.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 7 of 13

**Defendants' Position:**

I.       **Plaintiffs' Motion to Quash The Withum Subpoena Should Be Denied**.

This Court's prior March 28, 2023 Order stated that "discovery was to be completed by August 18, 2023."  This Court then issued an Order on August 2, 2023 stating that "fact discovery shall be completed by August 31, 2023"  and all discovery shall be completed by January 5, 2024. There is no qualification or limitation in this August 2nd Order as to the nature of fact discovery that could be completed, nor is there anything that restricts fact discovery to only the discovery Plaintiffs desires, or to only matters raised by Plaintiffs in their submissions to this Court.  The Order simply states "fact discovery shall be completed by 8/31/23."  Hence, Voynow issued a subpoena to Plaintiffs' current accounting firm Withum seeking its engagement letters and bills issued to Plaintiffs for 2020-2021.  See Ex. A.   The return date for the subpoena is August 21, 2023 and within the fact discovery deadline of 8/31/23.  Any suggestion that the subpoena is in violation of this Court's August 2, 2023 Order or is otherwise outside the fact discovery period is meritless.  Any suggestion that this Court somehow erred in issuing this order is offensive.  The language of the Order is clear and explicit – fact discovery (without qualification) can be completed up through August 31, 2023.

Plaintiffs seek to quash the Withum subpoena based solely upon relevance.  No other objections are asserted.  Pursuant to FRCP 26, a party may obtain discovery regarding any non-privileged matter that is relevant to a party's claim or defense and proportional to the needs of the case.  Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in th[e] case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989) (holding that "the broad scope of discovery delimited by the Federal Rules of Civil Procedure is designed to achieve disclosure of all evidence relevant to the merits of a controversy."); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y.2006) (noting that information sought "need not be admissible at trial to be discoverable").  Discovery regarding issues of credibility is permitted under this broad scope of relevance where such discovery may reveal information affecting the credibility of a witness' trial testimony. *Tisby v. Buffalo Gen. Hosp.*, 157 F.R.D. 157, 170 (W.D.N.Y. 1994; *Coyne v. Houss*, 584 F. Supp. 1105, 1108 (E.D.N.Y. 1984) (discovery under Rule 26's relevance standard permitted where credibility of a witness at issue and evidence affecting credibility would be relevant).

The documents sought in the Withum subpoena are relevant to Voynow's defense.  First, there is a critical dispute between the parties as to the scope of Voynow's engagement and what services Plaintiffs hired Voynow to perform as outside accountants.  While annual engagement letters were issued by Voynow from 2008-2016, Plaintiffs did not sign them.  Plaintiffs' owner Michael Koufakis hired Voynow and his credibility is one aspect of Voynow's defense.  Koufakis also hired Voynow's predecessor, as well as Withum, who became Plaintiffs' outside accountants in 2020, stepping into the role that Voynow had previously filled for 21 years.  Essentially,

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 8 of 13

Koufakis has hired all of Plaintiffs' outside accountants for the last 30 years.  As to Voynow, he contends that he hired it to provide accounting services that were "more than a review but less than an audit" of Plaintiffs' financial statements, to detect fraud, to actually verify all balances in every account listed on the balance sheet, and prepare tax returns.  Koufakis claims he hired Voynow's predecessor for this same vast level of exact services prior to 1996.  Thus, according to Koufakis, Plaintiffs had hired outside accountants to provide this substantial level of accounting services for 30 years – and **before** the purported $10 million in fraud was discovered in 2017-2021.

Voynow refutes Koufakis' version of the scope of its engagement.  It maintains that it was hired for a tax engagement which is not intended to detect fraud or verify account balances, and that there is no such thing as an engagement that is "more than a review but less than an audit." When asked at his August 2022 deposition about what services he hired Withum to provide after it replaced Voynow, Koufakis was vague and unable to identify the accounting services Withum was providing.  He testified that it was "a fluid situation" and "had not been fully discussed" (even though Withum had already been engaged for over two years at the time of this deposition).  He testified that he "did not recall" if there were engagement letters with Withum, yet acknowledged that he would have been the person to sign them. (See Koufakis Dep. at 84-86, attached hereto as Ex. 1). Despite Koufakis' ambiguous testimony, Withum has issued engagement letters and these letters clarify the services Koufakis hired Withum to provide as outside accountants succeeding Voynow.  Voynow is entitled to discover these letters because they are likely to support its defense as to the scope of the engagement of Plaintiffs' outside accountants being limited to a tax engagement, and will impact Koufakis' credibility given his characterization of the outside accounting services Plaintiffs obtained in general, and from Voynow in particular.

Specifically, if Koufakis is to be deemed credible – i.e., that he had hired outside accountants for over 25 years to provide such vast services that were "more than a review but less than an audit," actual verification of all account balances, and detection of fraud -- then it would be reasonable to expect that he would have likewise hired Withum for comparable services.  This is particularly true given that Plaintiffs claim to have discovered $10 million in purported fraud between 2017-2021.  One would expect that Plaintiffs would look to their outside accountants to provide a similar broad range of services – if not even more-- as a result.  This is particularly true when considering that Plaintiffs had fired the two controllers who ran all seven dealerships for over 20 years, and replaced them with one existing employee who was charged with running all seven dealerships, despite having no accounting degree, education, training, nor prior experience as a controller.[6]  Conversely, if the Withum engagement letters show that Koufakis had only retained Withum for a tax engagement –  similar to what Voynow contends it was hired for – then such evidence lends support to Voynow's defense.  Such evidence bolsters the notion that the role of Plaintiffs' outside accountant was confined to tax preparation and not fraud detection or verification of account balances.  Such evidence further supports Voynow's defense by refuting

---

[6] While Plaintiffs claim that this Controller is now a certified fraud examiner, she was not when she moved into the role of Controller and only became a certified fraud examiner in 2021 – well after Withum was engaged.  Further, her credentials as a "fraud examiner" are confined only to Plaintiffs as she has never been hired nor involved in any other fraud investigation.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 9 of 13

the notion that Koufakis hired outside accountants for a financial statement engagement that was "more than a review and less than an audit." Given the dispute between the parties as to the scope of engagement and the level of outside accounting services, Koukafis' credibility on this point is in issue. Since he was unable to answer questions about the "fluid" level of services he hired Withum to provide, Voynow should be permitted to obtain Withum's 2020 and 2021 engagement letters as these letters will have information relevant to Voynow's defenses as to the nature of Plaintiffs' outside accounting services and Koufakis' credibility on this issue.

Secondly, the Withum engagement letters are relevant to the actual fraud schemes at issue in this case. Plaintiffs incorrectly assert that the relevant period ends in 2017. To the contrary, the relevant period extends to 2021 as that is when the last purported fraud was discovered and investigated. Six of the purported thefts that Voynow is now being sued for not detecting were discovered in 2020 and 2021 – **during** Withum's engagement. Specifically, Plaintiff Star Nissan contends that an alleged theft of approximately $680,000 in bonus money paid during 2010-2016 was not discovered until 2020. (See Plaintiffs' Corporate Designee Deposition Excerpts, attached collectively hereto as Exhibit 2 at 53). Plaintiff Star Chrysler claims that purported theft of $68,000 in allegedly unpaid employee advances issued in 2010-2016 was not discovered until the end of 2020 or beginning of 2021. Ex. 2 at pp. 40-41. Plaintiff Star Toyota likewise claims that it did not discover alleged thefts of $20,000 and $3,000 relating to vehicles released in 2016 without full payment, until 2020 and 2021. Ex. 2 at 64-65; 77. Plaintiff Star Hyundai claims that an alleged theft of $22,000 purportedly occurring in 2013 was not discovered until sometime "between 2020 and 2021." Ex. 2 at 21. These six alleged thefts total approximately $800,000 and were all discovered **during** Withum's engagement as outside accountant – but not by Withum.

Rather, Plaintiffs claim they discovered these alleged thefts. Voynow seeks to know if Plaintiffs' engagement letter with Withum indicates whether it had been hired to detect theft or verify account balances – as Plaintiffs claim Voynow was hired to do. If Withum's engagement letter states that it was actually hired to detect theft or verify balances, but did not discover these six thefts, then one must ask why Plaintiff has only sued Voynow for not detecting these thefts – but not Withum. Conversely, if Withum's engagement letter is limited to a tax engagement with no obligation to detect theft, then this evidence supports Voynow's defense. It explains why Plaintiffs have not sued Withun for failing to detect this theft and would support Voynow's defense that a tax engagement cannot be relied upon, nor is it intended, to detect theft. Voynow is entitled to discover what Withum was engaged for in 2020 and 2021 given that six of the "thefts" at issue totaling $800,000 were discovered while Withum was Plaintiff's outside accountant. Voynow's subpoena is also proportional as it is limited to only the two years when the six schemes were discovered. Voynow does not seek Withum's engagement letters for any years thereafter.

Lastly, Plaintiffs have asserted that the amounts billed annually by Voynow were purportedly high and therefore indicative of services beyond a mere tax engagement. They have argued that the total amount billed by Voynow suggests that it provided more than tax services. Plaintiffs also assert that because they received retainer bills from Voynow, that also implies that Voynow's services were more than a tax engagement. Voynow refutes these assertions. It contends that given the nature of Plaintiffs' businesses, their specific tax obligations, and their

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 10 of 13

status as "flow thru" entities, the amounts billed annually were appropriate for a business tax engagement of their size. The subpoena seeks Withum's bills for 2020 and 2021. As Withum was engaged mid-year in 2020, this request would allow for one full calendar year's worth of bills. If Withum's bills are comparable to Voynow's and if Withum's engagement letters reflects services confined to a tax engagement, then this information is relevant to refute Plaintiffs' characterization of Voynow's bills and supports Voynow's defense as to its version of the scope of the engagement.

Plaintiffs seek to prevent Voynow from obtaining these bills by arguing that Withum is a "colossal" accounting firm with offices throughout the world, whereas Voynow is a Pennsylvania accounting firm with one office. That argument makes no sense. Koufakis testified that it was Withum's New Jersey office that provided services to Plaintiffs, which is akin to Voynow's Pennsylvania office providing services. Plaintiffs did not receive services from the other "worldwide" Withum offices and merely because Withum has other offices or employees working outside New Jersey does not justify precluding discovery of its 2020 and 2021 invoices for the work performed by Withum's New Jersey-based accountants for Plaintiff. Further, contrary to Plaintiffs' argument, Voynow's opposition to discovery of its bills issued to other dealership clients is not an "apples to apples" comparison. Voynow's other dealerships clients are distinct entities and unrelated to Plaintiffs. However, the amount billed by Withum and by Voynow to Plaintiffs for a tax engagement is an "apples to apples" comparison and therefore relevant. Accordingly, Plaintiffs' Motion to Quash the Withum subpoena should be denied.

## II.      **Plaintiffs' Motion to Preclude Evidence is Both Unfounded and Premature**

Plaintiffs seek to preclude Voynow from introducing certain documents into evidence. At the outset, this issue should be raised in the context of a motion *in limine* at the time of trial. It is not a discovery dispute. Local Civil Rule 72.2 states that a magistrate judge is empowered to act "with respect to all non-dispositive pretrial matters" unless assigned otherwise. Preclusion of evidence, whether for trial or in a dispositive motion, is an issue more properly raised before the trial judge according to Rule 72.2. For that reason alone, Plaintiffs' motion should be denied.

Nonetheless, Plaintiffs argue that documents produced by Voynow on June 30, 2023 should be precluded because fact discovery purportedly ended on March 28, 2023. They do not argue lack of relevance, privilege, hearsay or any other evidentiary ground justifying preclusion. Their argument is based solely upon timing yet ignores the fact the this Court's March 28, 2023 Order stated that "all discovery closes on August 18, 2023" without having yet addressed expert discovery. At Plaintiffs' request, this Court extended this deadline, issuing an August 2, 2023 Order that explicitly extended the fact discovery deadline from August 18, 2023 to August 31, 2023 with  expert discovery to proceed thereafter and close by January 5, 2024. Contrary to Plaintiffs' argument, fact discovery did not end on March 28, 2023. Whether relying upon either the March 28th or August 2nd Order, this Court permitted fact discovery into August. Thus, Voynow's June 30th supplemental production was timely and not after the close of discovery.

It is noteworthy that Plaintiffs' motion to preclude based upon timeliness only seeks to preclude some – but not all – of Voynow's supplemental discovery provided on June 30, 2023.

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 11 of 13

When Voynow produced supplemental documents (296 pages in total) on June 30th, it also provided discovery disclosures regarding handwriting on certain documents. See June 30, 2023 correspondence, attached as Ex. 3. Plaintiffs take no issue with this aspect of Voynow's June 30th supplemental discovery – even though issued after March 28, 2023. Plaintiffs also only object to approximately 75 of the 296 pages of documents produced. Plaintiffs cannot pick and choose to designate certain aspects of Voynow's June 30, 2023 production as untimely – while welcoming the remainder. By doing so, they undermine their entire argument.

Plaintiffs' attempt to preclude these documents from evidence at trial should be denied for the added reason that Plaintiffs themselves have supplemented their discovery disclosures and document productions after March 28, 2023. They have done the very thing they now complain about and their own actions in doing so defeat their argument that no fact discovery was permitted after March 28th. Specifically, Plaintiffs produced over 4,500 email documents to Voynow on May 30, 2023 despite Voynow's request for them in 2019 and despite this Court's March 28, 2023 order for them to be produced by April 28, 2023. Plaintiffs produced these emails over a month after the date ordered by the Court. Plaintiffs also served supplemental Second Amended Initial Disclosures on June 29, 2023, disclosing a new witness for the first time. Plaintiffs deposed a Voynow witness on June 22, 2023. It is further expected that Plaintiffs will provide additional Reynolds emails to Defendants by August 24, 2023 – again after the April 28, 2023 deadline imposed by the Court. In short, both parties have supplemented their discovery responses after March 28th . This supplemental discovery has not been limited solely to topics raised in prior submissions to this Court. Plaintiffs' request to now preclude some of the documents produced on June 30, 2023 solely based on timeliness – when fact discovery deadline is now August 31st and when Plaintiffs have produced over 4,500 documents after March 28th -- is baseless.

It should be noted that the approximate 75 pages of documents Plaintiffs now take issue with are documents they essentially have had or were aware of all along. This is not a scenario whereby they were unfairly surprised by content or information never raised before. Specifically, Voynow's June 30th production included publicly accessible court records regarding a Consent Judgment Plaintiffs entered into with the New York State Attorney General in 2020. Plaintiff Star Toyota had been engaged in ongoing fraud it committed upon its non-English speaking Chinese customers who bought vehicles from 2014 through 2020. Clearly, Plaintiffs know of these documents as they executed the Consent Judgment against them with the Attorney General's Office and agreed to pay fines for their acts of fraud. The documents are public court records that Defendants intend to reference at trial. The subject matter – fraud committed by Plaintiffs upon the public – has been raised in at least one discovery deposition taken in this case.

Similarly, Voynow's June 30, 2023 supplemental production included letterhead copies of Voynow's tax engagement letters previously produced in discovery. Deposition testimony established that each year during 2008-2016, Voynow would print out the engagement letter from its server onto letterhead paper as Voynow's letterhead was not saved on the server. Once printed, the letterhead copies were then mailed to Plaintiffs. During discovery, Voynow initially produced copies of the engagement letters that were retrieved from its server and printed on plain paper and without letterhead. The June 30, 2023 supplemental production contained these same engagement

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 12 of 13

letters just printed on letterhead. (See e.g., plain paper copy and letterhead copies of January 2, 2014 letter, attached as Ex. 4 and 5). The content of the letterhead and non-letterhead copies of the engagement letters is identical.  There is nothing different as to the scope of Voynow's services, the applicable professional accounting standards governing the engagement, the responsibilities of Plaintiffs' management, or any other provision.  The only difference is that one version is on plain paper and one is on letterhead.  Voynow simply supplemented with letterhead copies of what was previously produced without letterhead.  Notably, Plaintiffs do not deny receiving the letterhead copies Voynow issued annually during 2008-2016.  Plaintiffs only claim to have never signed them.

In furtherance of their attempt to preclude the letterhead copies of the engagement letters, Plaintiffs argue that defense counsel had previously represented that there no other engagement letters beyond what had been initially produced.  Plaintiffs misconstrue what was actually represented. Voynow's  engagement began in 1996, but it did not issue engagement letters until 2008.  When asked about other engagement letters, defense counsel's representation on this issue indicated that there were no engagement letters for the tax years of 1996 through 2007.

Lastly, Plaintiffs' take issue with the Voynow's production of a cover letter and power of attorney form signed by Plaintiffs' owners Steve Koufakis in 2013 regarding a sales tax audit Voynow handled for Plaintiff Star Mitsubishi.  The documents at issue referenced "Star Auto Sales of Queens Village, LLC" and not specifically Star Mitsubishi.  Upon further review of Voynow's database when preparing supplemental responses to Plaintiffs' Fourth Request for Production in June, it was discovered that the document had been erroneously coded as non-responsive and was actually applicable to Star Mitsubishi.  It was re-coded and produced in Voynow's supplemental production.  Rule 26(e) of the Federal Rules of Civil Procedure states that a party is under a duty to supplement if it learns that information previously disclosed was incomplete.  Upon discovering this coding error, Voynow corrected and supplemented its response. However, this supplementation does not justify preclusion.  The supplementation was prior to the discovery deadline and the content of this document was well known to Plaintiffs.  Star Mitsubishi knew that Voynow handled a sales tax audit in 2013 as it was reflected in Voynow's billing records and paid for by Star Mitsubishi.  It was also referenced in depositions taken in this case.  Plaintiffs clearly knew of the power of attorney for this sales tax audit as their owner signed it, Plaintiffs then notarized it, and sent it to Voynow.

In short, Plaintiffs have no grounds to preclude some of the 296 pages of documents provided on June 30th from evidence.  The documents were timely produced given the initial August 18, 2023 deadline in this Court's March 28, 2023 Order which was then extended to August 31, 2023 by the August 2, 2023 Order.  Plaintiffs' own conduct in supplementing their discovery productions throughout May, June and August support the denial of their motion, as does the fact that Plaintiffs challenge only part of the 296 documents Voynow produced on June 30th.  This Court should likewise not entertain Plaintiffs' latest request to allow more depositions relating to these documents – all of which they were fully aware as to the content.  Indeed, if this Court were to entertain Plaintiffs' request, then it necessarily follows that Voynow should be permitted to depose the authors and/or recipients of 4,500 plus internal Reynolds email documents that

Honorable Taryn A. Merkl, U.S.M.J.
United States District Court Eastern District of New York
August 21, 2023
Page 13 of 13

Plaintiffs produced on May 30, 2023 and will produce more on August 24, 2023.  Unlike the 296 documents that Voynow had produced on June 30, 2023, Voynow has never seen any of these 4,500 internal emails Plaintiffs are now producing.


Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

/s/ Jamie S. Felsen

cc: All counsel of record