FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM   INDEX NO. 718092/2020
NYSCEF DOC. NO. 1                                 RECEIVED NYSCEF: 10/08/2020

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York | **VERIFIED PETITION** |
| Petitioner, | INDEX NO.: 2020/ _____ |
| -against- | IAS PART: _____ |
| Star Auto Sales of Bayside, Inc. d/b/a/ Star Toyota of Bayside, | ASSIGNED TO JUSTICE: _____ |
| Respondent. | |

The People of the State of New York, by their attorney, LETITIA JAMES, Attorney General of the State of New York, respectfully allege, upon information and belief:

## INTRODUCTION

1.  From at least April 12, 2014, Respondent, Star Auto Sales of Bayside, Inc. d/b/a/ Star Toyota of Bayside, a new and used auto dealership, has repeatedly and persistently engaged in fraudulent, deceptive, and unlawful practices related to the sale and financing of new and used vehicles and associated aftermarket items.

2.  Respondent's practices include misrepresenting negotiated prices on consumer contracts, adding unwanted aftermarket items to consumers' contracts without the consumers' knowledge or consent, failing to provide consumers with copies of their sales and lending contracts, and making other false claims related to the consumers' financing.

3.  Respondent's sales staff target Chinese-speakers, taking advantage of their lack of lack of English skills and knowledge of domestic auto sales practices.

4.  The Attorney General of the State of New York ("NYAG") brings this special proceeding to enjoin Respondent permanently from engaging in such

VOYNOW_035641

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM   INDEX NO. 718092/2020
NYSCEF DOC. NO. 1   RECEIVED NYSCEF: 10/08/2020

fraudulent, deceptive, and illegal conduct in connection with their operation as an auto dealership. The NYAG seeks permanent injunction, restitution, damages, accounting, civil penalties, disbursements, and statutory costs.

## PARTIES AND JURISDICTION

5.     Petitioner is the People of the State of New York by their attorney, Letitia James, Attorney General of the State of New York.

6.     The NYAG brings this proceeding pursuant to: (i) Executive Law § 63(12) which empowers NYAG to seek injunctive relief, restitution, disgorgement, damages, and other equitable relief when a person or business entity engages in repeated fraudulent or illegal acts or persistent fraud or illegality in carrying on, conducting or transacting of business; and (ii) General Business Law ("GBL") Article 22-A which empowers the NYAG to seek injunctive relief, restitution, civil penalties, and other equitable relief against any person or business entity that has engaged in deceptive acts or practices and/or false advertising in the conduct of business.

7.     Respondent is domestic corporation, having its principal place of business at 205-11 Northern Boulevard, Bayside, New York. The dealership is a Toyota franchisee, selling, leasing, and servicing new and used automobiles.

## FACTS

### I.  Respondent Targeted Vulnerable Chinese-Speaking Consumers

8.     Respondent targeted Chinese-speaking consumers by advertising in Chinese publications that the dealership had Chinese-speaking sales reps on staff. Many Chinese-speaking consumers went to Star reassured by these ads, grateful that they would be able to make purchases in their native language.

9.     Other consumers went to Star because they were reassured by the size of the dealership. These consumers assumed such a large business was unlikely to

VOYNOW_035642

.

cheat them. However, they were also reassured when they found they could negotiate their transactions in their native language.

10.     These Chinese-speaking consumers naturally trusted Respondent's sales reps because of their common language.

11.     Additionally, Respondent's Chinese-speaking sales staff encouraged these consumers to rely on the bond of trust created by their shared language.

12.     However, the consumers eventually realized their trust was misplaced. In a number ways, discussed more-fully below, Respondent's sales staff used the bond of a common language to defraud the consumers.

## II. Respondent Inflated Sales Prices and Jammed Aftermarket Items by Omissions, Misrepresentations, and False Promises

### A. Respondent inflated consumers' vehicle costs above the negotiated prices

13.     Many Chinese-speaking consumers, being unable to read English, discovered only after their purchases that Respondent's sales staff charged them far more for their cars than they had ever agreed to pay during their negotiations.

### B. Respondent jammed undisclosed aftermarket items into consumers' contracts

14.     Respondent's sales staff's deceptive tactics included adding unwanted aftermarket items into the consumers' sales contracts; a practice called "jamming" in auto industry parlance. These items included high-cost and low-value products or services such as supplemental warranties and service contracts, protective coatings for tires, or various anti-theft devices. Star's sales reps regularly engaged in jamming against Chinese-speaking consumers, often without mentioning the jammed items during the sales negotiations.

3

VOYNOW_035643

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM

NYSCEF DOC. NO. 1

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

**C. Respondent jammed aftermarket items into consumers' contracts by making material misrepresentations or omissions during sales negotiations**

15.     In some instances, Respondent's sales staff jammed the unwanted aftermarket items into consumers' contracts by falsely claiming the items were free or included in the previously negotiated price.

16.     In other instances, Respondent's sales staff brought up aftermarket items without mentioning any prices, leading the consumers to the false assumption Respondent was including the items in their negotiated prices.

17.     Sometimes Respondent's sales reps mentioned aftermarket items after obtaining consumer down payments, and then threatened to retain the payments if the consumers did not agree to the previously unmentioned charges.

18.     Additionally, Respondent's sales reps falsely claimed lenders required service contracts or other aftermarket items. Respondent claimed the policies were required to get good interest rates, that lenders would not offer loans without the extra contracts, or that Star could not sell the cars without including these additional unwanted purchases.

19.     Respondent's sales reps also jammed unwanted aftermarket items into consumers' contracts by misrepresenting the items' scope or coverage.

20.     Respondent's sales staff jammed aftermarket items into consumers' contracts even after the consumers had specifically declined the items.

4

VOYNOW_035644

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM        INDEX NO. 718092/2020
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 10/08/2020

### III. Respondent's Sales Forms Were Incomplete, Inaccurate, & Deceptive

#### A. Respondent's failure to itemize costs on sales contracts facilitated jamming

21.    Respondent's sales staff frequently listed the aftermarket items on consumers' contracts without any prices, preventing the consumers from noticing the cost of unmentioned items while signing their sales and lending documents.

22.    In some instances, Respondent's staff appears to have added the cost of aftermarket items to consumers' purchases without even listing the items on the sales contracts.

#### B. Respondent added unexplained costs to consumers' contracts

23.    Respondent's sales contracts included significant charges added to consumers' contracts without any explanation at all. Often, these charges could not be explained even when the consumers and the NYAG reviewed Star's internal sales records.

24.    In February of 2019, the NYAG took testimony from Respondent's used car sales manager. The manager claimed to be the only person who reviews Star's sales documents for used car transactions. However, even he was unable to shed light on these unexplained charges.

25.    To understand the unexplained charges the NYAG reviewed Star's deal jackets, but the Respondent's paperwork only led to more confusion. The deal jackets included Star's internal profit reports that list the items sold to the consumers, how much Respondent charged for each item, the dealership's cost for each items, the resulting profit from each item, and the commission paid to the sales staff. Many of these profit reports included charges of hundred or even thousands of dollars for "wax." Star records "wax" as a 100% profit for the dealership; if the

5

VOYNOW_035645

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1
INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

profit report shows the consumer paid $1,695 for "wax," the dealership's profit was also $1,695. Whatever "wax" means, it is a product or service that was neither listed on any other sales documents nor mentioned to any of the consumers.

26.     During an investigative hearing, the manager of Respondent's used car location could not explain what "wax" meant on a number of Star's profit reports.

27.     Finally, in some instances Respondent's paperwork is inconsistent from document to document. Based on the inconsistencies and irregularities, it can be impossible to tell from Respondent's records what some consumers bought or what they are paying for those purchases.

**IV. Respondent's Additional Deceptive Sales Practices**

### A. Respondent offered inadequate and deceptive translations services

28.     After negotiating in Chinese, some consumers asked for sales contracts in Chinese. However, Respondent does not maintain Chinese-language contracts.

29.     Often, the Chinese-speaking sales reps brought their consumers to English-speaking finance managers to sign their paperwork. The sales reps would offer to stay to assist with the paperwork and translation, but would then fail to translate what the managers said or even explain the meaning of the documents the managers asked the consumers to sign.

30.     In some instances, consumers who negotiated entirely in Chinese and spoke absolutely no English ended up signing their sales and lending contracts alone with finance managers who spoke no Chinese.

31.     However, more often the Chinese-speaking consumers never met a finance manager. Instead, they signed their paperwork with the same Chinese-speaking sales reps with whom they had negotiated their sales. In these instances,

6

VOYNOW_035646

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM          INDEX NO. 718092/2020
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 10/08/2020

the consumers report that the sales reps explained virtually nothing about the paperwork they asked the consumers to sign.

32.  Respondent's sales reps also encouraged the consumers to sign the sales documents by verbally repeating the negotiated terms even as the consumers were signing paperwork containing significantly higher costs.

### B. Respondent's other deceptive sales practices

33.  After negotiating a deal, the Respondent's sales staff left consumers to wait for hours before seeing their contracts without any explanations for the delays. Many consumer remember being tired and hungry by the time they saw their paperwork and admit that by the time they saw their contracts they were ready to sign anything to get out of the dealership.

34.  Respondent's sales reps asked consumers to sign loan contracts with blank terms, claiming that the banks would complete the forms after the consumers signed them.

35.  Respondent's sales staff refused to accept one-time cash payments from Chinese-speaking consumers, then cheated them on their financed purchases.

36.  Finally, Respondent's sales staff made false promises to some consumers, verbally agreeing to buy back the consumers' cars years after the sale for generous prices.

37.  Many of the aftermarket items Respondent sold were services or insurance products administered by third-party agencies. To activate the policies or services, Respondent had to send the third-party agencies a portion of the consumers' payments. However, in some instances Respondent failed to forward

7

VOYNOW_035647

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM

NYSCEF DOC. NO. 1

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

these payments to the administrators, so consumers were then unable to use the products for which they paid.

38.    After engaging in deceptive practices against Chinese-speaking consumers during their sales, Respondent's sales reps took advantage of their lack of familiarity with domestic auto sales practices by falsely claiming that tips for sales staff were required or customary.

39.    However, demanding tips was just one of the questionable means Respondent's sales reps employed to obtain fraudulent cash payments from these consumers. The sales reps also demanded cash payments for setting up their insurance, for items that were already accounted for in the consumers' sales contracts, or for other charges that the reps simply invented.

## V. Respondent Failed to Provide Consumers' Sales and Lending Contracts

### A. Respondent failed to provide copies of sales and lending contracts to consumers

40.    Many Chinese-speaking consumers did not realize Respondent overcharged them until receiving their first bill and seeing they were paying more than promised.

41.    These consumers were initially unaware they had been cheated by Respondent, in part because the sales reps systematically failed to provide copies of the sales contracts that should have shown all the itemized costs.

42.    Respondent also failed to provide many consumers copies of their loan contracts.

43.    Respondent's sales reps refused to provide the sales and lending contracts even when consumers called or returned to Star specifically to ask for the paperwork.

8

VOYNOW_035648

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1
INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

### B. Respondent's failure to provide sales and lending contracts harmed consumers

44. Respondent's failure to give consumers their sales and lending contracts inhibited their ability to determine what Star actually sold them or how much everything cost.

45. Worse still, many consumers will never see their contracts as Respondent failed to maintain copies of their records. These consumers know Respondent overcharged them, but will never find out exactly how Star's sales staff cheated them or even know what extra items were jammed into their contracts.

46. It was already difficult for Chinese-speaking consumer to draft coherent complaints in English. However, Respondent's failure to provide copies of their sales and lending contracts made that task nearly impossible.

## VI. Deceptive Practices Related to Lending

### A. Respondent misrepresented interest rates and other lending terms

47. In addition to engaging in deceptive practices related to the purchase costs for the Chinese-speaking consumers,' Respondent also misled them on elements of their loans. In the simplest instances, Respondent misled the consumers about the interest rates they would be paying.

48. Dealerships can set up consumer loans at higher interest rates than what the lenders offer. When they do, they get to keep a portion of the consumers' additional financing costs. In auto industry parlance, this legal kickback is called the financial reserve. However, while the practice is legal, it was deceptive for Respondent's sales staff to claim they were giving consumers the best possible interest rates, fully aware that they were adding as much as 2% to the consumers' interest rates and pocketing a portion of the extra financing costs.

9

VOYNOW_035649

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

49.     Respondent's sales team also misrepresented the length of the consumers' loans, disguising how much Star was charging consumers for their purchases.

## B. Respondent made false promises & misrepresentations related to refinancing

50.     In addition to making misrepresentations to consumers about the terms of their loans, Respondent's sales reps also falsely promised to refinance the consumers' loans at a lower rate after a set number of payments. Such promises are facially deceptive as Respondent is not a lender and has no ability to predict or control future interest rates or any of the myriad of other factors that go into financing decisions. The sales reps usually made these promises during the consumers' transactions to induce them to sign the contracts, but they also made these promises in response to consumers' complaints about overcharges. Often the promises were very specific, such as offering to lower the consumers' loans to a particular interest rate after a set number of payments. Other times, the reps only promised to lower the interest rate without being specific about the amount of the reduction.

51.     On rare occasions when Respondent's sales staff honored the promises to refinance consumers' loans, they took the opportunity to defraud the consumers a second time, jamming new unexplained costs into the new contracts.

## C. Respondent submitted inaccurate consumer credit applications

52.     Respondent's sales staff routinely submitted false information about consumers' personal and financial status on credit applications. This included making up false employment and employers, deceptive job titles, inflated incomes, and false housing costs.

10

VOYNOW_035650

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

53.     The manager of Respondent's used car location acknowledged that the sales staff had made misrepresentations on the consumers' credit applications in order to secure loans that might not be approved otherwise.

54.     By submitting fraudulent credit applications, Respondent obtained loans that some of the consumers struggled to afford.

## VII. Respondent's Fraudulent Practices Following the Initial Sales

### A. Respondent committed fraud related to trade-ins

55.     Facing payments they could not afford, some consumers returned to Star to seek relief by trading in their cars. Some of the consumers returned to trade in their cars still unaware Respondent had defrauded them on their first transaction. Others knew Respondent had cheated them, but were so desperate for relief from the excessive monthly costs that they returned to the dealership anyhow.

56.     For consumers making these trade-ins, the point was to lower their monthly costs. However, in some instance, after promising lower monthly payments, Respondent gave the consumers loans with even higher monthly costs.

57.     While making these trade-ins, Respondent's sales reps took the opportunity to engage in a second round of jamming aftermarket items, adding even more costs to the loans of these already overburdened consumers.

58.     In addition to adding new aftermarket items to the trade-in contracts, the sales reps routinely failed to explain how much of the consumer's prior loan balances had been rolled over into the new financing arrangements.

### B. Respondent failed to take reasonable steps to address consumer complaints

59.     When consumers returned to Star to complain about overcharges, the sales staff would not treat them fairly. Sometimes, Respondent's sales staff would

11

VOYNOW_035651

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

initially speak to the consumers, but refuse to continue talking once they realized the consumers were complaining. Other consumers claim Respondent's sales staff simply ignored them from the start.

60.     Star's management was equally unhelpful in addressing complaints. When consumers spoke to anyone in charge, the managers just told the consumers to go back to the same sales reps who cheated them in the first place.

61.     When Star's staff responded to complainants, the answers were unsupported, vague, and often failed to address the consumers' actual complaints.

62.     A particularly disingenuous explanation of overcharges by Star's sales reps was to claim that previously undisclosed banks fees accounted for some of the overcharges. However, the reps then refused to provide any documentation for these fees, and when consumers contacted their lenders the bank's reps said the banks had not assessed any such consumer costs.

63.     When consumers complained about overcharges, Respondent's sales team would often just rely on the fact that the consumers has signed the contracts to avoid having to address the complainants' issues at all.

64.     In all, many consumers reported that Respondent's overall strategy in handling complaints alternated between false promises and ignoring them entirely in the hope that the consumers would give up and accept their losses.

**C. Respondent's deceptive practices related to consumer refunds**

65.     When the consumers were persistent, Respondent would offer them partial refunds. Invariably, the refunds were for far less than what the consumers believed they were due, but a few felt so defeated that they accepted the offers.

12

VOYNOW_035652

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

66.     Respondent then tricked and/or coerced the consumers who accepted these reduced refunds into signing English-language general release forms that they could not understand by misrepresenting what the forms even were.

67.     However, many consumers, realizing that the refunds would cover so little of their overcharges, refused Respondent's offers.

68.     On some occasions, Respondent's sales reps would put off complainants offering false promises they would refund consumers' purchase prices once they found other buyers for the consumers' cars. However, neither the sales nor the refunds ever happened.

### D. Respondent was abusive and threatening in responding to complainants

69.     In addition to being unhelpful in responding to consumer complaints, the sales reps were often abusive, insulting, and sometimes even threatening in their responses.

13

VOYNOW_035653

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM

NYSCEF DOC. NO. 1

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

### FIRST CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12)
### FRAUD IN THE CONDUCT OF BUSINESS

1.   The NYAG repeats and re-alleges paragraphs 8 through 69 as if fully set forth herein.

2.   Executive Law § 63(12) defines "fraud" or "fraudulent" to include "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions."

3.   As set forth in paragraphs 8 through 69, Respondents repeatedly engaged in fraud in the conduct of business, including, but not limited to:

- targeting Chinese-speaking consumers to defraud due to their lack of English proficiency with vehicle purchases;

- misleading consumers into signing sales and lending contracts containing higher than negotiated vehicle prices;

- jamming unwanted aftermarket items into sales contracts without mentioning the items to the consumers;

- falsely claiming unwanted aftermarket items were included for free;

- telling consumers they were receiving aftermarket items without mentioning any prices for the items, leading consumers to wrongly but reasonably believe the items were being included free of charge;

- threatening to retain consumer's down payments if they did not agree to purchase previously unmentioned aftermarket items;

- falsely telling consumers the interest rates or their ability to obtain loans were dependent on the purchase of aftermarket items;

- lying to consumers about the scope of coverage of aftermarket items;

- jamming unwanted items into consumers' contracts after the consumers specifically declined to purchase the items;

14

VOYNOW_035654

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM

NYSCEF DOC. NO. 1

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

- failing to itemize the prices for individual aftermarket items on consumers' sales contracts or adding the cost of the aftermarket items without listing the items;

- adding unexplained charges to consumers' sales contracts;

- failing to provide Chinese-speaking consumers with contracts in the languages that Respondent's sales reps used during the sales negotiations;

- offering to assist consumers by translating for them as they signed their sales and lending documents, but then either failing to translate anything at all or providing only vague explanations of the sales and lending documents;

- asking Chinese-speaking consumers to sign English-language sales contracts alone with Finance Managers who spoke only English;

- encouraging consumers to sign contracts by repeating the negotiated terms while simultaneously asking consumers to sign paperwork with vastly inflated costs;

- making consumers wait for inordinate periods before being allowed to review and sign their sales and lending contracts;

- asking consumers to sign lending contracts with blank terms by claiming the banks would complete the paperwork after it was signed;

- facilitating deceptive overcharges by refusing to accept cash payments;

- encouraging consumers to make purchases by offering false promises to buy back consumers' vehicles at generous prices after a predetermined period;

- failing to pay third-party administrators to activate the aftermarket items consumers had purchased;

- demanding tips from consumers who were unfamiliar with domestic auto sales practices;

- demanding other inappropriate cash payments from consumers unfamiliar with domestic auto sales practices and/or demanding cash payments for charges already included in the consumers' contracts;

- failing to provide consumers with copies of their sales and/or lending contracts, both at the time of the sales or when requested by the consumers after the sales;

15

VOYNOW_035655

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

- failing to retain consumers' sales records, thereby preventing the consumers from knowing what Respondent actually sold them;

- misrepresenting consumers' interest rates during sales negotiations;

- falsely telling consumers that Respondent was offering the best possible interest rates, when in fact the dealership was covertly raising the consumers' rates above what the lenders had offered;

- misrepresenting the length of the loans they set up for consumers;

- making facially deceptive promises to refinance consumers' loans after a set number of payments;

- then, on the rare occasions the refinancing promises were honored, engaging in a second round of jamming of unwanted items into the consumers' new contracts;

- submitting fraudulent credit applications to lenders, exaggerating the consumers' creditworthiness, often resulting in loans the consumers would struggle to repay;

- promising to help consumers with oppressive loans by arranging trade-ins to lower the consumers' monthly payments, but actually increasing the monthly payments;

- jamming unwanted aftermarket items into the new contracts when consumers, seeking relief from the oppressive loans, sought to trade-in their cars;

- refusing to tell consumers how much of their prior loans would be rolled into their new loans during trade-ins;

- failing to take reasonable steps to address consumer complaints;

- making false promises to refund consumers after reselling their vehicles;

- engaging in deceptive practices related to issuing refunds;

- engaging in abusive and threatening behavior in response to consumer complaints.

4.    By the foregoing, Respondents have engaged in repeated and persistent fraud in violation of Executive Law § 63(12).

16

VOYNOW_035656

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

## SECOND CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12)
### ILLEGALITY IN THE CONDUCT OF BUSINESS
### BY VIOLATION OF GBL § 349

5.      The NYAG repeats and re-alleges paragraphs 8 through 69 as if fully set forth herein.

6.      GBL, Article 22-A, § 349 prohibits deceptive acts and practices in the conduct of any business, trade, or commerce in the state of New York.

7.      As set forth in paragraphs 8 through 69, Respondents repeatedly engaged in deceptive acts and practices. The acts constituting deceptive trade practices are the same as the acts constituting fraud pursuant to Executive Law § 63(12) and are listed above in the first cause of action.

8.      By of the foregoing, Respondents repeatedly and persistently violated GBL § 349, and thereby engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

VOYNOW_035657

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

### THIRD CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12)
### ILLEGALITY IN THE CONDUCT OF BUSINESS
### BY VIOLATION OF MOTOR VEHICLE RETAIL INSTALLMENT SALES ACT

9.      The NYAG repeats and re-alleges paragraphs 8 through 69 as if fully set forth herein.

10.      Article 9 of the N.Y. Personal Property Law ("PPL") contains the Motor Vehicle Retail Installment Sales Act. This Article, at PPL § 302, sets forth the requirements for retail installment contracts, requiring, *inter alia*, that: (a) the seller must deliver to the buyer a copy of the signed contract; (b) the contract must not be signed by any party when it contains blank spaces to be filled in after it has been signed; and (c) until the seller provides the consumer a copy of the retail installment contract signed by both parties, or the consumer takes delivery of the vehicle, the consumer shall have an unconditional right to cancel the contract, to receive an immediate refund of all payments, and to have any contemplated trade-in returned.

11.      As set forth in paragraphs 8 through 69, Respondents repeatedly engaged in deceptive acts and practices, including, but not limited to:

- failing to provide consumers with copies of their retail installment contracts at the time of the transactions or even when consumers returned to Respondent's dealership specifically to demand their sales and lending contracts; and

- obtaining consumer signatures on retail installment contracts with blank terms, while telling the consumers that the banks fill in the blank terms after the contracts are signed;

12.      By of the foregoing, Respondents repeatedly and persistently violated PPL § 302 of the Motor Vehicle Retail Installment Sales Act, and thereby engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

18

VOYNOW_035658

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

### FOURTH CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12)
### ILLEGALITY IN THE CONDUCT OF BUSINESS
### BY VIOLATION OF N.Y. INSURANCE LAW § 7906

13.   The NYAG repeats and re-alleges paragraphs 8 through 69 as if fully set forth herein.

14.   Insurance Law § 7906 states that a seller "shall not require the purchase of a service contract as a condition of a loan or other extension of credit or a condition for the sale or other disposition of any property."

15.   As set forth in paragraphs 8 through 69, Respondents repeatedly told consumers they were required to purchase unwanted service contracts as a precondition to arranging financing for their vehicles or that the dealership was not permitted to sell the cars without the service contracts.

16.   By of the foregoing, Respondents repeatedly and persistently violated Insurance Law § 7906, and thereby engaged in repeated and persistent illegal conduct in violation of Executive Law § 63(12).

19

VOYNOW_035659

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

## RELIEF

WHEREFORE, the NYAG respectfully requests that a judgment and order be issued:

1.      Permanently enjoining Respondent from violating Executive Law § 63(12) and GBL § 349, and from engaging in the fraudulent, deceptive, unfair, and illegal practices alleged herein;

2.      Permanently enjoining Respondent from violating N.Y. Personal Property Law § 302 by failing to provide consumers copies of their retail installment contracts;

3.      Permanently enjoining Respondent from violating N.Y. Insurance Law by representing that the sale of a vehicle or the provision of financing for a vehicle sale is predicated on the sale of a service contract;

4.      Directing Respondent to make full restitution and pay damages to all Chinese-speaking consumers, known and unknown, who (i) purchased or leased an automobile from Respondent from a date six years prior to the filing of this matter to the present, and who (ii) were sold aftermarket products or services without their full knowledge or consent, or in any other way victims of Respondent's fraudulent and illegal practices alleged herein, and to pay costs associated with identifying potential unknown consumer victims of the same;

5.      Directing Respondent to provide an accounting to assist with the identification of potential unknown consumer victims of Respondent's fraudulent and illegal practices alleged herein;

6.      Directing Respondent to pay a civil penalty of $5,000 to the State of New York for each violation of GBL Article 22-A, pursuant to GBL § 350-d;

VOYNOW_035660

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM

NYSCEF DOC. NO. 1

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

7.     Awarding petitioner costs pursuant to CPLR § 8101 including disbursements pursuant to § 8301(a)(13), plus an additional allowance of $2,000 against Respondent pursuant to CPLR § 8303(a)(6); and

8.     Granting such other relief as is just and proper.

Dated: October 7, 2020                    Respectfully submitted,

                                          **LETITIA JAMES**
                                          Attorney General of the State of New York
                                          Attorney for Petitioner

                              By:  _____

                                          Matthew S. Eubank
                                          Assistant Attorney General
                                          Brooklyn Regional Office
                                          55 Hanson Place, Suite 1080
                                          Brooklyn, NY 11217
                                          Phone: (718) 560-2040

21

VOYNOW_035661

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 1

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

## VERIFICATION

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF KINGS   )

MATTHEW S. EUBANK, an attorney duly admitted to practice law in the Courts of the State of New York, being duly sworn, deposes and says that:

1.    I am an Assistant Attorney General in the Brooklyn Regional Office of Letitia James, Attorney General of the State of New York, and am duly authorized to make this verification.

2.    I have read the annexed Verified Petition and know the contents thereof, which are to my knowledge true, except as to those matters stated to be alleged on information and belief, and as to those matters, I believe them to be true. The grounds for my belief as to all matters stated upon information and belief are set forth in the attached Verified Petition and include investigatory materials and information contained in the files of the Brooklyn Regional Office of the Office of the Attorney General.

3.    The reason this verification is made by your deponent and not by the State of New York is that the State of New York is a body politic and sovereign acting through its officials and agents. The Attorney General is the statutory representative.

_____
MATTHEW S. EUBANK

Sworn to before me this

7 day of October 2020.

_____
NOTARY PUBLIC

JAMES SFIROUDIS
Notary Public - State of New York
Registration No. 01SF6114650
Qualified in Queens County
Commission Expires Aug. 23, 20 24

22

VOYNOW_035662

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM INDEX NO. 718092/2020
NYSCEF DOC. NO. 3                                                  RECEIVED NYSCEF: 10/08/2020

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

THE PEOPLE OF THE STATE OF NEW YORK,          **CONSENT ORDER**
by LETITIA JAMES, Attorney General of the      **AND JUDGMENT**
State of New York

                          Petitioner,    INDEX NO.: 2020/ _____

        -against-                    IAS PART: _____

Star Auto Sales of Bayside, Inc. d/b/a/ Star    ASSIGNED
Toyota of Bayside,                              TO JUSTICE: _____

                   Respondent.

    **IT IS HEREBY ACKNOWLEDGED, STIPULATED, CONSENTED TO AND**

**AGREED**, by and between Petitioner, the People of the State of New York, by its

attorney, the Attorney General of the State of New York (Matthew S. Eubank, of

counsel) and by Respondent, Star Toyota of Bayside, Inc. d/b/a Star Toyota of

Bayside, as follows:

    1.    Respondent acknowledges it has received a written notice of proposed

litigation pursuant to Executive Law §63(12) and General Business Law §§ 349(c)

and 350-c, and has been served with a copy of the Verified Petition. Respondent also

acknowledges that it has received a copy of the annexed Consent Order and

Judgment (hereinafter "Consent Order") and agree to the obligations and duties it

imposes;

    2.    Respondent consents to entry of the attached Consent Order without

further notice;

    3.    Respondent enters into this Stipulation and Consent agreeing to the

entry of the attached Consent Order to resolve the Attorney General's civil

1

VOYNOW_035663

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM
NYSCEF DOC. NO. 3

INDEX NO. 718092/2020
RECEIVED NYSCEF: 10/08/2020

investigation into its business practices without admitting or denying any liability, wrongdoing, or legal or factual issues alleged in the Verified Petition, to obviate the need for trial and to facilitate a resolution to this matter;

4.   Respondent enters into This Stipulation and Consent of its own free and voluntary act, with full knowledge and understanding of this proceeding and the obligations imposed upon it by the attached Consent Order;

5.   Respondent represents and warrants, through the signatures below, that the terms and conditions of this Consent and Stipulation are duly approved and the execution of this Consent and Stipulation is duly authorized;

6.   Respondent shall not take any action or make any statement denying, directly or indirectly, the propriety of the attached Consent Order or expressing the view that the attached Consent Order is without factual basis;

7.   Nothing in this paragraph affects Respondent's (i) testimonial obligations or (ii) right to take legal or factual positions in defense of litigation or other legal proceedings to which the Office of the Attorney General is not a party;

8.   The Consent Order is not intended for use by any third party in any other proceeding and is not intended, and should not be construed, as an admission of liability by Respondent;

9.   Acceptance of this Stipulation and Consent as well as the Consent Order by the Attorney General of the State of New York shall not be deemed or construed as an approval by the Attorney General of any of the activities of Star Toyota of Bayside, Inc. d/b/a Star Toyota of Bayside, or any of their subsidiaries, officers, employees, agents, or assigns, and none of them shall make any representation to the contrary;

2

VOYNOW_035664

FILED: QUEENS COUNTY CLERK 10/08/2020 11:25 AM

NYSCEF DOC. NO. 3

INDEX NO. 718092/2020

RECEIVED NYSCEF: 10/08/2020

10.    Petitioner may apply to the Court upon a twenty-day notice to Respondent for such other and further relief as it deems necessary for the purpose of carrying out the terms of the Consent Order.

**WHEREFORE,** the following signatures are affixed hereto this 2nd day of October, 2020.

**ATTORNEY GENERAL OF THE STATE OF NEW YORK**

By: _____

MATTHEW S. EUBANK, ESQ.,
Assistant Attorney General
Brooklyn Regional Office
NYS Office of the Attorney General
55 Hanson Place, Suite 1080
Brooklyn, New York 11217
(718) 560-2040

**STAR TOYOTA OF BAYSIDE, INC.**

By: _____

Michael Koufakis,
as President of Star Toyota
of Bayside, Inc.

By: _____

STEVAN LABONTE, ESQ.,
as counsel for Star Toyota
of Bayside, Inc.
Labonte Law Group
333 Jericho Turnpike, Ste. 200
Jericho, NY 11753
(516) 280-8580

3

VOYNOW_035665

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM

NYSCEF DOC. NO. 9

INDEX NO. 718092/2020

RECEIVED NYSCEF: 11/18/2020

At IAS Part 40 of the Supreme Court of the State of New York, held in and for the County of Queens, ~~at the Courthouse located at 88-11 Sutphin Boulevard, Jamaica, NY~~ on the 10th day of November , 2020.

**Present:  Hon. Richard G. Latin**
Supreme Court Justice

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York | **CONSENT ORDER AND JUDGMENT** |
| Petitioner, | INDEX NO.: 2020/718092 |
| -against- | IAS PART: 40 |
| Star Auto Sales of Bayside, Inc. d/b/a/ Star Toyota of Bayside, | ASSIGNED TO JUSTICE: Hon. Richard G. Latin |
| Respondent. | |

**UPON** the Verified Petition (the "Petition") dated October 7, 2020 and the Consent and Stipulation, in which the parties consent to the entry of this Consent Order and Judgment ("Consent Order") and waive notice of entry thereof,

**IT NOW APPEARS** that Star Toyota of Bayside, Inc. d/b/a Star Toyota of Bayside is willing to enter into this Consent Order without admitting or denying any of the allegations contained in the Petition.

**NOW**, on motion of Attorney General for the State of New York, ("NYAG") attorney for petitioner herein (Matthew S. Eubank, Assistant Attorney General, Of

VOYNOW_035666

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM   INDEX NO. 718092/2020
NYSCEF DOC. NO. 9   RECEIVED NYSCEF: 11/18/2020

Counsel) and upon consent of respondent and their attorney, Stevan Labonte Esq. of the Labonte Law Group, PLLC., it is hereby:

### PARTIES SUBJECT TO JUDGMENT

1.     **ORDERED, ADJUDGED, AND DECREED** that this Consent Order shall extend to Star Toyota of Bayside, Inc. d/b/a Star Toyota of Bayside, and their principals, directors, officers, shareholders, employees, successors, and assignees and agents acting in concert or in participation with it; and to any corporation, company, business entity, or other entity or device through which they may now or hereafter act or conduct business at this dealership (hereinafter cumulatively referred to as "Respondent"); and it is further

### DEFINITIONS

2.     For the purposes of this Consent Order, these terms shall have the following meanings:

(a)     An "Aftermarket Item" is any product, service, or policy for which the consumers is paying over and above the amount the consumer is paying to purchase or lease the vehicle. These Aftermarket Items include but are not limited to extended warranty arrangements, service contracts, and gap insurance policies related to etching the vehicle identification numbers in the glass of the car;

(b)     "Clearly and Conspicuously" shall mean that the statement, representation, or term is presented to be readily apparent and understood by the person to whom it is being addressed. Relevant factors for this purpose include, but are not limited to language, font type, size, length, and color contrast;

2

VOYNOW_035667

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020

RECEIVED NYSCEF: 11/18/2020

(c)     "Related Documents" include:

(i)     any document that the consumer signs, excluding forms provided by New York State (such as MV-50 forms or other state-produced documents;

(ii)     any documents containing the Respondent's policy on refunds, cancellations, or exchanges;

(iii)     any document containing terms and conditions of the agreement;

(iv)     any document containing guarantees or warranties given by the Respondent; and

(v)     any document excluding or modifying express or implied warranties;

(d)     "Sales Staff" means all sales representatives, finance or business managers, sales managers, and any other employees directly involved in selling or leasing vehicles to consumers; and it is further

## INJUNCTIVE RELIEF

3.     **ORDERED, ADJUDGED, AND DECREED** that Respondent is permanently enjoined from engaging in the deceptive, fraudulent, or illegal business acts or practices alleged in the Petition in violation of Executive Law § 63(12) and General Business Law ("GBL") § 349, including but not limited to the following:

(a)     misrepresenting sales prices or any other sales or lending terms to any non-English speaking consumer during sale or financing discussions, or misrepresenting terms contained on the sale, lease, or financing contracts;

(b)     selling or offering for sale, or providing to any consumer, any Aftermarket Items unless prior to sale or lease Respondent discloses, Clearly and Conspicuously, both orally and in writing, a fair description of the

3

VOYNOW_035668

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020
RECEIVED NYSCEF: 11/18/2020

Aftermarket Item, the full price to be paid by the consumer for each product or service;

(c)     representing directly or by implication during a sale or lease that any Aftermarket Item is free, including such language as "included" or "comes with the car," or by describing the Aftermarket Item without stating any price for the product, service, or policy;

(d)     charging any consumer for an Aftermarket Item without the consumer's express consent or after the consumer has refused to purchase the product, service, or policy;

(e)     selling any Aftermarket Item to any consumer based on any misrepresentation about the item, product, or service including the scope of coverage of the item;

(f)     selling any Aftermarket Item to consumer based on any misrepresentation that the item is required by the dealership, the lender, or any other entity in order to complete the transaction, to obtain financing, to obtain a particular financing rate, or to be allowed to purchase or lease a vehicle at an advertised price;

(g)     threatening to retain consumers payments if they do not agree to purchase unwanted Aftermarket Items;

(h)     failing to provide any consumer with a copy of the consumer's sale or lease contract at the conclusion of any transaction;

(i)     producing sale or lending contracts that include unexplained costs or include any Aftermarket Items without the price for each product of service Clearly and Conspicuously listed immediately adjacent to each item;

4

VOYNOW_035669

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM          INDEX NO. 718092/2020
NYSCEF DOC. NO. 9                                        RECEIVED NYSCEF: 11/18/2020

(j)      allowing consumers to sign sales or lending contracts without all of the relevant terms filled in;

(k)      refusing to accept cash or upfront payments for vehicle purchase by requiring that any consumer accept financing when such a requirement is not actually part of terms of a manufacture's sale or conspicuously disclosed in an advertisement;

(l)      misrepresenting the financing terms, including the length or the interest rate of the loan;

(m)     promising to refinance any consumer's vehicle loans in the future, and/or promising to refinance any consumer's loan at better rate or with specific terms in the future;

(n)      misrepresenting the amount being given as trade-in allowances on consumer vehicles or including portions of previous loans in new consumer loans without the consumers understanding and consent; and

(o)      misrepresenting any consumer's personal financial information on a credit application; and it is further

4.      **ORDERED, ADJUDGED, AND DECREED** that Respondent shall provide to non-English speaking consumers translations of all the Related Document for any new or used, lease or sale vehicle transactions in the language in which the sale was negotiated. Respondent shall provide these Translated Documents to the non-English speaking consumer before the consumer signs the corresponding documents in English, and:

(a)      Respondent shall produce these Translated Documents and implement their use in all vehicle transactions negotiated in a foreign

VOYNOW_035670

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM          INDEX NO. 718092/2020
NYSCEF DOC. NO. 9                                        RECEIVED NYSCEF: 11/18/2020

language by no later than ninety days after the entry of this Consent Order (the "Translation Implementation Period").

(b)      Upon written notice to the NYAG before the expiration of the Translation Implementation Period and demonstrating good cause, Respondent may twice request that the NYAG extend the Translation Implementation Period to allow Respondent to resolve any outstanding issues with respect to their ability to produce and provide to consumers the Translated Documents, including issues with any third-party finance or leasing companies. Assuming Respondent has provided good cause, the NYAG will extend the Translation Implementation Period based on these requests for as many as two additional periods of sixty days each;

(c)      The Translated Documents shall be an aid to the consumer and not the operative contracts or documents and they contain appropriate disclosures to that effect; and

(d)      The Translated Documents may be in any form, so long as the organization, number and identification of sections, paragraphs, and line items enable the reader of the translated version reasonably to ascertain which numbers and other deal specific entries are applicable to which sections, paragraphs, and line items of the operative contracts and documents; and it is further

5.      **ORDERED, ADJUDGED, AND DECREED** that Respondent shall modify its training programs and training materials as necessary to incorporate any prohibitions and requirements included in this Consent Order; and it is further

VOYNOW_035671

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM

NYSCEF DOC. NO. 9

INDEX NO. 718092/2020

RECEIVED NYSCEF: 11/18/2020

6.      **ORDERED, ADJUDGED, AND DECREED** that Respondent, within thirty days of the entry of this Consent Order with the Clerk of this Court, shall provide training to all Sales Staff concerning the terms of this Consent Order including:

(a)      the specific business practices and conduct prohibited under this Consent Order, including deceptive or misleading business practices, signage of blank contracts, prohibition of cash tips, and submitting false or inaccurate financing applications;

(b)      an express warning that deceptive or misleading business practices will not be tolerated by Respondent's management;

(c)      a description of the remedial steps that will be taken against Sales Staff who violates any term of this Consent Order or otherwise engages in improper sales practices;

(d)      an express warning that deceptive business practices may carry legal consequences for Sales Staff, including civil and criminal liability; and

(e)      a description of the enhanced procedures Respondent has implemented to detect deceptive or misleading sales practices, including those policies and procedures set forth in paragraphs 8 to 15 below; and it is further

7.      **ORDERED, ADJUDGED, AND DECREED** that Respondent shall obtain and maintain a written form for each Sales Staff member acknowledging by signature that he or she has received and understood the information provided in the above-referenced training; and it is further;

8.      **ORDERED, ADJUDGED, AND DECREED** that Respondent shall adopt and implement policies and procedures sufficient to ensure that Sales Staff comply

7

VOYNOW_035672

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020
RECEIVED NYSCEF: 11/18/2020

with the terms of this Consent Order. These policies and procedures shall include but are not limited to conducting periodic telephone consumer satisfaction surveys of at least ten recent vehicles purchasers per month. Respondent shall conduct these surveys monthly, until January 1, 2023, and shall design the survey to evaluate the sales practices of the Sales Staff, particularly evaluating sales practices related to the sale of Aftermarket Items, promises during transactions to refinance consumers' loans in the future, and the accuracy of the information submitted to lenders. Respondent shall not allow the Sales Staff to coach or guide the consumers regarding their answers to the consumer satisfaction surveys; and it is further

9.    **ORDERED, ADJUDGED, AND DECREED** that Respondent shall establish and notify all it employees in writing that all consumer complaints, whether submitted in writing or made orally, which allege deceptive sales or lending practices, must be directed to the General Manager, or in his or her absence a management level employee designee. For each such complaint, Respondent shall create a record of the complaint and retain such records for no less than three years. Each such record shall include:

(a)    the name and title of the manager reviewing the complaint;

(b)    the nature of such complaint and the remedy requested;

(c)    the name and address of the complainant;

(d)    the date the complaint was submitted and the transaction date;

(e)    the name(s) of the Sales Staff involved in the transaction;

(f)    the steps taken to investigate the complaint;

(g)    Respondent's conclusions after conducting its investigation;

(h)    any corrective action offered to the complainant; and

8

VOYNOW_035673

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020
RECEIVED NYSCEF: 11/18/2020

(i) remedial action for the Sales Staff involved; and it is further

10. **ORDERED, ADJUDGED, AND DECREED** that Respondent shall conduct a prompt and thorough investigation of all customer complaints concerning Sales Staff. After completing its investigation, Respondent shall respond to the consumer's complaint in writing; and it if further

11. **ORDERED, ADJUDGED, AND DECREED** that in the event that Respondent determines that a Sales Staff member has violated any term of this Consent Order or otherwise engaged in deceptive or misleading sales practices, Respondent shall take prompt and appropriate remedial actions; and it is further

12. **ORDERED, ADJUDGED, AND DECREED** that in the event Respondent determines a Sales Staff member has violated any term of this Consent Order or has otherwise engaged in improper sales practices, Respondent shall conduct an investigation into whether other customers whose sales involved that Sales Staff member were subject to sales practices that violated the terms of this Consent Order, and shall document all steps taken during such investigation. Such investigation shall include, but not be limited to:

(a) an in-person interview with the Sales Staff member

(b) a phone survey of all consumers whose transactions were conducted in-part by that Sales Staff member during the three months prior to the alleged improper sales practice;

(c) a review of the deal jackets for all consumers whose transactions were conducted wholly or in-part by that Sales Staff member during the three months prior to the alleged improper sales practice; and

9

VOYNOW_035674

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020
RECEIVED NYSCEF: 11/18/2020

(d)    a search to determine if there were prior complaints against the Sales Staff member; and it is further

13.    **ORDERED, ADJUDGED, AND DECREED** that in the event that Respondent determines that a Sales Staff member has violated any term of this Consent Order or has otherwise engaged in improper sales practices that resulted in the economic harm a customer, Respondent shall offer that customer full compensation for any economic harm that resulted directly from such conduct. This compensation may include, among other things, a full refund all Aftermarket Items without regard to the installation of such items, monetary compensation equivalent to the amount of savings a consumer could have recognized based on a promise to refinance in the future, or rescission of the transaction if the sale would not have occurred but for the deceptive activity; and it is further

14.    **ORDERED, ADJUDGED, AND DECREED** that Respondent shall not subject non-English speaking consumers to misleading or deceptive practices based on the consumers' inability to read or speak English; and it is further

15.    **ORDERED, ADJUDGED, AND DECREED** that Respondent will conduct periodical evaluations of financing applications prepared by its Sales Staff. Each evaluation shall include contacting the borrower to verify the financial information recorded on the financing application. Star shall randomly conduct at least one evaluation per month for each employee that prepares these applications; and it is further

## RESTITUTION AND NOTICE OF SETTLEMENT

16.    **ORDERED, ADJUDGED, AND DECREED** that within one week of the entry of this Order, Respondent shall pay Four Thousand, Five Hundred Dollars

10

VOYNOW_035675

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM                    INDEX NO. 718092/2020

NYSCEF DOC. NO. 9                                                 RECEIVED NYSCEF: 11/18/2020

($4,500) to the NYAG to publish notice of this settlement in the World Journal, a Chinese-language newspaper, in order to locate additional potential restitution recipients.

      (a)    The NYAG will publish the notices of settlement on the first possible date after the above-referenced payment is received and processed;

      (b)    The notice will be published on Thursday through Sunday in black and white on one quarter of a page in Section A of the World Journal's New York print edition and the E-Paper, and will also be published for one month on the World Journal's website;

      (c)    The costs for publication listed above reflect the regular advertising rates for the World Journal as of September 14, 2020. If the World Journal advertising rates are adjusted prior to the dates of publication of this notice, Respondent's costs shall be modified accordingly;

      (d)    The notice shall be an accurate translation of the language annexed hereto as Exhibit A, translated into traditional Chinese for the newspaper and both simplified and traditional Chinese on the website;

      (e)    Any consumer who responds by contacting the NYAG within ninety days of the final publication date of this notice in the World Journal newspaper may also be eligible for restitution if their complaint alleges deceptive business practices and fraud consistent with the activities described in paragraphs 8 through 69 of the Verified Petition. The process to establish if a complainant is eligible for restitution and as well as the appropriate amount of restitution shall be determined as follows:

<p style="text-align:center">11</p>

VOYNOW_035676

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM          INDEX NO. 718092/2020
NYSCEF DOC. NO. 9                                        RECEIVED NYSCEF: 11/18/2020

      (i)      Consumer complainants may be eligible for restitution if they purchased a used vehicle from Respondent after negotiating the sale in Chinese on or between January 1, 2014 and March 1, 2018;

      (ii)     The NYAG will forward to Respondent a copy of each complaint form received within the ninety-day window;

      (iii)    Respondent will be allowed ten days to provide the deal jacket for the transaction and a written response to the complaint to the NYAG;

      (iv)    The NYAG, based on the consumer's complaint statement, Respondent's written response to that complaint, and a review of the complainant's deal jacket, shall establish in good faith whether the complainant is entitled to restitution, and if so, the appropriate restitution amount; and

      (v)     The NYAG shall be the final arbiter of all such claim.

    (f)     Within thirty days of the end of the ninety-day window, the NYAG will forward a payment demand to Respondent for any consumers the NYAG deemed eligible for restitution based on the process described above; and

    (g)    Within thirty days of receipt of that demand, Respondent shall pay the full amount of additional restitution due, payable to the State of New York and delivered to 55 Hanson Place, Suite 1080, Brooklyn, New York 11217, to the attention of Matthew S. Eubank, an Assistant Attorney General at the Brooklyn Regional Office, and the NYAG shall distribute the payments to the eligible recipients; and it is further

17.   **ORDERED, ADJUDGED, AND DECREED** that Respondent shall pay restitution in the amount of One Hundred and Eighty-Six Thousand, Eight Hundred and Fifty-Five Dollars ($186,855) as and for the twenty-one individuals listed in the *"NYAG Restitution List for Known-Consumers"* annexed hereto as Exhibit B, payable to the State of New York and delivered to 55 Hanson Place, Suite 1080, Brooklyn,

VOYNOW_035677

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM

NYSCEF DOC. NO. 9

INDEX NO. 718092/2020

RECEIVED NYSCEF: 11/18/2020

New York 11217, to the attention of Matthew S. Eubank, an Assistant Attorney General at the Brooklyn Regional Office, and the NYAG shall distribute the payments to these consumers. Respondent shall deliver this restitution payment to the NYAG so that it is received by either December 1, 2020, or within one week of the entry of this order, whichever comes last; and it is further

### PENALTIES, COSTS, AND DISBURSEMENTS

18.  **ORDERED, ADJUDGED, AND DECREED** that Respondent shall pay a civil penalty the sum of One Hundred Thousand Dollars ($100,000.00) to the Attorney General for this inquiry. Respondent shall pay the penalty by wire transfer, certified check, or bank check payable to the State of New York and delivered to the State of New York Office of the Attorney General, to the attention of Matthew S. Eubank, Assistant Attorney General at the New York State Office of the Attorney General, Brooklyn Regional Office, 55 Hanson Place, Suite 1080, Brooklyn, NY. Respondent shall deliver this restitution payment to the NYAG so that it is received by either March 1, 2021, or within one week of the entry of this order, whichever comes last; and it is further

19.  **ORDERED, ADJUDGED, AND DECREED** that Respondent shall pay to the State of New York:

(a)  statutory costs of Two Thousand Dollars ($2,000) pursuant to CPLR § 8303(a)(6). This payment shall be made payable to the State of New York and delivered to 55 Hanson Place, Suite 1080, Brooklyn, New York 11217, to the attention of Matthew S. Eubank, an Assistant Attorney General at the Brooklyn Regional Office; and

13

VOYNOW_035678

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM

NYSCEF DOC. NO. 9

INDEX NO. 718092/2020

RECEIVED NYSCEF: 11/18/2020

(b)      disbursements of Six Thousand, One Hundred and Sixty-Three Dollars ($6,163) pursuant to CPLR § § 8301(a)(13) for the cost of written translation services used by the NYAG during the investigation. This payment shall be made payable to the State of New York and delivered to 55 Hanson Place, Suite 1080, Brooklyn, New York 11217, to the attention of Matthew S. Eubank, an Assistant Attorney General at the Brooklyn Regional Office; and

(c)      Respondent shall deliver these payments to the NYAG so they are received by either March 1, 2021, or within one week of the entry of this order, whichever comes last and it is further

<u>COMPLIANCE</u>

20.    **ORDERED, ADJUDGED, AND DECREED** that Respondent shall submit to the NYAG annual reports within ten days of January 1 on 2021 and 2022 for all activity related to this Consent Order during the prior calendar year, including:

(a)      a sworn statement certifying that Respondent has continued to comply with the provisions of the Consent Order; and

(b)      a sworn statl addement indicating whether Respondent identified any violations of the Consent Order by a member of its Sales Staff and the actions taken pursuant to Paragraphs 11 through 13 to address such violation; and it is further

<u>ENFORCEMENT</u>

21.    **ORDERED, ADJUDGED, AND DECREED** that failure to comply with any provision of this Consent Order shall be considered a violation of this Consent Order.

14

VOYNOW_035679

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM   INDEX NO. 718092/2020

NYSCEF DOC. NO. 9   RECEIVED NYSCEF: 11/18/2020

The NYAG may upon application with notice of twenty days, take any and all other steps available, including contempt, to enforce this Consent Order; and it is further

22.   **ORDERED, ADJUDGED, AND DECREED** that upon application by the NYAG showing that Respondent, after receiving a ten-day written notice to cure from the NYAG, has failed to pay any of the amounts due as restitution, penalties, costs, and disbursements required in this Consent Order, the Court shall enter a money judgment in the amount due plus interest at the rate of nine percent per year compounding daily from the date of violation or nonpayment against Respondent and the NYAG shall have execution thereof; and it is further

## PRIVATE RIGHT OF ACTION

23.   **ORDERED, ADJUDGED, AND DECREED** that nothing herein shall be construed to deprive any person of any right or remedy to pursue a private action against Respondent; and it is further

## NOTICES AND CHANGE OF ADDRESS

24.   **ORDERED, ADJUDGED, AND DECREED** that any notices, statements, or other written documents required by this Consent Order shall be provided by first-class mail to the intended recipient at the addresses set forth below, unless the party changing such address specifies a different address in writing.

For the plaintiff, to:

Attorney General of the State of New York
Brooklyn Regional Office,
55 Hanson Place, Suite 1080,
Brooklyn, New York 11217

For the Respondent, to:

Stevan H. LaBonte, Esq.
Labonte Law Group, PLLC.
333 Jericho Turnpike, Ste. 200
Jericho, NY 11753

Such notices, statements, and documents shall be deemed to have been given upon mailing; and it is further

15

VOYNOW_035680

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020
RECEIVED NYSCEF: 11/18/2020

25.    **ORDERED, ADJUDGED, AND DECREED** that Respondent shall provide written notice to the Attorney General of any change in address within ten days of such change; and it is further

### CONTINUING JURISDICTION

26.    **ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this action for the purpose of carrying out or modifying the terms of this Consent Order, or granting such further relief as the Court deems just and proper.

Dated:   Queens County, New York
          November 10 , 2020

# ENTER FORTHWITH

Signed: _____

Honorable:   Richard G. Latin
             Justice of the Supreme Court

16

VOYNOW_035681

# EXHIBIT A

**Notice to be published in the World Journal newspaper, NY Print Edition:**

---

## Notice of Settlement / Star Toyota of Bayside

The Attorney General of the State of New York has entered into a settlement with Star Toyota of Bayside to resolve the state's investigation of Star Toyota's deceptive sales and lending practices targeting Chinese-speaking consumers.

If you are a Chinese-speaker and believe Star Toyota deceived you on the purchase or lease of a used vehicle between January 1, 2014 and March 1, 2018, please visit us at <LINK TO OUR WEBSITE ADDRESS>. If you do not have internet access, you may instead call the Attorney General's Brooklyn Regional Office at 718-560-2040. Chinese interpreters will be available when you call. You may be eligible for money back, but your time to file a claim is limited so please contact the Attorney General's Office as soon as possible.

---

**Notice to be published in the World Journal E-Paper and website:**

---

## Notice of Settlement / Star Toyota of Bayside

The Attorney General of the State of New York has entered into a settlement with Star Toyota of Bayside to resolve the state's investigation of Star Toyota's deceptive sales and lending practices targeting Chinese-speaking consumers.

If you are a Chinese-speaker and believe Star Toyota deceived you on the purchase or lease of a used vehicle between January 1, 2014 and March 1, 2018, please visit us at <LINK TO OUR WEBSITE ADDRESS>. You may be eligible for money, but your time to file a claim is limited so please contact the Attorney General's Office as soon as possible.

---

VOYNOW_035682

FILED: QUEENS COUNTY CLERK 11/18/2020 04:56 PM
NYSCEF DOC. NO. 9

INDEX NO. 718092/2020
RECEIVED NYSCEF: 11/18/2020

# Exhibit B

## Restitution Chart

| Consumer Name | Restitution |
|---|---|
| Lujie Chen | $7,620 |
| Pei Jie Chen | $6,429 |
| Chengkui Chu | $9,514 |
| Ning Escobar | $11,283 |
| Xu Han | $10,908 |
| Shuqiang Hu | $16,243 |
| Xiangfu Jiang | $703 |
| Xiangchun Li | $7,300 |
| Yuan Qiu | $8,143 |
| Guohui Ren | $3,777 |
| Yajun Sui | $7,177 |
| Peng Sun | $5,957 |
| Gaosan Xu | $11,461 |
| Bin Yang | $23,230 |
| Li Zhang | $11,940 |
| Sui Liang Zhang | $12,794 |
| Ying Zhang | $5,707 |
| Hong Sheng Zhao | $3,931 |
| Ye Zhou | $10,056 |
| Tianqi Zhu | $5,089 |
| Jin Zhuang | $0 |
| Shaochun Zhuo | $7,594 |
| **TOTAL:** | **$186,855** |

VOYNOW_035683

FILED: QUEENS COUNTY CLERK 09/20/2021 12:15 PM

INDEX NO. 718092/2020

NYSCEF DOC. NO. 10

RECEIVED NYSCEF: 09/20/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

THE PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York

**SATISFACTION
OF JUDGMENT**

                   Petitioner,

INDEX NO.: 2020/718092

       -against-

IAS PART: 40

Star Auto Sales of Bayside, Inc. d/b/a/ Star
Toyota of Bayside,

ASSIGNED
TO JUSTICE: Richard Latin

               Respondent.

**WHEREAS**, a judgment was entered in the above action on November 10, 2020, in favor of Petitioner, the People of the State of New York, by Letitia James, Attorney General of the State of New York, against Star Auto Sales of Bayside, Inc., d/b/a Star Toyota of Bayside in the amount of Two Hundred and Ninety-Nine Thousand, Five Hundred and Eighteen Dollars ($299,518), reflected in paragraphs 16 through 18 of the Consent Order and Judgment dated November 10, 2021, to which, in accordance with paragraph 16 of the Consent Order and Judgment dated November 10, 2020, additional restitution funds in the amount of Seventy-Five Thousand, Three Hundred and Fifty-Four Dollars ($75,354) were added for a total of Three Hundred and Seventy-Four Thousand, Eight Hundred and Seventy-Two Dollars ($374,872), and was duly docketed and entered in the Office of the Clerk of the County of Queens, and whereas said judgment has been fully paid.

**THEREFORE**, full and complete satisfaction of said judgment of Three Hundred and Seventy-Four Thousand, Eight Hundred and Seventy-Two ($374,872) is hereby acknowledged, and the Clerk of the County of Queens is hereby authorized and directed to satisfy and discharge the same, without regard to Respondent's existing injunctive obligations as awarded to Petitioner in this proceeding.

               People of the State of New York, by
               Letitia James Attorney General of the
               State of New York

By: _____
               MATTHEW S. EUBANK
               Assistant Attorney General, of Counsel
               Attorney for Petitioner
               55 Hanson Place, Suite 1080
               Brooklyn, NY 11217
               (718) 560-2040

VOYNOW_035684

FILED: QUEENS COUNTY CLERK 09/20/2021 12:15 PM   INDEX NO. 718092/2020

NYSCEF DOC. NO. 10                                          RECEIVED NYSCEF: 09/20/2021

STATE OF NEW YORK        )
                         )  ss.:
COUNTY OF KINGS          )


    On ___9/20/21___, 2021, before me, the undersigned, personally appeared Matthew S. Eubank, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


                    NOTARY PUBLIC

JAMES SFIROUDIS
Notary Public - State of New York
Registration No. 01SF6114650
Qualified in Queens County
Commission Expires Aug. 23, 20__

VOYNOW_035685