| | |
|---|---|
| **From:** | Fitzgerald, Maureen P. |
| **Sent:** | 4/25/2023 5:44:44 PM |
| **To:** | Joseph Labuda |
| **CC:** | Jamie Felsen; Michael Mule; Jeremy Koufakis |
| **Subject:** | RE: Star v. Voynow - Meet and Confer |

Joe,

Here is the Defendants' Response:

1. Reynolds Emails: Defendants have been trying to obtain these emails from your office since last year. We have had six meet and confer sessions on this topic. Up until your email below, Plaintiffs' objections had largely been predicated upon a purported undue burden in having to produce these emails and more recently, upon the alleged overbreadth of the proposed search terms. In an attempt to compromise on this issue, we agreed to limit the email production to only specific custodians. That reduced the universe of emails to just over 11,000 – a number which encompasses a six year period and averages only about 1500 emails per year. As Judge Merkyl pointed out, this is NOT a large amount of emails. There is also substantial case law supporting 11,000 emails as not being unduly burdensome. For that reason, Plaintiffs' assertion of undue burden has always been without merit.

    Nonetheless, Plaintiffs continued to assert undue burden and overbreadth, as recently as our meet and confer on April 20th. Plaintiffs made that argument without having even attempted to actually run the search terms to see if the terms were overbroad. Again, Judge Merkyl reviewed Defendants' proposed search terms at the Court conference and commented that they appeared reasonable. However, given that the parties were at an impasse, I requested that Plaintiffs actually run the terms rather than make assertions as to overbreadth without any factual basis. Now, it is apparent that the search terms are not overly broad as every one of the terms result in a "hit" rate of less than 8% with the exception of Nissan – which is a named Plaintiff and had a 15% hit rate. There is substantial case law that supports Defendants' position that these "hit" ranges with a universe of 11,000 is not an undue burden or overly broad, particularly given that this covered a seven year period. Nonetheless, Defendants will agree to provide added terms to search with "Nissan" as set forth below.

    Now, based upon your email below, it appears Plaintiffs are now asserting relevance as the primary reason for the continued refusal to produce the emails relating to the other search terms. Keep in mind that these terms were derived from the descriptions of the alleged different theft or fraud schemes Plaintiffs contend were purportedly committed across the 7 Plaintiff dealerships. Relevance is broadly defined under the discovery rules. While Plaintiffs argue in generalities that the terms are not relevant, the only specific argument raised is your email is with regard to the term "Jackie." Defendants can easily establish that this is a relevant term given that "Jackie" worked daily alongside employees allegedly having committed theft, purportedly discovered some of the theft at issue, interacted with my clients, and is listed in both parties' disclosures. Courts have routinely held that a search term with the name of a witness listed in disclosures is a proper term.

    Further, the issue of the Reynolds emails needs to be considered in context. Plaintiffs do not have companywide email and Plaintiffs have never taken any steps to obtain any of the personal emails from employees who used personal email to conduct business on behalf of the corporations. In addition, the owners John Koufakis and Steve Koufakis have produced NO personal emails whatsoever and Michael Koufakis has clearly not produced all of his emails – based solely upon my client's production. For that reason, to suggest that the terms "John" or "Steve" are overbroad search terms when they collectively own four of the 7 plaintiff corporations and never produced any of their personal emails is an improper objection.

    As to the assertion that Defendants are supposed to cover the cost of the production of the 11/16 - 2017 emails, we disagree and I have repeatedly requested the estimate wherein you claim it will cost $20,000 to do so. Please provide it ASAP as we intend to raise this issue with the Court.

    In summary, based upon the case law supporting our position and the "hit" results from the search terms, other than "Nissan", defendants are not willing to reduce the other search terms. Please provide these emails per the Court's order on 4/28/23.

    For "Nissan," please run the additional searches with each of the following qualifying terms:

    e.g., "Nissan" and "credit"

    credit; check; checks; employee; intercompany; Toyota; tax; review; purchase; sale; sales; back up; revenue; AI; repay; pay; missing; lost

2. Plaintiffs' Second RPD No. 9:

    This Request states:

    > 9. A sample of documents (i.e. different time periods and different services) concerning Defendants' retainers or engagement letter with other automobile dealers involving services other than tax work.

The request does not give Plaintiff the right to choose – it gives Defendants' the ability to do so. Defendants will provide a sample of three responses after conferring with its clients.

3. Pre 2010 Documents:

    Defendants agreed to search its database to see if these documents even exist. To the extent they do, Defendants will produce emails and internal and interim communications for 2005-2010; work product as maintained by Voynow from 1996; and timesheets or billing records that

exist back from 1996.

4. Kumor Testimony re Checklists:

   Kumor testified that when he referenced a checklist, he was referring to non-tax and reviewed financial statement engagements for clients other than Plaintiffs. Voynow does not have any review checklist for Plaintiffs' engagement and therefore has no documents to produce. Defendants are not willing to produce its workpapers for other clients as such are privileged and confidential. We suggest that you consult your expert to obtain a "review/audit" checklist as Defendants are not aware of the existence of any such document. Defendants do not have any such "review/audit" checklists.

5. Meta Data – your representation is accurate
6. Vesci subpoena – your representation is accurate

7. Billing codes – Defendants do not have documents regarding the billing codes for its old billing system. We never discussed June 2016.

8. Motions in limine – your representation is accurate

9. Expert Discovery:

   Defendants do not concur in any request for an extension of the expert deadlines. Your email below sets forth one of many reasons for Defendants' position. If you make the request to the Court, we will respond fully with our position.



**Maureen P. Fitzgerald**
*Attorney at Law*
620 Freedom Business Center, Suite 405, King of Prussia, PA. 19406
Direct: (610) 354-8270 | Main: (610) 354-8250 | Fax: (610) 354-8299
bio <http://www.marshalldennehey.com/ ...> | e-mail <mailto:MPFitzgerald@mdwcg.com> | website <http://www.marshalldennehey.com/ ...>

This e-mail transmission and any documents, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by forwarding this e-mail to MPFitzgerald@mdwcg.com <mailto:MPFitzgerald@mdwcg.com>, or by telephone at (610) 354-8270 and then delete the message and its attachments from your computer.