# In the Matter of

Case No. 18-cv-05775 (ERK)(TAM)

STAR AUTO SALES OF BAYSIDE, INC., et al.

v.

VOYNOW, BAYARD, WHYTE AND COMPANY LLP, et al.

## Deposition of Vincent Petruzziello

*Monday, December 18, 2023*

The Little Reporting Company
469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 2 of 16 PageID #: 1401

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

10

1                    Petruzzielo
2      represent someone as an expert, there was no
3      deposition, it was just -- it went to trial.
4           Q.   That case where you appeared as an
5      expert and it went to trial, what was the name
6      of that case?
7           A.   I don't know the exact name of the
8      case.
9           Q.   Do you know any of the parties to
10     that case?
11          A.   Yes.  Let me think for a second.
12     If I can look here (indicating).  It was
13     Brandow Chrysler versus Reed Smith.
14          Q.   Mr. Petruzziello, you just got up
15     from your desk, so just so you know, you're on
16     video.  So, what did you refer to, to get that
17     name?
18          A.   I went to the bookshelf next to my
19     desk, and I do have that report that I prepared
20     in my bookshelf.
21          Q.   Okay.
22              MR. MULE:  We'll ask for a copy of
23          that report, please.
24              MS. FITZGERALD:  Put your request in
25          writing, and then we'll respond.

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 3 of 16 PageID #: 1402

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello   ---   December 18, 2023

```
                                                        11
 1                      Petruzzielo
 2            MR. MULE:  Okay.
 3      BY MR. MULE:
 4            Q.    Mr. Petruzziello, can you spell
 5      Brandow Chrysler, please?
 6            A.    Brandon is B-R-A-N-D-O-N, and
 7      Chrysler.
 8            Q.    And it was versus Reed Smith, that
 9      was the accounting firm?
10            A.    No.
11            Q.    Okay.
12            A.    They were the company hired by the
13      bank that financed Brandon's inventory, and
14      they checked the cars supporting the floor plan
15      liability.
16            Q.    And you were an expert for the
17      dealership?
18            A.    No, for the defendant.
19            Q.    And what were you asked to give an
20      opinion on?
21            A.    I was asked to give an opinion on
22      whether the floor plan checker, Reed Smith,
23      performed their job adequately.  And the second
24      part was the defendant -- the plaintiff was
25      claiming that if they would have known that
```

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 4 of 16 PageID #: 1403

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello  ---  December 18, 2023

12

1     Petruzzielo
2     they had a large liability for unpaid cars,
3     they would have paid it off.  So, the second
4     part of my report -- the first part dealt with
5     the -- with their overstating their inventory
6     to fraudulently borrow more money.
7         And the second part dealt with the
8     fact that even if they would have -- they
9     supposedly didn't know about this even though
10    they were doing it, they would not have the
11    financial ability to pay off the cars anyway.
12         Q.   And that case went to trial?
13         A.   Yes, it did.
14         Q.   And you were qualified as an expert
15    in that case?
16         A.   Yes, I was.
17         Q.   And did that case result in a
18    verdict or a judgment?
19         A.   Yes, it did.
20         Q.   And who was the judgment in favor
21    of?
22         A.   In favor of the defendant, the
23    company that I was supporting.
24         Q.   What year was what case?
25         A.   I'm going to estimate 2013.

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 5 of 16 PageID #: 1404

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello   ---   December 18, 2023

13

1          Petruzzielo
2          Q.   Okay.  We're going to get back to
3     that case because I realized I didn't give you
4     instructions, but you're doing very well.  As a
5     deposition, since you've had some experience
6     with depositions, I'm going to ask you a number
7     of questions and if you could please wait until
8     I'm done with the question before responding;
9     okay?
10         A.   Yes, sir.
11         Q.   And as you know, this is taken down
12     by a court reporter, so I'll ask that you
13     please verbalize all your answers.  A lot of
14     our communications informally is done by hand
15     gestures or otherwise.  So, here, you have to
16     speak your response; okay?
17         A.   Understood.
18         Q.   And if you do not understand a
19     question, please let me know and I will try to
20     rephrase it so that it is more understandable.
21     If you do not tell me you do not understand the
22     question, I'll assume you understood the
23     question requested; okay?
24         A.   Yes, sir.
25         Q.   If you need to take any break, just

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 6 of 16 PageID #: 1405

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

```
                                                                109
 1                         Petruzzielo
 2       is petty, and some of it is -- could be real.
 3       The fact that you have the hotline is what's
 4       important, and the fact that you let your
 5       employees know that it's their responsibility
 6       to come forward with problems.
 7              Q.    Mr. Petruzziello, what do you claim
 8       to be your area of expertise?
 9              MS. FITZGERALD:  For purposes of
10          this case?
11              MR. MULE:  Correct.
12              THE WITNESS:  For purposes of this
13          case, it was to judge management's
14          responsibility in these frauds, and to
15          offer an opinion as to whether the frauds
16          actually took place.
17       BY MR. MULE:
18              Q.    So, to judge management's
19       responsibility in this case, that's one, and
20       the other whether the frauds actually took
21       place; correct?
22              A.    Yes, to offer an opinion.
23              Q.    And what makes you qualified to
24       judge management's responsibility in this case?
25              A.    You're very qualified to do that
```

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 7 of 16 PageID #: 1406

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

113

Petruzzielo

Q. Now, earlier this morning, we started to discuss your role as an expert and I said I would get back to it. And in that particular case, it was Brandon or Brandow --

A. Brandow Chrysler.

Q. Brandow Chrysler versus Reed Smith, and you were retained by the expert -- I'm sorry, retained as an expert for the defendant. And the question was whether the floor plan checker performed the job adequately, and the second aspect of that was if they had had known that inventories were overstated -- I'm sorry. You said if they knew about overstated inventory, they would not have financial ability to pay off the cars anyway. Did I state that correctly?

MS. FITZGERALD: Object to form.

THE WITNESS: Their claim was that they didn't know how much they were indebted based on the floor plan audits, and they made the statement that had they have known, they would have paid off the cars. However, reviewing the financial information, they didn't have that

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 8 of 16 PageID #: 1407

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello  ---  December 18, 2023

114

1                    Petruzzielo
2         capacity.
3       BY MR. MULE:
4            Q.    Did that particular engagement
5       involve the topic of fraud and management's
6       role and responsibility in operating an
7       automobile dealership?
8            A.    I believe it did.
9            Q.    Is that the case that you're
10      referring to when you state that you've been
11      qualified as an expert and have presented
12      testimony on the topic of fraud, and
13      management's role and responsibility in
14      operating an automobile dealership?
15           A.    Yes.
16           Q.    Is there any other case where
17      you've been qualified as an expert and have
18      presented testimony on that topic?
19           A.    No.
20           Q.    So, you've been qualified as an
21      expert in one case; correct?
22           A.    You got to start somewhere.
23           Q.    And that was how many years ago?
24           A.    I believe it was 2013.  It went on
25      for a while, but -- if you want me to go to my

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 9 of 16 PageID #: 1408

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

115

1                      Petruzzielo

2    credenza, I can look at the report.

3        Q.   That's unnecessary for the moment.

4    Have you been consulted by any dealership or

5    anyone else other than this case, about claims

6    concerning management's role and responsibility

7    in operating an automobile dealership?

8        A.   No.   I've done consulting work for

9    various dealer groups, but it wasn't

10    specifically dealing with fraud.

11        Q.   If you could get the -- I guess get

12    that report from the credenza.

13           MS. FITZGERALD:   You know what?   I'm

14       not going to -- I'm going to object to

15       any -- well, first of all, what's the

16       follow-up on it?

17           MR. MULE:   He just referred to it,

18       so I'm going to ask him questions about

19       it.

20           MS. FITZGERALD:   I'll just have a

21       standing objection to the line of

22       questions.   This is not a document that

23       is referenced or incorporated into the

24       report in this case for which he is being

25       offered as an expert to provide

116

1                      Petruzzielo
2         testimony.
3              MR. MULE:  Okay.  But we -- but
4         nonetheless, we'll ask questions.
5    BY MR. MULE:
6         Q.    Mr. Petruzziello, if you could
7     please get the report (indicating).  Okay.  If
8     you could -- you started to say that -- what
9     that claim was.  If you could refresh your
10    recollection by looking at that report and tell
11    me in a little more detail what the claims were
12    in that case.
13        A.    Well, the claim is quite simple.
14    The plaintiff, Brandow, tried to say that the
15    people that were doing the floor plan reviews
16    were not competent and made errors in counting
17    the cars.  And that resulted in their
18    out-of-trust situation, not paying for sold
19    cars, grew to the point where they couldn't pay
20    them off.
21        Q.    They were saying that the
22    incompetence of the defendant in floor plan
23    review in counting cars linked to what?
24        A.    Not to belabor it, but when a car
25    dealership borrows against the cars in

Case 1:18-cv-05775-ERK-TAM Document 119-4 Filed 01/26/24 Page 11 of 16 PageID #: 1410

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

117

1 Petruzzielo
2 inventory being new or used, it creates a note
3 for each car. And when they sell the car,
4 they're supposed to pay it off in a timely
5 manner, it depends on the terms of their
6 contract. In this case, it was five days, I
7 believe. And what they're claiming is that the
8 floor plan company didn't let them know the
9 number of outstanding cars they owed for.
10     Q. Did the dealership sustain a
11 liability or a judgment from a manufacturer as
12 a result of failing to pay for outstanding
13 cars?
14     A. We had to pay off the bank, PNC
15 Bank. The car comes in, the manufacturer bills
16 the bank, the bank pays them and when the car
17 is sold, the dealer pays the bank.
18     Q. Did PNC Bank sue Brandow?
19     A. No, I don't know whether they had
20 to sue to collect their money, or whether they
21 got it without suing.
22     Q. And Brandow was the plaintiff in
23 this case --
24     A. Suing the floor plan checker, the
25 company that checked the floor plan for PNC.

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 12 of 16 PageID #: 1411

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

118

Petruzzielo

1
2  Q. Were there any claims by the
3 dealership of fraud in that case?
4  A. No.
5  Q. Were there any claims in that case
6 of manipulation of the dealership books and
7 records?
8   MS. FITZGERALD:  Object to form.
9   THE WITNESS:  What I found out was
10  that the dealerships, the owners were
11  manipulating their books and records --
12  prove that.
13 BY MR. MULE:
14  Q. So, was it -- what in particular
15 did you testify to that the dealership was
16 manipulating its books and records regarding?
17  A. The dealership group had four or
18 five dealerships in Pennsylvania, and they were
19 financing their -- and a large rental company,
20 and they were financing their inventories
21 through PNC Bank.  Reed Smith was the checker
22 for PNC Bank.
23  They also had a dealership in New
24 Jersey, a Chevrolet dealership, that they were
25 financing their inventory through General

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 13 of 16 PageID #: 1412
STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

119

1                         Petruzzielo
2    Motors' acceptance.  What the dealership was
3    doing wag taking used cars that they owned in
4    the Chevy dealership, and financing them
5    through PNC, and taking cars that they owned in
6    the Pennsylvania dealerships that were financed
7    with PNC, and double-dipping them from GMAC.
8            So, they would -- when the floor plan
9    checkers came, when they borrowed they would
10   produce the titles to borrow against the same
11   car at two different dealerships.  And that's
12   how they got so much in debt because they were
13   double financing the same cars.  So, I would
14   call that fraud.
15           Q.   So, there, the dealership itself
16   was basically borrowing against the same cars
17   twice?
18           A.   The short version is yes.
19           Q.   And that did not involve particular
20   employees of the dealership taking funds from
21   the dealership itself; correct?
22           A.   There was also some static in the
23   case, which I didn't pay too much attention to,
24   where they accused their controller of doing
25   this particular fraud.

Case 1:18-cv-05775-ERK-TAM Document 119-4 Filed 01/26/24 Page 14 of 16 PageID #: 1413

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

```
                                                            120
                         Petruzzielo
 1
 2         Q.    What types of claims did Brandow
 3   bring?  Do you know?
 4         A.    Their claim was that they didn't
 5   realize how much money they owed.  And that
 6   they were -- that they weren't able to pay it
 7   because they didn't know it until it was too
 8   late.
 9         Q.    The report that you retrieved from
10   your credenza, does it identify the case name?
11         A.    Brandow Chrysler Jeep Company, Et
12   Al, versus Reed Smith.
13         Q.    Does it identify the court where
14   the matter was pending?
15         A.    No.
16         Q.    Do you reference an appendix in
17   that report that identifies the case name?
18         A.    I don't know.  It's been a long
19   time.
20         Q.    Sure.  Could you take a look,
21   please?
22         A.    Yeah.
23         Q.    Were you retained by counsel in
24   that case?
25         A.    Yes; Marshall Dennehey.
```

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

121

Petruzzielo

1
2    Q.    And am I correct that there's been
3    no other case that you have been engaged as an
4    expert?
5    A.    That's true.
6    Q.    The other cases where you had your
7    deposition taken, had they have all been on
8    behalf of Dodge City or the other companies
9    where you've been employed?
10   A.    Yes, as a representative of the
11   companies.
12   Q.    And in all those cases, was the
13   dealership or the dealership group, whatever
14   the case may be, a defendant?
15   A.    Yes.  Now, we've had situations
16   where we sued other people, but I don't
17   remember any depositions on those cases.
18   Q.    And you testified at trial in the
19   Brandow case; correct?
20   A.    Correct.
21   Q.    Have you ever testified at trial in
22   any other case?
23   A.    Yes.
24   Q.    What other case?
25   A.    Small dollar cases where people

Case 1:18-cv-05775-ERK-TAM   Document 119-4   Filed 01/26/24   Page 16 of 16 PageID #: 1415

STAR AUTO SALES, et al. v. YOYNOW, BAYARD,WHYTE AND CO., et al.
Vincent Petruzziello --- December 18, 2023

145

Petruzzielo

1

2      A.   No, I'm saying it's a different
3 function.  And I'm not going to opine on what a
4 CPA would do in my role.
5      Q.   You don't know what a CPA would do
6 you in your role?
7      A.   No, I don't.
8      Q.   And you could make no comment as to
9 whether hiring a CPA to perform certain roles
10 that you performed would be reasonable or not;
11 is that correct?
12     A.   I'm not going to comment on that.
13     Q.   Your opinion in your September 15,
14 2023 report consists of two core conclusions.
15 If we look on pages 1 and 2 (indicating).  Your
16 first conclusion is that Star Auto Group failed
17 to follow certain basic business practices that
18 would have discouraged or detected the alleged
19 theft shortly thereafter, and these failures by
20 management were a substantial contributing
21 factor in the alleged fraudulent issues," and
22 then you go on -- following ways --
23          MS. FITZGERALD:  Losses.
24   BY MR. MULE:
25     Q.   Losses, I'm sorry.  In the