UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

---

STAR AUTO SALES OF BAYSIDE, INC. (d/b/a STAR TOYOTA OF BAYSIDE), STAR AUTO SALES OF QUEENS, LLC (d/b/a STAR SUBARU), STAR HYUNDAI LLC (d/b/a STAR HYUNDAI), STAR NISSAN, INC. (d/b/a STAR NISSAN), METRO CHRYSLER PLYMOUTH INC. (d/b/a STAR CHRYSLER JEEP DODGE), STAR AUTO SALES OF QUEENS COUNTY LLC (d/b/a STAR FIAT), and STAR AUTO SALES OF QUEENS VILLAGE LLC (d/b/a STAR MITSUBISHI),
Plaintiffs,

v.

VOYNOW, BAYARD, WHYTE AND COMPANY, LLP, HUGH WHYTE, and RANDALL FRANZEN, and ROBERT SEIBEL, Defendants.

1:18-cv-05775 (ERK) (TAM)

---

### DEFENDANTS VOYNOW, BAYARD, WHYTE AND COMPANY, LLP, HUGH WHYTE, RANDALL FRANZEN, AND ROBERT SEIBEL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, Voynow, Bayard, Whyte and Company, LLP ("Voynow"), Hugh Whyte ("Whyte"), Randall Franzen ("Franzen"), and Robert Seibel ("Seibel"), (collectively as "Voynow"), by and through their undersigned counsel, hereby submit this Memorandum of Law in support of their Motion for Summary Judgment.

1

I. **PREFATORY STATEMENT**

Plaintiffs filed this lawsuit on October 16, 2018.[1]  Their Complaint asserts claims for professional negligence and respondeat superior against Voynow for failing to detect purported theft.  Plaintiffs' breach of contract claim was dismissed by this Court pursuant to Defendants' Rule 12(b)(6) motion.  The remaining professional negligence and respondeat superior claims are predicated upon Plaintiffs' contention that alleged theft of approximately $4.5 million occurred over a 17 year period – from 2001-2017 – and that there were purported red flags in Plaintiffs' accounting records allegedly indicative of this theft.  Plaintiffs contend that these purported red flags were ignored by Voynow as part of its alleged engagement which provided services that were "more than a review and less than an audit" of all of the financial statement accounts.  Despite Plaintiffs' allegations of purported theft of $4.5 million and their attempt to convince law enforcement officials of such theft, criminal charges of only approximately $1.3 million have been filed.  The overwhelming majority of these theft related charges stem directly from checks signed by Authorized Check Signers of the Star Dealerships who approved the disbursement of funds without proper backup.  Putting aside the obvious failures of these Authorized Check Signers who signed every check now deemed to be theft without requiring proper back up, Voynow submits that it is entitled to summary judgment as to all of Plaintiffs' claims predicated upon purported thefts and alleged negligence occurring from 2001 through 2014 based upon the statute of limitations.

---

[1] The parties had entered into tolling agreements which tolled any claims existing as of March 1, 2018 up until October 14, 2018. The tolling agreement expired on October 14, 2018.  Plaintiffs did not file this lawsuit within the tolling period so none of their claims against Voynow have been tolled.

2

## II. LEGAL ARGUMENT

### A. PLAINTIFFS' CLAIMS FOR VOYNOW'S FAILURE TO DETECT ALLEGED THEFT OR FRAUD OCCURRING FROM 2001 THROUGH 2014 ARE NOW BARRED BY THE THREE YEAR APPLICABLE STATUTE OF LIMITATIONS

The purpose of the statute of limitations is to protect a defendant from stale claims. <u>Duffy v. Horton Mem. Hosp.</u>, 66 N.Y.2d 473, 476–477, 497 N.Y.S.2d 890 (1985), and perhaps equally important, to establish with certainty and predictability, the point at which a claim accrues. <u>Hernandez v. New York City Health & Hosps. Corp.</u>, 78 N.Y.2d 687, 694, 578 N.Y.S.2d 510 (1991).

Pursuant to NY CPLR 214(6), the statute of limitations applicable to a professional liability claim in New York against an accountant is three years and begins to accrue "upon receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice." <u>Ackerman v. Price Waterhouse</u>, 84 N.Y.2d at 541, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994). It is the time when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court. <u>Id.</u> This accrual date is used "even if the aggrieved party is then ignorant of the wrong or injury." <u>Williamson v. Pricewaterhouse Coopers, LLP</u>, 9 N.Y. 3d 1, 840 N.Y.S.2d 730 (2007) ("A claim accrues when the malpractice is committed, not when the client discovers it").

Michael Koufakis claims that the scope of Voynow's engagement was to provide services that were "more than a review but less than an audit" and to verify the accuracy of every account on their financial statements. According to the American Institute of Certified Public Accountants (AICPA), an audit is the highest level of assurance a CPA performs and is intended to provide a user with a comfort level as to the financial statements.[2] An auditor must follow

---

[2] https://us.aicpa.org/content/dam/aicpa/advocacy/state/downloadabledocuments/what-is-an-audit.pdf

3

Generally Accepted Auditing Standards (GAAS), which set forth requirements for an accountant's field work whereby the auditor must obtain a sufficient understanding of a client's internal controls and must obtain sufficient competent evidential matter through inspection, observation, inquiries and confirmation.  See <u>In re WorldCom, Inc. Sec. Litig</u>., 352 F. Supp. 2d 472, 479 (S.D.N.Y. 2005) (citing AU § 150.02).  A review engagement is an accounting procedure not performed under GAAS but which consists principally of inquiries of the client's management, analysis of financial information supplied by the client, and it provides limited assurance that the accountant is not aware of any material modifications that should be made to the client's financial statements in order for them to conform with GAAP. <u>Joel v. Weber</u>, 166 A.D.2d 130, 136, 569 N.Y.S.2d 955, 959 (1991).

Plaintiffs contend that Voynow's engagement was to provide a level of services higher than a review but less than an audit, but not issue reviewed or audited annual financial statements of the Star Dealerships.  Rather, Voynow's review/audit services provided during their 3-4 visits each year were purportedly to ensure the "highest level of accuracy" as to the financial statement accounts from which Voynow then used to prepare and issue Plaintiffs' annual corporate tax returns.  Voynow proposed adjusting journal entries that were used each year to close out Plaintiffs' fiscal year and to prepare these annual tax returns.  The  "work product" that Voynow issued each year were corporate tax returns derived from the financial statement accounts that Plaintiffs contend Voynow reviewed/audited each year.  Given the Star Dealerships' December 31st year-end, these corporate tax returns were issued each year prior to the Plaintiffs' September 15th tax filing deadline.  After completion and issuance of the tax returns, Voynow submitted a "final" billing statement in September to the Star Dealerships.  In addition, beginning in 2008,

Voynow issued new annual engagement letters each year to the Star Dealerships after the prior year's tax return was completed.

In their lawsuit, Plaintiffs alleged that over a 17 year period – from 2001 through 2017 – various acts of purported theft or fraud approximating $4.5 million were committed by certain employees. Plaintiffs further contend that there were purported red flags in their records that went undetected or ignored by Voynow in any of the years it provided services that were allegedly "more than a review and less than an audit." Plaintiffs claim that Voynow failed to properly advise management as to these purported red flags and also failed to detect this fraud as part of the alleged review/audit services being provided. Voynow submits that all such claims for professional negligence for failing to detect alleged thefts or ignoring purported red flags from 2001 through 2014 are now time-barred based upon the three year statute of limitations.

Pursuant to <u>Ackerman v. Price Waterhouse</u>, 84 N.Y.2d at 541, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994), the statute of limitation began to accrue each year upon receipt of Voynow's work product. Plaintiffs contend that these tax returns issued were derived from the financial statements accounts that Voynow provided "review/audit" level of services. These tax returns were issued annually prior to Plaintiffs' September 15th tax deadline. Specifically, the table below pertains to the last five years of the Voynow engagement. For the alleged review/audit services Voynow rendered applicable to Plaintiffs' 2012 fiscal year, Voynow's work product was issued to the Star Dealerships on June 24, 2013, June 25, 2013 and July 8, 2013. Likewise, for Voynow's alleged review/audit services applicable to Plaintiffs' 2013 fiscal year, it issued its work product on July 9, 2014, July 29, 2014, July 31, 2014 and August 4, 2014. For Voynow's services applicable to Plaintiffs' 2014 fiscal year, its work product was issued on August 6, 2015, August 11-12, 2015 and September of 2015. Thus, to the extent Plaintiffs claim

5

that Voynow violated professional standards by failing to detect fraud or by ignoring irregularities or red flags in the financial statement accounts upon which the tax returns were based, Plaintiffs were obligated to file suit within three years of receipt of Voynow's work product in each of these years.

| TAX YEAR OF RETURN | DATES OF ISSUANCE BY VOYNOW |
|---|---|
| 2012 | June 24-25, 2013; July 8, 2013 |
| 2013 | July 9, 2014; July 29, 2014; July 31, 2014; August 4, 2014 |
| 2014 | August 6, 2015; August 11-12, 2015; September 10, 2015 |
| 2015 | March 14-15, 2016; May 12-13, 2016; July 17, 2017 |
| 2016 | July 25-27, 2017; September 6, 2-17 |

Based upon the table above, the only claims not time-barred are those predicated upon purported red flags for acts of theft occurring during the alleged review/audit level of services rendered during the 2015 and 2016 fiscal years as Voynow's work product for those years was issued in 2016 and 2017, respectively. All other professional liability claims relating to purported theft dating back from 2001 through 2014 are now time-barred and should be dismissed by summary judgment pursuant to the three year stature of limitations.

**B. THE CONTINUOUS VIOLATION DOCTRINE DOES NOT APPLY TO TOLL THE STATUTE OF LIMITATIONS**

Voynow anticipates Plaintiffs will argue that the three year statute of limitations should not apply and that Plaintiffs should be able to pursue claims dating back 17 years to 2001 based upon the continuous representation doctrine. Plaintiffs' attempt to invoke the continuous representation doctrine should be rejected because (1) the doctrine does not apply given the facts of record and the case law precedent; and (2) Plaintiffs' position taken in response to discovery

6

requests as to the "relevant" time period prevents any reliance upon the continuous representation doctrine.

      **1. Voynow's Alleged Engagement to Perform Review/Audit Procedures That Culminated in the Issuance of Annual Tax Returns Predicated Upon The Reviewed/Audited Financial Statement Accounts Were Discrete and Separate Engagements Not Subject To The Continuous Representation Doctrine.**

In accounting malpractice cases, the continuous representation doctrine tolls the running of the statute of limitations on a claim arising from professional services "only so long as the defendant continues to advise the client in connection with the particular transaction which is the subject of the action and not merely during the continuation of a general professional relationship." <u>Booth v. Kriegel</u>, 36 A.D.3d 312, 825 N.Y.S.2d 193 (1st Dept. 2006).  Unless services relating to the particular transaction sued upon were rendered within the limitations period, even the accountant's "general and unfettered control of [the plaintiff's] financial, tax and investment affairs" is "insufficient to sustain the timeliness" of the action. *Id*.  Stated otherwise, where a professional provides services or advises a client in "a series of discrete and severable transactions"… the performance of these services in each successive transaction or year does not toll the running of the statute of limitations on any claim arising from the prior transaction. *Id*.

      Further, the continuous representation doctrine applies only where there is "a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim." <u>Williamson v. PricewaterhouseCoopers LLP</u>, *supra*., 9 N.Y.3d 1, 9–10, 840 N.Y.S.2d 730.  In that regard, the nature and scope of any retainer agreement plays a key role in determining whether a continuous representation was contemplated by the parties. *Id*. (use of an accountant's services for annual tax preparation or annual auditing services constitutes the

7

provision of separate and discrete services for each year, thereby precluding application of the continuous representation doctrine).

This Court should be guided by numerous courts that have rejected the continuous representation doctrine in accounting malpractice engagements with similar facts.  In <u>Booth v. Kriegel</u>, 36 A.D. 3d 312, 825 N.Y.S.2d 193 (2006), a plaintiff argued that the statute of limitations should be tolled for 15 years because the defendant tax accountant mistakenly reported a tax liability the plaintiff was not required to pay.  The accountant made this same mistake repeatedly in preparing successive tax returns for 14 years and ignored the ongoing mistake as to taxable income in each successive tax year.  Plaintiff consequently overpaid her tax liability for years and it was not detected until a subsequent accountant prepared her tax return in 2002.  When she filed suit in 2003 seeking damages as to the accountant's services rendered from 1985 through 1998 based upon the continuous representation doctrine, she argued that the same errors and mistakes were made, never detected, and carried over to each subsequent year.  In rejecting this argument, the court looked to the accountant's work product issued which were tax returns reflecting "a series of discrete and severable transactions."  Merely because the accountant performed work on each successive tax return did not toll the running of the statute of limitations on any claim arising from his work on returns for prior years, notwithstanding that he made the same error in preparing each return.

Similarly, in <u>Williamson v. PricewaterhouseCoopers</u>, 9 N.Y.3d 7, 840 N.Y.S.2d 730 (2007), accountants were retained to perform audits of the plaintiffs' financial statements from 1995 through 1999 and issued annual opinions, stating that the audited financial statements were accurately reported and conformed to GAAP.  However, the plaintiff's former portfolio manager had used improper valuations during the audit years at issue which materially overstated

8

plaintiffs' securities holdings and consequently led to a misrepresentation of several amounts reflected in the financial statements from 1995 through 2000.  In 2004, plaintiffs sued, alleging that the auditing services provided were continuous, were performed in the same manner and for the same purposes since 1995, that the accountants falsely represented year after year that the financial statements fairly represented the portfolio values and continually ignored blatant errors by the portfolio manager year after year in his valuations of the portfolio.  In rejecting the argument that the "continuous representation" tolled the limitations period, the court held that plaintiff had alleged accounting failures within a continuing professional relationship – not a course of representation as to particular problems that gave rise to plaintiffs' malpractice claims.  For the years in question, the court determined that plaintiff's claim was time-barred because it had "entered into annual engagements with defendant for the provision of separate and discrete audit services for the [plaintiff's] year-end financial statements. 872 N.E.2d at 847. Thus, Plaintiffs' claims only "establish[ed] defendant's failures within a continuing professional relationship --  not a course of representation as to the particular problems (conditions) that gave rise to plaintiff's malpractice claims." 872 N.E.2d at 846.  Hence, the continuous representation doctrine was inapplicable.

In <u>Giarratano v. Silver,</u> 46 A.D. 3d 1053, 847 N.Y.S. 2d 698 (2007), the court affirmed summary judgment in favor of an accountant who prepared annual tax returns for the plaintiff dating back to the 1980s, repeatedly provided investment advice, and had assisted plaintiff with paperwork for investments.  When an investment went bankrupt in 2004, plaintiff filed suit in 2004, arguing that the continuous relationship doctrine applied as the accountant had continued to prepare her tax returns through the 2002 tax year.  Citing the established principle that use of an accounting firm's services for annual tax preparation or auditing services constituted "separate

and discrete services" for each year, the court rejected application of the continuous representation doctrine. It also rejected the argument that the accountant had provided this same negligent investment advice annually and in connection with the tax engagement, noting that "a few calls or sporadic correspondence" did not show the "mutual understanding of both parties that is required to establish continuous representation. See also *Mitschele v. Schultz,* 36 A.D. 3d 249, 826 N.Y.S.2d 14 (2006) (continuous representation doctrine did not apply to an accountant who provided consulting services and tax preparation to a client as the plaintiffs' claims accrued upon receipt of the tax returns); *Rodeo Fam. Enterprises, LLC v. Matte*, 99 A.D.3d 781, 783–85, 952 N.Y.S.2d 581, 584–85 (2012) (rejecting continuous representation doctrine where accountant provided ongoing annual auditing and accounting services, investment advisory services, consulting and drafting of a valuation for a buy/sell agreement as the auditing and accounting services were deemed to be discrete engagements); *Apple Bank for Sav. v. PricewaterhouseCoopers LLP*, 70 A.D.3d 438, 895 N.Y.S.2d 361 (2010) (continuous representation doctrine did not apply to accountant who provided advice regarding a stock transaction, while also providing audit services for plaintiff's year-end financial statements, preparing annual tax returns and providing ad hoc tax advice over course of many years, as there was never any express, mutual agreement whereby accountant agreed to advise plaintiff on effect of stock buyback).

      Here, the record does not support the "mutual agreement" that there was a continuous representation as to any specific fiscal year – as opposed to an ongoing continuing professional relationship that spanned a continuous period. Plaintiffs claim that Voynow provided services and performed procedures that were "more than a review but less than an audit" of its accounts and financial statements while on site 3-4 times each year. While no financial statements were

10

issued or prepared – because Plaintiffs did not request them -- the tax returns issued annually were based upon the alleged reviewed/audited financial statements accounts and proposed adjusting journal entries.  The preparation and issuance of these annual tax return is the precise type of discrete and severable transaction that thwarts use of the continuous representation doctrine.  The fact that Voynow did so over the course of 26 years of its professional relationship with Plaintiffs does not alter the impact of the statute of limitations.  Each year was a separate and discrete engagement, and Plaintiffs are subject to the three year statute of limitations arising on the date on which they received each corporate return.  Indeed, the fact that Voynow issued annual engagement letters beginning in 2008 once recommended by AICPA guidance, and always issued "final" billing each year after the tax return was issued, reflects that there were separate and discrete engagements and never any mutual understanding of an ongoing or open-ended representation as to any specific year.  Accordingly, pursuant to the cases set forth above, this Court should reject Plaintiffs' attempt to toll the statute of limitations back to 2001 based upon the continuous representation doctrine.

> **2. Plaintiffs' Position As To The Applicable Statute of Limitations Taken In Response To Defendants' Discovery Requests Make Clear That The Continuous Representation Doctrine Does Not Apply.**

This Court should also reject any attempt by Plaintiffs to rely upon the continuous representation doctrine and expand the three year limitations period to 17 years, because of their position taken in discovery during this case.  Repeatedly, Plaintiffs lodged objections to Voynow's attempts to obtain documentation or information from them for any period prior to 2010.  Plaintiffs took the position that any such discovery prior to 2010 was irrelevant and not discoverable because, *according to Plaintiffs*, that time period was beyond the statute of limitations.

11

Specifically, in its initial set of interrogatories, Voynow sought information regarding what procedures or internal controls Plaintiffs had in place since 2000 that were designed to prevent employee theft or fraud. However, Plaintiffs objected to this request and refused to answer for the period dating back to 2000, explicitly citing to the statute of limitations:

> **Interrogatory #6**: Describe any all internal controls or accounting policies or procedures implemented by You to address or prevent employee theft or fraud, since 2000, specifying when any such control or policy was implemented.
>
> RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is **overly broad in temporal scope and therefore not relevant to the claims and defenses. Plaintiffs are therefore limiting their response to this interrogatory to the relevant time period is 2010 to 2017, based upon the statute of limitations in this case**.

Ex. 29.

Likewise, in Voynow's initial document requests, it requested copies of dealership financial and accounting records such as monthly and annual financial statements, journal entries, trial balances, general ledgers, monthly bank reconciliations, monthly factory parts reconciliations, monthly parts statements, bank statements with cancelled checks, and intercompany checks – all of which are the precise types of documents Plaintiffs now allege contained purported red flags dating back to 2001 that were indicative of purported theft. However, rather than produce these documents to Defendants, Plaintiffs again lodged a general objection as to the relevant time period, stating that "Plaintiffs will produce non-privileged and responsive documents **from January 1, 2012 forward.**" Plaintiffs then incorporated this general relevance objection repeatedly in their individual responses and produced documents dating only from January 1, 2010. Ex. 30.

Thus, Plaintiffs' own actions and written discovery responses dispel any argument that the continuous representation doctrine applies to this case. Given Plaintiffs explicit statement

12

that "**the relevant time period is 2010 to 2017, based upon the statute of limitations in this case**", (albeit incorrect as to the correct applicable statute of limitations) there is no basis for them to now expand the relevant period back 17 years to 2001 – when they objected to discovery predating 2010 and never provided Defendants with the requested documents or information dating back to 2001. Plaintiffs simply have no credible basis to now argue that the "relevant period" extends back 17 years back to 2001.

There is a well developed line of case law whereby a party is precluded from using the attorney client privilege as both a sword and a shield. This case law essentially holds that a party cannot use the attorney client privilege to prejudice his opponent's case in one regard and then rely upon the privilege to support the claims or defenses being pursued. See e.g., *NYU Winthrop Hosp. v. Microbion Corp*., 405 F. Supp. 3d 387, 390 (E.D.N.Y. 2019); *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). The principal underlying this case law is fundamental fairness and this very concept of fundamental fairness is analogous to this case given Plaintiffs' anticipated reliance upon the continuous representation doctrine. Plaintiffs refused to allow discovery of all of their financial records, statements, reconciliations, journal entries or their policies, procedures and internal controls in place dating back to 2001 because, according to Plaintiffs, this time period was not relevant "based upon the statute of limitations in this case." Defendants are entitled to rely upon Plaintiffs' position taken in discovery as to the impact of the statue of limitations. Importantly, Defendant cannot be expected to defend against claims which arose during a time period for which Plaintiffs have refused to produce all requested information and documents. Just as a litigant cannot use the attorney client privilege as both a sword and a shield, Plaintiffs cannot utilize the statute of limitations to prevent

discovery of their records prior to 2010, yet now argue that the same statute of limitations be tolled back to 2001 pursuant to the continuous representation doctrine.

### III.   CONCLUSION

For the foregoing reasons, Defendants Voynow, Bayard, Whyte and Company, LLP , Hugh Whyte, Randall Franzen, and Robert Seibel, respectfully request that this Honorable Court enter an award of summary judgment in their favor and against Plaintiffs based upon the statute of limitations.  Defendants seek an order dismissing all negligence and respondeat superior claims in Plaintiffs' Complaint based upon alleged acts of theft or fraud occurring from 2001 through 2014 that were purportedly not detected as such claims are now time-barred.

**MARSHALL DENNEHEY, P.C.**

BY: *Maureen Fitzgerald*
JOHN L. SLIMM, ESQUIRE
MAUREEN P. FITZGERALD, ESQUIRE
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8270 Fax (610) 354-8299
Email:  mpfitzgerald@mdwcg.com
Attorneys for Defendants,
Voynow, Bayard, Whyte and Company, LLC, Hugh Whyte, Randall Franzen, and Robert Siebel

Dated:  February 12, 2024
**Error! Unknown document property name.Error! Unknown document property name.Error! Unknown document property name.**