# EXHIBIT 7

# In the Matter of

Case No. 18-cv-05775 (ERK)(TAM)

STAR AUTO SALES OF BAYSIDE, INC., et al.

v.

VOYNOW, BAYARD, WHYTE AND COMPANY LLP, et al.

## Deposition of Hugh Whyte

*Tuesday, January 31, 2023*



The Little Reporting Company
469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 3 of 18 PageID #: 1740

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
STAR AUTO SALES OF BAYSIDE, INC.
(d/b/a STAR TOYOTA OF BAYSIDE),
STAR AUTO SALES OF QUEENS, LLC
(d/b/a STAR SUBARU), STAR HYUNDAI
LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC. (d/b/a STAR NISSAN),
METRO CHRYSLER PLYMOUTH INC. (d/b/a
STAR CHRYSLER JEEP DODGE) STAR AUTO
SALES OF QUEENS COUNTY LLC (d/b/a
STAR FIAT) and STAR AUTO SALES OF
QUEENS VILLAGE LLC (d/b/a STAR
MITSUBISHI),

                          Plaintiffs,

           -against-                      Case No.
                                          18-cv-05775
VOYNOW, BAYARD, WHYTE and COMPANY         (ERK)(TAM)
LLP, HUGH WHYTE, and RANDALL
FRANZEN,

                          Defendants.
------------------------------------x

                          January 31, 2023
                          10:41 a.m.

      Deposition of HUGH WHYTE, taken by
Plaintiffs, pursuant to Notice, held at the
offices of Milman Labuda PLLC, 3000 Marcus
Avenue, Suite 3W8, Lake Success, New York,
before Lisa Hiesiger, a Shorthand Reporter
and Notary Public within and for the State
of New York.

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

2

A P P E A R A N C E S :


MILMAN LABUDA PLLC
Attorneys for Plaintiffs
   3000 Marcus Avenue, Suite 3W8
   Lake Success, New York 11042

By:   JAMIE FELSEN, ESQ.
      JEREMY M. KOUFAKIS, ESQ.
      jeremy@mllaborlaw.com


MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN P.C.
Attorneys for Defendants
   620 Freedom Business Center, Suite 405
   King of Prussia, Pennsylvania 19406

By:   MAUREEN P. FITZGERALD, ESQ.
      mpfitzgerald@mdwcg.com


Also Present:
   JACQUELINE CUTILLO
   ROBERT SEIBEL
   RANDY FRANZEN

~oOo~

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 5 of 18 PageID #: 1742

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte    ---   January 31, 2023

3

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 6 of 18 PageID #: 1743

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

4

Whyte

HUGH WHYTE, having been first duly sworn by Lisa Hiesiger, a Notary Public, was called as a witness and testified as follows:

EXAMINATION BY MR. FELSEN:

    Q.   Good morning, Mr. Whyte.

    A.   Good morning.

    Q.   As you probably remember, my name is Jamie Felsen.

    A.   Sure.

    Q.   I'm one of the attorneys for the various Star entities.  For simplicity purposes I'm just going to refer to all of them as Star today, do you understand?

    A.   Yes.

    Q.   We're here today with respect to the lawsuit that Star commenced against Voynow, Bayard, Whyte and Company LLP, yourself personally and Randall Franzen personally.  I'll be referring to Voynow, Bayard, Whyte and Company LLP simply as Voynow, do you understand that?

    A.   Yes.

    Q.   Your testimony today is subject to the same oath and penalty of perjury as if you were testifying in court.  Do you understand

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

40

1           Whyte
2  the next step with respect to conveying to the
3  employees what tasks they're going to be
4  responsible for?
5       A.    It depends what level they are.
6  Usually if they're right out of college they
7  understand accounting because they're all college
8  graduates, but we might assign them to do the
9  fixed asset analysis or something along those
10 lines, but any questions they have when they're
11 in the field, they just have to ask their
12 supervisor.
13      Q.    And when you say when they're out in
14 the field, what are you referring to?
15      A.    When they're on site, the client's
16 location.
17      Q.    Are field visits required for every
18 client that Voynow performed services for?
19            MS. FITZGERALD:  Object to form.
20            You can answer.
21      A.    We have a very sophisticated tax
22 practice.  The clients that we have are large and
23 if it's a tax engagement, because most of these
24 clients have flow-through entities, it's an
25 enormous task just to go up to the client and get

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 8 of 18 PageID #: 1745

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte    ---    January 31, 2023

41

1                    Whyte
2    all the flow-through numbers so that we can
3    prepare the quarterly estimates for the client.
4              And to keep your arms around that,
5    you're going to need to go up there to make sure
6    that you have the right numbers.  And the other
7    thing that we try to do even on the tax
8    engagement is we look because with different
9    rules you can have an allowance for doubtful
10   accounts for your books, but when you go to do
11   the tax return, the only way you can get a
12   deduction is if you directly write off a
13   receivable.
14             So we would talk to the controller
15   and say, hey, look, we're coming up on year-end,
16   I'm sure the dealers don't want to pay tax on
17   stuff that's not collectible so we need to have
18   you go through your records to see if there's any
19   direct write-offs.  And then we get ready for
20   year-end and we say, hey, you know, there are
21   certain things that are only going to be done for
22   the tax returns so what we'd like to do is when
23   you run your final statement, which is the 12th
24   statement, then we'll give you the tax entries
25   that you can put on before you get the final

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 9 of 18 PageID #: 1746

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte   ---   January 31, 2023

83

1                    Whyte
2        A.    Yes.
3        Q.    And Voynow hasn't produced any,
4    correct?
5        A.    I don't know that there are any.
6        Q.    So Voynow has performed services for
7    Star without a signed engagement letter, correct?
8        A.    You don't need an engagement letter.
9    It's tax services.
10       Q.    Isn't it your testimony that it's a
11   matter of practice at Voynow to get a signed
12   engagement letter for all clients?
13       A.    Yes, but it's not required for tax
14   engagement.
15       Q.    But your testimony is that you have
16   performed services for clients without a written
17   engagement letter, correct?
18       A.    It depends how far back we're
19   talking.  Currently under our --
20             MS. FITZGERALD:  He just asked...
21       Q.    What services is a signed engagement
22   letter required for?
23       A.    For a review engagement.
24             MS. FITZGERALD:  That Voynow does,
25       right, that was your question?

Case 1:18-cv-05775-ERK-TAM  Document 126-10  Filed 06/05/24  Page 10 of 18 PageID #: 1747

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

84

1  Whyte
2  MR. FELSEN: Yes.
3  Q. What is a review engagement?
4  A. That's if we're preparing, like I
5  said earlier, that OCBOA financial statement.
6  Q. What other engagements require a
7  signed engagement letter?
8  A. An audit, but we don't do any audits.
9  Q. So a financial statement is the only
10 service that Voynow provides to clients that
11 requires a signed engagement letter?
12    MS. FITZGERALD: Reviewed financial
13    statement, that was your -- that's what
14    you were asking him, right?
15    MR. FELSEN: He referenced an OCBOA
16    financial statement.
17 A. That is a reviewed other
18 comprehensive basis of accounting which is a tax
19 basis review report. OCBOA, it's some other name
20 now but it used to be OCBOA.
21 Q. So other than that, there's no other
22 services that Voynow performs for its clients
23 that requires a written and signed engagement
24 letter?
25 A. Well, if they ask us for a special

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 11 of 18 PageID #: 1748

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ----  January 31, 2023

85

1            Whyte
2   project, we'll write an engagement letter. Like
3   recently a client asked us to do due diligence on
4   a prospective purchase of a dealership, so we had
5   an engagement letter.
6        Q.   What are some other special projects
7   that you would have a signed engagement letter
8   for?
9        A.   You'd really have to ask the partners
10  in charge. Like I said, I haven't been in the
11  field so long, I don't get these requests, I'm
12  not the person that gets them.
13       Q.   Are you aware of any special projects
14  that Voynow performed for Star?
15       A.   I know after Vivian was fired that
16  they requested that we help train Jackie, that's
17  what I'm aware of.
18       Q.   Anything else?
19       A.   That's all I remember.
20       Q.   Is it Voynow's practice when it has a
21  tax engagement to not have a written engagement
22  letter?
23       A.   The practice currently, this might be
24  after '17, currently is to get an engagement
25  letter, currently.

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 12 of 18 PageID #: 1749

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

119

1                    Whyte
2         A.    No, it could be any dealership.
3         Q.    Are you familiar with interim visits?
4         A.    Yes.
5         Q.    What is an interim visit?
6         A.    It's an interim tax visit, as I
7    explained, to keep your finger on the pulse is as
8    to what the dealership is doing financially so
9    that you can adjust your flow-through estimates.
10   Remember all these businesses are flowing through
11   to the individual tax return, and the tax is
12   calculated at the individual level.
13        Q.    So when you previously were using the
14   term "site visits," is that the same as an
15   interim visit?
16        A.    It could be.
17        Q.    Are there any distinctions between a
18   site visit and an interim visit?
19        A.    We normally call them interim visit
20   tax visits, so that's on site.  But it could be
21   that there's an interim visit that's done from
22   the office if we have access to the computer
23   system.  Not all dealers give us access to the
24   computer system.
25        Q.    So if a tax return is filed timely

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 13 of 18 PageID #: 1750

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

129

Whyte

Q. But not during the entire period that we've been discussing, correct?

A. No, not the entire period, but they had financials at one time.

Q. I think you testified earlier that Reynolds had connected you with Star, is that correct?

A. Yeah, it was a Reynolds referral, I believe to the Koufakises, and the one they were referring was Randy because he was Reynolds literate, put it that way.

Q. I think you said that Star wanted somebody with Reynolds expertise, is that correct?

A. The original engagement they wanted somebody with Reynolds experience, and they also needed somebody to fix a messy IRS audit that apparently we were told that the previous accountant had f'd it all up because he was so arrogant, the IRS came up with a $750,000 IRS settlement so they wanted us to focus on fixing the IRS audit, and they also wanted to know about the Reynolds system, how they could use that to streamline their accounting system. So we went

Case 1:18-cv-05775-ERK-TAM Document 126-10 Filed 06/05/24 Page 14 of 18 PageID #: 1751

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

131

Whyte

opposed to an accounting firm?

A. There's like a missing link between Reynolds and the accountants, so the accountant has a better understanding of what the dealer is looking for. So normally they'll have a CPA or somebody make the connection.

Q. Isn't streamlining records an internal control?

MS. FITZGERALD: Object to form.

A. It has nothing to do with internal control.

Q. So Reynolds connected you with the Koufakises?

A. Yes.

Q. And were you involved initially in getting Star to retain Voynow?

A. My recollection is myself and Bob Bayard initially went up to meet with Star. What we were told was we have a messy IRS audit. We need you to focus on that. They're coming up with an assessment of three-quarters of a million dollars.

So we went in there and we got the IRS under control, we reduced the penalties and

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 15 of 18 PageID #: 1752

STAR AUTO SALES, et al. v. VOYNOW; BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

132

1                    Whyte
2  interest and reduced the liability.  It had
3  something to do with the LIFO valuation, and at
4  the time Mike or whoever told us that's what we
5  need you to focus on.  We have an internal audit
6  girl, her name is Bing, and you'll meet her when
7  you come up here, and the next thing I want you
8  to do is whoever is going to be spearheading the
9  Reynolds and Reynolds, send them, then I think
10 Randy went up with somebody else for the second
11 meeting.
12         Q.   So that was the only meeting that you
13 went to?
14         A.   That's it.
15         Q.   At that meeting did you discuss with
16 the principals of Star the different types of
17 services that Voynow could provide?
18         A.   We discussed what their concerns were
19 and it really was they want us to focus on that
20 IRS problem.
21         Q.   And Randy was not present at that
22 initial meeting?
23         A.   No, it was just me and Bob Bayard for
24 that first one.
25         Q.   Who did you meet with at that

Case 1:18-cv-05775-ERK-TAM   Document 126-10   Filed 06/05/24   Page 16 of 18 PageID #: 1753

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte   ---   January 31, 2023

158

1        Whyte
2    Q.   So just so I understand, so there's
3 two different tasks we're talking about, there's
4 tax preparation and then there's also the interim
5 visits.  Is the tax preparation billed on a flat
6 fee or is it billed based on an hourly fee?
7    A.   Hourly.
8    Q.   So both tax prep work and interim
9 visits are billed hourly?
10   A.   Right.
11   Q.   That was the case for Star?
12   A.   Yes.
13   Q.   What about a financial statement
14 review engagement, is that billed hourly as well?
15   A.   Yes.
16   Q.   Are all Voynow dealership clients
17 that have a tax engagement billed on a monthly
18 basis?
19   A.   All the dealerships are billed a
20 monthly retainer.
21        MR. FELSEN:  We're going to mark this
22        as 80.
23        (Exhibit 80, Compilation of invoices,
24        was so marked for identification, as of
25        this date.)

Case 1:18-cv-05775-ERK-TAM Document 126-10 Filed 06/05/24 Page 17 of 18 PageID #: 1754

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

159

1              Whyte
2    Q.    I'm showing you what we have marked
3    as Exhibit 80.
4    A.    Okay.
5    Q.    This is a compilation of invoices?
6    A.    Yes.
7    Q.    So the first few pages are for Star
8    Hyundai for monthly retainers for $500?
9    A.    Yes.
10   Q.    Correct?
11   A.    Yes.
12   Q.    On the fourth page, Star 00017169, is
13   an invoice that doesn't reference the monthly
14   retainer, it says accounting services as
15   requested, then it says "Progress billing for
16   work completed on December 31, 2015, closing of
17   the books and preparation of partnership tax
18   returns." There's a bill there for 6500. This
19   is from March 4th, 2016.
20         Why was this -- you had been billing
21   for 500 and now there's a substantial increase of
22   6500. What is the distinction between the prior
23   invoices and this invoice?
24   A.    The 6500 is a progress bill for the
25   work that we completed up to that point. The

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte   ---   January 31, 2023

160

1           Whyte
2    retainer is strictly just to get some money in
3    advance just so we have something in the firm
4    before we start the work.
5            Then we have a final bill here for
6    2965, so the total bill would be 2965, 6500 and
7    then the retainers.  Those retainers come off
8    before these bills are billed.
9        Q.   If a client isn't given a written
10   retainer agreement, how would they know what
11   rates they're being billed at?
12       A.   They would ask us.
13       Q.   Did you ever have any discussion with
14   Star about what the rates are?
15       A.   No.
16       Q.   Do you know whether any of your
17   partners did?
18       A.   I don't know.
19       Q.   Let's turn to, a couple of pages, to
20   Star 00017190, it's like two pages after the one
21   we just looked at.  March 1, 2016 for Star
22   Toyota.
23       A.   I got it.
24       Q.   So there was an invoice issued on
25   that date for a thousand dollars for the monthly