# EXHIBIT 13

```
                                                              Page 1

 1            UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
 2
                         - - -
 3   STAR AUTO SALES OF      : Civil Action No.:
     BAYSIDE, INC. (d/b/a    : 1:18-cv-05775-ERK-CLP
 4   STAR TOYOTA OF          :
     BAYSIDE), STAR AUTO     :
 5   SALES OF QUEENS,        :
     LLC (d/b/a STAR         :
 6   SUBARU), STAR HYUNDAI   :
     LLC (d/b/a STAR         :
 7   HYUNDAI), STAR NISSAN,  :
     INC.(d/b/a STAR         :
 8   NISSAN), METRO          :
     CHRYSLER PLYMOUTH       :
 9   INC.(d/b/a STAR         :
     CHRYSLER JEEP DODGE),   :
10   STAR AUTO SALES OF      :
     QUEENS COUNTY LLC       :
11   (d/b/a STAR FIAT) and   :
     STAR AUTO SALES OF      :
12   QUEENS VILLAGE LLC      :
     (d/b/a STAR             :
13   MITSUBISHI),            :
                             :
14        Plaintiffs,        :
                             :
15        vs.                :
                             :
16   VOYNOW, BAYARD, WHYTE   :
     AND COMPANY, LLP, HUGH  :
17   WHYTE, RANDALL FRANZEN  :
     AND ROBERT SEIBEL,      :
18                           :
          Defendants.        :
19                     - - -
20         FRIDAY, FEBRUARY 3, 2023
21                     - - -
22
23   (Caption continued on page 2.)
24
25   Job No. CS5701935
```

```
                                                        Page 2

 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
 3                          - - -
 4
                    FRIDAY, FEBRUARY 3, 2023
 5
                            - - -
 6
 7
 8         Oral Deposition of JACQUELINE CUTILLO, as
 9   corporate designee for Metro Chrysler Plymouth, Inc.,
10   d/b/a Star Chrysler Jeep Dodge, taken at Marshall
11   Dennehey, 2000 Market Street, Suite 2300, Philadelphia,
12   Pennsylvania, commencing at 1:43 p.m., before Lauren
13   Sweeney, a Court Reporter and Notary Public.
14
                            - - -
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   A P P E A R A N C E S:
 2           MILMAN LABUDA LAW GROUP, PLLC
             BY:   JOSEPH M. LABUDA, ESQUIRE
 3           3000 Marcus Avenue
             Suite 3W8
 4           Lake Success, New York 11042
             516-328-8899
 5           joe@@mllaborlaw.com
             Representing the Plaintiffs
 6
 7           MARSHALL DENNEHEY
             BY:   MAUREEN FITZGERALD, ESQUIRE
 8           620 Freedom Business Center
             Suite 400
 9           King of Prussia, Pennsylvania 19406
             610-354-8270
10           mpfitzgerald@mdwcg.com
             Representing the Defendants
11
12
13
                        - - -
14
15   ALSO PRESENT:
16           RANDALL FRANZEN, VIA TELEPHONE
17           JEREMY KOUFAKIS
18           MICHAEL KOUFAKIS, VIA TELEPHONE
19           STEVE RAMBAM, VIA TELEPHONE
20
21                      - - -
22
23
24
25
```

Page 4

1              I N D E X

2                 - - -

3  TESTIMONY OF:  JACQUELINE CUTILLO                      PAGE

4  By MS. FITZGERALD. . . . . . . . . . . . . . . . . . .  6

5

6                 - - -

7              EXHIBITS

8                 - - -

9  NUMBER        DESCRIPTION                              PAGE

10 Chrysler-1    Notice                                    14

11 Chrysler-2    Civil lawsuit                             19

12 Chrysler-3    David Dubois documents                    29

13 Chrysler-4    Complaint                                 49

14 Chrysler-5    Vehicle documentation                     51

```
 1              DEPOSITION SUPPORT INDEX
 2    DIRECTIONS TO WITNESS NOT TO ANSWER
 3    Page    Line
 4    (None)
 5
 6
 7
 8    REQUEST FOR PRODUCTION OF DOCUMENTS
 9    Page    Line    Description
10    (None)
11
12    STIPULATIONS
13    Page    Line
14    (None)
15
16    QUESTIONS MARKED
17    Page    Line
18    (None)
19
20
21
22
23
24
25
```

                    - - -

         JACQUELINE CUTILLO, after

     having been first duly sworn, was

     examined and testified as follows:

                    - - -

BY MS. FITZGERALD:

    Q.   Okay.  Jackie, I'm not going to go through the
deposition instructions because you're aware of that.
         You're here today to testify as the
corporate designee on behalf of the Plaintiff, Metro
Chrysler Plymouth, Inc., d/b/a Star Chrysler Jeep Dodge;
is that correct?
    A.   That is correct.
    Q.   So when I use the term the company, the
corporation, or Chrysler, I'm referring to that entity.
    A.   Okay.  Understood.
    Q.   All right.  If you could pull up the damage
chart.  According to this chart, Chrysler is contending
that there are two schemes involving Debbie Theocharis,
the first being a loan payment not repaid scheme, and the
second being a vehicle scheme; is that correct?
    A.   That is correct.
    Q.   And with regard to the loan payment not repaid
scheme, the company contends that this scheme took place
from 2010 to 2016, and that the alleged loss is

1   A. Yes, that is correct.
2   Q. Is she still employed?
3   A. She is.
4   Q. Did the company have a policy where other than
5   Mr. Steven Koufakis telling Maria Pappas about the amount
6   of the loan and how it was going to be repaid, that the
7   employee would have to sign some sort of acknowledgment
8   as to the amount of the loan and how it was going to be
9   repaid?
10  A. No.
11  Q. What, if you know, did -- did Maria Pappas
12  create any documentation reflecting an employee loan
13  based upon what information Steven Koufakis provided to
14  her?
15  A. Not that I'm aware of.
16  Q. So just so I understand, there's no
17  documentation that the employee has to sign reflecting
18  the loan. There's no documentation between Steve
19  Koufakis to Maria Pappas telling her that the company had
20  made a loan to the employee, and there's no documentation
21  that Maria Pappas prepares reflecting the existence of an
22  employee loan and the terms?
23  A. That is correct.
24  Q. And that was the practice in place during 2010
25  to 2016?

1   A.   For legitimate loans that the owner knew about,
2   correct.
3   Q.   Did the company as part of its policy for
4   providing employee loans, did it run credit checks on
5   employees?
6   A.   No.
7   Q.   Was the company's policy for employee loans such
8   that repayment would be made out of an employee's
9   paycheck?
10  A.   That is correct.
11  Q.   So would there be documentation communicating
12  that to payroll?
13  A.   It was word of mouth.
14  Q.   So word of mouth between who?  Between the owner
15  and payroll or between Maria Pappas and payroll?
16  A.   Maria Pappas is payroll.
17  Q.   Oh, so she's HR and payroll.
18  A.   Yes.
19  Q.   Did she have to make any entry into any sort of
20  system, whether it's the payroll system or Reynolds and
21  Reynolds system reflecting that amounts were being
22  deducted from an employee's pay?
23  A.   Every time a payment would come out of an
24  employee's paycheck an entry would be made, correct.
25  Q.   Did the company use an outside payroll company?

1  check to Debbie, 25,000 of it was repaid back by Debbie.
2  There was an additional $2,500 loan for Debbie that made
3  it a remaining balance of $7,500, which she did not pay
4  back and she made a fraudulent bank entry.
5       Q.   Okay.  So let me rephrase that question.
6            For the loan for which there is a check
7  signed by Steve Koufakis payable to Debbie Theocharis in
8  the amount of $30,000, the company received repayment of
9  $25,000 of that loan?
10      A.   That is correct.
11      Q.   Okay.  And then the company contends that Debbie
12 made an authorized additional loan to herself in the
13 amount of $2,500, for which she has not repaid it.
14      A.   Along with the remaining $5,000 from the $30,000
15 load.
16      Q.   Correct.
17      A.   Correct.
18      Q.   Okay.  And was that additional repayment -- I'm
19 sorry, that additional 2,500 paid to Debbie by a check or
20 by cash?
21      A.   She took it out of the deposit and charged
22 herself.
23      Q.   With cash?
24      A.   Cash.
25      Q.   All right.  On what basis does the company

1  contend that Voynow is liable for the $98,000 listed in
2  the damage chart?
3          MR. LABUDA: Objection, but you can
4      answer.
5          THE WITNESS: I'd like to defer that to
6      the expert, but I'll give my opinion, which is
7      Voynow would come in multiple times a year,
8      review all the books and records and schedules.
9      They would look at the service and parts
10     receivable schedule, which identified Debbie
11     Theocharis along with the employee advance
12     schedule. Off the top of my head that's what I
13     can come up with.
14 BY MS. FITZGERALD:
15     Q. If you know, I referred you to that executive
16 summary report that the investigation had done for
17 Filardo and for Carmen.
18          Was a similar report done for Debbie?
19 Because I didn't see one in the production.
20     A. No. Not that I'm aware of, no.
21     Q. Has the company made any attempt to have Debbie
22 criminally charged?
23     A. Yes.
24     Q. And what has the company done in that regard?
25     A. We provided information in regards to the theft

JACQUELINE CUTILLO

Page 55

1     A.   Not that I'm aware of, no.
2     Q.   Did the company have any limit on the span of
3  time?  In other words, if you purchased a vehicle in
4  2010, you can't buy another one to 2015?
5     A.   Not that I'm aware of, no.
6     Q.   Is it the company's contention that the theft of
7  each of these vehicles occurred at the time Debbie or her
8  family members acquired possession of the new vehicle
9  after trading in the old vehicle?
10    A.   That is correct.
11    Q.   And on what basis does the company contend that
12 Voynow is liable for the 9,500 alleged damages in the
13 case?
14              MR. LABUDA:  Objection, but you can
15         answer.
16              THE WITNESS:  I'd like to defer that to
17         the expert, but I can give you my opinion.  If
18         Voynow reviewed all of the documents, records,
19         and schedules in relation to used cars, new cars,
20         customer deposits, and so on and so forth -- so
21         that would be my basis.  That would be my opinion
22         off the top of my head.
23 BY MS. FITZGERALD:
24    Q.   Has the company recovered anything from Debbie
25 or her family members as a result of the lawsuit filed