# EXHIBIT 4

Page 1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
                          - - -
 3   STAR AUTO SALES OF     : Civil Action No.:
     BAYSIDE, INC. (d/b/a   : 1:18-cv-05775-ERK-CLP
 4   STAR TOYOTA OF         :
     BAYSIDE), STAR AUTO    :
 5   SALES OF QUEENS,       :
     LLC (d/b/a STAR        :
 6   SUBARU), STAR HYUNDAI  :
     LLC (d/b/a STAR        :
 7   HYUNDAI), STAR NISSAN, :
     INC.(d/b/a STAR        :
 8   NISSAN), METRO         :
     CHRYSLER PLYMOUTH      :
 9   INC.(d/b/a STAR        :
     CHRYSLER JEEP DODGE),  :
10   STAR AUTO SALES OF     :
     QUEENS COUNTY LLC      :
11   (d/b/a STAR FIAT) and  :
     STAR AUTO SALES OF     :
12   QUEENS VILLAGE LLC     :
     (d/b/a STAR            :
13   MITSUBISHI),           :
                            :
14          Plaintiffs,     :
                            :
15          vs.             :
                            :
16   VOYNOW, BAYARD, WHYTE  :
     AND COMPANY, LLP, HUGH :
17   WHYTE, RANDALL FRANZEN :
     AND ROBERT SEIBEL,     :
18                          :
            Defendants.     :
19                        - - -
20          FRIDAY, SEPTEMBER 23, 2022
21                        - - -
22
23   (Caption continued on page 2.)
24
25   Job No. CS5366866
```

(Caption continued on page 2.)

JOHN KOUFAKIS

Page 18

1    Star Nissan have audited financial statements?

2         A.  I would think they have the right.

3         Q.  Okay.  Do you have a copy of your original

4    agreement from 1991?

5         A.  Somewhere.

6              MS. FITZGERALD:  Okay.  So we'll make a

7         request for that to be produced since the witness

8         is unclear.

9              MR. FELSEN:  If you have any requests, you

10        can --

11             MS. FITZGERALD:  Yeah, I'm going to send

12        you a follow-up one.

13   BY MS. FITZGERALD:

14        Q.  You mentioned that you prepare -- or your

15   monthly financial statements that are provided to Nissan

16   Corporation are prepared internally and provided monthly,

17   correct?

18        A.  Uh-hum.

19        Q.  You have to say yes.

20        A.  Yes.

21        Q.  Okay.  So during the time of Voynow's

22   engagement, Voynow never prepared those monthly financial

23   statements that were provided to Nissan Corporation,

24   correct?

25        A.  They never prepared them, but they did review

JOHN KOUFAKIS

Page 19

1   them.

2       Q.  Okay.  And on what basis do you contend that

3   Voynow reviewed monthly statements that your dealership

4   was sending to Nissan Corporation?

5                   MR. FELSEN:  Objection.

6                   THE WITNESS:  Could you repeat that,

7           please?

8   BY MS. FITZGERALD:

9       Q.  Sure.  On what basis are you testifying that

10  Voynow reviewed the monthly financial statements that

11  Star Nissan provided to Nissan Corporation?

12                  MR. FELSEN:  Objection.

13                  THE WITNESS:  Well, what does that mean?

14                  MR. FELSEN:  You can answer if you

15          understand.

16                  THE WITNESS:  Not clearly.

17  BY MS. FITZGERALD:

18      Q.  Well, let me just break it down.

19                  You just testify that you believe Voynow

20  reviewed the monthly financial statements that Star

21  Nissan provided to Nissan Corporation.  So I'm asking you

22  --

23      A.  They would review them quarterly.

24      Q.  Okay.  And, again, on what basis are you

25  claiming that Voynow reviewed the monthly financial

JOHN KOUFAKIS

Page 36

1      A.  Yeah.

2      Q.  Okay.  Star Nissan, Incorporated opened an

3  account in June of 1997.

4              Do you see that?

5      A.  Yeah.  It also says Carmen here.

6      Q.  Right.  Do you have any reason to refute that a

7  Staples credit card account was opened in the name of

8  Star Nissan around June of 1997?

9              MR. FELSEN:  Objection.

10             THE WITNESS:  Not with my authority.

11  BY MS. FITZGERALD:

12     Q.  I'm sorry?

13     A.  Not with my authority.

14     Q.  Okay.  Are you aware that an account was opened

15  in Star Nissan's name at Staples?

16             MR. FELSEN:  Objection.  Asked and

17         answered.  You can answer again.

18             THE WITNESS:  I'm not -- I wasn't aware of

19         a credit card.  I did sign checks for Staples as

20         the bills came in.  But they would only read

21         office supplies, office supplies, office

22         supplies, office supplies with no detailed

23         information.  And I signed the check.

24  BY MS. FITZGERALD:

25     Q.  So understanding that you were receiving monthly

JOHN KOUFAKIS

Page 75

1        A.  Yes.

2        Q.  -- was your answer based on what Michael told

3    you?

4        A.  Yes.

5        Q.  Was it based on anything else other than what

6    Michael told you?

7        A.  I trust him implicitly, and he's highly

8    qualified.

9               MR. FELSEN:  Take a quick break.

10                    - - -

11               (There was a brief recess in

12          the proceeding.)

13                    - - -

14   BY MS. FITZGERALD:

15       Q.  Okay.  At any point did you ever raise any

16   concerns about potential theft or fraud in any of the

17   dealerships to Voynow?

18       A.  No.

19       Q.  Did you ever raise any concerns to Voynow about

20   any of the employees of any of the dealerships?

21       A.  No.

22       Q.  Now, you said that you believe that Voynow was

23   on site quarterly.

24               Is that what you believe?

25               MR. FELSEN:  Objection.  Asked and

JOHN KOUFAKIS

Page 76

1          answered.

2                    THE WITNESS:  Approximately.

3     BY MS. FITZGERALD:

4          Q.  Okay.  And when you say quarterly, what is your

5     recollection as to what months or approximate time

6     periods you believe that Voynow was there?

7          A.  I couldn't tell you.

8          Q.  Okay.  Do you know if they were there at the end

9     of the year, in the middle of the year, spring, fall?

10    What's your recollection?

11                    MR. FELSEN:  Objection.  Asked and

12            answered.

13                    THE WITNESS:  I'm not sure if it was on a

14            regular basis, on a regular schedule.

15    BY MS. FITZGERALD:

16         Q.  Okay.  How many times per year do you think they

17    were there?

18                    MR. FELSEN:  Objection.  Asked and

19            answered.

20                    THE WITNESS:  Four times.

21    BY MS. FITZGERALD:

22         Q.  All right.  And what is that based on?  Like is

23    that -- I mean, is that just based on your recollection

24    or is it based on something that you saw in some kind of

25    documentation?

JOHN KOUFAKIS

Page 95

1    Q.  Do you recall receiving something from Voynow

2  that was in turn then passed on to a third party?

3    A.  No.  I just don't remember.

4    Q.  Okay.  It's possible.  You just don't remember?

5           MR. FELSEN:  Objection.

6           THE WITNESS:  It's highly probable.  I

7       don't see it signed.

8  BY MS. FITZGERALD:

9    Q.  Did you ever receive engagement letters or

10  correspondence from Voynow directed to you for purposes

11  of Star Nissan matters?

12    A.  Not that I recall.

13           MS. FITZGERALD:  Let's mark this.

14           So off the record.

15             - - -

16           (There was a discussion held

17       off the record.)

18             - - -

19  BY MS. FITZGERALD:

20    Q.  Okay.  So we've just taken a break and you've

21  had time to confer with your counsel. I understand you

22  want to --

23    A.  I confused the words on the tax return of, I

24  think it was 2016, "amended with file."  Amended means

25  changed, but I don't know -- I guess file means it would

JOHN KOUFAKIS

Page 97

1    gone through in.

2                           - - -

3                    (Exhibit J-Koufakis-8 was

4            marked for identification.)

5                           - - -

6    BY MS. FITZGERALD:

7        Q.  All right.  Let's put this one aside.

8                    I'm showing you now Exhibit-8.

9                    MR. FELSEN:  Maureen, just before you ask

10           questions, other than this Exhibit-8, are there

11           any other documents that have been requested in

12           discovery that you're going to be attempting to

13           use today at a deposition?

14                    MS. FITZGERALD:  No.

15                    Let's go off the record.

16                           - - -

17                    (There was a discussion held

18           off the record.)

19                           - - -

20    BY MS. FITZGERALD:

21        Q.  Okay.  I'm showing you what we've marked as

22    Exhibit-8.

23                    Do you recognize this document?

24        A.  No.

25                    MR. FELSEN:  I'm just going to state for

JOHN KOUFAKIS

Page 98

1              the record that this document was just given to

2              us a few minutes ago.  It was not produced prior

3              to today.

4                      MS. FITZGERALD:  Yeah.  And I'll just add

5              to the record that counsel had made a request

6              informally, not a formal document request for

7              other engagement letters, and I just got

8              possession of this document yesterday afternoon.

9              I have this document and a few others that I'll

10             be getting to you early next week once I have the

11             opportunity for somebody to Bates stamp them.

12   BY MS. FITZGERALD:

13       Q.  Okay.  So if I understand your answer --

14                      MS. FITZGERALD:  What was the answer?

15                          - - -

16                  (There was a discussion held

17           off the record.)

18                          - - -

19   BY MS. FITZGERALD:

20       Q.  You recall receiving documents such as

21   Exhibit-8?

22       A.  No, but had I, and if it would say star 3-0'd

23   it, they would immediately go to Michael.

24       Q.  Okay.  Did Star Nissan, to your knowledge,

25   prepare -- I'm sorry, did Voynow to your knowledge

JOHN KOUFAKIS

Page 182

1    Q.  Okay.  So going back to your question about

2  Voynow and car sales, are you claiming that part of

3  Voynow's responsibility was to review the sales of every

4  vehicle sold by the dealership?

5              MR. FELSEN:  Objection.  Asked and

6         answered.

7              THE WITNESS:  No, but if there was a

8         receivable, like I said, that's an anomaly.

9  BY MS. FITZGERALD:

10   Q.  Okay.  If there was no receivable set up for

11  Carmen Jones' purchase would --

12   A.  I would blame Vivian.

13   Q.  Okay.  You'd blame Vivian and not Voynow?

14              MR. FELSEN:  Objection.  Asked and

15         answered.

16              THE WITNESS:  With all due respect --

17              MR. FELSEN:  Hypothetical.

18              THE WITNESS:  With all due respect, we've

19         given Voynow over a million and a half dollars,

20         and in my wildest dreams I never thought anything

21         like this would happen.

22  BY MS. FITZGERALD:

23   Q.  Are you aware of any occasions where Voynow made

24  recommendations to the dealerships as far as things that

25  they could do to improve their business practice?

JOHN KOUFAKIS

Page 183

1      A.  Yeah.

2      Q.  What recommendations are you aware of?

3      A.  Cleaning out the parts, outstanding parts

4  tickets.  In other words, a customer would buy a part,

5  and a lot of them were good, common customers, and they

6  would tell you, well -- especially the collision guys --

7  they owed a couple thousand dollars worth of parts -- oh,

8  when I get the insurance check I'll pay you.  There were

9  things like that.  And used car inventory would get aged.

10     Q.  So they would make recommendations to management

11  about things to do and follow up on?

12     A.  Yes.

13     Q.  And did management do that?

14     A.  Yes.

15     Q.  Okay.  In making those recommendations, did you

16  understand that Voynow was not going to do that; it was

17  recommending that management do it?

18     A.  Well, in those instances, they did their job and

19  reported these -- I'll call them anomalies and areas of

20  attention that need to be done.

21     Q.  Was there ever any issue with Star Nissan and

22  theft in the parts department?

23          MR. FELSEN:  Objection.

24          THE WITNESS:  It's hard to say. It could

25     either be bad -- 'cause theft in parts department

JOHN KOUFAKIS

Page 187

1      Q.  And who set that budget?  Did you?

2      A.  Uh-hum.

3      Q.  Yes?

4      A.  Yes.

5      Q.  Okay.  And you conveyed that budget verbally to

6  Gus?

7      A.  Yes.

8      Q.  And was it up to Gus to decide how that money

9  was going to be spent?

10     A.  Yes.

11     Q.  Okay.  Was Gus authorized to enter into any

12  contract for services with an outside advertiser on

13  behalf of Star Nissan?

14     A.  I do not enter into any written contracts with

15  anyone.  If you don't trust me, let's not do business.

16  Those are my answers.

17     Q.  Is that view held by your brothers and your

18  father as well?

19          MR. FELSEN:  Objection.

20          THE WITNESS:  I should hope so, but I

21      couldn't guarantee it.  My answer is probably.

22  BY MS. FITZGERALD:

23     Q.  All right.  So when Gus -- did Star Nissan use

24  an outside person for advertising?

25     A.  There was -- well, in most years there was an