# EXHIBIT 10

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 2 of 9 PageID #: 2532

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
STAR AUTO SALES OF BAYSIDE, INC.
(d/b/a STAR TOYOTA OF BAYSIDE),
STAR AUTO SALES OF QUEENS, LLC
(d/b/a STAR SUBARU), STAR HYUNDAI
LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC. (d/b/a STAR NISSAN),
METRO CHRYSLER PLYMOUTH INC. (d/b/a
STAR CHRYSLER JEEP DODGE) STAR AUTO
SALES OF QUEENS COUNTY LLC (d/b/a
STAR FIAT) and STAR AUTO SALES OF
QUEENS VILLAGE LLC (d/b/a STAR
MITSUBISHI),

                     Plaintiffs,

        -against-                          Case No.
                                           18-cv-05775
VOYNOW, BAYARD, WHYTE and COMPANY          (ERK)(TAM)
LLP, HUGH WHYTE, and RANDALL
FRANZEN,

                     Defendants.
-------------------------------------x

                          January 31, 2023
                          10:41 a.m.
```

Deposition of HUGH WHYTE, taken by Plaintiffs, pursuant to Notice, held at the offices of Milman Labuda PLLC, 3000 Marcus Avenue, Suite 3W8, Lake Success, New York, before Lisa Hiesiger, a Shorthand Reporter and Notary Public within and for the State of New York.

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 3 of 9 PageID #: 2533

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

11

1              Whyte
2  you can recall.
3       A.   It was like engagement letters and
4  some schedules, but I told her, I said --
5            MS. FITZGERALD:  Okay, not just --
6       he's not entitled to know what you and I
7       talked about.
8       Q.   Any other documents that you reviewed
9  other than some engagement letters?
10      A.   There could be but I don't recall.
11      Q.   What particular engagement letters
12 did you review?
13      A.   Some of the ones from earlier in 2000
14 to later in 2000.
15      Q.   Who were those engagement letters
16 between?
17      A.   The Star entities and Voynow, Bayard.
18 Voynow.
19      Q.   Were those engagement letters signed?
20      A.   No.
21      Q.   Are you aware of any signed
22 engagement letters related to the engagement
23 Voynow performed for any of the Star entities?
24      A.   I'm not.
25      Q.   Aside from preparing for the

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 4 of 9 PageID #: 2534

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

38

1               Whyte
2    supervisor to a new client?
3         A.   Generally probably between me and
4    Randy, we figure out who the best person is to
5    put as the in-charge.  And it would generally
6    either be Bobby or Rob with some accountants with
7    them.
8         Q.   Who decided which Voynow employee
9    would be the field supervisor for Star?
10        A.   When Star originally wanted to get us
11   involved, we were referred through Reynolds and
12   Reynolds, and they really wanted somebody that
13   was fluent in Reynolds and Reynolds, and at the
14   time that was Randy, so Randy got the assignment.
15        Q.   Why did Star want somebody that was
16   fluent in Reynolds and Reynolds?
17        A.   Because they were trying to
18   streamline their accounting system and they
19   really didn't know what to do as far as setups
20   and things like that, and Randy had a very good
21   relationship with Reynolds, and if there was
22   things that they needed to do, then he could
23   direct them.
24        Q.   During this period of time generally
25   speaking at Voynow, how did Voynow convey to its

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

90

1                        Whyte

2       Q.   One of the items listed in this
3 advertisement is internal control design,
4 correct?
5       A.   Yeah, if requested.
6       Q.   All of the items on this
7 advertisement would be performed only if
8 requested, correct?
9       A.   That's correct.
10      Q.   Tax preparation work would only be
11 performed if requested, correct?
12      A.   Yes.
13      Q.   Okay, you can hand that back to me,
14 please.  With respect to internal control
15 engagement, what would Voynow charge for that
16 type of engagement?
17      A.   I don't know.
18      Q.   Going back over 20 years ago when you
19 actually went into the field, would there be any
20 meetings with the client other than the year-end
21 meeting in December?
22      A.   Generally by request, yes, if they
23 requested it.
24      Q.   So is it fair to say that these
25 quarterly meetings that you testified earlier --

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 6 of 9 PageID #: 2536

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

91

1           Whyte
2       A.   But I corrected that, I'm not sure
3   how many meetings, I'm not sure what we did.
4       Q.   So you're only aware of one year-end
5   meeting?
6           MS. FITZGERALD:  No, he said that
7       he's not aware of the other visits, he's
8       not aware how many or when, I believe is
9       what he said.
10      A.   Yeah.
11      Q.   So the only visit that you know about
12  with certainty is that there's a year-end visit
13  in December when it's a tax preparation
14  engagement, is that accurate?
15      A.   It depends on the partner in charge,
16  they dictate that.  Whether they're going to meet
17  with the client or they're just going to call the
18  client and walk through it on the phone with
19  them, it's up to the partner in charge, not me.
20      Q.   Is it the norm for CPAs to have a
21  written engagement letter for a tax engagement?
22          MS. FITZGERALD:  Objection.
23      A.   I don't think you can say it's the
24  norm, it's not required so a lot of people won't
25  even do them.

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 7 of 9 PageID #: 2537

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

122

1        Whyte
2             MS. FITZGERALD:  Wait a minute, do
3        you understand?
4             THE WITNESS:  I don't understand.
5             MS. FITZGERALD:  Don't answer if you
6        don't understand it.
7             THE WITNESS:  I don't understand it.
8             MS. FITZGERALD:  Can you rephrase it.
9        Q.   Do you have any knowledge of a Voynow
10   manager having discussions with a dealer
11   principal about the benefit of having Voynow come
12   for an interim visit in July and August after a
13   tax return is filed?
14        A.   I don't.
15        Q.   Is there an added cost to a client
16   who decides to have additional interim visits?
17        A.   Yes.
18             MS. FITZGERALD:  Object to form.
19             Go ahead.
20        Q.   So is it true that the only required
21   interim visit is in December?
22        A.   Could be, could be.
23        Q.   Do you know what the agreement was
24   between Star and Voynow as it relates to number
25   of interim visits that Voynow would pay each

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 8 of 9 PageID #: 2538

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte  ---  January 31, 2023

172

1                         Whyte
2          Q.   Is that the only one you remember --
3               MS. FITZGERALD:  Other than what he
4          testified to about Star.
5          A.   And then you know obviously with
6     Springfield, everybody got canned.
7          Q.   You can give me that back, we're not
8     going to use that one.
9               We're going to look at 9.  So I'm
10    showing you what was previously marked as Exhibit
11    9.  Are you familiar with this document?
12         A.   Like I told you, I don't go into the
13    field so there's no way I would know what's going
14    on with this stuff.
15         Q.   Are you familiar with a cashier
16    audit?
17         A.   I'm not, no.
18         Q.   Are you aware of any -- of Voynow
19    performing a cashier audit for any of its
20    automobile clients?
21         A.   Well, they'll check the petty cash
22    drawer and they'll do accounting of it, but I
23    don't know that that's an audit.  There's no
24    outside verification of it and that's normally
25    what you need with an audit.  They go to service

Case 1:18-cv-05775-ERK-TAM   Document 126-49   Filed 06/05/24   Page 9 of 9 PageID #: 2539

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Hugh Whyte --- January 31, 2023

173

1                     Whyte

2 and they'll do an account of the petty cash

3 drawer.

4        Q. What does that have to do with a tax

5 engagement?

6        A. It's usually a request from the

7 client that they want to make sure that whatever,

8 if there's any money being used out of that

9 drawer, and if there are, they want to shut it

10 down, they don't want that drawer being used for

11 buying lunches or anything like that. So that's

12 usually a request.

13        Q. So that would require a separate

14 engagement letter, correct?

15        A. Not necessarily. I mean sometimes

16 these requests are just de minimis and we do it

17 while we're there. It's not like you've got to

18 stop and raise the flag to the top of the

19 flagpole.

20        Q. Let's look at Exhibit 12. So this is

21 an e-mail that Randy sent to a bunch of Voynow

22 employees and you're copied on the e-mail. This

23 is from June 3rd, 2013, correct?

24        A. Yes.

25        Q. It's inquiring about the status of