# EXHIBIT 19

# In the Matter of

Case No. 18-cv-05775 (ERK)(TAM)

STAR AUTO SALES OF BAYSIDE, INC., et al.

v.

VOYNOW, BAYARD, WHYTE AND COMPANY LLP, et al.

---

## Deposition of Vincent Bucolo

*Wednesday, November 2, 2022*

---

The Little Reporting Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
STAR AUTO SALES OF BAYSIDE, INC.
(d/b/a STAR TOYOTA OF BAYSIDE),
STAR AUTO SALES OF QUEENS, LLC
(d/b/a STAR SUBARU), STAR HYUNDAI
LLC (d/b/a STAR HYUNDAI), STAR
NISSAN, INC. (d/b/a STAR NISSAN),
METRO CHRYSLER PLYMOUTH INC. (d/b/a
STAR CHRYSLER JEEP DODGE) STAR AUTO
SALES OF QUEENS COUNTY LLC (d/b/a
STAR FIAT) and STAR AUTO SALES OF
QUEENS VILLAGE LLC (d/b/a STAR
MITSUBISHI),

                              Plaintiffs,

              -against-              Case No.
                                    18-cv-05775
VOYNOW, BAYARD, WHYTE and COMPANY   (ERK)(TAM)
LLP, HUGH WHYTE, and RANDALL
FRANZEN,

                              Defendants.
-------------------------------------x

                      November 2, 2022
                      10:43 a.m.

         Deposition of VINCENT BUCOLO, taken by
Plaintiffs, pursuant to Subpoena, held at the
offices of Milman Labuda PLLC, 3000 Marcus
Avenue, Suite 3W8, Lake Success, New York,
before Lisa Hiesiger, a Shorthand Reporter
and Notary Public within and for the State of
New York.

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo --- November 2, 2022

19

1                            Bucolo
2       and almost all the managers were out at the site.
3       Other ones would be just a few of us, but I do
4       not recall any formal assigning process.
5              Q.    Prior to learning that there was a
6       lawsuit involving Star and Voynow, did you keep
7       in touch with anybody from Voynow after you left?
8              A.    I talked to Rob Kirkhope sparingly.
9              Q.    Did you guys socialize?
10             A.    No.  We haven't seen each other but
11      chitchat here and there.
12             Q.    How is it that upper management would
13      decide at Voynow how to disburse work to more
14      junior accountants?
15             A.    I don't know.
16             MS. FITZGERALD:  Object to form.
17             Q.    Did Voynow store clients' documents
18      that they would review?
19             A.    So a lot of clients for personal tax
20      returns would send us their documents and we
21      would be scanning them in, such as bank
22      statements, their brokerage statements, their
23      W-2s, the documentation that we need to conduct
24      tax returns.
25             Q.    Would that include schedules that you

20

1                        Bucolo

2      would review at dealerships?

3              A.    If we printed out schedules, usually

4      they would be coming back with us.

5              Q.    And those would all be scanned?

6              A.    No.

7              Q.    What would be done with the

8      schedules?

9              A.    They would usually be bound and kind

10     of in portfolio binders.

11             Q.    Was there a period of time that those

12     were scheduled and the binders would be retained

13     by Voynow?

14             A.    I don't know the length of time.

15             Q.    What else was kept in hard copy as

16     opposed to electronically?

17             A.    There was a lot of hard copy files in

18     the office.

19             Q.    Who at Voynow would assign you work?

20             A.    Whoever wanted to give it out that

21     day, it would be either Randy Franzen if he had a

22     project.  Bob Seibel, Rob Kirkhope, Shawn

23     McCormick, David Kaplan.  Kenny too, but I tried

24     to avoid that like the plague.

25             Q.    Who is Kenny?

STAR AUTO SALES, et al. v. VOYNOW, BAYARD,  et al.
Vincent Bucolo  ---  November 2, 2022

27

                          Bucolo

1

2        Q.   So you named quite a few automobile

3   groups that you performed services for while at

4   Voynow.  Did you perform similar services for all

5   of those groups?

6        A.   I would say yes.

7             MS. FITZGERALD:  Object to form.

8        Q.   What is that service that you

9   performed for each of these dealerships that

10  you've identified?

11       A.   Entry level accounting work.

12  Actually that's not the correct terminology.  We

13  weren't doing their accounting work, tax prep

14  would be the proper terminology.

15       Q.   And I'm not an accountant so I don't

16  know what that means.  Can you explain to me what

17  you mean by tax prep?

18       A.   Preparing their tax returns.

19       Q.   What does that involve in terms of

20  preparing tax returns for these dealerships?

21       A.   Getting their financial statements,

22  basically reporting them onto the correct lines

23  of the tax return, report their taxes to the

24  government.

25       Q.   Aside from what you just testified

STAR AUTO SALES, et al. v. VOYNOW, BAYARD,  et al.
Vincent Bucolo  ---  November 2, 2022

28

Bucolo

1                          Bucolo

2       about, did you perform any other services for any

3       of these automobile groups that you've

4       identified?

5              A.   For some of them we would also go out

6       and do interim work usually in the summertime

7       slow period.

8              Q.   And --

9              A.   And I guess if any dealership also

10      had a 401(k) plan and engaged us to audit the

11      401(k) plan, we did do 401(k) work.  They were

12      401(k)audits, which is a separate engagement.

13             Q.   Is it fair to say the purpose of the

14      interim work was to review and address internal

15      controls at the dealerships?

16                  MS. FITZGERALD:  Object to form.

17             A.   No, I don't know the answer to that.

18             Q.   So you did interim work but you don't

19      know what the purpose of the interim work was?

20             A.   The interim work was to check a

21      snapshot of time.  Most of the time spent doing

22      interim work was outside at the service

23      departments, not inside handling accounting

24      functions.

25             Q.   You said that the purpose of the

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

29

1                          Bucolo

2      interim work was to check a snapshot of time.

3      What does that mean?

4            A.   So if we went out there in June, they

5      would print current schedules of the June

6      balances.  We would print our service reports and

7      we would go out and do the service work, which

8      entailed just kind of asking questions on age

9      claims and checking to see if the car that's

10     being serviced is still in the lot, pretty

11     routine stuff.

12           Q.   And approximately how many of the car

13     dealership groups that you've identified did you

14     perform this interim work for in the summer?

15           A.   I do not recall.

16           Q.   But is it fair to say not even one of

17     these auto groups had Voynow perform interim work

18     in the summer?

19           A.   I don't recall.

20           Q.   This interim work was not required

21     for Voynow to perform the tax returns, correct?

22                MS. FITZGERALD:  Objection.

23           A.   I haven't seen any of our engagement

24     agreements.

25           Q.   But just in terms of the work you

STAR AUTO SALES, et al. v. VOYNOW, BAYARD,  et al.
Vincent Bucolo  ---  November 2, 2022

30

1                            Bucolo

2      were actually performing on these interim

3      reports, is it fair to say that that work that

4      you did during the summer performing these

5      interim reports -- the interim work was not

6      necessary to perform -- to prepare the tax

7      returns for these dealerships?

8                  MS. FITZGERALD:  Object to form.

9           A.   It was above my pay grade or

10     understanding at the time.

11          Q.   Given the fact that not every one of

12     these auto groups had Voynow do these interim

13     visits, isn't it fair to say that it was not

14     required in order for Voynow to prepare tax

15     returns?

16          A.   I guess that would be a fair

17     assessment, yes.

18          Q.   Given the almost three years that you

19     worked at Voynow, would you say it's fair to say

20     that there's a lot of fraud and theft in the

21     automobile industry in general?

22                  MS. FITZGERALD:  Object to form.

23          A.   I wouldn't know that.

24          Q.   When you worked at Voynow, did you

25     become aware of any discrepancies or anomalies in

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

46

1                         Bucolo

2      interim visits being specifically quantified to

3      any areas.

4           Q.   I think you mentioned earlier that

5      when you went on interim visits, you would focus

6      on service and parts, is that correct?

7           A.   Correct.  I spent a lot of time doing

8      that.

9           Q.   So prior to an interim visit, would

10     anybody tell you we're going to XYZ dealership

11     and we're going to go look at the service and

12     parts department?

13          A.   After the first or second one, it was

14     kind of pretty much known as that was going to be

15     my assignment, because nobody wanted to walk

16     around outside with a shirt and tie in July.

17          Q.   When you went for interim visits in

18     July and you focused on service and parts, what

19     exactly were you looking for?

20          A.   We looked at some, we printed a list

21     of the aged open tickets and then we basically

22     asked them why it's open, should it be open, and

23     then if there's a valid reason for the ticket to

24     be open, we would go and confirm if the car was

25     still on premises.

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo --- November 2, 2022

50

1                          Bucolo

2    reviewing the parts and service departments?

3         A.   We went to dealerships other months

4    out of the year, yes.

5         Q.   What other months do you recall going

6    to dealerships to perform those types of

7    services?

8         A.   I don't recall the months but I know

9    there was more than just July.

10        Q.   And is it fair to say that you went

11   to Star to review the parts and service

12   department on occasions other than July?

13             MS. FITZGERALD:  Objection.  Object

14        to form.

15        A.   I was not engaged to perform reviews.

16        Q.   What did you do with respect to

17   service and parts?

18        A.   As I explained, we'd print out the

19   schedule of the old open tickets and then we

20   would go to the service department and inquire

21   about them, basically kind of jot down their

22   explanations of why they're open and then go

23   touch the cars to make sure they're still on

24   site.

25        Q.   What was the purpose of all of that

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

53

                        Bucolo

1

2          A.    I don't recall.

3          Q.    A&T Chevy, do you recall doing any

4    other work than tax prep work?

5          A.    I don't recall.

6          Q.    When you did this additional work for

7    these dealerships where you looked at the service

8    and parts department, did you report your

9    findings to anybody at Voynow?

10              MS. FITZGERALD:  Object to form.

11         A.    Yeah, we had results like work

12   papers.

13         Q.    Were you required to prepare any type

14   of summary of your findings?

15         A.    We would type up our findings in

16   interim letters.

17         Q.    And who would you give those interim

18   letters to?

19         A.    They were handed off to Dot or Betty

20   Ann for typing and then they were reviewed by

21   management and partners for accuracy,

22   consistency, formatting.

23         Q.    And what was the purpose of you

24   preparing these interim reports?

25         A.    It was my job.

STAR AUTO SALES, et al. v. VOYNOW, BAYARD,  et al.
Vincent Bucolo  ---  November 2, 2022

55

                              Bucolo

1

2       A.   Working inside in the air

3   conditioning.  I mean I was outside, I don't know

4   what they were doing.

5       Q.   Were they reviewing records related

6   to another department within the dealership

7   group?

8            MS. FITZGERALD:  Objection.

9       A.   I was outside, I don't know what

10  anyone was doing.

11      Q.   So what were the details that you

12  would provide in these reports?

13      A.   It would generally be the listing of

14  the control number maybe, car name, open amount

15  and a comment.  Maybe a certification that we

16  would confirm the car was there, along those

17  lines.

18      Q.   And what was the purpose for which

19  you were determining whether a car was there or

20  not?

21      A.   The purpose for it?

22      Q.   Yes.

23      A.   That was part of my job assignment.

24      Q.   What was your understanding of why

25  you were doing that?

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

56

Bucolo

1

2      A.    To confirm the car was there.

3      Q.    Why was that important?

4      A.    The asset that you're working on is

5   there.

6      Q.    That was just something that the

7   clients would ask Voynow to do for them?

8            MS. FITZGERALD:  Objection.

9      A.    I was not involved in engagements.

10     Q.    That work wasn't related to preparing

11  tax returns in January, correct?

12           MS. FITZGERALD:  Objection.

13     A.    I was not involved in the

14  engagements.

15     Q.    But did you understand that the work

16  that you were doing in July and in other months

17  of the year that were not in January was related

18  to the preparation of tax returns that you did in

19  January?

20           MS. FITZGERALD:  Objection.

21     A.    I do not recall.

22     Q.    When you were looking at the cars,

23  were you looking at used and new or just one or

24  the other?

25     A.    It was service cars so they were all

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

99

Bucolo

1          would get a tax adjustment, I forget the purpose

2          of the other schedules.

3                  Q.   Now the notations that you may make

4          on these schedules when you're looking at them,

5          were notations made only during the interim

6          visits?

7                  MS. FITZGERALD:  Objection.

8                  A.   I can't confirm or deny that.

9                  Q.   What would be the reason that you

10         would make a notation on a schedule when you're

11         looking at it for purposes of preparing tax

12         returns?

13                 MS. FITZGERALD:  Objection.

14                 A.   Like I said, if you want to ask a

15         particular question, you could be doing

16         mathematical computations or you could write the

17         answer to questions or whatever you felt like.

18                 Q.   In terms of performing your duties at

19         Star related to service and parts, what kind of

20         information would you need on schedules to be

21         able to do your work?

22                 A.   So we would have the listing of I

23         believe it was like the aged open service

24         tickets, and then we would go into Reynolds and

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

100

1                          Bucolo

2       Reynolds and try to pull out vehicle information,

3       because that wasn't on the car so that made our

4       job finding the cars easier.  And then we just

5       kind of go to the service department and have

6       them look up a particular customer name or using

7       I forget what identifying number they had.  Kind

8       of get an explanation.  And then if the car was

9       on the lot, just go out there and touch the car

10      or see the car.

11             Q.    That was work that was done during

12      the interim visits, correct?

13             A.    Correct.

14             Q.    Who would you speak with in the

15      service department?

16             A.    The service reps or service manager,

17      it varied by store.

18             Q.    So for that work looking at aged open

19      service tickets, what kind of schedule would that

20      be, would that be accounts receivable, accounts

21      payable?

22             A.    I forget the name of the schedule.

23             Q.    Would the schedule that you looked at

24      with respect to service and parts, would that be

25      the same schedule would have the same name for

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo --- November 2, 2022

112

1                        Bucolo

2                   Afternoon Session

3                      1:45 p.m.

4             (Exhibit 47, Document reflecting

5             billing entries for work performed for

6             Star, was so marked for identification, as

7             of this date.)

8    V I N C E N T   B U C O L O, having been

9    previously duly sworn, was examined and testified

10   further as follows:

11   EXAMINATION (Continued)

12   BY MR. FELSEN:

13          Q.   I'm showing you what we've marked as

14   Exhibit 47.  These are documents that were

15   produced by Voynow and reflect all of your

16   billing entries for work that you performed for

17   Star.  I just want to direct your attention first

18   to the first page Voynow 24488, there's an entry

19   here for June 12, 2012.

20          A.   Uh-huh.

21          Q.   With your name there, do you see

22   that?

23          A.   Yes.

24          Q.   And --

25               MS. FITZGERALD:  I'm sorry, what day

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

115

Bucolo

2      A.   It does not appear to be during an
3  interim visit.  Usually interim visits we would
4  be there on site billing for the whole day.  This
5  could have easily been for an extended tax
6  return.

7      Q.   So is it fair to say that that entry
8  on the first page is for work that you did in
9  Voynow's office for Debbie's personal tax
10 returns?

11          MS. FITZGERALD:  Objection.

12     A.   I don't know where I would have been.

13     Q.   Did you ever do work for Star at
14 Voynow's office?

15     A.   We did work at our offices, yes.

16     Q.   What kind of work would Voynow do for
17 Star at Voynow's office?

18     A.   We would prepare their tax returns.

19     Q.   So what was the difference in terms
20 of the tax preparation work that you did for
21 Star, what was the difference in terms of the
22 work you did when you were at Star in January and
23 February versus what you did in Voynow's office
24 related to the tax return preparation?

25     A.   Generally speaking, the on site

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

116

Bucolo

1

2      visits were to gather and confirm the client's

3      accounting records at that time, and the post

4      visit with the work in the office was done to

5      actually physically prepare their tax returns.

6      So entering the information into our tax and

7      accounting software, entering the fixed asset

8      information into the depreciation software and

9      generating the tax returns.

10             Q.   So that work was all done at Voynow's

11     office in terms of the entry?

12             A.   I cannot say if it was all done or

13     not, but that was primarily the work location for

14     that type of work.

15             Q.   Going to the second page 24779,

16     there's an entry here for July 30, 2013 and it

17     says your name there and it's got .6, it just

18     says letter.  And it looks like it's billed under

19     interim service report typing.  Is that related

20     to an interim visit?

21             A.   Based on the coding and comment, I

22     would believe so.

23             Q.   Also the date, is that correct?

24             A.   That would lead to appear so.

25             Q.   So would this be related to a letter

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

117

1                        Bucolo

2      that you were drafting related to an interim

3      report for Star?

4              A.   That's what I would assume.

5              Q.   Let's turn to the next page 24878,

6      there's a few entries for you here spanning the

7      period of July 28th, 2014 through July 31, 2014

8      and they're all under interim service report

9      typing, correct?

10             MS. FITZGERALD:  Objection.

11             A.   No, because I see one here that says,

12     the top one says income tax project, then the

13     other code is for interim reporting, so it looks

14     like there are more than one code here for that

15     time period.  If you see that top entry.

16     July 31st, that code is for the income tax

17     project.

18             Q.   Do you know what that project was?

19             A.   No.

20             Q.   But below that, there's a few

21     entries, the first one was for 2.7 hours and it

22     just says interim?

23             A.   Correct.  It looks like there's five

24     entries totaling 6.5 hours that related to

25     interim report typing.

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

118

1                        Bucolo

2          Q.   That's all related to preparing an

3     interim letter?

4          A.   I can't confirm, but based on the

5     coding and comments, I would believe so.

6          Q.   In the last entry for 7/31/14, it

7     says "Update letter for RSK comments."  Who is

8     RSK?

9          A.   Robert Kirkhope.  I forget his middle

10    name.

11         Q.   RSK comments, is that his edits to

12    your initial draft of an interim letter?

13         A.   That could be potentially that or it

14    could be his section.  Again I was a liaison

15    between the admins and the managers.  His

16    sections could have had updates and he was

17    checking his updates were made correctly.  I

18    can't confirm that level of the process.  It was

19    based on the comments alone.

20         Q.   So just going back to what we spoke

21    about a little bit earlier, so these interim

22    letters were basically a culmination of multiple

23    Voynow employees that went to Star that prepared

24    a section that went into this report, correct?

25              MS. FITZGERALD:  Objection.

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

121

                            Bucolo

1       for the interim.  Without seeing a code, I have

2       no idea.

3                    So there was July work for tax stuff.

4       Again I don't recall if these clients were

5       extended or not.

6            Q.   But on 24878, those five references

7       to the letter and the interim and the update

8       letter for RSK comments, that's not tax work?

9            A.   Right, but I believe you said all

10      comments I wanted to confirm, because the top

11      line, there's one on July 31st, which I believe

12      relates to an income tax project based on the

13      codings.  I can't confirm without seeing the

14      coding.

15           Q.   Just so we're clear, on 24878 there's

16      one entry there that says interim and it's 2.7

17      hours.  Do you see that?

18           A.   I see that.

19           Q.   That's not for tax work, correct?

20                MS. FITZGERALD:  Objection.

21           A.   Based on the codings and the

22      comments, I believe that was for interim work.

23           Q.   And the ones that are underneath

24      there, there's four other ones, those are all

STAR AUTO SALES, et al. v. VOYNOW, BAYARD, et al.
Vincent Bucolo  ---  November 2, 2022

122

Bucolo

1

2       unrelated to tax work, correct?

3               MS. FITZGERALD:  Objection.

4           A.   Based on the coding and the comments,

5       it does appear to be interim work.  Without the

6       coding or comment, I cannot confirm what was done

7       on 768, on page 768.

8           Q.   Let's turn to 24876, it has your name

9       at the bottom, and then if we just turn the page

10      to 24877, it says "So Mike is bailing Eric out

11      and decides to do that by erasing and overriding

12      than asking questions."

13          A.   Yes.

14          Q.   Do you know what that refers to?

15          A.   Yes.  Mike Corrigan was briefly

16      employed at Voynow, really never kind of caught

17      on, Eric was actually a temp working for him.  So

18      this was, it was kind of in frustration of the

19      blind leading the blind kind of instead of having

20      Eric fix corrections the right way or Eric going

21      to somebody who knows what's up, it looks like he

22      went to the worst person and tried to fix it the

23      wrong way, so that comment looks like it was made

24      in frustration of dealing with Eric and Mike.

25          Q.   Do you know what that work was