# EXHIBIT "25"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STAR AUTO SALES OF BAYSIDE, INC.             :        Case No.: 18-cv-05775 (ERK) (TAM)
(d/b/a STAR TOYOTA OF BAYSIDE),              :
STAR AUTO SALES OF QUEENS, LLC               :
(d/b/a STAR SUBARU), STAR HYUNDAI LLC        :
(d/b/a STAR HYUNDAI), STAR NISSAN, INC.      :
(d/b/a STAR NISSAN), METRO CHRYSLER          :        PLAINTIFFS' RESPONSES
PLYMOUTH INC. (d/b/a STAR CHRYSLER           :        AND OBJECTIONS TO
JEEP DODGE), STAR AUTO SALES OF              :        DEFENDANTS' SECOND SET OF
QUEENS COUNTY LLC (d/b/a STAR FIAT)          :        INTERROGATORIES
and STAR AUTO SALES OF QUEENS                :
VILLAGE LLC (d/b/a STAR MITSUBISHI),         :
                                             :
                        Plaintiffs,          :
                                             :
            v.                               :
                                             :
VOYNOW, BAYARD, WHYTE                        :
AND COMPANY, LLP, HUGH WHYTE,                :
and RANDALL FRANZEN,                         :
                                             :
                        Defendants.          :
------------------------------------------------------------x

Plaintiffs, Star Auto Sales of Bayside, Inc. (d/b/a Star Toyota of Bayside), Star Auto Sales

of Queens, LLC (d/b/a Star Subaru), Star Hyundai LLC (d/b/a Star Hyundai), Star Nissan, Inc.

(d/b/a Star Nissan), Metro Chrysler Plymouth Inc. (d/b/a Star Chrysler Jeep Dodge), Star Auto

Sales of Queens County LLC (d/b/a Star Fiat), Star Auto Sales of Queens Village LLC (d/b/a Star

Mitsubishi) and Star Auto Body of Queens Village, LLC (d/b/a Star Auto Body of Queens Village)

(collectively, "Plaintiffs"), by and through their attorneys, Milman Labuda Law Group PLLC,

respond to Defendants' Second Set of Interrogatories addressed separately to each Plaintiff dated

August 2, 2021 (the "Interrogatories"), as follows:

## GENERAL OBJECTIONS

Plaintiffs' responses are subject to the specific General Objections set forth below, each

of which is incorporated by reference into the responses to each interrogatory. The production of

information encompassed within Plaintiffs' General Objections shall not be deemed a waiver of these objections.

1.  The right to object as to competency, relevancy, materiality, privilege and general admissibility of the responses and the subject matter thereof as evidence for any purpose in any further proceeding in this action (including trial) and in any other action.

2.  The right to object to the use of any such responses, or the subject matter thereof, on any ground in any further proceeding of this action (including trial) and in any other action.

3.  The right at any time to revise, correct, add to, or clarify any of said answers set forth herein.

4.  The right to object on any ground at any time to a request for a further or supplemental response (including a further or supplemental production of documents).

5.  Plaintiffs object to these uniformly overbroad interrogatories to the extent that they seek information that is neither relevant, reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of this case.   In addition, Defendants' interrogatories are overly broad to the extent that they cover time periods not relevant to the instant litigation.

6.  Plaintiffs object to Defendants' interrogatories to the extent they are so overly broad that they impose an undue burden upon them.

7.  Plaintiffs object to Defendants' interrogatories to the extent they are unreasonably vague and ambiguous.

8.  Plaintiffs object to Defendants' interrogatories to the extent they seek information that is confidential, proprietary, and/or protected from discovery by the attorney-client privilege, attorney work product doctrine, self-critical analysis privilege, or any other privilege.

2

9.  Plaintiffs object to Defendants' interrogatories to the extent they seek personal or confidential information.

10. The following responses are given without prejudice to Plaintiffs' right to produce subsequently discovered information or to make appropriate changes in such responses if additional documents or information is obtained.  When - and if - such documents or information is obtained, these responses will be amended or supplemented.

11. Plaintiffs object to Defendants' interrogatories to the extent they assume facts that have not been established.  Plaintiffs specifically reserve the right to object to the factual assumption made in these interrogatories.

12. Plaintiffs object to Defendants' interrogatories to the extent that they (i) exceed the permissible scope of discovery established under the Federal Rules of Civil Procedure ("Rules" or "Rule") and (ii) attempt to place obligations upon Plaintiff which are inconsistent with the Rules. Plaintiffs will respond to Defendants' interrogatories in accordance with the Rules

13. Plaintiffs object to and will not respond substantively to Defendants' interrogatories to the extent that they seek information from corporations and individuals other than Plaintiffs.

All of Plaintiffs' responses are made subject to the above comments and qualifications.

## INTERROGATORIES

1.      To the extent you contend You have sustained any damages as a result of any purported employee theft or fraud, describe each and every fraud or theft scheme and identify the duration, the participants, and the amount of specific damages You are claiming to have sustained from each fraud or theft scheme.

**RESPONSE: Plaintiffs object to this interrogatory on the grounds that it is overly broad, vague, unduly burdensome, premature, and because Defendants have exceeded the number of permitted Interrogatories under Rule 33, including discrete subparts.  Notwithstanding said objections, based on information currently available to Plaintiffs, Plaintiffs' present**

3

**estimate of damages and the details surrounding same are contained in Exhibit A annexed hereto.**

Dated: Lake Success, New York
      December 3, 2021                  **MILMAN LABUDA LAW GROUP PLLC**

                                                  By_____/s_____
                                                  Jamie S. Felsen, Esq.
                                                  Joseph M. Labuda, Esq.
                                                  3000 Marcus Avenue, Suite 3W8
                                                  Lake Success, NY 11042-1073
                                                  (516) 328-8899 (office)
                                                  (516) 328-0082 (facsimile)
                                                  jamie@mllaborlaw.com
                                                  joe@mllaborlaw.com

                                                  *Attorneys for Plaintiffs*

**VIA E-MAIL**
Maureen P. Fitzgerald, Esq.
Jonathan D. Weiss, Esq.
MARSHALL DENNEHEY
WARNERCOLEMAN & GOGGIN
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
mpfitzgerald@mdwcg.com
JDWeiss@MDWCG.com

*Attorneys for Defendants*

## **VERIFICATION**

Michael Koufakis, being duly sworn, states:

I have read the foregoing Responses and Objections to Defendants' Second Set of Interrogatories ("Response") and know its contents. The Response is true either to my knowledge or from my review of information and materials maintained by the companies, except as to matters alleged on information and belief, and to those matters, I believe them to be true.

Dated: December 3, 2021

Michael Koufakis

# EXHIBIT "A"

| | EMPLOYEE(S) WHO STOLE | DATES | STAR TOYOTA | STAR NISSAN | STAR SUBARU | STAR CHRYSLER | STAR HYUNDAI | TOTAL |
|---|---|---|---|---|---|---|---|---|
| CUSTOMER CLAIM SCHEME | DOUGLAS FILARDO | 11/25/2008-11/1/2016 | $ - | $ - | $ 378,157.08 | $ - | $ - | $ 378,157.08 |
| MOTORSPORTS ADVERTISING SCHEME | DOUGLAS FILARDO | 6/15/2014-7/10/2017 | $ - | $ - | $ 1,419,874.83 | $ - | $ - | $ 1,419,874.83 |
| STAPLES SCHEME | CARMEN JONES | 8/2001-5/2017 | $ - | $ 68,852.67 | $ - | $ - | $ - | $ 68,852.67 |
| AMEX SCHEME | CARMEN JONES | 10/16/2010-9/25/2014 | $ - | $ 365,034.04 | $ - | $ - | $ - | $ 365,034.04 |
| REVERSE DEPOSITS SCHEME | CARMEN JONES | 2/20/2013-4/19/2016 | $ - | $ 319,150.98 | $ - | $ - | $ - | $ 319,150.98 |
| CARMEN JONES HIGHLANDER SCHEME | VIVIAN KAROUZAKIS, CARMEN JONES | 9/2016 | $ - | $ 3,000.00 | $ - | $ - | $ - | $ 3,000.00 |
| LOAN PAYMENTS NOT REPAID SCHEME | DESPINA THEOCHARIS | 2010-2016 | $ - | $ - | $ - | $ 98,897.98 | $ - | $ 98,897.98 |
| VEHICLES SCHEME | DESPINA THEOCHARIS | 12/27/2011-3/24/2015 | $ - | $ - | $ - | $ 9,500.00 | $ - | $ 9,500.00 |
| TUNDRA AND AVALON SCHEME | VIVIAN KAROUZAKIS, MICHAEL KAROUZAKIS | 5/2013-3/2016 | $ 40,000.00 | $ - | $ - | $ - | $ - | $ 40,000.00 |
| ANGIE RAPTIS HIGHLANDER SCHEME | VIVIAN KAROUZAKIS, ANGE RAPTIS | 9/2016 | $ 3,000.00 | $ - | $ - | $ - | $ - | $ 3,000.00 |
| PAYING PERSONAL CREDITORS SCHEME | VIVIAN KAROUZAKIS | 5/14/2013-11/18/2016 | $ 9,147.70 | $ 510,076.86 | $ - | $ - | $ 34,500.00 | $ 553,724.56 |
| DRAWING FALSIFIED CHECKS (PTSN) SCHEME | VIVIAN KAROUZAKIS | 9/9/2003-11/18/2016 | $ 463,000.00 | $ 786,400.00 | $ - | $ - | $ - | $ 1,249,400.00 |
| VITALIANO/VIVIAN STOLEN AVALON SCHEME | VIVIAN KAROUZAKIS | 2/2016 | $ 20,000.00 | $ - | $ - | $ - | $ - | $ 20,000.00 |
| TOTAL STOLEN FROM SCHEMES | | | $ 535,147.70 | $ 2,052,514.55 | $ 1,798,031.91 | $ 108,397.98 | $ 34,500.00 | $ 4,528,592.14 |

| Scheme | Description |
|---|---|
| CUSTOMER CLAIM SCHEME | Douglas Filardo kept cash COD'S ("Cash On Delivery") from Star Subaru customers purchasing vehicles and instructed Star Subaru's office employee to accrue for the missing customers' money by making corresponding accounting entries in Star Subaru's Dealership Management System ("DMS"). |
| MOTORSPORTS ADVERTISING SCHEME | Unbeknownst to Star Subaru, Douglas Filardo operated a sole proprietorship, Motorsports Advertising d/b/a Subaru Motorsports, under the alias name "FILATDO", solely for the purpose of receiving ill-obtained payments from Star Subaru for advertising work that was never done. |
| STAPLES SCHEME | Carmen Jones bought various items (mainly gift cards) from Staples, Inc. using a Star Nissan Staples credit card for her own personal use. |
| AMEX SCHEME | Carmen Jones stole bonus money paid by NMAC to Star Nissan (that was issued via a quarterly credit on its monthly parts statement/invoice) by creating fraudulent journal entries in Star Nissan's DMS to allow replacement of cash stolen by her with diverted (stolen) checks from American Express and then replaced the amount represented by those stolen checks with the bonus money/credit from NMAC. |
| REVERSE DEPOSITS SCHEME | Carmen Jones stole bonus money paid by NMAC to Star Nissan (that was issued via a quarterly credit on its monthly parts statement/invoice) by first reversing a deposit generated in Star Nissan's DMS, then creating fraudulent journal entries in Star Nissan's DMS to apply the bonus money/credit to Star Nissan's Cash Sales Account. Carmen Jones would then steal cash from deposits that she ended up ultimately, reversing, to counterbalance the cash she stole with the NMAC bonus money/credit that was applied to Star Nissan's Cash Sales Account. |
| CARMEN JONES HIGHLANDER SCHEME | Carmen Jones purchased a new Toyota Highlander from Star Toyota that she did not pay in full and was aware that Vivian Karouzakis created a fraudulent journal entry in Star Toyota's DMS to make it seem like the Highlander was paid in full. |
| LOAN PAYMENTS NOT REPAID SCHEME | Despine Theocharis frequently took cash loans from Star Chrysler and created fradulant entries in Star Chrysler's DMS system to disguise the fact she did not pay them back. |
| VEHICLES SCHEME | Despina Theocharis purchased an extrodinary number of vehicles from Star Chrysler at low cost amounts and then traded them in towards future purchases. Those trades were given a higher dollar amount of credit towards the new purchase then the original amount paid for the vehicle. |
| TUNDRA AND AVALON SCHEME | Michael Karouzakis purchased a new Toyota Tundra from Star Toyota that he did not pay in full and was aware that his wife, Vivian Karouzakis, created a fraudulent accounting entry in Star Toyota's DMS to cover up the fact that a $10,000.00 cash COD ("Cash On Delivery") payment of the vehicle was never made. Michael Karouzakis purchased a new Toyota Avalon from Star Toyota that he did not pay in full and was aware that his wife, Vivian Karouzakis, created a fraudulent accounting entry in Star Toyota's DMS to cover up the fact that a $30,000.00 cash COD ("Cash On Delivery") payment of the vehicle was never made. |
| ANGIE RAPTIS HIGHLANDER SCHEME | Ange Raptis purchased a new Toyota Highlander from Star Toyota that she did not pay in full and was aware that Vivian Karouzakis created a fraudulent journal entry in Star Toyota's DMS to make it seem like the Highlander was paid in full. |
| PAYING PERSONAL CREDITORS SCHEME | Vivian Karouzakis caused numerous checks to be drawn upon Star Nissan, Star Toyota, and Star Hyundai's checking accounts, by primarily deceiving John Koufakis Sr., which were payable to credit card companies or other creditors to whom Vivian Karouzakis was indebted. |
| DRAWING FALSIFIED CHECKS (PTSN) SCHEME | Vivian Karouzakis stole cash with intercompany checks she fraudulently generated between Star Nissan and Star Toyota that she fraudulently generated by creating fraudulent journal entries in Star Nissan and Star Toyota's DMS and disguising them as a bogus expense. |
| VITALIANO/VIVIAN STOLEN AVALON SCHEME | Toyota Avalon was sold to Vitaliano and had a $20,000 deposit that was never paid or accounted for. Vivian Karouzakis created a fraudulent journal entry to offset the missing monies. |

*Note: For schemes involving a vehicle, the damage calculations do not include theft of unrealized profits (i.e. purchasing cars at dealer cost for personal use and/or trading them back after a period of time for more than originally paid)