**MILMAN LABUDA LAW GROUP PLLC**
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

**Author: Joseph M. Labuda - Member**
**Direct E-Mail Address: joe@mllaborlaw.com**
**Direct Dial: (516) 303-1380**

May 9, 2025

**Via ECF**

Honorable Edward R. Korman, U.S.D.J.
United States District Court Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

***Re:*** **Star Auto Sales of Bayside, Inc., *et al.* v. Voynow, Bayard, Whyte and Co., LLP, *et al.***
**Case No.: 1:18-cv-5775 (ERK) (TAM)**

Dear Judge Korman:

This firm represents Plaintiffs ("Star") in the above-referenced matter. We submit this letter in reply to Defendants' ("Voynow") May 6, 2025 submission (ECF Docket Entry 131). Voynow's opposition raises a host of mostly procedural objections that are inapplicable and meritless, and its sole substantive argument – that the tolling agreements have no effect on the claims at issue – is directly contrary to the law. We seek a determination as to the effect of the tolling agreements on the statute of limitations because Voynow did not seek any such determination and never even presented the tolling agreements to the Court. Therefore, the Court did not issue a determination with respect thereto.

As an initial matter, the critical point of Star's April 30, 2025 letter (Dkt. 130) was to raise the fact that the parties' tolling agreements, and their effect, were not raised as a material issue in Voynow's motion for partial summary judgment. Voynow raised no argument, whatsoever, and sought no ruling with respect to the tolling agreements.

Rather, the fundamental issue presented in Voynow's partial summary judgment motion was whether the three-year statute of limitations, or the continuous representation exception thereto, applied. This Court's March 25, 2025 Memorandum and Order (the "Order," Dkt. 128) found that the three-year limitations period applied and the exception did not.

In its April 30 letter, Star did not seek any substantive modification of the Order or reconsideration with respect thereto. Instead, Star's application seeks to have the effect of the parties' tolling agreements determined because it, plainly, and concededly, was not presented as a material fact by Voynow. Based on the tolling agreements entered into in March and August 2018 (Dkt 130-1), the parties expressly agreed that Star's three-year limitation period was tolled for 227 days. As Voynow has conceded, it is clear that a professional liability claim in New York against an accountant is <u>three years and begins to accrue "upon receipt</u> of the accountant's work product

since this is the point that a client reasonably relies on the accountant's skill and advice." *Ackerman v. Price Waterhouse*, 84 N.Y.2d at 541, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994). With the benefit of the tolling agreements, Star's claims are timely as to Voynow's work product that Star received within 3 years and 227 days of its commencement of this lawsuit on October 16, 2018. Therefore, all claims pertaining to Voynow's professional negligence going back three years plus 227 days from the lawsuit filing, *i.e.*, to March 3, 2015, are timely. As applicable here, Star first received Voynow's work product pertaining to the 2014 tax returns on August 6, 2015. Thus, all of Star's claims related to all negligence occurring in the 2014 tax year were timely. As explained further below, Voynow's procedural and substantive objections are meritless.

Voynow's procedural arguments are meritless. First, nowhere in Star's April 20, 2025 letter does it make any request "to certify an immediate appeal" to the Second Circuit (Dkt. 131). This procedural argument is specious.

Second, since Star is merely raising the effect of the tolling agreements to this Court, Voynow's next procedural argument – that Star's application is untimely or improper – is also meritless. In any event, to the extent that Star's April 30, 2025 request would be considered a "modification" of the Order (and we do not believe that to be the case because the effect of the tolling agreements was never presented to the Court), this Court clearly has the ability to do so "at any time."[1] Therefore, Voynow's timeliness argument is meritless.[2]

Voynow's third procedural argument – that Star waived its argument concerning the effect of the tolling agreements by not raising arguments in Star's opposition to Voynow's motion for partial summary judgment – is directly contrary to the case law provided by Star in Star's April 30, 2025 correspondence. Not surprisingly, Voynow failed to address the case law establishing that a passing reference to the tolling agreements in a footnote, which Voynow did here, does not support a conclusion that Voynow properly raised the tolling agreements in its motion. *See* *Maragh v. Roosevelt Is. Operating Corp.*, 2021 U.S. Dist. LEXIS 147091 (S.D.N.Y. Aug. 5, 2021); *Forte v. Liquidnet Holdings, Inc.*, 2015 U.S. Dist. LEXIS 136474 (S.D.N.Y. Sep. 30, 2015).

Further on this point, Voynow wholly disregards the substantial case law cited by Star for the conclusion that the Court may not consider any purported argument by Voynow related to the tolling agreements because Voynow failed to cite any admissible evidence concerning the tolling agreements in their 56.1 Statement of Material Facts. *See* *McCall v Genpak, LLC*, 2015 U.S. Dist.

[1] *See* Fed. Civ. Proc. R. 54(b). *See also* *United States v. Lo Russo*, 695 F.2d 45 (2d Cir 1982) (a district court has the inherent power to modify its interlocutory orders prior to the entry of judgment, whether they be oral, or written any time prior to appeal); *Soybel v. City of NY*, 2024 U.S. Dist. LEXIS 241631 (E.D.N.Y. Mar. 14, 2024) (same); *Williams v. County of Nassau*, 779 F. Supp. 2d 276 (E.D.N.Y. 2011) (same). Preventing Star from utilizing the bargained for tolling agreements would be a manifest injustice, warranting relief under Fed. Civ. Proc. R. 54.

[2] Moreover, contrary to Voynow's suggestion, "[the time limit in] Local Rule 6.3 does not [] displace the Federal Rules." *Soybel*, 2024 U.S. Dist. LEXIS 241631 at *7. Therefore, in Soybel, a motion under Fed. Civ. Proc. R. 54(b) that was filed 28 days after an order dismissing the plaintiff's claims was not untimely because "[t]he Court has authority under Fed. R. Civ. P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Id.*

LEXIS 133762, *13 (S.D.N.Y. Sep. 30, 2015); *Cortes v. City of NY.*, 2019 U.S Dist. LEXIS 188208 (E.D.N.Y. Oct. 30, 2019); *Giannullo v. City of New York*, 322 F.3d 139, 142-43 (2d Cir. 2003); *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 506 (S.D.N.Y. 2023); *Day v. NY City Dept. of Consumer Affairs*, 2016 U.S. Dist. LEXIS 33606, f.n. 4 (S.D.N.Y. Mar. 15, 2016); *Taylor & Fulton Packing, LLC v. Marco Intl. Foods, LLC*, 2011 U.S. Dist. LEXIS 144996 (E.D.N.Y. Dec. 16, 2011); *Holtz v. Rockefeller & Co.*, 258 F3d 62, 73-74 (2d Cir 2001); *Watt v. NY Botanical Garden*, 2000 U.S. Dist. LEXIS 1611, *2, f.n. 1 (S.D.N.Y. Feb. 15, 2000); *IBS Ketel, Ltd. v. Korea Telecom Am., Inc.*, 2000 U.S. Dist. LEXIS 8678, *1, f.n. 1 (S.D.N.Y. June 20, 2000); *AAA v. AAA Auto. Club of Queens, Inc.*, 1999 US Dist LEXIS 8892, *7 (E.D.N.Y. Feb. 8, 1999); *Rivera v. Natl. R.R. Passenger Corp.*, 152 FRD 479, 484 (S.D.N.Y. 1993).

Voynow argues that, even if the tolling agreements had been submitted to the Court (which they were not), the tolling agreements would not alter the Court's decision because "Star filed this case after the tolling agreement had already expired." Voynow, again, disregards the principle that "[d]uring the period the tolling agreements were in effect, the statute of limitations stopped running." *SEC v. Kelly, 663 F Supp 2d 276, 287 (S.D.N.Y. 2009)*; *NY ex rel. Spitzer v Feldman*, 2003 U.S. Dist. LEXIS 11759, *15 (S.D.N.Y. July 10, 2003). The entire purpose for which the parties entered into the tolling agreements was to prohibit the parties from filing a lawsuit so that they could devote their resources to trying to settle the case while tolling the statute of limitations so as not to prejudice Star's rights. Indeed, the tolling agreements state "any and all statutes of limitations or other defenses based on the passage of time … applicable to any claim that Star … ha[s] against the Voynow Parties … arising from or relating to their professional relationships are hereby deemed to have been tolled as of and from the date hereof to and including August 30, 2018[3] or the date this Tolling Agreement is otherwise terminated as provided herein." *Id*. They also state "Star Auto Group will not commence an action against the Voynow Parties prior to the end of the Tolling Period as set forth herein or as modified by an Early Termination Notice" – which is in direct contradiction to Voynow's argument that Star needed to commence this Action prior to the end of the tolling agreements. *Id.*; *Dkt.* 131 at 2.

Finally, now argues, in contradiction to its argument in support of its motion for summary judgment, that each quarterly visit Voynow made to Star is a separate and discrete act upon which the statute of limitations began to accrue such that all malpractice related to Voynow's 2014 quarterly visits to Star are time-barred, even applying the tolling agreements.[4] In its memorandum of law in support of its motion for summary judgment, Voynow argued:

> Pursuant to *Ackerman v. Price Waterhouse*, 84 N.Y.2d at 541, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994), the statute of limitation began to accrue each year upon receipt of Voynow's work product. Plaintiffs contend that these tax returns issued were derived from the financial statements accounts that Voynow provided "review/audit" level of services. These tax returns were

[3] This date was subsequently extended until October 14, 2018. See ECF Docket Entry 130-1.

[4] Voynow also conflates the existence of the tolling agreements with Star's reliance on the continuous representation doctrine. However, they have nothing to do with each other.

> issued annually prior to Plaintiffs' September 15th tax deadline. Specifically, the table below pertains to the last five years of the Voynow engagement. For the alleged review/audit services Voynow rendered applicable to Plaintiffs' 2012 fiscal year, Voynow's work product was issued to the Star Dealerships on June 24, 2013, June 25, 2013 and July 8, 2013. Likewise, for Voynow's alleged review/audit services applicable to Plaintiffs' 2013 fiscal year, it issued its work product on July 9, 2014, July 29, 2014, July 31, 2014 and August 4, 2014. For Voynow's services applicable to Plaintiffs' 2014 fiscal year, its work product was issued on August 6, 2015, August 11-12, 2015 and September of 2015. Thus, to the extent Plaintiffs claim that Voynow violated professional standards by failing to detect fraud or by ignoring irregularities or red flags in the financial statement accounts upon which the tax returns were based, Plaintiffs were obligated to file suit within three years of receipt of Voynow's work product in each of these years.

ECF Docket Entry 126-1 (emphasis added).

This Court agreed with Voynow's reliance on *Ackerman* and analysis and concluded:

> Professional malpractice claims are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(6). Time begins to accrue when a client receives an accountant's work product, even if the client is then ignorant of a wrong or injury. *Ackerman v. Price Waterhouse*, 644 N.E.2d 1009, 1011–12 (N.Y. 1994). Each year, plaintiffs received Voynow's work product for a preceding year prior to its September 15 tax deadline, and they filed suit in October 2018. Plaintiffs' claims regarding the 2015 and 2016 fiscal years are timely, while their claims related to 2001 to 2014 are not, unless the continuous representation exception applies.

ECF Docket Entry 128 at 12 (emphasis added).

This Court also concluded that interim visits were directly tied to preparation of tax returns:

> Again, defendants do not dispute that their role in "verifying" the accuracy of plaintiffs' books and records, as the parties agreed to in 1996, required additional services beyond mere tax return preparation. The critical fact, nonetheless, is that the record demonstrates that Voynow viewed these services as part and parcel of yearly engagements. For example, plaintiffs point to Voynow's practice of conducting interim visits and drafting interim reports as services unrelated to taxes and indicative of a controllership. COF ¶¶ 56–61. However, as Voynow partner Randall Franzen explained, defendants conducted interim visits to "understand where the income is at that period of time," and the reports were to advise the Koufakises of items

> that could be "write-offs by the end of the year" or things that "might be income by the end of the year for the tax return." R. Franzen Dep. 128:2–129:2, ECF No. 126-54. Franzen further testified that, to his knowledge, Voynow performed at least one interim visit to every dealership client for which Voynow prepared taxes because such visits were necessary to understand the client's finances and to be adequately prepared for year-end tax season. Id. 129:17–131:8.

*See* ECF Docket Entry 128 at 22.

Thus, Voynow's argument, which contradicts its argument in support of its motion for summary judgment, must be rejected as this Court has already concluded that the statute of limitations began to accrue each year upon receipt of Voynow's work product.

With respect to the 2014 tax year, Star first received Voynow's work product on August 6, 2015. Based on the tolling agreements between the parties, for Star to timely assert accounting malpractice claims with respect to Voynow's work on Star's 2014 tax returns, Star was required to file suit within three years and 227 days from August 6, 2015. Since Star filed this instant lawsuit on October 16, 2018, *i.e.*, three years and 71 days from August 6, 2015, all of Star's claims related to all negligence occurring in the 2014 tax year were timely.

Because Voynow's partial motion for summary judgment did not seek a finding concerning the tolling agreements, and Voynow, the movant, did not submit any evidence in its 56.1 statement of material facts concerning the tolling agreements, the Court had no facts before it to rule on the effect the tolling agreements have on the statute of limitations. Resolution as to the effect of the tolling agreements are critical as they will have a material impact at trial and even during settlement discussions.

Respectfully submitted,

/s/ Joseph M. Labuda

cc: All counsel of record